# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | |
|---|---|
| JOSHUA B. CRISSEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VINOD C. GUPTA, SATYABALA V. GUPTA, and WIPER CORPORATION,<br><br>Defendants. | Case No.: 2:12-cv-00355-JMS-WGH |

## Plaintiff's Response in Opposition to Defendants' Emergency Motion to Quash and for Protective Order

Plaintiff Joshua B. Crissen ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, Sandberg Phoenix & von Gontard, PC, respectfully submits his response in opposition to Defendants' Emergency Motion to Quash the subpoena directed to Banco Popular North America ("BPNA") and for protective order (Doc. 36)[1]:

### A. Introduction

On April 16, 2013, Plaintiff served Defendants notice of its subpoena to BPNA. *See* Doc. 37-1. The subpoena seeks information from BPNA regarding its financing of and participation in Defendants' scheme to defraud persons redeeming property sold to Defendants at tax sales in Indiana. On May 22, 2013 – 36 days after notice of the subpoena and only six days before the return date in the subpoena – Defendants bring this "emergency" motion. Not

---

[1] Unless defined otherwise herein, all capitalized terms shall have the meaning ascribed to them in Plaintiff's Complaint (Doc. 1).

4281327.3        1

only is this purported "emergency" a creature of Defendants' own creation[2], this motion is both procedurally defective and entirely without merit. Therefore, this Court should deny Defendants' efforts to block production of the subpoenaed information.

## B. Analysis

Denial of Defendants' motion is warranted on two separate procedural grounds: (1) as the Court has noted (*see* Doc. 39), Defendants ask this Court for relief it is jurisdictionally unable to provide; and (2) Defendants lack standing to object to the subpoena for the reasons asserted. In addition to these procedural defects, Defendants' motion fails on the merits because the subpoenaed information is not confidential and is relevant to Plaintiff's and the putative class' claims. Each of these will be addressed in turn.

### 1. This Court is without jurisdiction to quash or modify the subpoena.

Defendants seek an order from this Court to quash the subpoena pursuant to Rule 45(c)(3). *See* Doc. 37, p. 1. As the Court has noted "only the United States District Court for the Southern District of New York – as the court that issued the subpoena to Banco Popular that is the subject of Defendants' motion – can quash the subpoena." *See* Doc. 39, p. 1; *see also Flomo v. Bridgeston Americas Holding, Inc.*, 2010 WL 2348706, *1 (S.D. Ind. Jun 07, 2010) (Magnus-Stinson, J.).

The same is true whether the motion is considered as a motion to quash or a motion for protective order. *Clower v. GEICO Ins.*, 2013 WL 1897832, *6 (D.

---

[2] Rule 45(c)(3)(a) on Quashing a Subpoena says: "On timely motion…." Defendants have not offered an explanation for their lack of timeliness.

4281327.3  2

N.M. Apr 16, 2013) ("A party must seek a rule 26(c) protective order from the same court that issued the subpoena."); *In re Sealed Case*, 141 F.3d 337, 343 (D.C. Cir. 1998) (only the issuing court has power to act on its subpoenas"). Although the subpoena was issued by Plaintiff's attorney, the subpoena is an order of the United States District Court for the Southern District of New York. *S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010) ("we reject BCI's argument that a subpoena issued under Rule 45(a)(3) by an attorney as an officer of the court is not itself a court order"). "Therefore, the appropriate action is for them to seek such relief in the issuing courts rather than to collaterally challenge those courts' orders here." *Doe v. Doe Agency*, 608 F. Supp. 2d 68, 71 (D. D.C. 2009).

Defendants have not produced any evidence that the issuing court has ever relinquished jurisdiction over its subpoena. Consequently, "Defendants ask this Court for relief that this Court is jurisdictionally unable to provide." *Flomo*, 2010 WL 2348706 at *1. Therefore, the motion should be denied.

