UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

JOSHUA B. CRISSEN,                          )
      *Plaintiff*,                          )
                              )
      *vs.*                          )     2:12-cv-00355-JMS-WGH
                              )
VINOD C. GUPTA, SATYABALA V. GUPTA, and     )
WIPER CORPORATION,                          )
      *Defendants*.                          )

## ORDER

Presently pending before the Court are: (1) Defendant Satyabala V. Gupta's Fed. R. Civ.

P. 12(b) Motion to Dismiss Plaintiff's Class Action Complaint, [dkt. 23]; and (2) a Fed. R. Civ.

P. 12(b) Motion to Dismiss Plaintiff's Class Action Complaint filed by Defendants Vinod C.

Gupta, Satyabala V. Gupta, and Wiper Corporation ("Wiper") (collectively, "Defendants"), [dkt.

26].

### I.
### THE COMPLAINT ALLEGATIONS

**A.  The Parties**

Plaintiff Joshua Crissen is an individual residing in Bloomfield, Indiana.  [Dkt. 1 at 3, ¶

6.]  Defendants Vinod Gupta and Satyabala Gupta are husband and wife, and reside in Boca

Raton, Florida.  [*Id.* at 3, ¶¶ 7-8.]  Mr. and Ms. Gupta are the only directors and officers of

Wiper, a Florida corporation.  [*Id.* at 3, ¶ 9.]  Mr. Crissen alleges that "[Wiper] or its nominees

have participated in tax sales in Indiana from at least 2002 through 2010."  [*Id.*]

**B.  The Tax Sale Process**

Mr. Crissen describes the tax sale process in Indiana in the following way:  In Indiana,

when a real property owner fails to pay property taxes, the property can be sold at a tax sale to

satisfy the delinquent taxes pursuant to Ind. Code § 6-1.1-24, *et seq.*  [*Id.* at 4, ¶ 10.]  The process

1

begins when each county auditor publishes a list of delinquent real estate parcels in area newspapers, which gives notice that the county auditor and treasurer will apply for court judgments against delinquent real estate and for orders to sell those judgments at public auction. [*Id.* at 4, ¶ 12.]  After the court issues the requested judgments and orders, the county auditor will send a notice of the sale by certified mail, return receipt requested, to the last address of the property owner on the date the tax sale list is certified ("Notice of Sale").  [*Id.* at 4, ¶ 13.]

At the tax sale, the county treasurer sells the real property, subject to a right of redemption, to the highest bidder at public auction.  [*Id.* at 4, ¶ 14.]  An Indiana statute provides the minimum price for which the real property can be sold ("Minimum Price"), factoring in the taxes due and owing, all penalties owed, costs incurred by the county due to the sale, unpaid costs due from any prior tax sales, and other reasonable expenses of collection.  [*Id.* at 4-5, ¶ 15.] When a bid equals at least the Minimum Price, the purchaser receives a certificate of sale and acquires a lien against the property in the amount paid.  [*Id.* at 5, ¶ 16.]  When no bid equals at least the Minimum Price, the county executive receives a certificate of sale and acquires a lien in the amount of the Minimum Price.  [*Id.* at 5, ¶ 17.]  The county executive can then decide to sell its certificate of sale at a public auction to the highest bidder for an amount less than the Minimum Price.  [*Id.* at 5, ¶ 18.]  The purchaser of a certificate of sale must give notice ("Notice of Redemption") by sending a copy of the Notice of Redemption by certified mail to the owner of record at the time of the sale and any person with a substantial property interest of public record in the real property.  [*Id.* at 6, ¶ 20.]  The Notice of Redemption must be sent no later than nine months after the date of the tax sale or ninety days after the date of the Commissioner's Sale.  [*Id.* at 6, ¶ 21.]

Any person may redeem real property sold at a tax sale or Commissioner's Sale by paying the amount required for redemption before the expiration of the redemption period, which is one year after the date of sale.  [*Id.* at 6, ¶ 22.]  The amount of money required for redemption of the real property ("Redemption Amount") is set by Indiana statute.  [*Id.* at 6-7, ¶ 23.]  If the property is certified before redemption, the attorneys' fees and costs of giving notice ("Notify Costs") and the costs of a title search or of examining and updating the abstract of title for the real property that were incurred and paid by the purchaser ("Title Costs") are part of the Redemption Amount.  [*Id.*]  The purchaser of a certificate of sale certifies that he or she incurred and paid the Notify Costs and the Title Costs by completing, signing, and providing the county auditor with a Certification.  [*Id.* at 7, ¶ 24.]  The Notice of Redemption must set forth the components of the Redemption Amount, including the amounts owed for Notify Costs and Title Costs.  [*Id.* at 7, ¶ 26.]

