### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF INDIANA
### Terre Haute Division

| | |
|---|---|
| JOSHUA B. CRISSEN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>VINOD C. GUPTA, SATYABALA V. GUPTA, WIPER CORPORATION, VIVEK V. GUPTA and BANCO POPULAR NORTH AMERICA<br><br>    Defendants. | Case No.: 2:12-cv-355-JMS-WGH<br><br>Complaint - Class Action<br>Jury Trial Demand |

### First Amended Class Action Complaint

Plaintiff Joshua B. Crissen ("Plaintiff"), individually and on behalf of all others similarly situated, through his undersigned attorneys, Sandberg Phoenix & von Gontard P.C., brings his causes of action against Defendants Vinod C. Gupta ("Vinod"), Satyabala V. Gupta ("Satyabala") Wiper Corporation ("Wiper"), Vivek V. Gupta ("Vivek") and Banco Popular North America ("BPNA") (collectively, "Defendants"):

Nature of Action ....................................................................................................... 2
Jurisdiction and Venue.............................................................................................. 2
The Parties ................................................................................................................. 3
Tax Sale Process ....................................................................................................... 4
Plaintiff's Property.................................................................................................... 9
Scheme to Defraud.................................................................................................. 10
Class Allegations .................................................................................................... 16
Count I – Substantive Racketeering under Federal Rico ....................................... 18
Count II – Racketeering Conspiracy under Federal Rico ...................................... 20
Count III – Substantive Racketeering under Indiana Rico ..................................... 21
Count IV – Racketeering Conspiracy under Indiana Rico...................................... 24
Count V – Relief under the Crime Victims Act...................................................... 25
Count VI – Fraud .................................................................................................... 26
Count VII – Money Had and Received................................................................... 28
Count VIII – Unjust Enrichment............................................................................ 28

## Nature of Action

1.     Plaintiff brings this class action against Defendants under the Racketeer Influenced and Corrupt Organizations Act, enacted as Title IX of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1961, *et seq.* ("RICO"), Indiana's Racketeer Influenced and Corrupt Organizations, §§ 35-45-6, *et seq.* ("Indiana RICO"), Indiana's Civil Actions by Crime Victims, §§ 35-24-3, *et seq.* ("Crime Victims Act"), and for common law fraud, money had and received and unjust enrichment. Plaintiff also seeks to recover punitive damages, his attorney's fees and other costs in this lawsuit.

2.     This Complaint arises from Defendants' conduct or participation in a scheme to artificially inflate the money required for the redemption of real property sold at tax sales for delinquent taxes and special assessments. Defendants falsely certified they incurred and paid fees, so these fees would be in the Redemption Amount (defined below), but Defendants neither incurred nor paid these fees. Plaintiff and the class were injured by the scheme to defraud them when they redeemed the real property by the fraudulently inflated Redemption Amount.

## Jurisdiction and Venue

3.     This Court has original subject matter jurisdiction over the federal law claims under 28 U.S.C. §1331, 28 U.S.C. §2201 and 18 U.S.C. §§1964, *et seq.*, and supplemental jurisdiction over the state law claims under 28 U.S.C. §1367(a) because they are so related to the federal claims as to form part of the same case or controversy.

4.   This Court also has original jurisdiction over all the claims under the Class Action Fairness Act ("CAFA"), under 28 U.S.C. § 1332(d). The aggregate amount in controversy exceeds $5 million, (2) one member of the class is a citizen of a state different from one of the Defendants (e.g., Plaintiff and Vinod), and (3) the class comprises 100 or more persons.

5.      Venue is proper in the Southern District of Indiana under 28 U.S.C. §1391 because a substantial part of the events establishing the Complaint occurred in the Southern District of Indiana. Venue is also proper in the Southern District of Indiana under 18 U.S.C. §1965 because Wiper has an agent in the Southern District of Indiana and Defendants can be found and transact their affairs in the Southern District of Indiana.

6.      For the acts alleged , Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the United States mails and wire transmissions in interstate commerce. Defendants engaged in interstate commerce and activities that affect interstate commerce.

## The Parties

7.      Plaintiff is an individual residing in Bloomfield, Indiana. On or around February 8, 2010, Plaintiff redeemed real property (SALE ID: 2829076; PROPERTY ID: 2828-02-14-000-016.000-001) purchased by Vinod at a tax sale in Indiana on or around October 9, 2009.

8.      Vinod is an individual residing in Boca Raton, Florida, and is Satyabala's husband. Vinod or his nominees have participated in tax sales in Indiana from at least 2002 through the present.

9.      Satyabala is an individual residing in Boca Raton, Florida and is Vinod's wife. Satyabala participated in the operation or management of and performed activities necessary or helpful to Vinod's and Wiper's tax sale business in Indiana from at least 2002 through the present.

10.      Wiper is a Florida Corporation with its principal place of business at 17962 Foxborough Lane, Boca Raton, Florida 33496. Wiper's registered agent in Indiana is at 120 East Market Street, Indianapolis, Indiana 46204. Vinod and Satyabala are the only directors and

3

officers of Wiper or its nominees have participated in tax sales in Indiana from at least 2002 through the present.

