UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

JOSHUA B. CRISSEN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

VINOD C. GUPTA and WIPER CORPORATION,

Defendants.

Case No.: 2:12-cv-00355-JMS-WGH

## Plaintiff's Motion to Compel and Brief in Support

Plaintiff Joshua B. Crissen ("Plaintiff"), individually and for all others similarly situated, through his attorneys Sandberg Phoenix & von Gontard PC, moves the Court under Rule 37(a)(3)(B) to compel Defendant Vinod C. Gupta ("Vinod") to produce responsive documents:

### I. Introduction

On July 4, 2013, Plaintiff served Vinod with 38 requests for production ("Document Requests"). (Doc. 106-1). Vinod responded with 38 pages of objections, objecting to every request and producing no documents. (Doc. 106-2). Under Local Rule 37-1, counsel for both parties conferred by email and phone to resolve the discovery dispute, but defense counsel refused to withdraw their objections and was unwilling to accept Plaintiff's attempts to further narrow the Document Requests. On August 27, 2013, counsel had a conference with the Magistrate Judge to resolve the discovery dispute, but defense counsel was unwilling to resolve the dispute informally and insisted that the parties file formal discovery motions. Accordingly, the Court instructed the parties to file their formal discovery motions to resolve the discovery dispute. (Doc. 96). Since then Vinod, through

4525956.3              1

counsel, has provided amended responses to Request Nos. 8, 31, 32, 33 and 35. As to Request Nos. 8 and 35, Vinod amended his response to state nonprivileged responsive documents will be produced. The amended response to Request No. 31 is no such documents exist and to Request Nos. 32-33, Vinod "does not have any such document."

The Document Requests seek nonprivileged matter relevant to Plaintiff's claims. Vinod's objections to the Document Requests are baseless and without merit. Vinod's objections should be overruled, and he should be compelled to produce responsive documents.

## II. Legal Standard

The federal discovery rules liberally assist in preparation for trial and settlement of disputes. *See Bond v. Uteras*, 585 F.3d 1061, 1075 (7th Cir. 2009). The Court's discovery processes and rules are used to require litigants to produce otherwise private information. *Id.* Rule 26(b)(1) provides "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "If the party from whom the documents are requested objects to their production, that party has the burden to show why a discovery request is improper." *John Wiley & Sons, Ltd. v. McDonnell Boehnen Hulbert & Berghoff LLP*, 2013 WL 505252, *3 (N.D. Ill. Feb. 12, 2013). Regarding a motion to compel, the Seventh Circuit instructs "a district court may grant or deny the motion in whole or in part, and similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Air Lines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). As with all discov-

ery matters, courts have broad discretion in deciding motions to compel. *See James v. Hyatt Regency Chi.*, 707 F.3d 775, 784 (7th Cir. 2013).

### III. Argument

Vinod must show why a discovery request is improper, but he cannot meet this burden with his generic and "reflexive invocation of the same baseless, often abused litany" of objections. *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009). Vinod also cannot meet his burden because the requested discovery is relevant to the issues raised in Plaintiff's Claims.[1]

#### A. Vinod's Preliminary Objections

Vinod makes general objections to every request in a separate section and by rote response to each requested category. He asserts objections for confidential and proprietary trade documents, attorney-client privilege, work-product, and documents already ruled undiscoverable by the court. "Objections are valid only if they specifically apprise the opposing party, and the Court, about the nature of the otherwise responsive documents that the responding party will not produce." *Novelty, Inc. v. Mt. View Mktg.,* 265 F.R.D. 370, 375 (S.D. Ind. 2009). General objections made without elaboration, whether placed in a separate section or repeated by rote in response to each requested category, are not objections at all and will not be considered. *Capital Machine Company, Inc. v. Miller Veneers, Inc.*, No. 09-00702 (S.D. Ind. Jan. 10, 2012) (Magnus-Stinson, J.) (citing *Novelty,* 265 F.R.D. at 375).

---

[1] Evidence is relevant if "it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." FED. R. EVID. 401 (emphasis added). The word "any" signals that evidence is relevant even if it only slightly or marginally alters the likelihood of a consequential fact. *See Thompson v. City of Chi.*, 472 F.3d 444, 453 (7th Cir. 2006) ("To be relevant, evidence need not conclusively decide the ultimate issue in a case, nor make the proposition appear more probable, but it must in some degree advance the inquiry.") (Internal quotation marks omitted).

