UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

JOSHUA B. CRISSEN, individually and on behalf )
of all others similarly situated, )
)
Plaintiff, )
v. )
)  Case No.  2:12-cv-00355-JMS-WGH
VINOD C. GUPTA et al., )
)
Defendants. )

**DEFENDANT VINOD C. GUPTA'S BRIEF IN
SUPPORT OF MOTION FOR PROTECTIVE ORDER**

## I.  INTRODUCTION

Civil courts provide a forum in which parties may resolve legitimate disputes. Unfortunately, powerful businessmen sometimes improperly use litigation as a weapon to harm and retaliate against their competitors.  Mr. Gupta believes he is the victim of this tactic in this lawsuit.  The discovery process must have integrity and be fair.  Discovery should not be unduly repetitive, burdensome, or subject the responding party to unnecessary expense.  Fed. R. Civ. P. 26(c) is one tool the federal court is given to protect a party who is subjected to suspicious and abusive discovery practices.  Mr. Gupta asks the court for that protection now.

This lawsuit, although couched in terms of Civil RICO and fraud, is fairly simple.  Mr. Crissen alleges that Mr. Gupta falsified to public officials and property owners that he incurred and paid title search and notification costs for properties he acquired at Indiana tax auctions.  Mr. Gupta denies these allegations.  Mr. Gupta's certifications are only relevant where property owners later redeem their properties, because it is only upon redemption that the owners are required to pay Mr. Gupta's title and notification costs.

1

Since the inception of this lawsuit in December 2012, Crissen has subjected Mr. Gupta to repeated and extensive discovery requests under Fed. R. Civ. P. 33, 34 and 36, designed to discovery virtually every aspect of Mr. Gupta's personal and professional life.  Crissen has served Mr. Gupta with a first, then second, and now a third request for production of documents.[1] This last and third request includes 38 different broadly written requests for production of documents.    These three sets of discovery requests have been written in broad strokes – with little apparent effort to limit the focus to the documents Mr. Crissen actually needs to prove his claims.  Yet, Mr. Gupta provided answers and objections to Crissen's First and Second Requests for Production, and in so doing produced approximately 48,000 documents and other electronic information.[2]  In addition, Banco Popular produced many thousands of pages of Mr. Gupta's bank records.

As was the case with Crissen's First and Second Requests for Production, the Third Request for Production improperly targets Mr. Gupta's personal/business financial and proprietary information.  Since the beginning of this action, Mr. Gupta has objected to answering requests directed to his personal/business financial and proprietary information, i.e. tax returns, loan or letter of credit applications, profit and loss statements – essentially any information that would reveal Mr. Gupta's financial condition – and any requests targeted to Mr. Gupta's proprietary and commercially sensitive information.   Mr. Gupta has resisted producing this information because it is not relevant to proving RICO and fraud claims against him, and the value to Crissen in having this information is heavily outweighed by potential prejudice to Mr.

---

[1] A true and accurate copy of *Defendant Vinod C. Gupta's Responses to Plaintiff's Third Set of Requests for Production Directed to Defendant Vinod C. Gupta* is attached hereto as **Exhibit C**.

[2] True and accurate copies of Defendant Vinod C. Gupta's Responses to Plaintiff's First and Second Sets of Requests for Production of Documents Directed to Vinod C. Gupta are attached hereto as **Exhibit A** and **Exhibit B**, respectively.

Gupta if this information is ultimately released to Gupta's business competitors. When Crissen served a subpoena on Banco Popular, Mr. Gupta's bank, for all of Mr. Gupta's financial and personal banking records, Mr. Gupta was forced to ask the Magistrate Judge for protection.  In response, the Magistrate Judge entered a Protective Order on June 11, 2013, holding "financial statements of the individual Defendants, loan or letter of credit applications, and personal tax returns are not relevant, because they contain personal financial information not necessary for the determination of the issues before the court at this time."  Even though the Magistrate Judge's June 11, 2013 Order provided the Court might reconsider its order "upon a more specific showing of good cause and substantial need," no such showing was made before Crissen served his Third Request for Production.  Again, a quick review of the Third Document Request reveals Crissen has made no apparent meaningful attempt to limit the scope of these requests, and in fact some of the Third Requests merely recycle and repeat the overly-broad requests contained in Crissen's First and Second Requests for Production.

Unless this Court acts to protect Mr. Gupta from these abuses, Mr. Gupta will again be subjected to the undue expense associated with answering a Third set of burdensome discovery requests, and fighting to protect from discovery his personal/business financial and proprietary information.  Crissen's discovery tactics have risen to the level of a discovery abuse and Mr. Gupta believes these requests violate the requirements for discovery stated in the *Seventh Circuit's Standards for Professional Conduct*.  Mr. Gupta asks the Court to use the powers given it by Fed. R. Civ. P. 26(c), to protect him from the improper and abusive aspects of Crissen's Third Request for Production.

Mr. Gupta must ask himself, why is Crissen and his attorneys so insistent on reviewing his personal/business financial and proprietary information, especially when Mr. Gupta has

already produced the information relevant to Crissen's claim that Mr. Gupta did not incur and pay title and notification costs?  Mr. Gupta has been up front with the Court since the inception of this action that he believes he is the victim of a competitor's retaliatory litigation effort to punish Mr. Gupta and possibly run him out of business.  If he is correct, the burdensome nature of the Third Request for Production becomes more apparent, as does the necessity for this Court to enter an order requiring restraint and fairness in the discovery process.

      a.     **Barrett Rochman**

Barrett Rochman is one of Mr. Gupta's business competitors.  Mr. Rochman resides in Carbondale, Illinois and bids on properties, as does Mr. Gupta, at tax auctions in Indiana and Illinois.  Barrett Rochman is a very wealthy and politically powerful man.  He has attempted to use that position to intimidate Mr. Gupta on numerous occasions in order to prevent him from freely bidding at tax auctions.   Filed contemporaneously with Mr. Gupta' Motion for Protective Order and supporting brief is the Affidavit of William Groome, another Rochman competitor, who affirms that Rochman uses his economic power to intimidate fellow competitors, especially the less-funded competitors.  Affidavit of William E. Groome, ¶ 5 ("Groome Aff.").  Mr. Gupta lists in Paragraph 6 of his Affidavit (also filed contemporaneously with his Motion for Protective Order and supporting brief) examples of Rochman's attempts to intimidate him and control the bidding process at Indiana tax auctions.  In Paragraph 7 of the Affidavit, Mr. Gupta describes a legal battle currently raging between Mr. Rochman and Mr. Gupta over parking rents.  Mr. Rochman told Gupta he would not pursue him if Gupta would not file a lawsuit over the issue.  Affidavit of Vinod C. Gupta, ¶ 7 ("Gupta Aff.").  Mr. Gupta did file a lawsuit.  There may be merit in Mr. Gupta's experiences with Rochman.  Currently, Barrett Rochman is a defendant in a class action lawsuit, filed on March 8, 2013, in the Circuit Court of Illinois, Case No. 13L390

4

(the "*Lindow* Action").  See Gupta Aff., ¶ 8, **Exhibit 1**.  That action accuses Barrett Rochman of conspiring with Fred Bathon, a former Madison County, Illinois Treasurer, to ensure that Mr. Rochman and others would be winning bidders in tax auctions held in that county.  *Id*. Fred Bathon pleaded guilty on February 5, 2013, to violating the Sherman Antitrust Act in relation to the bid rigging of tax sales.  Gupta Aff., ¶ 9, **Exhibit 2**.