**2. Defendants lack standing to raise their objections.**

Although Rule 45(c)(3)(B) confers standing on "a person affected by a subpoena" to move to quash the subpoena if certain conditions exist, *Third Degree Films, Inc. v. Does 1-2010*, 2011 WL 4759283, *2 (N.D. Ind. Oct 06, 2011), the Court has already noted that it is jurisdictionally unable to quash the subpoena. Consequently, Defendants only have standing if they come within the Rule 26 provisions regarding a protective order. Rule 26, however, limits standing for protective orders to persons (whether a party or not) "from

whom discovery is sought." Rule 26(c)(1). Plaintiff's subpoena seeks discovery from BPNA. Thus, only BPNA has standing to seek a protective order under Rule 26. *Id.*; *see also* Advisory Committee Notes to Rule 26, 1993 Amendment ("the person from whom the discovery is sought decides whether to claim a privilege or protection").

### 3. BPNA's proposed protective order should be denied

While Defendants state in conclusory fashion that the subpoena seeks disclosure of trade secrets and confidential commercial information, they also propose a protective order based on objections that the subpoenaed information is "overly broad" and "not relevant." *See* Doc. 37, p. 4 & 7.[3] Although Defendants lack standing to raise these objections, Plaintiff will address them because the objections are groundless.

#### a. BPNA bank records are not confidential

The subpoena seeks documents held by BPNA in connection with Defendants' participation at tax sales in Indiana. Defendants' assert the subpoenaed "information is commercially confidential, and in some cases includes Mr. Gupta's trade secrets." *See* Doc. 37, p. 5. Under Rule 26(c)(7), the party seeking to limit access to information must offer evidence that the information is a trade secret or has been maintained as confidential by the party. *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 300 (N.D. Ill. 1993) ("[T]he party seeking protection bears the burden of establishing: (1) that the infor-

---

[3] In terms of Defendants' claim that Plaintiff is "fishing", BPNA has not indicated it finds the request unduly burdensome. To the contrary, according to counsel for Mr. Gupta "BPNA has informed Mr. Gupta that they will produce the subpoenaed documents unless instructed by the parties or the Court not to do so." *See* Doc. 37-3, p. 2.

4281327.3                                  4

mation is in fact a trade secret or confidential commercial information and (2) that there is good cause to protect the information."); *Andrew Corp. v. Rossi*, 180 F.R.D. 338, 341 (N.D. Ill. 1998) (protection of documents under Rule 26(c)(7) requires that the party seeking to restrict access to the documents took sufficient "measures [] to guard the information's secrecy," such as keeping the documents in locked files, providing the information to employees and consultants only on a need-to-know basis, and requiring those who receive the information to sign confidentiality agreements.).

That burden is imposed to protect the public's interest in access to information in legal proceedings. *American Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1978); *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 946 (7th Cir. 1999) ("Most cases endorse a presumption of public access to discovery materials….") (citations omitted). Conclusory statements of counsel do not satisfy that burden. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) ("a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements" is necessary to support a request for a protective order) (citations omitted); *Johnson v. Jung*, 242 F.R.D. 481, 483 (N.D. Ill. 2007) (court denied motion for protective order where argument underlying motion was unsupported by the facts contained in the affidavit filed by the moving party, stating that "unsupported allegations whether in oral argument, *In re Payne*, 431 F.3d 1055, 1056 (7th Cir. 2005), or in briefs, do not count.").

Here, Defendants have failed to meet their burden to establish the subpoenaed information is a trade secret or confidential and requiring of protection under Rule 26(c). Defendants' counsel has only made conclusory statements of confidentiality without any support for the statements from an affidavit by Defendants. Even Defendants unsupported statements in their brief fail to mention any measures Defendants took to guard the information's secrecy. This alone justifies a denial of Defendants' motion.