### C.  Mr. Crissen's Property

Mr. Crissen owns property in Greene County, Indiana (the "Property").  [*Id.* at 7, ¶ 29.] After property taxes on the Property became delinquent, the Greene County auditor and treasurer applied for a judgment against the Property and an order to sell the judgment at public auction. [*Id.* at 7-8, ¶ 30.]  On October 9, 2009, after the requested judgment and order were entered, the Greene County treasurer offered the Property for sale, subject to a right of redemption, for a Minimum Price of $2,118.60.  [*Id.* at 8, ¶ 31.]  Mr. Gupta was the highest bidder with a bid of $8,000, and the Greene County auditor issued a certificate of sale ("Tax Sale Certificate") that same day.  [*Id.* at 8, ¶¶ 32-33.]

On November 13, 2009, Mr. Gupta provided a signed Certification to the Greene County auditor certifying that he had incurred and paid $350 in Notify Costs and $150 in Title Costs

relating to the Property.  [*Id.* at 8, ¶ 34.]  Thereafter, Mr. Gupta (or someone acting on his behalf) sent Mr. Crissen a Notice of Redemption detailing the components of the Redemption Amount, including the Notify Costs and Title Costs.  [*Id.* at 8, ¶ 35.]  On February 8, 2010, the Property was redeemed by Mr. Crissen for a Redemption Amount of $3,027.04.  [*Id.* at 8, ¶ 36.]

### D.  The Alleged Scheme

Mr. Crissen alleges that Mr. and Ms. Gupta and Wiper "conspired to and did devise a scheme to defraud people seeking to redeem real property sold at the tax sales and Commissioner's Sales by submitting fraudulent Certifications, which certified they incurred and paid the Notify Costs and Title Costs, when upon information and belief, they neither incurred nor paid the Notify Costs or Title Costs."  [*Id.* at 8, ¶ 37.]  Specifically, Mr. Crissen alleges that from at least 2002 through the present, Defendants provided the county auditor with over 2,700 Certificates that were redeemed by individuals which were false because they certified that Defendants incurred and paid Notify Costs and/or Title Costs when they had not done so.  [*Id.* at 8-9, ¶ 38.]  Mr. Crissen attaches a list of each purchase involving an allegedly false Certificate to his Complaint.  [Dkt. 1-2.]  Mr. Crissen alleges that the Notify Costs Defendants certified that they paid (but actually did not) total over $1,000,000, and the Title Costs Defendants certified that they paid (but actually did not) total over $612,000.  [Dkt. 1 at 9, ¶ 42.]

### E.  The Complaint

Mr. Crissen seeks to represent a class of:

> All individuals and business entities who redeemed a tract or real property purchased at Indiana tax and/or Commissioner's sales by [Mr. Gupta], [Ms. Gupta] and/or [Wiper] (or by a nominee), where the redemption amounts were artificially inflated because [Mr. Gupta], [Ms. Gupta] and/or [Wiper] certified to Indiana county auditors they had incurred and/or paid statutory notification and/or title costs which Defendants had not incurred or paid.

[*Id.* at 10-11, ¶ 53.]

Mr. Crissen asserts the following claims: (1) Substantive Racketeering under Federal RICO, [*id.* at 12-15, ¶¶ 60-73]; (2) Racketeering Conspiracy under Federal RICO, [*id.* at 15-16, ¶¶ 74-77]; (3) Substantive Racketeering under Indiana RICO, [*id.* at 16-18, ¶¶ 78-90]; (4) Racketeering Conspiracy under Indiana RICO, [*id.* at 19-20, ¶¶ 91-94]; (5) Relief under the Indiana Crime Victims Act, [*id.* at 20-21, ¶¶ 95-102]; (6) Fraud, [*id.* at 21-22, ¶¶ 103-113]; (7) Money Had and Received, [*id.* at 22-23, ¶¶ 114-117]; and (8) Unjust Enrichment, [*id.* at 23-24, ¶¶ 118-121]. He seeks actual and punitive damages, and attorneys' fees and costs. [*Id.* at 24.]