11.     Vivek is an individual residing in Boca Raton, Florida, and is Vinod's and Satyabala's son. Vivek has participated in tax sales in Indiana from at least 2002 through the present. Vivek participated in the operation or management of and performed activities necessary or helpful to Vinod's and Wiper's tax sale business in Indiana from at least 2002 through the present. From at least 2002 through the present, Vivek falsely represented he both rendered and was paid for all services reflected on the Certifications (defined below) submitted by Defendants to the county auditors.

12. BPNA is a New York state-chartered member bank with its principal place of business at 7 West 51st Street. BPNA succeeded Kislak National Bank ("Kislak") in January 2005. BPNA has a branch office at 7900 Miami Lakes Drive West, Miami Lakes 33016 ("Miami Lakes Branch"). BPNA or its predecessors or nominees have participated in tax sales in Indiana from at least 2002 through the present. BPNA participated in the operation or management of and performed activities necessary or helpful to Vinod's and Wiper's tax sale business in Indiana from at least 2002 through the present.

## Tax Sale Process

13.     In Indiana, when the owner of real property fails to pay property taxes, the property may be sold at a tax sale to satisfy the delinquent taxes under Ind. Code § 6-1.1-24, *et seq.*

14.     Each county in Indiana conducts their own tax sales on annual basis for the property located within that county.

15.     The tax sale process begins when each county auditor publishes a list of delinquent real estate parcels in area newspapers.  Ind. Code § 6-1.1-24-3(a). The publication

gives notice that the county auditor and county treasurer will apply for court judgments against delinquent real estate and orders to sell those judgments at public auction.  Ind. Code § 6-1.1-24-2(a)(8). Thereafter, the court issues the requested judgments and orders.

16.     The county auditor is also required to send a notice of the sale by certified mail, return receipt requested, to the last address of the owner for the property in the records of the county auditor on the date the tax sale list is certified ("Notice of Sale"). Ind. Code § 6-1.1-24-4(a). In addition, the county auditor shall mail a duplicate Notice of Sale to the owner of record by first class mail to the owners from whom the certified mail return receipt was not signed and returned.  Id.

17.     At the tax sale, the county treasurers sell the tracts or real property, subject to the right of redemption, to the highest bidder at public auction.  Ind. Code § 6-1.1-24-5(e)

18.     A tract or an item of real property may not be sold for an amount less than ("Minimum Price"):

       a.     the delinquent taxes and special assessments on each tract or item of real property;

       b.      the taxes and special assessments on each tract or item of real property that are due and payable in the year of the sale, regardless of whether the taxes and special assessments are delinquent;

       c.     all penalties which are due on the delinquencies;

       d.     the costs incurred by the county due to the sale;

       e.     any unpaid costs which are due from a prior tax sale; and

> f.     other reasonable expenses of collection, including title search expenses,
>
> uniform commercial code expenses, and reasonable attorney's fees
>
> incurred by the date of the sale.

Ind. Code § 6-1.1-24-5(e).

19.    When a bid from a member of the public equals at least the Minimum Price, the purchaser receives a certificate of sale and acquires a lien against the property in the amount paid.  Ind. Code § 6-1.1-24-9.

20.    When no bid from a member of the public equals at least the Minimum Price, the county executive receives a certificate of sale and acquires a lien for the Minimum Price.  Ind. Code § 6-1.1-24-6.

21.    The county executive may sell its certificates of sale at a public auction to the highest bidder for an amount less than the Minimum Price ("Commissioner's Sale").  Ind. Code § 6-1.1-24-6.1.

22.    The purchaser of a certificate of sale at the Commissioner's Sale will pay the amount established by the county executive, and will receive a certificate of sale and acquire a lien against the property in the amount paid.  Ind. Code § 6-1.1-24-9.

23.    The purchaser of a certificate of sale must give notice ("Notice of Redemption") by sending a copy of the Notice of Redemption by certified mail to:

> a.     the owner of record at the time of the sale; and
>
> b.     any person with a substantial property interest of public record in the tract
>
> or real property.

Ind. Code § 6-1.1-25-4.5.

24.     The Notice of Redemption must be sent not later than nine months after the tax sale or ninety days after the Commissioner's Sale.  Ind. Code § 6-1.1-25-4.5.

25.     Any person may redeem real property sold at a tax sale or Commissioner's Sale by paying the amount required for redemption before the expiration of the redemption period. Ind. Code § 6-1.1-25-1. The redemption period expires one year after sale.  Ind. Code § 6-1.1-25-4.

26.     The total money required for redemption of real property equals ("Redemption Amount"):

       a.      110% of the Minimum Price if redeemed less than six months after the sale or 115% of the Minimum Price if redeemed more than six months after the sale;

       b.      110% of the amount of the purchase price exceeding the Minimum Price;

       c.      110% of all subsequent taxes paid by the purchaser; and

       d.      if certified before redemption, the attorney fees and costs of giving notice ("Notify Costs") and the costs of a title search or of examining and updating the abstract of title for the tract or item of real property that were incurred and paid by the purchaser ("Title Costs").

Ind. Code § 6-1.1-25-2.

27.     The purchaser of a certificate of sale certifies the purchaser incurred and paid the Notify Costs and Title Costs by completing, signing and providing the county auditor with a document substantially in the form of the document attached as **Exhibit A** ("Certification"), and incorporated by this reference.