Vinod's objections throughout also appear to be "'boilerplate objections' asserted 'without specifying how each request for production is deficient'" and should be "deemed improper objections to discovery requests." *Novelty*, 265 F.R.D. at 375. Indeed, to each request there was "reflexive invocation[s] of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence," which are routinely rejected by the courts. *Id*. The volume, length and rote repetition of the objections to each request make it impossible for Crissen, and the Court, to be apprised as to the nature of the documents being withheld and the specific basis for withholding them.

The reflexive nature of Vinod's objections is best illustrated by looking at a few of the objections. Vinod routinely objected because a request was "not limited in time." Plaintiff's Document Requests instructed that the "time period for your responses is 2002 to present." (Doc. 106-1 at 6). Vinod also often repeated in rote the objection, including the typo, that the request was "overly broad because in [*sic*] seeks documents and electronic records containing information related to non-Indiana tax sales or commissioner's sales…." For example, this objection is curiously made to Request No. 2, despite that request being expressly limited to hard drives used by Vinod "in connection with [his] ***tax sale business in Indiana***." (Doc. 106-2 at 3) (emphasis added). Vinod similarly objects to Request Nos. 11-12, despite them being limited to "services identified on the Certifications submitted by [him]." *Id.* at pp. 11-12. "Certifications" is a defined term[2] to mean the 137B form used to certify Notify Costs and Title Costs incurred in connection with certif-

---

[2] The Document Requests instruct that "all terms shall have the meaning ascribed to them in Plaintiff's Complaint (Doc. 1) unless defined otherwise." (Doc. ##-1, p. 1).

4525956.3      4

icates of sale purchased at Indiana tax sales or commissioner sales. (Doc. 1, ¶ 24; Doc 1-1).

All of Vinod's objections should be overruled for these reasons alone, and he should be compelled to produce the requested documents and electronically stored information.

**B. Specific Document Requests**

After eliminating Vinod's generic objections, the Court can get to the proper inquiry, which is whether the information sought by Plaintiff is relevant to his claims. The Document Requests were tailored to seek documents typically created or involved with the tax sale process from registering to bid through reporting the redemption proceeds on income tax returns. A summary of a typical tax sale process and the expected documents involved is attached at Doc. 106-3. As the summary shows, Vinod's production of documents to prior requests failed to include many records one would have expected to have been available. Plaintiff moves to compel production of these missing documents or a response from Vinod that none exist. The following are those requests ripe for resolution at this time.

*i. Request Nos. 3 and 4*

Vinod's answers to Plaintiff's interrogatories indicate he incurred Notify Costs and Title Costs from Vivek V. Gupta and Lewis Maudlin and paid them. (Doc. 106-4 at 6-8). Whether Vinod *actually* paid these costs is central to this case. (Doc. 85, ¶ 90 ("The main common contention is Defendants neither incurred nor paid any Notify Costs or Title Costs.") If Vinod paid Vivek and Lewis for Title and Notify Costs, the IRS required him to send each of them a Form 1099-MISC for the payments. *See* http://www.irs.gov/pub/irs-prior/i1099msc--2002.pdf. If Vinod did not submit these forms or the amounts reported on these forms do not correspond to the amounts certified

by Vinod, the forms make it more probable (i.e., relevant) Vinod did not pay Vivek and Lewis for Title and Notify Costs.[3]

## ii. Request No. 7

This request is narrowly tailored to not seek the entire tax return, but only the parts of the tax return that could be relevant. Specifically, it seeks the first page of each Form 1040 and each Schedule C/C-EZ submitted by Vinod with his tax returns. Amounts Vinod received from redemptions (i.e., payments from Plaintiff and putative class members) would be "gross income" reportable on his tax return. 26 U.S.C. § 61(a) ("gross income means all income from whatever source derived"). The Redemption Amount includes both the Title and Notify Costs (Doc. 85, ¶ 26), so the Title and Notify Costs should be reflected on the first page of Vinod's Form 1040, specifically under "Business Income or (loss)." *See* http://www.irs.gov/pub/irs-pdf/f1040.pdf. The section on Form 1040 where "Business Income or (loss)" is reported requires a Schedule C or C-EZ to be attached. Schedule C reports the expenses of the business, such as "Legal and professional services" and "Other expenses." Any Notify and Title Costs incurred and paid by Vinod to his attorneys should be reflected on Schedule C. Vinod's failure to report the Title and Notify Costs on his tax returns furthers the probability he did not pay Vivek and Lewis for Title and Notify Costs. Thus, these portions of the tax return are relevant.