b.    **Barrett Rochman's Threats**

The Affidavits of Mr. Gupta and Mr. Groome document that Barrett Rochman has made a number of threats against Mr. Gupta – essentially threatening civil litigation in retaliation for Mr. Gupta's refusal to go along with Rochman's demands.  The SANDBERG law firm filed a class action lawsuit against William Groome in Illinois – making essentially the same claims against Groome as they now assert in Indiana against Mr. Gupta.  The Groome lawsuit is captioned as *James Bowen v. William E. Groome et. al.*, Case No. 3:11-cv-00139-GPM-SCW (the "Bowen Class Action").   Mr. Groome's affidavit tells his understanding of why the Bowen Class Action was filed and Mr. Rochman's role in soliciting a class representative and connecting that representative with the SANDBERG law firm.  Importantly, Barrett Rochman told Mr. Groome words to the effect "Once I am done with you, I am going after Vinnie [Gupta] and others."  Groome Aff., ¶ 16.  Mr. Groome states he understood Mr. Rochman's comments to constitute a threat that Rochman intended to use litigation to take out his competitors – including Mr. Gupta.  *Id*.

c.    **Barrett Rochman's solicitation of Plaintiffs to sue his competitors**

In addition to making threats, Mr. Gupta believes Barrett Rochman has carried through on his threats of retaliation and is behind the filing of both the Groom and Crissen lawsuits. Gupta Aff., ¶ 10.  Regarding the Bowen Class Action, Barrett Rochman admitted by affidavit

that he initiated unsolicited communications with Mr. Bowen about suing Groome, and provided Mr. Bowen with information so he could contact the SANDBERG law firm.  Groome Aff., **Exhibit 4**.  Similarly, Mr. Crissen testified at deposition in this case, that Barrett Rochman initiated unsolicited communications with him about Mr. Gupta, again directing Crissen to the SANDBERG law firm.[3]  Jesse Rochman, an attorney employed by the SANDBERG law firm and one of the counsel of record in both the Bowen and Crissen cases, is the son of Barrett Rochman.

### d.  Barrett Rochman Provides Contradicting Testimony in a Judicial Proceeding Apparently to Protect his son- Jesse Rochman – one of Mr. Crissen's counsel of record

Mr. Gupta believes it will be prejudicial to his business if he is required to produce personal/business financial and proprietary information to the SANDBERG law firm, especially while Jesse Rochman is counsel of record. The following facts are the basis for Mr. Gupta's concern.  In the Bowen Class Action, Jesse Rochman told his administrative assistant he did not want Mr. Groome's counsel to know he was involved in the litigation.  Groome Aff., ¶ 9, **Exhibit 1**.  After receiving Jesse's email, Mr. Groome's counsel deposed Barrett Rochman. Barrett Rochman denied at deposition any communication with Bowen in order to induce him to file a lawsuit against Mr. Groome.  Groome Aff., ¶ 10, **Exhibit 2**.  Next, Groome took the deposition of the plaintiff Mr. Bowen.  However, Mr. Bowen testified that it was Jesse Rochman who initially contacted him about a possible claim against Mr. Bowen.  Groome Aff., ¶ 11, **Exhibit 3**.  Mr. Groome's attorneys then attempted to take the deposition of Jesse Rochman in order to establish that Jesse Rochman had solicited business in violation of Illinois attorney ethics rules.  In opposing that deposition, Barrett Rochman submitted an affidavit, recanting his

---

[3] A true and accurate copy of Crissen's pertinent deposition testimony is attached hereto as **Exhibit D**.

6

deposition testimony, and admitting that he, not his son [Jesse], had initiated the communications with Mr. Bowen.  Groome Aff., ¶ 12, **Exhibit 4**.  It is difficult to know whether Barrett Rochman lied at his deposition or in his affidavit, but it appears he gave false testimony at some point in the Bowen Class Action.  This means that Jesse Rochman, or attorneys at the SANDBERG law firm, likely discussed aspects of the Bowen case with Barrett Rochman while the case was pending, which means Barrett Rochman did have his hands, as he threatened to do, in the filing of the Bowen Class Action.  This brief makes no allegations against Jesse Rochman; the Court can draw its own conclusions based on the facts presented.  What is important is how these facts have impacted Mr. Gupta and why he believes the Crissen lawsuit was filed, and why he so strongly opposes producing his personal/business financial and proprietary information to Mr. Crissen and his representatives. Mr. Gupta believes that Crissen's Third Request for Production should be evaluated in the context of these factors.

## II.  LAW AND OTHER AUTHORITATIVE SUPPORT

### a.  Protective Orders

"[J]udges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979).  The use of the liberal discovery provisions of the Federal Rules of Civil Procedure to harass opponents is common, and requires the vigilance of the district judges to prevent.  *Marrese v. Am. Acad. Of Orthopaedic Surgeons*, 706 F.2d 1488, 1495 (7th Cir. 1983), *on reh'g*, 726 F.2d 1150 (7th Cir. 1984) *rev'd on other grounds*, 470 U.S. 373 (1985).  Discovery aimed at an opponent's personal finances is a quick route to the underside of the opponent's skin.  *Finch v. City of Indianapolis*, 2011 WL 2516252 (S.D. Ind. June 23, 2011) (citing to *Estate of Lee ex rel. McGarrah v. Lee & Urbahns Co.*, 876 N.E.2d 361, 369 (Ind.Ct.App. 2007).  "It seems self-evident that a person's personal financial records . . . are

something almost all persons would prefer to keep private . . . [A] request for such records would be, for most, annoying and quite likely embarrassing, unduly burdensome, and expensive as well. *Id*.  While the scope of permissible discovery is broad, it is not unlimited.  *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Products Liab. Litig.*, MDL 2100, 2011 WL 5547133 (S.D. Ill. Nov. 15, 2011).  The Court has the obligation of limiting discovery if it determines that the burden or expense to comply outweighs its likely benefit "considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  See *Finch v. City of Indianapolis*, 2011 WL 2516242 (S.D. Ind. June 23, 2011).

**b.**    **Confidentiality of financial information and tax returns.**

The Seventh Circuit has addressed the restriction of disclosure of financial information and tax returns, holding: "Judicial proceedings are presumptively open, but particular information may be withheld.  Personal income is among the categories that can be withheld." *Methodist Hospitals, Inc. v. Sullivan*, 91 F.3d 1026, 1031 (7th Cir. 1996).  Indeed, there is generally a strong public policy against the disclosure of income tax returns.  *Fed. Sav. & Loan Ins. Corp. v. Krueger*, 55 F.R.D. 512, 514 (N.D. Ill. 1972).  Disclosure of tax returns is highly restrictive.  *Methodist Hospitals, Inc.*, 91 F.3d at 1031; see also *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 75 (7th Cir. 1992) (In the Seventh Circuit, tax returns are produced only where there "[i]s no reasonable alternative source for the information requested.").  Mr. Gupta has a valid interest in the privacy of his records, including tax returns.  See *Hollinger Intern. Inc. v. Hollinger, Inc.*, 2005 WL 3177880, *4 (N.D. Ill. Jan. 19, 2005).  This interest is even more paramount given the actions of Barrett Rochman.