Defendants also cannot show that the requested documents are trade secrets or confidential because, by definition, the requested documents are the bank's records in the bank's possession. "Bank records are not confidential documents of the bank's customers." In *United States v. Miller*, 425 U.S. 435, 440 (1976), the Supreme Court found that records created or maintained by banks were "the business records of the banks," not the bank's customer. As such, the documents could not be considered as the customer's "private papers." *Id*. Further, the Supreme Court found that any of the customer's information contained in such documents was "voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business." *Id*. at 442. Based on those factual findings, the Supreme Court held that a bank's customer has no expectation of privacy in either the bank's records or the information it conveys to the bank. *Id*. at 442-43; *see also Najjar v. United States Dep't of Treasury*, 2003 WL 21254772, at *2 (S.D. Ind. Apr. 11, 2003) (citing *Miller*, the court found that a lawyer's disclosure of a client's bank rec-

Here, Defendants have failed to meet their burden to establish the subpoenaed information is a trade secret or confidential and requiring of protection under Rule 26(c). Defendants' counsel has only made conclusory statements of confidentiality without any support for the statements from an affidavit by Defendants. Even Defendants unsupported statements in their brief fail to mention any measures Defendants took to guard the information's secrecy. This alone justifies a denial of Defendants' motion.

Defendants also cannot show that the requested documents are trade secrets or confidential because, by definition, the requested documents are the bank's records in the bank's possession. "Bank records are not confidential documents of the bank's customers." In *United States v. Miller*, 425 U.S. 435, 440 (1976), the Supreme Court found that records created or maintained by banks were "the business records of the banks," not the bank's customer. As such, the documents could not be considered as the customer's "private papers." *Id*. Further, the Supreme Court found that any of the customer's information contained in such documents was "voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business." *Id*. at 442. Based on those factual findings, the Supreme Court held that a bank's customer has no expectation of privacy in either the bank's records or the information it conveys to the bank. *Id*. at 442-43; *see also Najjar v. United States Dep't of Treasury*, 2003 WL 21254772, at *2 (S.D. Ind. Apr. 11, 2003) (citing *Miller*, the court found that a lawyer's disclosure of a client's bank rec-

ords "is not revealing a confidence or secret of her clients" because "in no way could [such documents] be considered to be confidential.").[4]

In *Rotoworks Int'l Ltd. v. Grassworks USA, LLC*, 2007 WL 1219716, *2 (W.D. Ark. Apr. 25, 2007), the court expressly relied upon *Miller* in denying a motion for a protective order in civil litigation as to bank records. Citing *Miller*, the court held that "[s]uch records are not confidential communications but are, rather, instruments of commercial transactions and the business records of the bank. . . . Accordingly, the bank records at issue here are subject to discovery and do not warrant protection under Federal Rule of Civil Procedure 26(c)(7)." *Id*. The *Rotoworks'* analysis is consistent with the Restatement of Torts, Section 757, which other courts have considered when deciding whether business information is entitled to protection pursuant to Rule 26(c)(7). *See Zahran v. Trans Union Corp.*, 2002 WL 31010822, *2 (N.D. Ill. Sept. 9, 2002); *Andrew Corp.*, 180 F.R.D. at 341. As Comment b of Section 757 of the Restatement makes clear, "[t]he subject matter of a trade secret must be secret. . . . Substantially, a trade secret is known only in the particular business in which it is used." Restatement (First) of Torts § 757 cmt. b

---

[4] The passage of the Federal Privacy Act overruled *Miller* in part. *See Keybank N .A. v. Perkins Rowe Associates, LLC*, 2010 WL 4696637, at *2 n. 6 (M.D. La. Nov. 12, 2010) ("*Miller* was abrogated in part in 1978 by the Right to Financial Privacy Act ... which limits a government authority's ability to acquire personal financial information from banks and similar financial institutions"). "The Act did not provide similar limitations and protections when records are sought in the context of a civil action." *Id*.; *see also Clayton Brokerage Co. v. Clement*, 87 F.R .D. 569, 571 (D. Md. 1980) ("Miller was a criminal case and the Financial Privacy Act was a legislative ... effort to establish nonconstitutional protection against possible abuses [in the criminal investigative process]. The Act created standing for the customer of a financial institution to contest Government access to financial records. Nothing in the Act, however, shields the records of a bank customer's transactions from discovery in a civil suit.") (internal quotations and citations omitted) (brackets in original).