## II.
### DISCUSSION

**A. Ms. Gupta's Motion to Dismiss**

Ms. Gupta has moved to dismiss Mr. Crissen's Complaint on two grounds: (1) that the Court lacks personal jurisdiction over her; and (2) in the alternative, that Mr. Crissen has failed to plead a claim against her upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) and has not pled his claims against her with the particularity required by Fed. R. Civ. P. 9(b). Because of its potentially dispositive nature, the Court will first address Ms. Gupta's argument that the Court does not have personal jurisdiction over her.

Although a complaint does not need to include facts alleging personal jurisdiction, once a defendant moves to dismiss the complaint under Fed. R. Civ. P. 12(b)(2) – as Ms. Gupta has done here – the plaintiff bears the burden of demonstrating the existence of personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *see also Claus v. Mize*, 317 F.3d 725, 727 (7th Cir. 2003) ("The plaintiff bears the burden of showing that personal jurisdiction over the defendant exists"). When the Court decides a motion to dismiss for lack of jurisdiction based on the parties' written submissions only, and without an evidentiary hearing, the plaintiff "need only make out a *prima facie* case of personal jurisdiction" and "is

entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.* (internal citations omitted).

A court must have either general personal jurisdiction, specific personal jurisdiction, or jurisdiction by operation of a federal statute.  For general and personal jurisdiction, the Due Process Clause of the Fourteenth Amendment to the Constitution requires that before a state may exercise jurisdiction over a defendant, the defendant must have had certain "minimum contacts" with the state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  In order to exercise jurisdiction absent a federal statute which authorizes nationwide service of process, the federal court must look to the jurisdictional statutes of the forum state.  *Annie Oakley Enters. v. Sunset Tan Corporate & Consulting, LLC*, 703 F.Supp.2d 881, 886 (N.D. Ind. 2010) (*citing United States v. De Ortiz*, 910 F.2d 376, 381 (7th Cir. 1990)).  Indiana Trial Rule 4.4(A) serves as Indiana's long-arm provision and expands personal jurisdiction to the full extent permitted by the Due Process Clause.  *Linkamerica Corp. v. Cox*, 857 N.E.2d 961, 965-66 (Ind. 2006).  Rule 4.4(A) provides "a handy checklist of activities that usually support personal jurisdiction but does not serve as a limitation on the exercise of personal jurisdiction" by Indiana courts.  *Id.* at 967.  Specifically, Trial Rule 4.4(A) states:

> Any person…that is a nonresident of this state…submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or her or his or her agent:
>
> (1) Doing any business in this state;
>
>            \*       \*       \*
>
> (5) Owning, using, or possessing any real property or an interest in real property within this state….

In addition to general and specific personal jurisdiction, a court can acquire personal jurisdiction over a defendant by operation of a federal statute. Fed. R. Civ. P. 4(k)(1)(C) provides that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant…when authorized by a federal statute." Further, Section 1965(b) of RICO states that:

> In any action under section 1964 of this chapter…in any district of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

18 U.S.C. § 1965(b). Mr. Crissen argues that even if the Court does not have specific personal jurisdiction over Ms. Gupta, it has jurisdiction under § 1965.

### 1. Specific Personal Jurisdiction

While personal jurisdiction may be either general or specific, Mr. Crissen does not appear to contend that the Court has general personal jurisdiction over Ms. Gupta. [*See* dkt. 28 at 2-11.] Therefore, the Court will only address whether it is able to exercise specific personal jurisdiction over Ms. Gupta.