28.     The purchaser must not provide the county auditor with a Certification earlier than thirty days after sale.  Ind. Code § 6-1.1-25-2(e).

29.     The Notice of Redemption must detail the components of the Redemption Amount, including the amount owed for Notify Costs and Title Costs.  Ind. Code § 6-1.1-25-4.5(e)(7).

30.     If the property is redeemed within the redemption period, the county auditor will notify the purchaser of the redemption and request the purchaser to return the original certificate of sale to the county auditor before the Redemption Amount and the purchase price exceeding the Minimum Price ("Surplus") is remitted to the purchaser.

31.     Besides requiring the original certificate of sale to be returned to the county auditor, the majority of counties also require the purchaser to certify the correctness of the Redemption Amount and the Surplus, on a document substantially similar to the documents attached as **Exhibit A1** ("Accounts Payable Voucher"), and incorporated by this reference, before remitting the Redemption Amount and the Surplus to the purchaser.

32.     Upon receipt of the original certificate of sale (and the Accounts Payable Voucher if required), the county treasurer remits the Redemption Amount, and the Surplus to the purchaser.

33.     If the property remains unredeemed after expiration of the redemption period, a purchaser of a certificate of sale may file a petition for deed.  Ind. Code § 6-1.1-25-4.6. Notice of filing this petition shall be given to the same parties in the same manner as provided for the Notice of Redemption ("Notice of Petition").

34.     The notices described above are mandatory to obtain a tax deed. Any defect in the creation or service of the notices will render the certificate of sale incapable of foreclosure through a petition for tax deed.

## Plaintiff's Property

35.     Plaintiff owns real property in Greene County, Indiana, which has a property identification number of 2828-02-14-000-016.000-001 ("Plaintiff's Property).

36.     After property taxes on Plaintiff's Property became delinquent, the Greene County auditor and treasurer applied for a judgment against Plaintiff's Property and an order to sell the judgment at public auction in cause number 28C01-0909-MI-483. The requested judgment and order was entered on or about September 22, 2009.

37.     On or about October 9, 2009, the Green County treasurer offered Plaintiff's Property for sale, subject to the right of redemption, for a Minimum Price of $2,118.60.

38.     The highest bidder at the auction for Plaintiff's Property was Vinod or one his nominees with a bid of $8,000.00.

39.     On October 9, 2009, Vinod remitted payment to the Green County Treasurer for $208,281.27 to pay for his winning bid on Plaintiff's Property and at least 27 other pieces of property offered for sale at the 2009 Green County tax sale for which Vinod, Wiper or one of their nominees was the highest bidder.

40.     BPNA funded the entire $208,281.27 purchase price.

41.     On or about October 9, 2009, the Greene County auditor issued a certificate of sale (No. 2829076) to "Vinod C. Gupta c/o Banco Popular NA/Lien Holder" for Plaintiff's Property ("Tax Sale Certificate").

42.     BPNA directed Vinod to deliver the Tax Certificate to BPNA, which on information and belief, he did shortly after October 9, 2009.

43.    On or about November 13, 2009, Vinod signed and provided a Certification to the Green County auditor, certifying he incurred and paid $350.00 in Notify Costs and $150.00 in Title Costs regarding Plaintiff's Property.

44.    Vivek purportedly rendered and was paid for the services reflected in the Certification regarding Plaintiff's Property.

45.    Vivek never rendered or was paid for the services reflected in the Certification regarding Plaintiff's Property.

46.    On or about February 8, 2010, Plaintiff's Property was redeemed by Plaintiff for the Redemption Amount of $3,027.04.

47.    Shortly after February 8, 2010, the county auditor notified Vinod and/or BPNA of the redemption and requested the original Tax Sale Certificate be returned to the county auditor before the Redemption Amount and Surplus would be remitted to BPNA.

48.    Shortly before February 17, 2010, BPNA returned the original Tax Sale Certificate to the county auditor.

49.    On or about February 17, 2010, the county auditor remitted the Redemption Amount ($3,027.04) and the Surplus ($5,881.40) to BPNA.

## Scheme to Defraud

50.    Defendants conspired to and devised a scheme to inflate the money required for the redemption of real property sold at Indiana tax sales or Commissioner's Sales for delinquent taxes and special assessments.

51.    Vinod, Satyabala, Wiper, Vivek, and V. Gupta Inc. (collectively, "Pledgors") approached Kislak National Bank (BPNA's predecessor) ("Kislak") before May 14, 2002, to obtain funding to participate in the Indiana tax sales, Commissioner's Sales, or both.

52.     In May, 2002, Kislak agreed to provide Vinod and Satyabala $4,000,000 in funding for the purchase of certificates of sale at Indiana tax sales, Commissioner's Sales, or both.

53.     For Kislak's funding, Kislak directed that all certificates of sale purchased by Pledgors at Indiana tax sales and Commissioner's Sales shall be purchased in the name of and jointly owned by one or all of the Pledgors and Kislak with the Miami Lakes Branch as the address of record.

54.     From 2003 through January 2005, Kislak agreed to provide Vinod and Satyabala between $6,000,000 and $7,000,000 in funding for the purchase of certificates of sale at Indiana tax sales, Commissioner's Sales, or both.