It is anticipated that Vinod will suggest there is a heightened showing that must be made before tax returns are discoverable. Nothing in Rule 26 or in the regulations or statutes governing income tax returns compels this additional overlay, and the Seventh Circuit has not adopted such a position. Indeed, the court said in *Poulos v. Naas Foods, Inc*.:

---

[3] This may be circumstantial evidence, but "Fraud may be proven through circumstantial evidence." *Estate of Kanter v. Comm'r*, 337 F.3d 833, 847 (7th Cir. 2003).

4525956.3     6

"We express no opinion at this time on the validity or proper formulation of this policy against disclosure." And, it emphasized that "if we were to recognize some sort of presumption against disclosure, we would certainly leave enforcement of the policy to the discretion of the trial court...." 959 F.2d 69, 75 (7th Cir. 1992).

Even if Plaintiff had to make a showing beyond relevance to obtain discovery of income tax returns — a proposition to which the Seventh Circuit has not subscribed — that showing is made here given the course of discovery and the absence of records that one would have expected to have been available and which would have either supported or refuted, at least in part, Vinod's position he incurred and paid these costs. Vinod has produced no evidence of payment, but still contends he incurred and paid these fees. In the complete absence of other evidence of payment, the portions of the tax returns sought by Plaintiff are singularly relevant.

### iii. Request Nos. 9-10

Plaintiff seeks the financial statements reflecting any expenses incurred and paid to Vivek and Lewis. Vinod objects to producing financial statements even though he had to submit them to Defendant BPNA as part of obtaining a line of credit from BPNA, so Defendants could participate in the Indiana tax sales. Like the 1099's and the tax returns, any Notify and Title Costs incurred and paid by Vinod, should be reflected on the financial statements because payment of these costs affect the flow of cash in and out of the business (i.e., cash flow statement or statement of cash flows) and would be considered an expense that reduces net income (i.e., income statement).[4]

---

[4] An income statement is one of the financial statements of a company and shows the company's revenues and expenses during a particular period. It indicates how the revenues (money received from the tax sale business before expenses are taken out) are transformed into the net income (the result after all revenues and expenses have been accounted for, also known as "net profit."

The financial statements are also relevant because they go to Vinod's financial condition and net worth. Evidence of a defendant's net worth and financial condition is relevant for discovery when a plaintiff seeks punitive damages, like Plaintiff seeks here. *See Challenge Aspen v. King World Prods. Corp.*, 2001 WL 1403001, * 3 (N.D. Ill. 2001); *see also D'Onofrio v. SFX Sports Group, Inc*., 247 F.R.D. 43, 52-53 (D.D.C. 2008) (Evidence of a defendant's net worth and financial condition is relevant for discovery when a plaintiff seeks punitive damages.); *Platcher v. Health Professionals, Ltd.,* 2007 WL 2772855, *2 (C.D. Ill. 2007) (finding the individual defendants' financial condition is discoverable in relation to a punitive damages claim against them); *El-Bakly v. Autozone, Inc.*, No. 04 C 2767, 2008 WL 1774962, at *5 (N.D. Ill. 2008) (finding evidence of financial status relevant to the award of punitive damages); *Equal Employment Opportunity Comm'n v. Staffing Network LLC*, 2002 WL 31473840, at *4 (N.D. Ill. 2002) (finding the defendant's financial information may be relevant to punitive damages).

The majority of courts having ruled on this issue have held that a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial without making a prima facie showing that he is entitled to recover such damages. *United States v. Matusoff Rental Co*., 204 F.R.D. 396, 399 (S.D. Ohio 2001); *see also E.E.O.C. v. Env't & Demolition Servs., Inc.*, 246 F.R.D. 247, 249-50 (D. Md. 2007) (noting that "a majority of courts hold that pretrial discovery of financial statements relevant to a punitive damages claim is generally permissible without any prima facie showing of entitlement to such damages"). Indiana law is in accord with these principles:

> Generally in cases where an award of punitive damages is justified, evidence of the financial condition of the defendant is admissible and may be considered by

the jury in determining the amount of punitive or exemplary damages. Indiana is in accord with the general rule. In *Hibschman* our Supreme Court, in holding evidence of the defendant's wealth is not required to support a verdict of punitive damages, cited with approval *Manning v. Len Immke Buick*, (1971) 28 Ohio App.2d 203, 276 N.E.2d 253, in which the Court of Appeals of Ohio held that "where punitive damages are to be assessed, the wealth of the defendant may be shown so that the jury will assess damages that will punish him." Additionally in Atkinson the Appellate Court held evidence regarding the value and extent of the defendant's property was admissible in a case where exemplary damages were recoverable for malicious prosecution.