**c.**    **Seventh Circuit's standards for professional conduct regarding discovery**

The United States Court of Appeals of the Seventh Circuit has set forth the *Standards for Professional Conduct Within the Seventh Federal Judicial Circuit*. These rules prohibit the "use [of] any form of discovery or discovery scheduling as a means of harassment," and requires that document production requests will be limited to those documents reasonably necessary for the prosecution or defense of an action. Further, discovery requests should not be written to place an undue burden or expense on a party. See *Standards for Professional Conduct Within the Seventh Federal Judicial Circuit*, ¶¶ 10 and 23.

### III. SPECIFIC OBJECTIONS AND RESPONSES[4]

#### a.  Plaintiff's Request Nos. 1 & 2.

Plaintiff's Request Nos. 1 and 2 direct Mr. Gupta to produce a "mirror or exact image of each hard drive of each device used to create or store documents produced . . . pursuant to Plaintiff's First and Second Set of Requests for Production," and a "mirror or exact image of each hard drive of each device used" by Mr. Gupta in connection with his tax sale business in Indiana. These requests amount to nothing less than a search warrant for Mr. Gupta's personal computer! Plaintiff's Requests Nos. 1 & 2 are written broadly. In order to comply with the requests, Mr. Gupta will be forced to produce all of his personal files and private electronically stored information, including passwords, credit card information, personal files, financial data unrelated to Gupta's Indiana tax sale business, and other very personal and private information which is wholly irrelevant to Plaintiff's claims. Mr. Gupta produced over 48,000 Bates numbered documents and electronic records from Mr. Gupta's computer in response to Crissen's First and Second Requests for Production. Mr. Gupta produced his computer files in a manner allowed by the Federal Rules of Civil Procedure. Crissen has made no showing that Mr. Gupta

---

[4] Crissen filed a Motion to Compel on September 11, 2013. Mr. Crissen only takes issue with Mr. Gupta's responses/objections to Third Request Nos. 3-7, 9-12, 15-20 and 37.

failed to produce something on the computer he was required to produce.  It is not good cause for this production that Crissen does not belief Mr. Gupta, that he speculates that Mr. Gupta omitted something, or that he wants to conduct his own fishing expedition into Mr. Gupta's computer in order to find something else.  Mr. Gupta  should not be put in a position of turning his personal computer over to Crissen's attorneys or, alternatively, incurring the time and expense of reviewing every item on the computer in order to determine if personal information (or information unrelated to this lawsuit) is sufficiently sensitive and important to fight about.  This Court should not be required to conduct an *in camera* inspection to determine whether Mr. Gupta has failed to produce something from his computer.  This Court made it clear to Crissen early in this case that if, after deposing Mr. Gupta, it is determined that Mr. Gupta did not produce something he should have, then the Court will be responsive to Crissen's request for more discovery.  To date, Mr. Gupta has not been deposed and there has been no showing that Mr. Gupta has not provided the documents he is required to produce.  Dragnet requests, such as Request Nos. 1 and 2, are oppressive and have the effect of harassing, embarrassing, and burdening Mr. Gupta with needless and unfair expense.

### b.  <u>Plaintiff's Request Nos. 3 through 5.</u>

Plaintiff's Request Nos. 3 through 5 direct Mr. Gupta to produce "[e]ach and every Form 1099-MISC" which names or lists Vivek Gupta, Lewis Maudlin and 29 other non-party individuals.[5]  These requests seek production of personal and private documents that are not relevant to Plaintiff's claims and which contain non-public private and confidential information

---

[5] Plaintiff seeks Form 1099-MISCS for all individuals identified by Mr. Gupta in his Responses to Plaintiff's First Set of Interrogatories.  A true and accurate copy of *Defendant Vinod C. Gupta's Responses Plaintiff's First Set of Interrogatories Directed to Vinod C. Gupta* is attached hereto as **<u>Exhibit E</u>**.  As shown in **<u>Exhibit E</u>**, Mr. Gupta identified 31 individuals, none of whom were employed by him.  Plaintiff requests that Mr. Gupta produce all Forms 1099-MISC which name or list these individuals.

concerning non-parties to this action.  Any Forms 1099-MISC that Mr. Gupta may have issued to others are not relevant, and have no probative value on the issue of whether Mr. Gupta incurred and paid title search and notification costs for the properties that are the subject of this action.

Whether or how Mr. Gupta reports to the United States government amounts paid to others for services is simply not relevant to whether Mr. Gupta incurred and paid title search and notification costs for properties purchased at tax sales in Indiana.  If Mr. Gupta did not issue Forms 1099-MISC to any of the 31 individuals identified in his response to Plaintiff's Interrogatories, that does not lead to any inference that he did not pay those persons for services, including title search or notification services.  That leads only to the inference that he chose not to report those payments on a Form 1099-MISC.

Likewise, if Mr. Gupta did issue Forms 1099-MISC to any of the 31 individuals identified in his response to Plaintiff's Interrogatories, that also does not lead to the inference that some or all amounts so reported were paid for title search or notification services.  Indeed, there is no way to ascertain from a Form 1099-MISC whether the amounts reported thereon were for title search or notification costs, whether those amounts pertained to properties which are the subject of this action or other properties or both, or were for services wholly unrelated to the properties that are the subject of this action or for services other than title searches and noticing.  Any information contained on a Form 1099-MISC is inference neutral since it reports only a gross amount, without itemization or even reference to the particular services giving rise to the gross amount reported.  Both parties in this case can manipulate the gross numbers reported on these Forms in support of their respective arguments.

And there is no compelling need for Mr. Gupta to produce any Forms 1099-MISC he may have issued to any of the 31 individuals identified in his response to Plaintiff's

Interrogatories.  Mr. Gupta has already provided multiple reasonable, alternative sources of information showing his exact costs incurred and paid for title search and notification costs. *Poulos v. Naas Foods, Inc.*, 959 F.2d at 69; See also *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 294 (E.D.N.Y. 2011) (to compel disclosure of income tax returns, two-part test must be satisfied: (1) returns must be relevant to subject matter of action, and (2) there must be compelling need for returns because information is not otherwise available).

The recipients of any Forms 1099-MISC issued by Mr. Gupta certainly have an expectation of privacy with respect to the information reported thereon.  Presumably, any information reported on those Forms 1099-MISC would in turn be reflected in some fashion on the recipient's own income tax return, so production of those Forms 1099-MISC would be tantamount to disclosing information included in that recipient's tax return.  However, courts across the nation hold that non-parties' tax returns are not discoverable.  See *Hobley v. Burge*, 433 F.3d 946, 950 (7th Cir. 2006) (holding that Rule 34, which governs requests for documents "in the possession, custody or control" of one's opponent, applies only to parties); *Davidson v. Schneider*, 2013 WL 352669, *3 (N.D. Ill., Jan. 22, 2013) (denying plaintiff's motion to compel a non-party's tax returns from defendant because Rule 34 does not apply to non-parties and plaintiff did not sufficiently explain why the non-party's income and tax returns were relevant to the matter at hand). Other courts within and without this jurisdiction stress the confidential nature of tax returns, restrict their disclosure, and protect non-parties from oppressive discovery. See *Methodist Hospitals, Inc.*, 91 F.3d at 1031; *Poulos*, 949 F.2d at 75; *Kreuger*, 55 F.R.D. at 514.  See *Finch*, 2011 WL 2516242, at *4; *Pennington*, 2012 WL 1482412, at *1 ("In the context of third party discovery, courts should be especially careful in protecting the parties from excessive or oppressive discovery."); *Dieterich*, 2013 WL 627166, at *3.