(1939). Based on that requirement, courts consider "the measures taken to guard the information's secrecy" to determine the applicability of Rule 26(c)(7) to the specific information sought to be concealed. *Andrew*, 180 F.R.D. at 341. Here, the records consist of documents created by the bank or provided to the bank for the bank's purposes. The bank records should be produced without limitation. *See Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858-60 (7th Cir. 1994) (protective order held unnecessary and inappropriate where the information sought to be concealed showed that the party seeking protection did not previously treat the information as confidential).

If BPNA had information that was subject to a confidentiality agreement with Defendants, BPNA would be required by such agreement to assert the confidentiality of the information. If no such confidentiality agreement exists, then Defendants have not maintained the documents as confidential and cannot now contend that the documents should be withheld. *Andrew Corp.*, 180 F.R.D. at 341; *see also Rotoworks*, 2007 WL 1219716, at *2 (citing *Miller*).

Defendants' claims of confidentiality are even more tenuous. In a conclusory and unsupported fashion, the Defendants assert the requested information "sets forth Mr. Gupta's personal protocol when purchasing properties, the types of properties he purchases, locations of purchased properties and how he bids for each property." *See* Doc. 37, p. 5. The types and locations of all the properties purchased by Defendants are public information that any competitor would be aware of when Defendants bid on the property at a *pub-*

*lic* tax sale auction. This information is also available by reviewing the delinquent property tax sale records. *See, e.g.,* Delinquent Property Tax Sale Record attached as **Exhibit 1**. The same is true for how Defendants bid, which again is observable at the public auctions and the amount he successfully bid is shown in the delinquent property records. Mr. Gupta may have a "personal protocol" as to how he selects properties, but his selection is public rending his protocol public too.

Finally, most of the information requested is already many years old, and, thus, provides no possible competitive advantage to anyone as to future sales. Even the most current information will be several months old by the time of the next tax sale. Thus, even if BPNA's bank records could provide a competitive advantage to someone, the requested information would be stale and could not provide any advantage regarding Defendants' financial capacity at the next sale. *See In re Bank One Secs. Litig.*, 222 F.R.D. 582, 592 (N.D. Ill. 2004) (granting motion to unseal documents identified as confidential where the passage of time made the information "stale").

In short, Defendants have no privacy interest in their bank records under *Miller*, and even if they did, Defendants fell woefully short of meeting their burden of proving confidentiality. Therefore, the motion for protective order should be denied.

*b. The subpoenaed information is relevant and not overbroad*

Defendants object to the subpoena to the extent it to the extent it requires BPNA to produce:

> any document or information relating to properties not identified on Exhibit B to the Subpoena, including any and all transactions occurring outside the State of Indiana. This request is entirely irrelevant to the issues underlying Crissen's claims and will not lead to the discovery of admissible evidence since Crissen's claims relate to Mr. Gupta's title search and notice costs from tax sale purchases strictly within Indiana. Such a request is a textbook example of a discovery "fishing expedition" that should be quashed by the Court."

*See* Doc. 37, p. 6. Not only do Defendants lack standing to make this objection as discussed above, Defendants have manufactured the basis for their objection out of thin air. The subpoena already instructs BPNA that production "should not include…loans related to property outside of Indiana." *See* Doc. 37-2, p. 4. Essentially then, Defendants decry Plaintiff is embarking upon a "fishing expedition" as though its invocation were sufficient to defeat the subpoena. It is not. "No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." *Hickman v. Taylor*, 329 U.S. 495, 507-508 (1947). All discovery is a fishing expedition, *Northwestern Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 931 (7th Cir. 2004), and "'permits extensive intrusion into the affairs of both litigants and third parties.'" *Bond v. Utreras*, 585 F.3d 1061, 1067 (7th Cir. 2009) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984).