Ms. Gupta relies upon her own affidavit, and argues that the Court does not have specific personal jurisdiction over her because she: (1) has been domiciled in and a resident of Florida since 1977, and has never lived, been domiciled in, or been a resident of Indiana; (2) has never owned any real property, or an interest in real property, in Indiana; (3) has never done business in Indiana, individually or through an agent; (4) has never been physically present in Indiana; and (5) has never participated in or bid at any of the tax sales identified in the exhibit to the Complaint or purchased any of the properties identified in the exhibit, and has never participated in any tax sale in Indiana or purchased any property at a tax sale in Indiana. [Dkts. 24 at 1-4; 25

at 6-7.]  Mr. Crissen argues that the Court has specific personal jurisdiction over Ms. Gupta because she is a director of Wiper and "[d]irectors of a corporation may be subject to specific jurisdiction of courts in the forum where the corporation does business."  [Dkt. 28 at 9.]  In reply, Ms. Gupta reiterates her argument that she is not identified as the purchaser of any of the 2,700 properties that Mr. Crissen identifies in the exhibit to his Complaint, and that her status as either a shareholder or director of Wiper does not confer specific personal jurisdiction over her.  [Dkt. 33 at 7-11.]

For a Court to exercise specific jurisdiction, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum so that the defendant may reasonably anticipate being haled into court there.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (*citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)).  Specific jurisdiction requires only a minimum of contacts, but it requires that the controversy be related in some way to the defendant's contact with the forum.  *Id*. at 472. "[S]pecific jurisdiction requires that the suit 'arise out of' or 'be related to' [defendant's] minimum contacts with the forum state."  *Steel Warehouse v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998) (*citing Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

The Court concludes that it does not have specific jurisdiction over Ms. Gupta in this case.  Mr. Crissen's sole argument is that Ms. Gupta's role as a director of Wiper is enough to confer specific personal jurisdiction because she is one of only two directors for Wiper and "it is disingenuous to assert she did not participate in the decision given Indiana law provides that 'all corporate powers shall be exercised by or under the authority of' the directors."  [Dkt. 28 at 10-11.]  Ms. Gupta, however, submitted an affidavit in which she stated that she did not participate in or bid at any of the tax sales Mr. Crissen identified in the exhibit to his Complaint, has never

participated in or bid at any tax sale in Indiana or purchased any property at a tax sale in Indiana, did not send any Notice of Redemption regarding the properties listed in the exhibit to the Complaint, has never sent any Notice of Redemption regarding any property in Indiana, and, while she is a minority shareholder and director of Wiper, has not and never has been "an officer or employee of [Wiper] or been involved in its day-to-day management or operations or done any business in [Indiana] as a representative of the corporation." [Dkt. 24 at 1-2.] Mr. Crissen has not presented any evidence to refute Ms. Gupta's statements.

Further, Indiana courts have not extended the reach of personal jurisdiction to nonresident corporate directors simply because they are directors of a company doing business in Indiana. *See Woodruff v. S. Cent. Conf. of Seventh Day Adventists*, 2004 U.S. Dist. LEXIS 5164, *10-11 (S.D. Ind. 2004) ("Indiana courts have not yet determined whether a non-resident corporate director of a corporation doing business in Indiana is deemed to be doing business in Indiana, within the meaning of Trial Rule 4.4(A)(1) and thus is subject to jurisdiction in its courts. Without a firm footing in Indiana law allowing personal jurisdiction under these circumstances, we will not proceed so far either"); *Blubaugh v. Am. Contract Bridge League*, 2002 U.S. Dist. LEXIS 17372, *23 (S.D. Ind. 2002) (court did not have personal jurisdiction over defendant officer where officer denied involvement with matters at issue and plaintiff did not submit any contrary evidence). Accordingly, the Court concludes that it does not have specific personal jurisdiction over Ms. Gupta.[1]

---

[1] The only cases Mr. Crissen cites for his argument that the Court has specific jurisdiction over Ms. Gupta because she is a director of Wiper are from other jurisdictions. *See Springs Indus. v. Gasson*, 923 F.Supp. 823 (D. S.C. 1996); *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522 (4th Cir. 1987); *Kidston v. Res. Planning Corp.*, 2011 U.S. Dist. LEXIS 141156 (D. S.C. 2011).