55.     For Kislak's funding, Kislak directed that all certificates of sale purchased by Pledgors at Indiana tax sales and Commissioner's Sales shall be purchased in the name of and jointly owned by one or all of the Pledgors and Kislak with the Miami Lakes Branch as the address of record.

56.     From January 2005 through July 31, 2006, BPNA agreed to provide Vinod and Satyabala $7,000,000 in funding for the purchase of certificates of sale at Indiana tax sales, Commissioner's Sales, or both.

57.     For BPNA's funding, BPNA directed that all certificates of sale purchased by Pledgors at Indiana tax sales and Commissioner's Sales shall be purchased in the name of and jointly owned by one or all of the Pledgors and BPNA with the Miami Lakes Branch as the address of record.

58.     From July 31, 2006, through the present, BPNA agreed to provide Vinod and Satyabala between $7,000,000 and $10,000,000 in funding for the purchase of certificates of sale at Indiana tax sales, Commissioner's Sales, or both.

59.     On or before July 31, 2006, BPNA's legal department, credit officers or both determined the certificates of sale should no longer be purchased in the name of and jointly owned by one or all of the Pledgors and BPNA.

60.     In exchange for BPNA's continued funding, BPNA directed that all future certificates of sale purchased by Pledgors at Indiana tax sales and Commissioner's Sales shall be purchased in the name of one or all of the Pledgors in care of BPNA with the Miami Lakes Branch as the address of record.

61.     From at least 2002 through the present, Vinod, Wiper, Vivek and/or their nominees purchased property at Indiana tax sales, Commissioner's Sales, or both consistent with Kislak's and BPNA's direction and control.

62.     From at least 2002 through the present, Pledgors provided each certificate of sale they purchased at Indiana tax sales, Commissioner's Sales, or both to Kislak and BPNA.

63.     From at least 2002 through the present, the Miami Lakes Branch was the address of record for each purchase of a certificate of sale made by Defendants. A list with the details of each purchase of a certificate of sale, which was redeemed by class members, is attached as **Exhibit B**, and incorporated by this reference.[1]

64.     From at least 2002 through the present, Kislak and BPNA received, processed and responded to the majority, if not all, of the correspondence and phone calls from the counties for each purchase of a certificate of sale and any redemptions in connection therewith.

---

[1] The number of Certifications is both approximate and expected to increase because the redemption period has not expired for all purchases made in 2012.

65.     From at least 2002 through the present, Defendants provided to the county auditor over 3,550 Certifications signed by Vinod for Defendants' purchase of certificates of sale, which were redeemed by class members. These Certifications were false because they certified Vinod, Kislak, BPNA and/or Wiper incurred and paid the Notify Costs and Title Costs when they neither incurred nor paid the Notify Costs or Title Costs.

66.     Each Certification was mailed or otherwise provided to the county auditor on or around the "Certification Date" listed on **Exhibit B**.

67.     For each Certification, Vinod, Wiper, Kislak and BPNA had to mail Notices of Redemption to each owner of record and every person with substantial property interest of public record not later than nine months after the "Date Sold" listed on **Exhibit B**.

68.     These Certifications and Notices of Redemption were integral to the scheme to profit by defrauding people or entities seeking to redeem real property sold at tax sales and Commissioner's Sales.

69.     Vinod certified through his Certifications for the purchasers on Exhibit B under "Buyer's Name", that said purchasers incurred and paid over $1,299,000 in Notify Costs and $808,000 in Title Costs.

70.     Defendants knew the Certifications and Notices of Redemption were false because they knew they did not incur and pay the Notify Costs and Title Costs.

71.     Defendants mailed and submitted, or caused to be mailed or submitted, the Certifications to the county auditor and mailed the Notices of Redemption to Plaintiff and class members intending to deceive and defraud them when redeeming real property sold at the tax sales and Commissioner's Sales to implement their scheme to defraud.

72.     When required, the Defendants also included paid-in-full invoices from Vivek with the Certifications purporting to evidence Defendants incurred and paid for the services reflected on the Certifications. These invoices were false in that Vivek never provided services or received payments for the amounts reflected on his invoices.

73.     The Notices of Sale mailed by the county auditor were incident to an essential part of the scheme to defraud.

74.     The only documents maintained by the County in the public records regarding the Notify Costs and Title Costs purportedly incurred and paid by Defendants were the Certifications, Vivek's invoices and the Accounts Payable Vouchers. Said documents are not routinely available to the public, but a citizen may make a records request for said documents if the citizen knows what document to request and what public body has possession of that document.

75.     Plaintiff and class members did not know and had no reason to know Defendants neither incurred nor paid the Notify Costs and Title Costs in the Certifications, Notices of Redemption, Vivek's Invoices and the Accounts Payable Vouchers.

76.     Plaintiff and class members had no reasonable means by which to substantiate the Notify Costs and Title Costs in the Certifications, Notices of Redemption, Vivek's invoices and the Accounts Payable Vouchers.

77.     In reliance on the Certifications, Vivek's invoices, the Notices of Redemption, or all three, Plaintiff and the class members redeemed property from Defendants within one year after the "Date Sold" listed on **Exhibit B**, and collectively paid an amount over $2,108,000. The individual breakdown of the Notify Costs and Title Costs purportedly incurred and paid by Defendants, and redeemed by Plaintiff and the class members known to date are in **Exhibit B**.