The relevancy of evidence of the defendant's financial condition in cases where punitive damages are justified lies in the purpose of punitive damages. The purpose of an award of punitive damages is to punish the wrongdoer and thereby deter him and others from similar conduct in the future. Obviously, the trier of fact cannot measure the "punishment" or the deterrent effect on others similarly situated without knowledge of the defendant's ability to respond to a particular award entered against the defendant.

*Riverside Insurance Co. v. Pedigo*, 430 N.E.2d 796, 808-9 (Ind. App. 1982) (internal citations omitted). The financial statements, therefore, are relevant and should be produced.

### iv.  Request Nos. 11-12, 19-20, 37

Plaintiff seeks production of all checks for payment to Vivek and Lewis for the Certifications submitted by Vinod or a statement that none exist. (Nos. 11-12). This request clearly calls for documents relevant to the central issue in this case. Vinod has not produced checks corresponding to the Title and Notify Costs certified by Vinod. Indeed, Defense counsel represented to the Magistrate Judge during the most recent informal discovery dispute conference there are "no checks" evidencing payment of these costs. If this is true, there was no need for two pages of objections to these requests; rather, Vinod should have stated no checks exist responsive to this request. If this is not true, the checks should be produced.

Because Vinod's prior production did not include checks consistent with the Certifications, Plaintiff also sought any documents and electronically stored information (ESI)

that shows the transfer or payment of any funds or money to Vivek or Lewis for the amounts listed on the Certifications. (Nos. 19-20). Vinod produced no documents or ESI showing he paid for Title & Notify Costs in his Certifications. To the extent no payments were made, Plaintiff also sought any documents reflecting any amounts Vinod claims he incurred, but has not yet paid. (No. 37). These requests go directly to the central issue of the case and Vinod should either produce the documents or state that none exist.

*v. Request Nos. 15-18*

Defendants have certified they incurred and paid over $3,600,000[5] in Notify & Title Costs. According to Vinod's interrogatory answers, only Vivek and Lewis rendered these services. For Vinod to instruct his attorneys to perform the title and notice work reflected on his Certifications, he must have communicated with his attorneys to request they render services and provide them with the details of the property (e.g., parcel ID, address, and last known owner of record). Plaintiff seeks all of the communication regarding performance or payment of the services on the Certifications. If this communication exists, it would have a tendency to make a fact of consequence (i.e., Vinod incurred and paid Title and Notify Costs) more or less probable than it would be without the evidence. The same is true if there is a complete absence of any communication. Indeed, if there is no communication between Vinod and his attorneys, it is hard to imagine they performed any of the services in the Certifications.

*vi. Request No. 5 and 6*

Plaintiff seeks 1099s and W-2s Vinod provided to persons he identified in his answers to Plaintiff's interrogatories. Initially, to the extent Vinod provided W-2s to Vivek or Lewis, they are relevant as discussed above. Moreover, the people identified in

---

[5] This amount is higher than the amount alleged in Plaintiff's Amended Complaint (Doc. 85, ¶¶ 69, 77) because it includes all of Vinod's Certifications regardless of whether it was redeemed.

Vinod's answers to Plaintiff's interrogatories were all people that assisted Vinod in "participating in tax sales or Commissioner's Sales in Indiana." If none of these people were employees, as Vinod claims in his objection, or received 1099s, Vinod should have responded with none.

If Vinod has provided them with W-2s and 1099s, however, these documents would be relevant for showing structure to Defendants' Tax Sale Enterprise. A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Such an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id*. More recently, the Supreme Court held in *Boyle v. United States*, 556 U.S. 938, 946 (2009), that an association-in-fact enterprise must also have some sort of "structure," consisting of "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id*. 946.