Although outside this jurisdiction, *Columbus Drywall & Insulation, Inc. v. Masco Corporation*, 2006 WL 5157686, at *1(N.D. Ga. 2006) is also instructive on the issue of the discoverability of non-parties' tax returns.  In *Columbus Drywall*, the defendants sought an order from the court compelling the non-party principals of plaintiffs to produce their personal income tax returns.  *Id*. at *7.  Defendants contended they were entitled to the personal tax returns because the principals received rebate money for the purchase of insulation that was not recorded in the plaintiff's corporate books but were allegedly reported as personal income by the principals on their personal tax returns.  *Id*.  Plaintiffs argued that defendants were already in possession of the information regarding the amount of the rebates, and that the information sought on the tax returns show tax treatment of the rebates not relevant to the issues in the action. *Id*.  The court found the defendants already had all rebate information that revealed the amounts of rebates paid to the owner-principals.  *Id*. at *8.  The defendants alternatively argued that they were "'entitled to the personal tax returns of the owner-principals to show 'where the money went and how it affected the income and profits of the corporate-plaintiffs'."  *Id*.  The court denied the defendant's motion to compel, holding that the defendants failed to establish they were entitled to discovery of personal tax returns of the non-party, owner-principals.  *Id*. The court held that, "[a]lthough there is no doubt that the amounts of the rebates paid to the owner-principals are relevant to the issues in this action, Plaintiffs have established that Defendants are already in possession of documents revealing the amounts of those rebates."  Lastly, the court held that the defendants failed to provide authority that would require a court to order disclosure of non-parties' personal tax records.

Crissen does not have a right to direct Mr. Gupta to obtain non-parties' tax returns since those tax returns are not discoverable.  *Hobley v. Burge*, 433 F.3d at 950; *Davidson v. Schneider*,

2013 WL 352669, at *3.  And Plaintiff does not have a sufficient reason for obtaining non-parties' tax returns.  Just as the defendant in *Columbus Drywall* had all rebate information relevant to the issues in that action, Plaintiff in the present matter has all the information reflecting title search and notification costs incurred and paid by Mr. Gupta directly relevant to the issue in this action. Although there is no doubt that the amount of title search and noticing costs incurred and paid by Mr. Gupta is relevant to this action, Plaintiff is already in possession of the documents relating to those amounts.  *Columbus Drywall*, 2006 WL 5157686 at *8. Those documents were produced by Mr. Gupta in response to Plaintiff's First and Second Requests for Production.

Finally, this Court's June 11, 2013 Protective Order has ruled that Mr. Gupta is not required to produce tax-type documents.  Given that Mr. Gupta and Banco Popular has produced the underlying documents relating to Crissen's claims, Crissen has not and cannot demonstrate the good cause or changed circumstances the Court requested as a condition of vacating the June 11 Protective Order.

      **c.**      **Plaintiff's Request No. 6.**

Plaintiff's Request No. 6 directs Mr. Gupta to produce "every Form W-2 with any of the persons identified in Mr. Gupta's responses to Plaintiff's First Set of Interrogatories listed or named as an employee on said form."  This Request seeks documents containing non-public private and confidential documents not relevant to Plaintiff's claims and which should not be subject to disclosure.  *Methodist Hospitals, Inc.*, 91 F.3d at 1031; *Poulos*, 949 F.2d at 75; *Kreuger*, 55 F.R.D. at 514.  Mr. Gupta has provided alternative sources of information showing he incurred and paid title and notification costs associated with his tax sale purchases in Indiana; thus, W-2s need not be disclosed.  *Poulos v. Naas Foods, Inc.*, 959 F.2d at 69; *Libaire v. Kaplan*,

760 F. Supp. 2d at 294.  The Request is not limited in time or scope to any issue in the present matter or even to Mr. Gupta's Indiana tax sale business.  It is simply a shotgun request for Mr. Gupta to produce "every Form W-2" he as ever issued to any of the 31 individuals identified in his responses to Plaintiff's First Interrogatories, whether the wages were paid for cutting the grass, cleaning houses or countless other things totally unrelated to whether Mr. Gupta incurred and paid title search and notification costs and wholly irrelevant to any issue in this litigation or even to Mr. Gupta's Indiana tax sale business.

Perhaps the proof that Plaintiff is simply attempting to harass Mr. Gupta with his Third Request is the fact that Mr. Gupta has already stated under oath in response to Interrogatory No. 11 of Plaintiff's First Interrogatories that he "do[es] not have any employees in [his] tax sale business in Indiana."  This unnecessary Request is simply one of many examples of Plaintiff's senseless, irrelevant and burdensome requests for production.

### d.       Plaintiff's Request No. 7.

Plaintiff's Request No. 7 directs Mr. Gupta to produce the first page of each Form 1040 and each Schedule C/C-EZ submitted by him in connection with his tax returns.  This Request seeks personal and private documents and electronically stored information not relevant to Plaintiff's claims.

The first page of Mr. Gupta's Form 1040 is required to reflect only a gross figure for income from all sources from all of his business activities, including income from his tax businesses in other states and income from his non-tax sale businesses.  The first page of Mr. Gupta's Form 1040 is not required to and does not show itemized amounts paid to him by Indiana counties in reimbursement of title search and notification costs paid by those who redeem properties from tax sales.  The same is true with respect to Schedule C/C-EZ to Mr.

Gupta's income tax returns.  Schedule C only is required to provide a gross figure for business expenses incurred in all of his business activities, including expenses incurred in his tax businesses in other states and expenses incurred in his non-tax sale businesses.  Schedule C will not show itemized amounts paid by him for title search and notification costs paid in connection with properties in Indiana.

Request No. 7 is duplicative of Request No. 3 of Plaintiff's Second Request, which directed Mr. Gupta to produce *"Schedule C to your tax returns and any other section or schedule of your tax return where you listed business expenses to incurring and paying Notify Costs and Title Costs."*  Mr. Gupta stated in response to Request No. 3 that he "does not have any documents in his possession, custody or control responsive to this Request."  Despite having this response, and with no evidence it is incorrect, Crissen now asks for the first page of Mr. Gupta tax returns which Crissen already knows does not contain any relevant evidence.

Forms 1040 and Schedules C/C-EZ provide gross figures that encompass all of Mr. Gupta's business activities, many of which are outside the scope of the present matter.  Consequently, similar to the Forms 1099-MISC, information found on Forms 1040 and Schedules C/C-EZ is inference neutral and subject to the parties' interpretation.  The probative value of Mr. Gupta's tax records to the present matter is substantially outweighed by the danger of unfair prejudice against Mr. Gupta.  Mr. Gupta's tax returns have little probative value because they do not provide the information necessary to accurately determine whether Mr. Gupta incurred and paid title search and notification costs relevant to the present matter, leaving the parties and the jury to whom he intends to show them to speculate what the gross figures on the returns represent.  Plaintiff does not establish a compelling need for Mr. Gupta's tax records.  Such tax information is generally not discoverable especially when, as here,  Mr. Gupta has

16

already provided multiple reasonable, alternative sources of information showing his exact costs incurred and paid for title and notification costs in Indiana.  Consequently, the Court should not compel production of Mr. Gupta's tax records.  *Poulos v. Naas Foods, Inc.*, 959 F.2d at 69; *Libaire v. Kaplan*, 760 F. Supp. 2d at 294.