Defendants insistence that discovery be limited to properties on Exhibit B to the Subpoena (the same Exhibit B attached to the Complaint (Doc. 1-2))

ignores that Plaintiff's claims are not limited to those properties on Exhibit B. Plaintiff seeks to represent a class composed of:

> All individuals and business entities who redeemed a tract or real property purchased at Indiana tax and/or Commissioner's sales by Vinod, Satyabala and/or Wiper Corp. (or by a nominee), where the redemption amounts were artificially inflated because Vinod, Satyabala and/or Wiper Corp. certified to Indiana county auditors they had incurred and/or paid statutory notification and/or title costs which Defendants had not incurred or paid.

*See* Doc. 1, ¶ 53. Plaintiff has subpoenaed dozens of Indiana counties for information about Defendants' participation in their tax sales and has learned there are a significant number of properties redeemed by potential class members, which are not included on Exhibit B. To the extent BPNA has documents and information related to a purchase of a tract or real property purchased at Indiana tax and/or Commissioner's sales by Defendants that are not listed on Exhibit B, those documents are reasonably calculated to lead to the discovery of admissible evidence.

Defendants next object to BPNA's production of documents and communication pertaining to:

1) financial statements and supporting information the Defendants have provided BPNA;
2) the Defendants' loans;
3) the Defendants' loan applications;
4) letters of credit
5) applications for letters of credit
6) collateral for loans;

7) agreements between the Defendants and BPNA regarding collateral;

8) payment of interest on any loans;

9) tax liens;

10) Defendants' guarantees;

11) the tax sale business; and

12) personal tax returns.

*See* Doc. 37, pp. 4-5. According to Defendants, such "information is not relevant to the issues underlying Crissen's claims in the present matter…." *Id.* at 5; *see also id.* at 7 (making the same argument as discretionary grounds for the Court to issue a protective order). This is simply not true.[5]

Initially, Exhibit B to the Complaint shows that BPNA was substantially involved with most, if not all, of Defendants' purchases at tax sales in Indiana. Each category of information listed by Defendants would be reasonably calculated to lead to the discovery of evidence as to all persons "employed by or associated with [Defendants'] enterprise" and the extent those persons have "participated in the operation or management of the enterprise itself." These are elements of Plaintiff's federal RICO claim. *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). Likewise, this information would be reasonably calculated to lead to the discovery of who "conducts or otherwise participates in the activities of that enterprise."

---

[5] It is puzzling that Defendants object to BPNA's production of documents related to the "tax sale business." This lawsuit is about Defendants' scheme to defraud persons and entities through Defendants' activities in the Indiana tax sale business. *See* Doc. 1, ¶ 2.

Ind. Code § 35-45-6-2(3) (Indiana RICO).[6] For example, Defendants' loans and letters of credit enabled them to effectuate their scheme. All persons that assisted in obtaining these lines of credit provide evidence that an enterprise exists and that they participated in the activities of that enterprise. The same would be true for guarantees on those loans and agreements with BPNA regarding collateral (i.e., the tax sale certificates Defendants obtain before they artificially inflate the redemption price).

Similarly, tax liens/tax sale certificates shows who were the purchasers at the tax sales. *See* Doc. 1, ¶ 16; *see also, e.g.,* Tax Sale Certificate attached as **Exhibit 2**. These purchasers are the ones who certify they incurred and paid the Notify Costs and Title Costs at the heart of this litigation. *Id.* at ¶ 24. Plaintiff is certainly entitled to documents that would show the identities of those that harmed Plaintiff and the Class.

Financial statements would show all the expenses of a person or company from operation of the business (i.e., Income Statement and Statement of Cash Flows). If Defendants are actually incurring and paying expenses in connection with their tax sale business, these expenses should be reflected in Defendants' financial statements. This is equally true for personal tax returns. As Exhibit B to the Complaint shows, Mr. Gupta

---

[6] The Indiana Supreme Court expressly held in 2008 that the Indiana RICO statute is significantly broader than its federal equivalent. *See Kesling v. Beegle*, 880 N.E.2d 1202, 1206-08 (Ind. 2008). "We conclude that the Legislature intended for the Indiana Act to reach persons 'below the managerial or supervisory level' as well as those who 'exert control or direction over the affairs of [a racketeering] enterprise,' *i.e.*, to reach a racketeering enterprise's 'foot soldiers' as well as its 'generals'." *Id.* at 1206 (citations omitted).

does much of his business in his individual name as a sole proprietor. Mr. Gupta would use Schedule C (Form 1040) to report expenses, including his expenses purportedly incurred and paid as a result of his tax sale business.