2.   *Jurisdiction By Operation of Statute*

Ms. Gupta argues that Fed. R. Civ. P. 4(k)(1)(C) and 18 U.S.C. § 1965 do not provide the Court with jurisdiction over her because "the ends of justice" do not require that she be brought to Indiana since a Florida federal district court would have personal jurisdiction over all of the Defendants.  [Dkt. 25 at 7-9.]  Mr. Crissen responds that Ms. Gupta need only have sufficient contacts with the United States as a whole, rather than with Indiana specifically, and that 18 U.S.C. § 1965(d) authorizes nationwide service of process – and specifically service by a waiver of service of summons, which is how Ms. Gupta was served – so the Court has personal jurisdiction over Ms. Gupta without even having to consider whether the "ends of justice" require it.  [Dkt. 28 at 3-4.]  Additionally, Mr. Crissen asserts that the "ends of justice" require that the Court exercise personal jurisdiction over Ms. Gupta in any event because "Indiana has a strong connection to the parties and underlying wrongs."  [*Id.* at 7.]

The Seventh Circuit Court of Appeals has explained that 18 U.S.C. § 1965(b) creates personal jurisdiction by authorizing nationwide service "so that at least one court will have jurisdiction over everyone connected with any RICO enterprise."  *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 672 (7th Cir. 1987).  In determining whether exercising jurisdiction under § 1965(b) comports with due process, a court considers whether the defendant has sufficient contacts with the United States, not with the state where the federal court sits.  *See, e.g., Rolls-Royce Corp. v. Alcor Engine Co.*, 2007 U.S. Dist. LEXIS 24882, *23 (S.D. Ind. 2007) (*prima facie* showing of personal jurisdiction where defendants were citizens of California so had sufficient contact with United States).  The Court concludes that the fact that Ms. Gupta is a citizen of Florida shows that she has sufficient contacts with the United States such that exercising personal jurisdiction over her under § 1965(b) would comport with due process.  *Id.*

Section 1965(b) also provides, however, that the "ends of justice" must "require" that nonresidents like Ms. Gupta be brought before the Court.  The Seventh Circuit Court of Appeals in *Lisak* noted that when there is another court that would have jurisdiction over all of the defendants, the "interests of justice" do not require a court to exercise jurisdiction over a nonresident.  *See Lisak*, 834 F.2d at 672 ("Section 1965(b) authorizes nationwide service so that at least one court will have jurisdiction over everyone connected with any RICO enterprise.  A district court in [another state] will have that jurisdiction whether or not [defendant] can be brought before the court [here], so perhaps the ends of justice do not 'require' his presence in this suit"); *see also Blubaugh*, 2002 U.S. Dist. LEXIS 17372 at *15 n.6 (ends of justice did not require bringing out-of-state defendants into court under § 1965(b) where action could properly be brought in another district); *Eastman v. Initial Investments, Inc.*, 827 F.Supp. 336, 338-39 (E.D. Pa. 1993) (refusing to exercise nationwide venue under § 1965(b) where requirements of § 1391(b) clearly establish venue elsewhere).[2]

Here, because a federal court in Florida would have jurisdiction over all of the Defendants[3] – since Mr. Gupta and Ms. Gupta are Florida residents and Wiper is a Florida corporation – the "ends of justice" do not require that this Court exercise jurisdiction over Ms.

---

[2] Mr. Crissen attempts to distinguish *Lisak* by arguing that, there, "it was likely that not even one defendant was subject to personal jurisdiction for purposes of the federal RICO claim as required by § 1965(a), and even if one was, Illinois had no connection to the parties or the wrongs….." [Dkt. 28 at 5.]  The *Lisak* court specifically stated, however, that "whether or not" the Illinois court had jurisdiction over the defendant, it was clear the Indiana court would, so the ends of justice did not require the defendant's presence in Illinois.  834 F.2d at 672.  Here, a Florida federal court would have personal jurisdiction over all Defendants, and Mr. Crissen has not argued otherwise.

[3] *See, e.g., Bowen v. Groome*, 3:11-cv-00139-GPA-SCW (S.D. Ill.) (plaintiffs sued defendants in defendants' home state, rather than in Indiana, in connection with allegedly fraudulent scheme related to Indiana tax sales).