78.     Shortly after the redemptions by Plaintiff and the class members, the county auditor notified Kislak or BPNA of each redemption and requested the original Tax Sale Certificate and Accounts Payable Voucher be returned to the county auditor before the Redemption Amount and Surplus would be remitted to Kislak or BPNA.

79.     Shortly after being notified by the county auditor of each redemption, Kislak or BPNA returned the original Tax Sale Certificate (and completed and returned the Accounts Payable Voucher if required) to the county auditor.

80.     Each Accounts Payable Voucher completed and submitted by Kislak and BPNA was false because they certified Vinod, Kislak, BPNA and/or Wiper incurred and paid the Notify Costs and Title Costs when they neither incurred nor paid the Notify Costs or Title Costs.

81.     Shortly after receipt of the original certificate of sale (and the Accounts Payable Voucher if required by that particular county), the county treasurer remitted the Redemption Amount and Surplus to Kislak or BPNA. Kislak and BPNA used the Redemption Amount and Surplus to pay off the lines of credit extended to Pledgors.

82.     The Account Payable Vouchers were integral to the scheme to profit by defrauding people or entities seeking to redeem real property sold at tax sales and Commissioner's Sales.

83.     Kislak and BPNA mailed and submitted, or caused to be mailed or submitted, the original Tax Sale Certificates and Accounts Payable Vouchers to the county auditor with the intent that the county auditor rely upon the same to implement Defendants' scheme to defraud people or entities seeking to redeem real property sold at tax sales and Commissioner's Sales to Vinod, Wiper, Kislak and BPNA.

84.     Defendants' acts of falsehood, deception, and fraud have caused grievous injury to Plaintiff and the class members.

85.     Under Defendants' scheme to defraud, they wrongfully obtained over $2,108,000.

86.     Defendants acted with malice, fraud or oppressiveness which was not the result of a mistake of fact or law, honest error of judgment, overzealousness, mere negligence, or other human failing.

## Class Allegations

87.     Plaintiff sues on his own behalf and for a class designated under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

88.     Plaintiff proposes to define the class as:

All individuals and business entities who redeemed a tract or real property purchased at Indiana tax and/or Commissioner's sales by Vinod, Satyabala, Vivek, Kislak, BPNA and/or Wiper (or by a nominee), where the redemption amounts were artificially inflated because Vinod, Satyabala, Vivek, Kislak, BPNA and/or Wiper certified to Indiana county auditors they had incurred and/or paid statutory notification and/or title costs which Defendants had not incurred or paid.

89.     The class is believed to be so numerous that joinder of all members is impractical. The suit concerns over 3,550 redemptions of certificates of sale sold to Defendants.

90.     There are questions of fact common to the class because Defendants engaged in standardized conduct by fraudulently causing Plaintiff and class members to pay an artificially inflated Redemption Amount. The main common contention is Defendants neither incurred nor paid any Notify Costs or Title Costs.

91.     There are questions of law common to the class, including, among others:

16

a.      Whether Defendants devised a scheme to defraud by submitting false Certifications, invoices and Accounts Payable Vouchers to the county.

b.      Whether Defendants participated, directly or indirectly, in the conduct of an enterprise's affairs.

c.      Whether Defendants engaged in a pattern of racketeering activity by submitting the false Certifications, invoices and Accounts Payable Vouchers to the county.

d.      Whether Defendants engaged in a pattern of racketeering activity by mailing false Notices of Redemption.

e.      Whether a conspiracy exists.

f.      Whether Defendants committed criminal deception, conversion, and theft.

g.      Whether Defendants acted fraudulently.

h.      Whether Defendants are liable under the Crime Victims Act.

i.      Whether Defendants are liable for punitive damages.

92.     Plaintiff's claims are typical of the claims of the class. Plaintiff's claims and the claims of the class share the same essential characteristics. Plaintiff and all class members were charged by Defendants for expenses Defendants did not incur or pay. Defendants' standardized practice of overcharging also establishes the same legal remedy for Plaintiff and class members, which is based on the same factual and legal theories. Plaintiff's and the class' damages are all derived from Defendants' standardized conduct and the same federal statutes, state statutes and common law.

17

93.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has no interests antagonistic to those of the class and Plaintiff's counsel is competent and experienced in this type of litigation.

94.     The questions of law or fact common to the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the case involves small damages on an individual level, the economic reality dictates that the suit proceed as a class action, otherwise it would not likely be pursued at all. Even if most class members would proceed individually, the majority, if not all, are unaware they have been defrauded.

## Count I – Substantive Racketeering under Federal Rico

95.     Plaintiff alleges and incorporates all previous paragraphs of this Complaint as if fully alleged in this Count.

96.     At all relevant times, each Defendant was a "person" within the meaning of RICO, 18 U.S.C. § 1961(3).

97.     At all relevant times, Defendants and their employees constitute an association-in-fact "enterprise" as that term is defined in 18 U.S.C. § 1961(4), that engages in, and the activities of which affect, interstate commerce. Defendants have been associated through time, joined in purpose and organized in a manner amenable to hierarchal and consensual decision-making, with each Defendant fulfilling a specific and necessary role to carry out and facilitate its purpose. Defendants have hired or used several persons to bid at tax sales on their behalf and to implement their scheme to defraud.