The 1099s and W-2s would evidence the relationship between Defendants and those listed in his answers to the interrogatories and the longevity of that relationship. Vinod should be required to produce these documents.

*vii. All Requests*

Vinod routinely objects because he has produced all the documents in his "possession, custody or control." The "obligation to produce responsive documents extends to all documents over which the party has control, not merely possession. *See McBryar v. Int'l*

*Union of United Auto. Aerospace & Agr. Implement Workers of Am.*, 160 F.R.D. 691, 695-96 (S.D.Ind.1993) (holding that organizations must produce documents within the possession of their officers or agents/employees); *Triple Five v. Simon*, 212 F.R.D. 523, 527 (D.Minn.2002) ('Clearly, Defendants have a legal right to the documents and the ability to obtain the documents from their tax attorneys [representing them in another matter]. Thus, the appraisal information must be produced.')." *Novelty,* 265 F.R.D. at 375-76. A party has control if he has the legal right to obtain the documents on demand. *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum, LLC,* 2007 WL 1164970, *5 (N.D. Ind. 2007).

Vinod has failed to produce documents responsive to written discovery that was otherwise produced by Vivek (Vinod's attorney) and BPNA (Vinod's bank). For example, Plaintiff sought Vinod's bank records with BPNA relating to tax sales in Indiana (Doc. 106-5 at 1). On June 3, 2013, Vinod responded that the "documents responsive to this Request that are not objectionable and that are in the possession, custody or control of Gupta are already being made available…." (*Id.* at 3). BPNA's subsequent subpoena production, however, revealed that Vinod did not produce "hundreds of checks from 2006 to 2012" drawn on Vinod's joint bank account with his wife, which relate "directly to the conduct Mr. Crissen challenges here." (Doc. 105 at 3-4; Doc. 58).[6] If Vinod did not have copies of the bank records, including the checks, they are in Vinod's control within the meaning of Rule 34 because he may legally demand them from BPNA. *Paramount Film Distributing Corp. v. Ram*, 91 F. Supp. 778, 781-82 (E.D. S.C. 1950) ("If defendants do

---

[6] The checks that Vinod failed to produce proved that Satyabala, Vinod's wife, made "misrepresentations" to the Court because "many of the statements in Ms. Gupta's affidavit – statements which Ms. Gupta relied upon in her motion to dismiss, and which formed the basis for the Court's ruling on that motion – were not true." (Doc. 105 at 6 n.5).

not have copies of the tax returns and bank account records, they are in their control within the meaning of Rule 34, since they can obtain certified copies of them from the government agency or bank concerned."); *Thomas v. Deloitte Consulting LP*, 2004 WL 1372954, *4 (N.D. Tex. 2004) (requiring party to seek copies of bank statements and checks); *Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 595-96 (S.D. N.Y. 1978) (requiring party to make request for his bank records because he failed to show that he lacked control over the records by proving that his access to the records was denied); *Cadle Co. v. Terrell*, 2002 WL 22075, *5 (N.D. Tex. 2002) *aff'd sub nom. Cadle Co. v. Terrell (In re Terrell)*, 46 Fed.Appx. 731 (5th Cir. 2002) (noting that debtors had obligation to turn over bank and credit card statements to creditor because debtors had legal right to request copies of credit card statements from credit card company and bank statements from bank).

Vinod should be compelled to produce all documents and electronically stored information responsive to Plaintiff's written discovery that have otherwise not been produced by him or in response to the subpoenas, which are in the possession of his attorneys, banks, officers, agents and employees.

### C. Conclusion

Plaintiff requests Vinod's objections are overruled and Vinod is compelled to produce the documents and electronically stored information responsive to the requests identified above. Plaintiff also requests his reasonable expenses incurred in making this motion, including attorney's fees under Rule 37(a)(5) and any other relief the Court deems just under the circumstances.

SANDBERG PHOENIX & von GONTARD P.C.

By: /s/ Jesse B. Rochman
John S. Sandberg
Bhavik R. Patel
Jesse B. Rochman
600 Washington Avenue – 15th Floor
St. Louis, MO 63101-1880
314-231-3332
314-241-7604 (Fax)
jsandberg@sandbergphoenix.com
bpatel@sandbergphoenix.com
jrochman@sandbergphoenix.com
*Attorneys for Plaintiff*

## Certificate of Service

I certify on September 11, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the attorneys/parties of record.


/s/ Jesse B. Rochman