Lastly, Plaintiff is requesting documents subject to the Court's June 11, 2013 Protective Order.  In that Order, the Court prohibited discovery of "financial statements of the individual Defendants . . . and personal tax returns are not relevant, because they contain personal financial information not necessary for the determination of the issues before the court at this time."  See also *Methodist Hospitals, Inc.*, 91 F.3d at 1031; *Krueger*, 55 F.R.D. at 514.   Crissen has not and cannot demonstrate the good cause or changed circumstances the Court requested as a condition of vacating the June 11 Protective Order.

### e.    Plaintiff's Request Nos. 8 and 35

Mr. Gupta's gmail account was hacked and he lost all emails prior to mid-May 2013. Counsel for the parties have agreed that Mr. Gupta will produce non-privileged emails from this account going forward that involve claims asserted in this lawsuit.  Mr. Gupta does not waive any of his objections to Request Nos. 8 and 35, but he believes this issue has now been resolved by agreement of counsel.

### f.   Plaintiff's Request Nos. 9 & 10.

Plaintiff's Request Nos. 9 and 10 direct Mr. Gupta to produce all financial statements that reflect expenses incurred and paid by Mr. Gupta for services rendered by either Vivek Gupta or Lewis Maudlin.

First, these Requests improperly ask for documents and electronic records pertaining to all services Vivek Gupta and Lewis Maudlin have ever rendered to Mr. Gupta, not just services

for title searches and noticing. Thus, these Requests are overly broad, vague and ambiguous and make no attempt to limit the request to matters at issue in this lawsuit.  Crissen has a duty to make targeted requests directed to relevant matters. Request Nos. 9 and 10 fail to do this.

Second, except for the request that Mr. Gupta produce his financial statements (e.g. balance sheets, cash flow statements, income statements), Request Nos. 9 and 10 are duplicative of Plaintiff's First Request Nos. 5, 6, 7, 8, 9, 10, 11, 12 and 13.[6]

> Request No. 5 of Plaintiff's First Requests asked Mr. Gupta to produce:
>
> All documents, electronically stored information and tangible evidence related to [Mr. Gupta] incurring the costs of a title search or examining and updating the abstract of title for a tract or item of real property in Indiana related to a certificate of sale [Mr. Gupta] received or obtained, including without limitation, all invoices, receipts, bills, time sheets, time cards or payroll records.
>
> Request No. 6 of Plaintiff's First Requests asked Mr. Gupta to produce:
>
> All documents, electronically stored information and tangible evidence related to [Mr. Gupta] paying the costs of a title search or examining and updating the abstract of title for a tract or item of real property in Indiana related to a certificate of sale [Mr. Gupta] received or obtained, including without limitation, canceled checks, drafts, automated clearing house (ACH) transactions, wire transfers, inter-account transfers, credit card statements, bank statements or receipts.
>
> Request No. 7 of Plaintiff's First Requests asked Mr. Gupta to produce:
>
> All documents, electronically stored information and tangible evidence [related?] to a title search or examination and update of the abstract of title for a tract or item of real property in Indiana related to a certificate of sale [Mr. Gupta] received or obtained, including without limitation, title searches, title commitments, letter reports or updated abstracts of title.
>
> Request No. 8 of Plaintiff's First Requests asked Mr. Gupta to produce:
>
> All documents, electronically stored information and tangible evidence related to [Mr. Gupta] incurring the costs of giving notice for a tract or item of real property in Indiana related to a certificate of sale [Mr. Gupta] received or obtained,

---

[6] See *Defendant Vinod C. Gupta's Responses to Plaintiff's Third Set of Requests for Production Directed to Defendant Vinod C. Gupta* is attached hereto as **Exhibit C**.

including without limitation, all invoices, receipts, bills, time sheets, time cars or payroll records.

Request No. 9 of Plaintiff's First Requests asked Mr. Gupta to produce:

All documents, electronically stored information and tangible evidence related to you paying the costs of giving notice for a tract or item of real property in Indiana related to a certificate of sale you received or obtained, including without limitation, cancelled checks, drafts, automated clearing house (ACH) transactions, wire transfers, inter-account transfers, credit card statements, bank statements or receipts.

Request No. 10 of Plaintiff's First Requests asked Mr. Gupta to produce:

All documents, electronically stored information and tangible evidence related to any costs incurred from Vivek Gupta related to a title search or examining and updating the abstract of title for a tract or item of real property in Indiana related to a certificate of sale [Mr. Gupta] received or obtained.

Request No. 11 of Plaintiff's First Requests asked Mr. Gupta to produce:

All documents, electronically stored information and tangible evidence related to any costs incurred from Vivek Gupta related to giving notice for a tract or item of real property in Indiana related to a certificate of sale [Mr. Gupta] received or obtained.

Request No. 12 of Plaintiff's First Requests asked Mr. Gupta to produce:

All documents, electronically stored information and tangible evidence related to any payments made to Vivek Gupta related to the costs of a title search or examining and updating the abstract of title for a tract or item of real property in Indiana related to a certificate of sale [Mr. Gupta] received or obtained.

Request No. 13 of Plaintiff's First Requests asked Mr. Gupta to produce:

All documents, electronically stored information and tangible evidence related to any payments made to Vivek Gupta related to the costs of giving notice for a tract or item of real property in Indiana related to a certificate of sale [Mr. Gupta] received or obtained.

Mr. Gupta produced over 48,000 Bates numbered documents and electronic records in response

to these **seven different** First Requests for Production.  To the extent Mr. Crissen has answered

such requests, Crissen has received the underlying data he needs to address the issue of title

search and notification costs.   There is no substantial need for him to examine Mr. Gupta's financial statements.

Third, Request Nos. 9 and 10 ignore this Court's June 11, 2013 Protective Order which ruled the Defendants' financial statements are not relevant and do not need to be produced. Crissen has made no attempt to show good cause for changing the Court's June 11 Protective Order.  Federal case law is clear that a Court should be reluctant to order the production of such information when alternative sources of information exist.   That is the case here.   The Court should affirm its Protective Order as to financial statements, and grant Mr. Gupta a protective order with respect to Third Request Nos. 9 and 10.

### g.   Plaintiff's Request Nos. 11 and 12.

Plaintiff's Request No. 11 directs Mr. Gupta to produce, "[a]ll checks to Vivek V. Gupta for payment of services identified on the Certifications submitted by Mr. Gupta."  Plaintiff's Request No. 12 directs Mr. Gupta to produce, "[a]ll checks to Lewis Maudlin for payment of services identified on the Certifications submitted by Mr. Gupta."   These Requests are unreasonably cumulative and duplicative of Plaintiff's First Request Nos. 6, 9, 12 and 13.   First Request No. 6 asked Mr. Gupta to produce:

> All documents, electronically stored information and tangible evidence related to you paying the costs of a title search or examining and updating the abstract of title for a tract or item of real property in Indiana related to a certificate of sale you received or obtained, including without limitation, canceled **checks**, drafts, automated clearing house (ACH) transactions, wire transfers, inter-account transfers, credit card statements, bank statements or receipts.