Although Defendants lacked standing to raise a relevancy objection and failed to go beyond "stereotyped and conclusory statements," *Gulf Oil*, 452 U.S. at 102 n.16, Plaintiff has demonstrated the requested information is reasonably calculated to lead to admissible evidence. Therefore, Defendants' request for a protective order should be denied.[7]

As discussed above, if Defendants want a protective order related to the documents and information BPNA is required to produce pursuant to a subpoena issued by the Southern District of New York, Defendants must seek that relief from the Southern District of New York. *Clower*, 2013 WL 1897832 at *6 ("A party must seek a rule 26(c) protective order from the same court that issued the subpoena."). Even if Defendants could seek a protective order from the subpoena in this Court, "the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding." *Citizens First Nat'l Bank of Princeton*, 178 F.3d at 944-45. In order to overcome the public's interest, Defendants must establish good cause; they must show that disclosure of the information for which protection is sought

---

[7] Even if Plaintiff seeks information not directly related to the claims or defenses identified in the pleadings as incorrectly asserted by Defendants, the information is relevant to the broader subject matter at hand, which further justifies the requested discovery. *See, e.g., Sanyo Laser Prods., Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 502 (S.D. Ind. 2003).

"will result in a clearly defined and very serious injury." *Andrew Corp.*, 180 F.R.D. at 340. To do this, Defendants must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil*, 452 U.S. at 102 n.16. Defendants failed to meet this showing. Indeed, Defendants have failed to provide one statement of fact supported by affidavit.

Finally, the parties have mostly agreed to a protective order regarding all documents produced in this case. Defendants request a different protective order that requires an *in camera* review of all documents produced by BPNA with the following people: Magistrate Judge Hussman, John S. Sandberg (counsel for Crissen) and David J. Theising (counsel for Defendants). *See* Doc. 37, p. 8. Not only would this unduly burden the Court's resources, Defendants fail to articulate why the documents held by BPNA as part of its records are more commercially confidential than documents privately held by Defendants, which would be subject to the agreed upon protective order. In any event, Defendants concerns about an officer of the court violating the agreed upon protective order are unsubstantiated. What Defendants are arguing is that an officer of the court should be prohibited from reviewing documents on the sole basis of a blood relationship. Defendants cite no authority for their argument and there is none. Even if the concerns were legitimate (they are not), Plaintiff is confident this Court is fully capable of enforcing its own orders.

### C. Conclusion

Plaintiff set the deposition of BPNA for June 20, 2013, knowing it would have the documents to prepare by late May. The Court's order of May 24 stayed the production. (Doc. 39) Plaintiff's counsel has already made travel arrangements to attend the deposition. In order to prepare for that deposition, Plaintiff issued the subpoena for documents that is the subject of Defendants' motion to quash and for protective order (Doc. 36). Accordingly, Plaintiff's request Defendants' motion to quash and for protective order (Doc. 36) be promptly denied and BPNA ordered to produce the documents immediately so that Plaintiff may adequately prepare for and go forward with the deposition of BPNA as planned.

                                      Respectfully submitted,

                                      Sandberg Phoenix & von Gontard, PC

                          By:   /s/ John S. Sandberg
                                  John S. Sandberg
                                  Bhavik R. Patel
                                  600 Washington Avenue – 15th Floor
                                  St. Louis, MO 63101-1880
                                  314-231-3332
                                  314-241-7604 (Fax)
                                  jsandberg@sandbergphoenix.com
                                  bpatel@sandbergphoenix.com
                                  *Attorneys for Plaintiff*

### Certificate of Service

      I hereby certify that on May 28, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the attorneys/parties of record.

                                        /s/ John S. Sandberg