Gupta under Section 1965(b).  Accordingly, the Court dismisses all claims against Ms. Gupta because it lacks personal jurisdiction over her.[4]

### B.  Mr. Gupta's and Wiper's Motion to Dismiss

Mr. Gupta and Wiper move to dismiss Mr. Crissen's claims on two grounds, arguing that: (1) Indiana and federal statutes of limitations bar some of Mr. Crissen's class claims for fraud, federal and state RICO, money had and received, and unjust enrichment, [dkt. 27 at 3-10]; and (2) Mr. Crissen has failed to join an indispensable party – his wife – requiring dismissal under Fed. R. Civ. P. 19, [*id.* at 10-12].  Mr. Crissen responds that: (1) dismissal of putative class members' claims is improper at this stage of the litigation because it would bind nonparties since a class has not yet been certified, and because the claims are all subject to the discovery rule so the Complaint "'does not preclude the possibility that [the discovery] date was within the applicable statute of limitations,'" [dkt. 29 at 2-5]; and (2) Ms. Crissen is not a necessary or indispensable party because Mr. Crissen's claims are brought in his capacity as an individual who redeemed property purchased by Mr. Gupta, Ms. Gupta, or Wiper – and on behalf of those who redeemed such property – not in his capacity as the original owner of that property, and he alone redeemed the property with no involvement by Ms. Crissen, [*id.* at 5-6].  Mr. Gupta and Wiper reply that the Court can properly decide a motion to dismiss prior to class certification, and that Ms. Crissen is an indispensable party simply by her virtue as an original owner of the property.  [Dkt. 34 at 1-7.]

### 1.  Statute of Limitations

A motion to dismiss based on the statute of limitations may be granted when "the relevant dates are set forth unambiguously in the complaint."  *Brooks v. Ross*, 578 F.3d 574, 579

---

[4] Because the Court does not have personal jurisdiction over Ms. Gupta, it will not address the arguments she raises under Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 9(b).

(7th Cir. 2009).   Additionally, it is sometimes appropriate to decide a motion to dismiss for failure to state a claim before class certification when the motion goes to the merits of the named plaintiff's claims – even when it will ultimately decide the merits of the putative class members' claims as well.   *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).   Here, however, Mr. Gupta and Wiper have conceded that Mr. Crissen's "individual claims have been timely asserted."   [Dkt. 27 at 3.]   Accordingly, their motion to dismiss claims as time-barred relates only to certain putative class members' claims, and not to Mr. Crissen's individual claims.

Before class certification, putative class members are not parties to the litigation.   If the Court were to decide whether the claims of some of those putative class members are time-barred before class certification – a determination that is not necessary for the named plaintiff, Mr. Crissen, because the Defendants have already conceded he has timely asserted his individual claims – it would be issuing an advisory opinion, which the Court is prohibited from doing.   *See FCC v. Airadigm Communs., Inc.*, 616 F.3d 642, 654 (7th Cir. 2010) ("federal courts are not authorized to issue advisory opinions"); *On-Site Screening, Inc. v. United States*, 687 F.3d 896, 900 (7th Cir. 2012) ("federal courts do not give advisory opinions on claims not before them") (*citing Rodas v. Seidlin*, 656 F.3d 610, 630 (7th Cir. 2011) ("Federal courts are not in that business")).

The issue of whether some of the putative class members' claims are time-barred is properly decided either at the class certification stage or after, through a summary judgment motion.   The Court notes that whether the claims are time-barred under the discovery rule – which Mr. Crissen contends applies – will likely be one issue on which the parties must focus when they address whether class action treatment is appropriate in this case, and specifically

whether individualized issues or common ones predominate.[5]  To address that issue now would be procedurally improper.[6]

### 2. Indispensable Party

Mr. Gupta and Wiper argue that Mr. Crissen's wife is an indispensable party to the litigation because she is a co-owner of the property that is the subject of the litigation, so "[c]omplete relief cannot be accorded…unless [she] is joined as a plaintiff."  [Dkt. 27 at 11.] Mr. Crissen responds that his wife is not a necessary or indispensable party because he does not seek to represent property owners, but rather those who redeemed property, and he redeemed his property alone, not jointly with his wife.  [Dkt. 29 at 5-6.]  Additionally, Mr. Crissen argues that his wife did not pay Defendants to redeem the property, so she has not suffered any injury.  [*Id.*

---

[5] Mr. Gupta and Wiper argue that Mr. Crissen has not pled any specific facts regarding when putative class members discovered their claims and thus cannot invoke the discovery rule.  [Dkts. 27 at 7-10; 34 at 4-7.]  But while "a plaintiff who seeks to rely on discovery principles to avoid the statute of limitations bar bears the burden of establishing the facts underlying her inability to discovery the claim," *Mancuso v. Bridgestone/Firestone, Inc.*, 200 F.Supp.2d 983, 988 (S.D. Ind. 2002), the statute of limitations is an affirmative defense that a plaintiff need not plead around. *See Leavell v. Kieffer*, 189 F.3d 492, 494 (7th Cir. 1999) ("the statute of limitations is an affirmative defense [and c]omplaints need not anticipate or plead around affirmative defenses"); *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003) ("a plaintiff is not required to negate an affirmative defense, such as the statute of limitations, in his complaint").  Accordingly, Mr. Crissen's failure to set forth the dates each putative class member discovered his or her claim is inconsequential at the initial pleadings stage.