98.     Defendants implemented the scheme to defraud, and continue to execute the scheme to defraud to the present.

99.     Defendants conducted and participated in the conduct of said enterprise to defraud Plaintiff and the class members through their scheme to submit false and fraudulent Certifications, invoices, Accounts Payable Vouchers and Notices of Redemption.

100.    Defendants received a financial benefit for their participation in the scheme to defraud. Such financial benefits were the product of the scheme and could not have been realized had Defendants not joined together.

101.    Defendants, on repeated occasions, knowingly used or caused the use of the mails for the Certifications, invoices, Accounts Payable Vouchers and the above described notices in furtherance of and to execute their scheme to defraud Plaintiff and the class members.

102.    Under and in furtherance of Defendants' scheme, they committed multiple acts of mail fraud in violation of 18 U.S.C. § 1341 as alleged.

103.    Defendants received misappropriated funds across interstate lines in violation of 18 U.S.C. §§ 2314 and 2315.

104.    Each of the aforesaid multiple violations by Defendants of 18 U.S.C. §§ 1341, 2314 and 2315 constitutes an instance of "racketeering activity" as defined in 18 U.S.C. § 1961(1).

105.    The multiple acts of racketeering activity by Defendants were part of an ongoing common plan or scheme and constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

106.    Defendants have directly or indirectly conducted and participated in the conduct of an enterprise's affairs through a continuous pattern of racketeering described above in violation of 18 U.S.C. § 1962(c).

107.    As a direct and proximate result of the false Certifications, invoices, Accounts Payable Vouchers, Notices of Redemption, racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff and the class have been injured in their business and property, in that, without limitation, they have lost substantial monies in connection with and as a result of them redeeming tracts or real property sold to Defendants at tax sales for an artificially inflated amount. In addition, Plaintiff and the class have been damaged by having to pay a substantial sum for investigating Defendants' activities.

WHEREFORE, Plaintiff respectfully prays this Court certify the class and enter a judgment for plaintiff and the class members against Defendants:

(a)    awarding actual damages to Plaintiff and the class;

(b)    awarding punitive damages to Plaintiff and the class in an amount deemed sufficient to punish Defendants and to deter such conduct in the future;

(c)    trebling of actual and punitive damages under 18 U.S.C. § 1964(c);

(d)    awarding Plaintiff's and the class' reasonable attorney's fees and costs under 18 U.S.C. § 1964(c); and

(d)     awarding such other relief as this court deems just and proper.

## Count II – Racketeering Conspiracy under Federal Rico

108.    Plaintiff alleges and incorporates all previous paragraphs of this Complaint as if fully alleged in this Count.

109.    Defendants and their bidders, agents, and employees have willfully combined, conspired and agreed to violate 18 U.S.C. § 1962(c) to conduct and/or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity based upon numerous acts of mail fraud and misappropriation, in violation of 18 U.S.C. § 1962(d), as alleged.

110.    An object of the conspiracy was to defraud Plaintiff and the class members by artificially inflating the Redemption Amount. A further object of the conspiracy was to hide the fraud and scheme from discovery by Plaintiff and the class, county officials and others. Each Defendant embraced the object of the conspiracy and knowingly acted to support and facilitate the accomplishment of its goals. The conspiracy and fraudulent scheme began at least in 2002 and continues to the present.

111.    Plaintiff and the class have been injured in their business and property, in that, without limitation, they have lost substantial monies in connection with and as a result of them redeeming real property sold to Defendants at tax sales for an artificially inflated amount. In addition, Plaintiff and the class members have been damaged by having to pay a substantial sum for investigating Defendants' activities.

WHEREFORE, Plaintiff respectfully prays this Court certify the class and enter a judgment for plaintiff and the class members against Defendants:

(a)    awarding actual damages to Plaintiff and the class;

(b)    awarding punitive damages to Plaintiff and the class in an amount deemed sufficient to punish Defendants and to deter such conduct in the future;

(c)    trebling of actual and punitive damages under 18 U.S.C. § 1964(c);

(d)    awarding Plaintiff's and the class' reasonable attorney's fees and costs under 18 U.S.C. § 1964(c); and

(e)    such other relief as this court deems just and proper.

## Count III – Substantive Racketeering under Indiana Rico

112.    Plaintiff alleges and incorporates all previous paragraphs of this Complaint as if fully alleged in this Count.

21

113.    At all relevant times, Plaintiff and each member of the class were aggrieved persons as that term is defined in Ind. Code § 34-24-2-6.

114.    At all relevant times, each Defendant was a "person" within the meaning of Ind. Code § 35-45-6-2.

115.    At all relevant times, Defendants and their employees constitute an association-in-fact "enterprise" as that term is used in Ind. Code § 35-45-6-1(c). The Defendants have been associated through time, joined in purpose and organized in a manner amenable to hierarchal and consensual decision-making, with each Defendant fulfilling a specific and necessary role to carry out and facilitate its purpose. Defendants have hired several persons to bid at tax sales on their behalf and to implement their scheme to defraud.

116.    Defendants knowingly and/or intentionally conducted or otherwise participated in the activities of said enterprise to defraud Plaintiff and the class members through their scheme to submit false and fraudulent Certifications, invoices, Accounts Payable Vouchers and Notices of Redemption.