Request No. 9 asked Mr. Gupta to produce:

> All documents, electronically stored information and tangible evidence related to you paying the costs of giving notice for a tract or item of real property in Indiana related to a certificate of sale you received or obtained, including without limitation, canceled **checks**, drafts, automated clearing house (ACH) transactions,

wire transfers, inter-account transfers, credit card statements, bank statements or receipts.

Request No. 12 asked Mr. Gupta to produce:

All documents, electronically stored information and tangible evidence related to any payments made to Vivek Gupta related to the costs of a title search or examining and updating the abstract of title for a tract or item of real property in Indiana related to a certificate of sale you received or obtained.

Request No. 13 asked Mr. Gupta to produce:

All documents, electronically stored information and tangible evidence related to any payments made to Vivek Gupta related to the costs of giving notice for a tract or item of real property in Indiana related to a certificate of sale you received or obtained.

The Third Request No. 11 therefore is unnecessarily duplicative of **four different** requests in Plaintiff's First Request.  Mr. Gupta produced over 48,000 Bates numbered documents and electronic records in response to these four different First Requests for Production. Moreover, Banco Popular has produced documents which related to the information requested in Crissen's Third Request No. 11.  Lastly, the request is overly-broad because it seeks documents related to tax sales outside Indiana, other business matters unrelated to the issues in this lawsuit, and tax sales for which the applicable statute of limitations has expired.

### h.     Plaintiff's Request Nos. 13 & 14.

Plaintiff's Request Nos. 13 and 14 direct Mr. Gupta produce "[e]ach and every Form 137B" and "NOTICE OF SALE AND REDEMPTION PERIOD EXPIRATION" in Word format.  These Requests are unreasonably cumulative and duplicative of prior requests for production, and unduly burdensome and expensive for Gupta to respond to.  Gupta has already produced over 48,000 Bates numbered documents and electronic records in response to Plaintiff's First and Second Set of Requests for Production.  Specifically, Gupta has already

21

produced all electronically stored information in his possession, custody and control responsive

to Request No. 2 in Crissen's First Request:

> All Certifications or 137B forms signed by you, submitted by you or submitted on your behalf, including without limitation, envelopes to send the same, certified mail cards, certified mail signed receipts, proof of delivery, return receipts, and returned mail from the United States Post Office.

and Request No. 3 in Crissen's First Request:

> All Notices of Redemption, including without limitation, envelopes to send the same, certified mail cards, certified mail signed receipts, proof of delivery, return receipts, and returned mail from the United States Post Office. [7]

and Request No. 4 in Crissen's First Request:

> All documents, electronically stored information and tangible evidence from any source that relates to notices sent pursuant to IC 6-1.1-25-4.5, including without limitation, notices, envelopes to send the same, certified mail cards, certified mail signed receipts, proof of delivery, return receipts, and returned mail from the United States Post Office.

In his First Request, Plaintiff did **not** specify that electronic records responsive to these

requests be produced in native format.  See **<u>Exhibit B</u>**.  Therefore, in accordance with Fed. R.

Civ. P. 34(b)(2)(E)(ii), the electronic records responsive to these requests were produced in .pdf

format as allowed by Fed. R. Civ. P. 34(b)(2)(E)(ii).  Pursuant to Fed. R. Civ. P. 34(b)(2)(E)(iii),

Mr. Gupta need not produce the same electronically stored information in more than one format,

and is not required to reproduce the same exact documents in Word format.  Fed. R. Civ. P.

34(b)(2)(E)(ii) and (iii).  *Autotech Technologies Limited Partnership v. Automationdirect.com,*

*Inc.*, 248 F.R.D. 556, 558-9 (N.D. Ill. 2008) (denying defendant's Motion to Compel plaintiff to

produce documents in native word format when such format was not requested by defendant;

defendant's production of documents in .pdf format held sufficient); *Secure Energy, Inc. v. Coal*

---

[7] All envelopes, certified mail cards, certified mail receipts, proof of delivery, return receipts and returned mail from the United States Postal Service were inspected by Plaintiff's counsel at Mr. Gupta's counsel's office on September 18, 2013.

*Synthetics*, 2010 WL 597388, at * 4 (E.D. Mo., Feb. 17, 2010) ("[T]here is no requirement under the federal rules of civil procedure for Defendants to produce the drawings in native format when Plaintiffs failed to specific [sic] a format in their requests.  Plaintiffs failed to request that Defendants produce their ESI in native format.  Defendants fulfilled their discovery obligations by producing the engineering documents in PDF.").  Having failed to request Word format in his First Requests for Production, Crissen has no right now under the Federal Rules of Civil Procedure or federal case law to ask Mr. Gupta to incur the additional burden and expense of producing these documents in a different format.

### i.       Plaintiff's Request Nos. 15 through 18.

Plaintiff's Request No.'s 15 through 18 direct Mr. Gupta to produce all communications with Vivek Gupta and Lewis Maudlin related to performance of services and payment of amounts listed on Certifications submitted by Mr. Gupta.  Over the years Mr. Gupta has submitted thousands of Certifications in relation to tax sales in multiple states.  Crissen broadly asks that Mr. Gupta retrieve communications with Vivek Gupta and Lewis Maudlin related to any services they performed in relation to these transactions.  Only transactions in which a property owner has redeemed his property and paid title/notification costs are relevant to this action; yet, Request Nos. 15 through 18 are not so limited.  Request Nos. 15 through 18 are overbroad and burdensome because they do not have a time limit – essentially covering all time.  Request Nos. 15 through 18 make no attempt to redact or limit communications between Mr. Gupta and his two attorneys, Vivek Gupta and Lewis Maudlin which are subject to the attorney-client or work product privilege.  But, most fatal to Crissen's Request Nos. 19 and 20, is the fact these Requests are cumulative and duplicative of Crissen's First Request Nos. 5, 6, 7, 8, 9, 10, 11, 13, 14, and 15 in Plaintiff's First Requests, which Mr. Gupta has already answered.

23

j.      **Plaintiff's Request Nos. 19 and 20**

Crissen's Request No. 19 directs Mr. Gupta to produce "[a]ll documents and electronically stored information that shows the transfer or payment of any funds or money to Vivek V. Gupta for the amounts listed on Certifications submitted by [Mr. Gupta]."  Crissen's Request No. 20 directs Mr. Gupta to produce "all documents and electronically stored information that shows the transfer of payment of any funds or money to Lewis Maudlin for the amounts listed on Certifications submitted by [Mr. Gupta]."

Again, Mr. Gupta has conducted thousands of tax sale transactions beyond the relevant period of time or subject matter of the present lawsuit.  Crissen's Request Nos. 19 and 20 are overly broad since they request documents that show transfer or payment to Vivek Gupta or Lewis Maudlin for amounts listed on Certifications to other states and beyond the timeframe allowed by the applicable statutes of limitations.

These Requests are unreasonably cumulative and duplicative of Crissen's First Requests 6, 9, 12 and 13.  Gupta has already answered these requests and should not be required to do so again.  Request No. 6 asked Mr. Gupta to produce:

> All documents, electronically stored information and tangible evidence related to you paying the costs of a title search or examining and updating the abstract of title for a tract or item of real property in Indiana related to a certificate of sale you received or obtained, including without limitation, canceled checks, drafts, automated clearing house (ACH) transactions, wire transfers, inter-account transfers, credit card statements, bank statements or receipts.