[6] The cases Mr. Gupta and Wiper cite for the proposition that "[f]ederal courts routinely consider dispositive motions prior to resolving requests for class certification," [dkt. 34 at 2], all involved dispositive motions that addressed the named plaintiff's claims and, consequentially, the putative class members' claims.  *See, e.g., House of Corrections Block Representatives Comm. v. Creamer*, 1998 U.S. Dist. LEXIS 6056 (E.D. Pa. 1998) (court granted summary judgment motion where named plaintiff's constitutional claims related to Philadelphia Prison Systems' no-smoking policy failed as a matter of law – class claims then necessarily failed as well); *Thornton v. Mercantile Stores Co.*, 13 F.Supp.2d 1282 (M.D. Ala. 1998) (denying summary judgment motion before class certification where issue was whether defendant was plaintiff's "employer" for purposes of Title VII).  Additionally, the cases Mr. Gupta and Wiper cite to support their argument that the statute of limitations issue can be decided on a motion to dismiss were not putative class actions.  *See, e.g., Wilson-El v. Majors*, 2012 U.S. Dist. LEXIS 169118 (S.D. Ind. 2012); *Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009); *United States v. Lewis*, 411 F.3d 838 (7th Cir. 2005); *Schott v. Huntington Nat'l Bank*, 2012 U.S. Dist. LEXIS 182123 (S.D. Ind. 2012).

at 6.]  Mr. Gupta and Wiper reply simply by asserting that the litigation "should include all parties who share an ownership interest in the property upon which Mr. Crissen's claims are based."  [Dkt. 34 at 7.]

> Fed. R. Civ. P. 19(a)(1) provides that:
>
> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i)  as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii)  leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Mr. Gupta and Wiper do not explain why Mr. Crissen's wife is a necessary party, other than baldly asserting that "[her] interests may be adversely affected by a judgment in this action," and that "there is nothing preventing [her] from filing her own lawsuit, asserting similar claims against the Gupta Defendants as Mr. Crissen has asserted in this action…."  [Dkt. 27 at 11.]  Mr. Crissen's lawsuit, however, focuses on the redemption of properties, and the amounts Defendants represented they incurred to those individuals that redeemed properties.  It appears to be undisputed that Mr. Crissen's wife did not redeem the property at issue – only Mr. Crissen did.  Accordingly, the Court concludes that Ms. Crissen's interests are not affected by this lawsuit and she is not a necessary or indispensable party.

# III.

## CONCLUSION

Because the Court does not have personal jurisdiction over Ms. Gupta, her Motion to Dismiss Plaintiff's Class Action Complaint, [dkt. 23], is **GRANTED** on that basis alone, and the claims against her are **DISMISSED WITHOUT PREJUDICE**.

At this point in the litigation, the Court will not dismiss claims of the putative class members based on the statute of limitations, and also finds that Mr. Crissen's wife is not a necessary or indispensable party to this matter.  Accordingly, Mr. Gupta's and Wiper's Motion to Dismiss Plaintiff's Class Action Complaint, [dkt. 26], is **DENIED**.

06/07/2013

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Stephen E. Arthur
HARRISON & MOBERLY
sarthur@harrisonmoberly.com

Bhavik R. Patel
SANDBERG PHOENIX & VON GONTARD, P.C.
bpatel@sandbergphoenix.com

John S. Sandberg
SANDBERG PHOENIX & VON GONTARD PC
jsandberg@sandbergphoenix.com

Marc Allen William Stearns
HARRISON & MOBERLY
mstearns@harrisonmoberly.com

David J. Theising
HARRISON & MOBERLY
dtheising@harrisonmoberly.com