117.    Defendants have performed activities necessary or helpful to the operation of said enterprise.

118.    Defendants received a financial benefit for their participation in the scheme to defraud. Such financial benefits were the product of the scheme and could not have been realized had Defendants not joined together.

119.    Defendants, on repeated occasions, knowingly and/or intentionally exerted unauthorized control over Plaintiff's and the class' money, with intent to deprive them of the same through their scheme to submit false and fraudulent Certifications, invoices, Accounts Payable Vouchers and Notices of Redemption.

120.     Under and in furtherance of Defendants' scheme, they committed multiple acts of theft in violation of Ind. Code. § 35-43-4-2.

121.     Each of the aforesaid multiple violations by Defendants of Ind. Code. §35-43-4-2, constitutes an instance of "racketeering activity" as defined in Ind. Code § 35-45-6-1(e).

122.     The multiple acts of racketeering activity by Defendants were part of an ongoing common plan or scheme and constitute a "pattern of racketeering activity" as defined in Indiana Ind. Code § 35-45-6-1(d).

123.     Defendants have directly or indirectly conducted or otherwise participated in the activities of an enterprise's affairs through a continuous pattern of racketeering described above in violation of Ind. Code § 35-45-6-2.

124.     As a direct and proximate result of the false Certifications, invoices, Accounts Payable Vouchers, Notices of Redemption, racketeering activities and violations of Indiana RICO, § 35-45-6-2, Plaintiff and the class members have been injured in their business and property, in that, without limitation, they have lost substantial monies in connection with and as a result of them redeeming real property sold to Defendants at tax sales for an artificially inflated amount. In addition, Plaintiff and the class have been damaged by having to pay a substantial sum for investigating Defendants' activities.

WHEREFORE, Plaintiff respectfully prays this Court certify the class and enter a judgment for plaintiff and the class members against Defendants:

   (a)     awarding actual damages to Plaintiff and the class;

   (b)     trebling of actual damages under Ind. Code § 34-24-2-6;

   (c)     awarding punitive damages to Plaintiff and the class in an amount deemed
           sufficient to punish Defendants and to deter such conduct in the future;

(d)     awarding Plaintiff's and the class' reasonable attorney's fees and costs under Ind.

Code § 34-24-2-6; and

(e)     awarding such other relief as this court deems just and proper.

### Count IV – Racketeering Conspiracy under Indiana Rico

125.    Plaintiff alleges and incorporates all previous paragraphs of this Complaint as if fully alleged in this Count.

126.    Defendants and their bidders, agents, and employees have willfully combined, conspired and agreed to violate Ind. Code § 35-45-6-2 and Ind. Code. §35-43-4-2 to conduct and/or participate, directly or indirectly, in the activities of the enterprise's affairs through a pattern of racketeering activity based upon numerous acts of theft, in violation of Indiana RICO.

127.    An object of the conspiracy was to defraud Plaintiff and the class by artificially inflating the Redemption Amount. A further object of the conspiracy was to hide the fraud and scheme from discovery by Plaintiff and the class, county officials, lenders and financial institutions and others. Each Defendant embraced the object of the conspiracy and knowingly acted to support and facilitate the accomplishment of its goals. The conspiracy and fraudulent scheme began at least in 2002 and continues to the present.

128.    Plaintiff and the class have been injured in their business and property, in that, without limitation, they have lost substantial monies in connection with and as a result of them redeeming real property sold to Defendants at tax sales for an artificially inflated amount. In addition, Plaintiff and the class have been damaged by having to pay a substantial sum for investigating Defendants' activities.

WHEREFORE, Plaintiff respectfully prays this Court certify the class and enter a judgment for plaintiff and the class members against Defendants:

(a)     awarding actual damages to Plaintiff and the class;

(b)     trebling of actual damages under Ind. Code § 34-24-2-6;

(c)     awarding punitive damages to Plaintiff and the class in an amount deemed

sufficient to punish Defendants and to deter such conduct in the future;

(d)     awarding Plaintiff's and the class' reasonable attorney's fees and costs under Ind.

Code § 34-24-2-6; and

(e)     awarding such other relief as this court deems just and proper.

## Count V – Relief under the Crime Victims Act

129.    Plaintiff alleges and incorporates all previous paragraphs of this Complaint as if fully alleged in this Count.

130.    Defendants knowingly and/or intentionally made false or misleading written statements intending to obtain Plaintiff's and the class' property in violation of Ind. Code § 35-43-5-3.

131.    These false or misleading written statements consisted of the Certifications, invoices, Accounts Payable Vouchers and Notices of Redemption.

132.    Defendants knowingly and/or intentionally exerted unauthorized control over Plaintiff's and the class' money, with intent to deprive them of the same through their scheme to submit false and fraudulent Certifications, invoices, Accounts Payable Vouchers and Notices of Redemption in violation of Ind. Code §§ 35-43-4-2 and 35-43-4-3.

133.    Such control was unauthorized because Defendants created a false impression by submitting Certifications, invoices, Accounts Payable Vouchers and Notices of Redemption stating they incurred and paid fees, which they had not incurred and paid.

134.    Defendants committed multiple acts of criminal deception, theft, and conversion against Plaintiff's and the class' property.