Request No. 9 asked Gupta to produce:

> All documents, electronically stored information and tangible evidence related to you paying the costs of giving notice for a tract or item of real property in Indiana related to a certificate of sale you received or obtained, including without limitation, canceled checks, drafts, automated clearing house (ACH) transactions, wire transfers, inter-account transfers, credit card statements, bank statements or receipts.

24

Request No. 12 asked Mr. Gupta to produce:

All documents, electronically stored information and tangible evidence related to any payments made to Vivek Gupta related to the costs of a title search or examining and updating the abstract of title for a tract or item of real property in Indiana related to a certificate of sale you received or obtained.

Request No. 13 asked Mr. Gupta to produce:

All documents, electronically stored information and tangible evidence related to any payments made to Vivek Gupta related to the costs of giving notice for a tract or item of real property in Indiana related to a certificate of sale you received or obtained.

These Requests in Plaintiff's Third Request are in short duplicative of **four different** requests in Plaintiff's First Request, and Mr. Gupta has already produced everything he has in response. These redundant Requests are oppressive and unduly burdensome. Crissen has provided no explanation to Mr. Gupta or his attorneys why it is necessary to ask again for documents after Mr. Gupta responded to the First Request for Production.

### k.   Plaintiff's Request Nos. 21 through 24, 31-33 and 35

Mr. Gupta has provided responses or amended responses to Request Nos. 21 through 24, 31-33, and 35. Crissen's Motion to Compel filed on September 11, 2013, do not challenge Mr. Gupta's responses to these requests. Accordingly, Mr. Gupta believes there is no current dispute regarding his responses to these Requests. If this is incorrect or if Mr. Crissen challenges the responses to these Requests at a later time, Mr. Gupta does not waive the objections stated to these Requests, and reserves the right to amend this Motion for Protective Order to address his objections.

### l.   Plaintiff's Request Nos. 25 & 26

Plaintiff's Request No. 25 directs Mr. Gupta to produce "[a]ll correspondence between [Mr. Gupta] and any county or court in Indiana." And Plaintiff's Request No. 26 requests "[a]ll

correspondence between [Mr. Gupta] and any parties involved in any tax sales in Indiana." These requests are overly broad as Plaintiff seeks documents both outside the scope of the present matter and outside the relevant time period of this case.   The requests also seek documents related to properties never redeemed and thus, not the subject of any of Plaintiff's claims in this matter.   Request No. 26 seeks ALL correspondences between Mr. Gupta and any party involved in any tax sale in Indiana, regardless of whether the correspondence(s) pertain to the subject of this action.   In response to Plaintiff's First and Second Requests for Production of Documents Mr. Gupta produced correspondence between him and various counties and courts in Indiana relating to the properties identified in Crissen's Complaint.   Crissen did not challenge Mr. Gupta's response to Request Nos. 25 and 26 in his Motion to Compel filed on September 11, 2013.  Mr. Gupta believes there is no current dispute regarding his responses to Request Nos. 21 through 24.  If this is incorrect or if Mr. Crissen challenges the responses to these Requests at a later time, Mr. Gupta does not waive the objections stated to these Requests, and reserves the right to amend this Motion for Protective Order to address his objections.

### m.      Plaintiff's Request Nos. 27 through 29.

Plaintiff's Request No. 27 directs Mr. Gupta to produce "[a]ll business records of any bank where [Mr. Gupta has] done business since 2002."  Plaintiff's Request No. 28 directs Mr. Gupta to produce "[a]ll communication with Banco Popular, including communications with counsel for Banco Popular."  Plaintiff's Request No. 29 directs Mr. Gupta to produce "[a]ll communication with any of the persons identified in [Mr. Gupta's] responses to Interrogatory No. 12 of Plaintiff's First Set of Interrogatories."  The Requests improperly ask Mr. Gupta to produce information from banks where Mr. Gupta has business accounts unrelated to the Indiana tax sale business, personal accounts, retirement accounts, credit card accounts, etc., that have

nothing to do with this litigation and should not be subject to disclosure.  *Methodist Hospitals, Inc.*, 91 F.3d at 1031; *Hollinger Intern. Inc.*, 2005 WL 3177886, at *4.

Requests No.'s 27 through 29 are unreasonably cumulative and duplicative of prior discovery.  For example, Interrogatory No. 14 of Plaintiff's First Set of Interrogatories directed Mr. Gupta to do the following:

> For each account at a financial institution in use or used by you to pay Title Costs or Notify Costs, including without limitation, any account in which you withdrew or transferred funds to pay said costs, state:
>
> a.  The financial institution where the account was held, including address and phone number;
> b.  The name on the account;
> c.  The account number; and
> d.  Whether the account was setup for any specific purpose, such as the payment of said costs.

Mr. Gupta provided Plaintiff with the information for his financial institutions, Wells Fargo and Banco Popular North America, in response to Plaintiff's Interrogatory No. 14.  Then, Mr. Gupta produced all documents, electronically stored information and tangible evidence in his possession, custody and control responsive to Request No. 1 of Plaintiff's Second Set of Requests for Production[8], which sought the following:

> All documents, electronically stored information and tangible evidence from any source that relates to Vinod C. Gupta's, Satyabala V. Gupta's and Wiper Corporation's business dealings with Banco Popular relating to tax sales or commissioner sales in Indiana, including without limitation, all documents or electronically stored information, relating to loans, loan applications, letters of credit, applications for letters of credit, collateral for any loans, agreements regarding collateral, payment of interest on any loans, guarantees, cashier's checks, account opening documents, signature cards, account statements, items of withdrawal or deposit, and any correspondence, communication or e-mail discussing or referring to loans, loan applications, letters of credit, applications for letters of credit, collateral for any loans, agreements regarding collateral, payment

---

[8]  See *Defendant Vinod C. Gupta's Responses to Plaintiff's Second Set of Requests for Production Directed to Defendant Vinod C. Gupta*, **Exhibit B**.

> of interest on any loans, guarantees, tax liens, certificates of sale, tax sale certificates, and the tax sale business.

and Request No. 2 of Plaintiff's Second Set of Requests for Production, which sought the following:

> All documents, electronically stored information and tangible evidence from any source that relates to Banco Popular's participation in Defendants' activities in Indiana, including without limitation, Banco Popular's participation as buyer or co-purchaser in Defendants' purchase of any of the properties listed on Exhibit B to Plaintiff's Complaint (Doc. 1-2).

Plaintiff propounded Request Nos. 27 through 29 despite the Court's June 11, 2013 Protective Order holding "financial statements of the individual Defendants, loan or letter of credit applications, and personal tax returns [held by BPNA] are not relevant, because they contain personal financial information not necessary for the determination of the issues before the court at this time. Traditionally, personal financial information is considered confidential information." Plaintiff seeks documents that the Court has deemed confidential and irrelevant to the issues at hand. Mr. Gupta should not be compelled to respond to Plaintiff's Request Nos. 27 through 29.

Crissen did not challenge Mr. Gupta's response to Request Nos. 27 through 29 in his Motion to Compel filed on September 11, 2013. Mr. Gupta believes there is no current dispute regarding his responses to Request Nos. 21 through 24. If this is incorrect or if Mr. Crissen challenges the responses to these Requests at a later time, Mr. Gupta does not waive the objections stated to these Requests, and reserves the right to amend this Motion for Protective Order to address these objections.