135.    Plaintiff and the class suffered pecuniary loss as a result Defendants' criminal acts, including without limitation, they have lost substantial monies in connection with and as a result of them redeeming real property sold to Defendants at tax sales for an artificially inflated amount, and by having to pay a substantial sum for investigating Defendants' activities.

136.    Plaintiff is entitled to relief under the Crime Victims Act.

WHEREFORE, Plaintiff respectfully prays this Court certify the class and enter a judgment for plaintiff and the class members against Defendants:

(a)    awarding actual damages to Plaintiff and the class;

(b)    trebling of actual damages under Ind. Code § 34-24-3-1(1);

(c)    awarding punitive damages to Plaintiff and the class in an amount deemed sufficient to punish Defendants and to deter such conduct in the future;

(d)    awarding Plaintiff's and the class' reasonable attorney's fees and costs under Ind. Code § 34-24-3-1(2)-(7); and

(e)    awarding such other relief as this court deems just and proper.

## Count VI – Fraud

137.    Plaintiff alleges and incorporates all previous paragraphs of this Complaint as if fully set forth.

138.    Defendants represented to Plaintiff and the class through the Certifications, invoices and Notices of Redemption that it incurred and paid the Title Costs and/or Notify Costs.

139.    Defendants made said representations intending Plaintiff and the class relies on the same as justification for paying the Redemption Amount.

140.    Defendants' representations were false because they neither incurred nor paid the Notify Costs or Title Costs.

141.     Defendants knew or reasonably should have known the Certifications and Notices of Redemption were untrue.

142.     The representations and statements made by Defendants were material to Plaintiff and the class in determining whether to pay Defendants the Redemption Amount.

143.     Plaintiff and the class had no reason to believe, and did not know the representations made by Defendants were false.

144.     Operating under the belief that the Certifications and Notices of Redemption were true and correct, Plaintiff and the class members relied on Defendants representations in paying the Redemption Amount.

145.     Plaintiff and the class members justifiably relied on the false material information supplied by Defendants.

146.     As a direct and proximate result of Defendants' fraudulent actions, Plaintiff and the class have been damaged.

147.     The Defendants' fraudulent representations were wanton, outrageous, and malicious because of their evil motive or reckless disregard of Plaintiff's and the class' rights and interests.

WHEREFORE, Plaintiff respectfully prays this Court certify the class and enter a judgment for plaintiff and the class members against Defendants:

(a)     awarding actual damages to Plaintiff and the class;

(b)     awarding punitive damages to Plaintiff and the class in an amount deemed sufficient to punish Defendants and to deter such conduct in the future;

(c)     awarding Plaintiff's and the class' reasonable attorney's fees and costs; and

(d)     awarding such other relief as this court deems just and proper.

## Count VII – Money Had and Received

148.    Plaintiff alleges and incorporates all previous paragraphs of this Complaint as if fully set forth.

149.    Defendants have received money from Plaintiff and the class which rightfully belongs to Plaintiff and the class.

150.    Equity and good conscience require Defendants to return all money they received from Plaintiff and the class under the false Certifications, invoices, Accounts Payable Vouchers and Notices of Redemption.

151.    The Defendants' retention of money in bad faith wrongfully in their possession is wanton, outrageous, and malicious because of their evil motive or reckless disregard of Goodman's rights and interests.

WHEREFORE, Plaintiff respectfully prays this Court certify the class and enter a judgment for plaintiff and the class members against Defendants:

(a)    awarding actual damages to Plaintiff and the class;

(b)    awarding punitive damages to Plaintiff and the class in an amount deemed sufficient to punish Defendants and to deter such conduct in the future;

(c)    awarding Plaintiff's and the class' reasonable attorney's fees and costs; and

(d)    awarding such other relief as this court deems just and proper.

## Count VIII – Unjust Enrichment

152.    Plaintiff alleges and incorporates all previous paragraphs of this Complaint as if fully set forth.

153.    Defendants received money from Plaintiff and the class for Title Costs and Notify Costs, which Defendants neither incurred nor paid.

154.    Because of the above, Defendants have been unjustly enriched in that it has received the financial benefit of these payments without expending money for the performance of the items covered by the Notify Costs and Title Costs.

155.    Because of Defendants failure to incur and pay for the Title Costs and Notify Costs, Defendants have been unjustly enriched to the direct detriment and damage of Plaintiff and the class.

WHEREFORE, Plaintiff respectfully prays this Court certify the class and enter a judgment for plaintiff and the class members against Defendants:

(a)    awarding actual damages to Plaintiff and the class;

(b)    awarding punitive damages to Plaintiff and the class in an amount deemed sufficient to punish Defendants and to deter such conduct in the future;

(c)    awarding Plaintiff's and the class' reasonable attorney's fees and costs; and

(d)    awarding such other relief as this court deems just and proper.


SANDBERG PHOENIX & von GONTARD P.C.

By:    /s/ Jesse B. Rochman
John S. Sandberg
Bhavik R. Patel
Jesse B. Rochman
600 Washington Avenue – 15th Floor
St. Louis, MO 63101-1880
314-231-3332
314-241-7604 (Fax)
jsandberg@sandbergphoenix.com
bpatel@sandbergphoenix.com
jrochman@sandbergphoenix.com
*Attorneys for Plaintiff*

## Certificate of Service

I certify on July 29, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the attorneys/parties of record.


/s/ Jesse B. Rochman_____