### n.     Plaintiff's Request No. 30.

Crissen's Request No. 30 directs Mr. Gupta to produce "[a]ll earlier versions of the IND.xlsx spreadsheet (Bates VG-0002872), i.e., versions of substantially the same information

created before IND.xlsx was created."  This Request is vague, ambiguous and misleading since Bates VG-0002872 is part of a spreadsheet of the Sale List for the 2007 Grant County Tax Sale, not the IND.xlsx spreadsheet.  Further, the request is unreasonably cumulative and duplicative since Mr. Gupta has already produced the subject spreadsheet in native format in response to Request No. 18 of Plaintiff's First Set of Requests for Production.  Native format gives Plaintiff access to information regarding any previous version of the spreadsheet.  Mr. Gupta  should not be compelled to produce anything further in response to Request No. 30.  Mr. Gupta notes that Crissen's Motion to Compel does not raise an issue with respect to his response and objections to Request No. 30.

        o.        **Plaintiff's Request No. 34.**

Crissen's Request Nos. 34 asks Mr. Gupta to produce all other blank templates used in his business.   Among the over 48,000 Bates numbered documents and electronic records produced by Mr. Gupta in response to Plaintiff's First and Second Set of Requests for Production were copies of the actual notices which were sent pursuant to Ind. Code §6-1.1-25-4.5.  Any blank template used to create those notices has absolutely no relevance to the central factual issue in this case – whether Mr. Gupta incurred and paid for Title Search and Notify Costs.

Any other blank templates used in Mr. Gupta's business have absolutely no relevance to the issues in this case.  Mr. Gupta should not have to waste time and resources responding to Plaintiff's onerous requests for production of irrelevant electronic information.  Crissen did not challenge Mr. Gupta's response to Request No. 34 in his Motion to Compel filed on September 11, 2013.  Mr. Gupta believes there is no current dispute regarding his responses to Request No. 34.  If this is incorrect or if Mr. Crissen challenges the responses to these Requests at a later time,

Mr. Gupta does not waive the objections stated to this Request, and reserves the right to amend this Motion for Protective Order to address these objections.

### p.    Plaintiff's Request No.'s 36 through 38.

Plaintiff's Request No. 36 directs Mr. Gupta to produce documents and electronically stored information that support the amounts reported in each taxable year (2012-2012) [sic] as gross income and/or total income from redemptions.  Plaintiff's Request No. 36 seeks documents protected by the Court's June 11, 2013 Protective Order.  Further, Request No. 36 is overly broad because it does not limit information sought to Mr. Gupta's redemptions in Indiana.

Plaintiff's Request No. 37 directs Mr. Gupta to produce documents reflecting amounts Mr. Gupta claims he owes but has not paid to Vivek V. Gupta for his work on title searches and notifications.  Request No. 37 is overly broad and unduly burdensome because the request is not limited to Mr. Gupta's tax sale redemptions in Indiana within any relevant the time period. Further, Mr. Gupta has already produced all documents reflecting amounts paid and due and owing Vivek Gupta.  Finally, the Request is vague, ambiguous and misleading in that it assumes Mr. Gupta claims he owes but has not paid amounts to Vivek V. Gupta for work that resulted in title search and notifications costs.  Mr. Gupta has never made such a claim.

Plaintiff's Request No. 38 directs Mr. Gupta to produce "information provided by defendant Vinod Gupta in the spreadsheet IND.xlsx (Bates VG-002872), for all tax certificates purchased by defendants in Indiana in 2002."  Plaintiff's Request No. 38 is confusing.  Mr. Gupta's electronic record Bates VG0002872 is part of a spreadsheet of the Sale List for the 2007 Grant County Tax sale, not the IND.xlsx spreadsheet.  Again, Mr. Gupta has already produced all information in his possession in response to this request.  Plaintiff's Request Nos. 36 through 38 are overly broad, repetitive, and unduly burdensome.  Mr. Gupta notes that

Crissen's Motion to Compel filed on September 11, 2013, does not take issue with his responses to Request Nos. 36 and 38.

## IV. CONCLUSION

The circumstances giving rise to this lawsuit, specifically the involvement of Mr. Gupta's competitor, Barrett Rochman, as well as Mr. Rochman's change of testimony in the Bowen Class Action, has given Mr. Gupta a legitimate reason to question both the purpose that this lawsuit was filed, as well as Crissen's decision to serve him with repeated and lengthy discovery requests – especially the last and Third Request for Production that is duplicative of Crissen's prior discovery requests (which Mr. Gupta has already answered) and which, in some instances, runs afoul of the clear instructions given by the Magistrate Judge in the Court's June 11, 2013 Protective Order. The Third Request for Production makes little if any attempt to limit the scope of most of Crissen's discovery requests. The Third Request, in its entirety, rises to the level of a discovery abuse. Counsel have been successful in working out the dispute as to some Requests, but not Requests 3-7, 9-12, 15-20, and 37, but not the other Requests. Court intervention is necessary to protect Mr. Gupta from discovery that is overbroad, burdensome, and abusive. Barrett Rochman should not be permitted to orchestrate a lawsuit through his son's law firm, without this Court ensuring that the discovery practice implemented by Mr. Crissen is fair and appropriate. Mr. Gupta requests a protective order that he shall not be required to respond to Requests 1-7, 9-20, 25-30, 34 and 36-38, an opportunity to be heard on this motion, and for all other just and proper relief.

Respectfully submitted,

HARRISON & MOBERLY, LLP

*/s/ Stephen E. Arthur*
Stephen E. Arthur
David J. Theising
Marc A.W. Stearns
HARRISON & MOBERLY, LLP
10 West Market Street, Suite 700
Indianapolis, Indiana  46204
Telephone:     (317) 639-4511
Facsimile:     (317) 639-9565
Email: sarthur@harrisonmoberly.com
            dtheising@harrisonmoberly.com
            mstearns@harrisonmoberly.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on the 24th day of September, 2013, a copy of the foregoing *Defendant, Vinod C. Gupta's Brief in Support of Motion for Protective Order and Fed. R. Civ. P. 37 Expenses* was filed electronically.  Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

John S. Sandberg
Bhavik R. Patel
Jesse B. Rochman
SANDBERG PHOENIX & VONGONTARD, P.C.
600 Washington Avenue, 15th Floor
St. Louis, Missouri  63101
Email: jsandberg@sandbergphoenix.com
Email: bpatel@sandbergphoenix.com
Email: jrochman@sandbergphoenix.com

A. Richard Blaiklock
Edward D. Thomas
LEWIS WAGNER, LLP
501 Indiana Ave., Suite 200
Indianapolis, Indiana 46202
Email: rblaiklock@lewiswagner.com
Email: ethomas@lewiswagner.com

Gregory A. Blue
DILWORTH PAXSON, LLP
99 Park Avenue, Suite 320
New York, New York 10016
gblue@dilworthlaw.com


/s/ Stephen E. Arthur


Steven E. Arthur
HARRISON & MOBERLY, LLP
10 West Market Street, Suite 700
Indianapolis, Indiana  46204
Telephone:      (317) 639-4511
Facsimile:      (317) 639-9565
Email:  sarthur@harrisonmoberly.com

33