UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JOSHUA B. CRISSEN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>VINOD C. GUPTA and WIPER CORPORATION,<br><br>    Defendants. | Case No.:  2:12-cv-00355-JMS-WGH |

### Plaintiff's Response Brief in Opposition to Defendant Vinod C. Gupta's Motion for Protective Order

Plaintiff Joshua B. Crissen ("Plaintiff"), individually and for all others similarly situated, through his attorneys Sandberg Phoenix & von Gontard PC, respectfully submits his response in opposition to Defendant Vinod C. Gupta' ("Vinod") motion for protective order (Doc. 114):

#### I.  Introduction

Vinod seeks a protective order excusing him from responding to 29 of Plaintiff's 38 requests for production ("Document Requests") (Doc. 106-1). *See* Doc. 115 at 31. This motion for protective order was filed *after* Vinod has already responded to the Document Requests making it procedurally defective. Viewed properly, Vinod's motion is nothing more than a response to Plaintiff's motion to compel or an attempt to seek an advisory opinion from the Court on discovery issues not currently in dispute.

Vinod has raised two primary concerns: (1) production of responsive documents might prejudice "Mr. Gupta if this information is ultimately released to Gupta's business competitors;" and (2) the Document Requests seek information not relevant to Plaintiff's

claims or duplicate other document requests. *Id.* at 2. Vinod's production of documents in response to earlier requests failed to include many records one would have expected to have been available, so several Document Requests were designed to prompt a response that "none exist," even if they overlapped with prior requests that were broader. Regardless, none of Vinod's arguments justify the relief requested by Vinod, and his motion for protective order should be denied.

## II. Legal Standard

"Federal Rule of Civil Procedure 26 dictates that parties engage in broad, liberal discovery encompassing any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Prakel v. Indiana*, 2013 WL 3287691, *2 (S.D. Ind. 2013) (internal quotes omitted). Rule 26(c)(1) provides that the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery. . . [and] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . ." FED. R. CIV. P. 26. Before restricting discovery, however, "the court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

## III.   Argument

Society has a great interest in furthering the truth-seeking function in this case. As the Supreme Court noted over 150 years ago, "Tax sales are attended with greater sacrifices to the owners of land than any others. Purchasers at those sales seem to have but little

conscience." *Games v. Stiles*, 39 U.S. 322, 328 (1840) (quoting 2 Ohio Rep. 233). So far Vinod has produced nearly 48,000 documents, but not one document verifies the Notify and Title Costs Defendants charged Plaintiff and the putative class were incurred and paid by Defendants, as required by Indiana law. The Document Requests were tailored to uncover whether it is true that Defendants stole millions of dollars from over 3,500 people redeeming property Defendants purchased at tax sales in Indiana.

### A. Business competitors do not have access to discovery.

Vinod states he primarily resists producing documents because he believes the documents will ultimately be released to his business competitors. *See* Doc. 115 at 2-7. This first argument does not merit extensive discussion because the Court already entered a protective order prohibiting documents produced in discovery from being released to Vinod's competitors, including Barrett Rochman. *See* Doc. 47, ¶¶ 7-8. Vinod's "belief" that documents may reach the hands of his competitors is nothing more than a thinly veiled accusations that officers of this court will violate the protective order.[1] This belief is not only unsubstantiated, but assumes the Court is not capable of enforcing its own orders. But the Court can fully enforce its protective order, so Vinod's resistance to producing responsive documents has more to do with his concern that production will show he defrauded Plaintiff and the putative class than his concern it will make it into the hands of competitors.

Vinod also characterizes this lawsuit as retaliatory and suggests the motive behind Plaintiff suing Defendants somehow pertains to whether he should be required to produce documents that go to truth-seeking function of the Document Requests. According to

---

[1] By advancing these arguments on behalf of its clients, Vinod's counsel is attributing bad motives and improper conduct on Plaintiff's counsel and brings the profession into disrepute with its unfounded accusations of impropriety in violation of the *Standards for Professional Conduct within the Seventh Federal Judicial Circuit.*

Vinod's "belief," Barrett Rochman orchestrated this suit to drive Defendants out of business and obtain information about his business operations. This is the same tired war-cry Vinod has been making since the first telephone conference with the Magistrate Judge and has nothing to do with the merits of the claim. Whether Barrett Rochman orchestrated this suit and Plaintiff's motive in filing suit are both of **no consequence (i.e., irrelevant)** to the determination of Defendants' liability. *Cook v. Hoppin*, 783 F.2d 684, 688 (7th Cir.1986) ("Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"). So even assuming his "belief" was true (it is not) it does not make it more probable or less probable that Defendants defrauded Plaintiff and each member of the putative class by artificially inflating the amount of money required to redeem their real property sold at Indiana tax sales. Regardless of whether Barrett Rochman initiated this litigation or Plaintiff has an improper motive for suing, Plaintiff and each putative class member would still be victims of Defendants' fraud and entitled to the relief they seek.[2]

Vinod's "belief" is also not supported by the evidence. As Plaintiff testified, Barrett Rochman contacted him before he sued Defendants, but Plaintiff did not sue to retaliate against Defendants as Vinod "believes." Rather, Plaintiff sued because he thought the amount he was charged to redeem was "crooked" and he was "wronged" by Defendants. *See* Doc. 128-1. The purpose of the lawsuit then is apparent: to recover the money Defendants stole from him and the putative class, and hopefully, to deter this type of con-

---

[2] The motive or purpose behind a lawsuit would only be relevant to a claim for malicious prosecution or abuse of process. *Square D Co. v. Breakers Unlimited, Inc.*, 2009 WL 1407017 (S.D. Ind. 2009) (noting causes of action for redressing improper lawsuits—actions for malicious prosecution and for abuse of process—already exist). Vinod has not brought such a claim.

duct in the future. *Hughes v. Kore of Indiana Enterprise, Inc.*, 2013 WL 4805600, *5 (7th Cir. 2013) ("A class action, like litigation in general, has a deterrent as well as a compensatory objective."). Vinod's "belief" and speculation fail to rise to the level of good cause for entering a protective order.

### B.  Vinod's specific objections should be overruled.

The balance of Vinod's motion for protective order makes specific objections to 29 of Plaintiff's 38 Document Requests. *See* Doc. 115 at 9-31. Plaintiff will address each in one in turn.

#### i.   Request Nos. 1 and 2.

These requests are for a mirror image of Vinod's hard drive used for his tax sale business in Indiana. Vinod stresses that the "Court made it clear to Crissen early in this case that if, after deposing Mr. Gupta, it is determined that Mr. Gupta did not produce something he should have, then the Court will be responsive to Crissen's request for more discovery." *Id.* at 10. As discussed more fully in Plaintiff's motion to compel (Doc. 108), Vinod's production of documents to prior requests failed to include many records one would have expected to have been available. Vinod has also represented that all of his emails were deleted due to unauthorized access of his Gmail account. This request also sought to determine who actually authored the notices. Finally, Plaintiff's deposition revealed Vinod sent him correspondence, but Vinod did not produce that correspondence. This request was tailored to search for the missing documents and to allow a forensic search for them and anything that was deleted by the operator but still present on the hard drive. Regardless, there is currently no dispute over this request because when Plaintiff's counsel conferred with Vinod's counsel, as required, Plaintiff decided not to seek production of the hard drive until further discovery from subpoenas or depositions ripened the

issue. *See FCC v. Airadigm Communs., Inc.*, 616 F.3d 642, 654 (7th Cir. 2010) ("federal courts are not authorized to issue advisory opinions"); *On-Site Screening, Inc. v. United States*, 687 F.3d 896, 900 (7th Cir. 2012) ("federal courts do not give advisory opinions on claims not before them") (citing *Rodas v. Seidlin*, 656 F.3d 610, 630 (7th Cir. 2011) ("Federal courts are not in that business")).

    ii.    Request Nos. 3-5.

Vinod vigorously opposes having to respond to these requests for 1099s issued in connection with his tax sale business in Indiana. He makes three arguments: (a) the documents are not relevant; (b) he has produce multiple reasonable, alternative sources of information showing the same thing shown on the 1099s; (c) the documents contain non-public private and confidential information concerning non-parties to this action.

    a)  The 1099s are relevant.

Vinod seeks protection from responding to the request about the 1099-MISC forms because he asserts they are not relevant. *See* Doc. 105 at 10-14. These documents are relevant as discussed in Plaintiff's motion to compel and will not be repeated here. *See* Doc. 108 at 5-7. Vinod does not state whether the 1099s exist, but instead poses two illogical hypotheticals to argue the 1099s are irrelevant.[3] First, Vinod argues against relevance by assuming the 1099s do not exist:

> "If Mr. Gupta did not issue Forms 1099-MISC to any of the 31 individuals identified in his response to Plaintiff's Interrogatories, that does not lead to any inference that he did not pay those persons for services, including title search or notification services. That leads only to the inference that he chose not to report those payments on a Form 1099-MISC.

*Id.* at 11. Initially, Vinod's failure to issue Forms 1099-MISC does not create an *inference* he chose not to report those payments to the IRS. Rather, this failure *proves* he did

---

[3] Vinod does not argue production of these documents would be unduly burdensome or expensive. Such an argument would presume the documents exist.

not report those payments to the IRS. Because the law requires he report those payments, it is reasonable to *infer* he did not make them if he did not report them.

> Next, Vinod argues the documents are irrelevant by assuming the documents exist:
>
> Likewise, if Mr. Gupta did issue Forms 1099-MISC to any of the 31 individuals identified in his response to Plaintiff's Interrogatories, that also does not lead to the inference that some or all amounts so reported were paid for title search or notification services. Indeed, there is no way to ascertain from a Form 1099-MISC whether the amounts reported thereon were for title search or notification costs, whether those amounts pertained to properties which are the subject of this action or other properties or both, or were for services wholly unrelated to the properties that are the subject of this action or for services other than title searches and noticing

*Id*. Plaintiff knows Defendants have certified they incurred and paid over $3,600,000 in Notify and Title Costs. The 1099s to Vivek V. Gupta and Lewis Maudlin should be for this amount or more. If 1099s are for less than this amount, it is reasonable to infer Vivek Lewis was not paid the amounts in the Certifications.

These inferences also make sense when thinking about the consequence of reporting these amounts on the 1099s. If Vinod reported these amounts on the 1099s without actually paying them, then Vivek and Lewis would have had to pay taxes on that income without actually having received any money to pay that tax liability. To avoid this situation, Vinod likely did not report or underreported the Notify and Title Costs on the 1099s. Both scenarios offered by Vinod suggest there are inferences that can be drawn from the absence or the presence of the 1099s. Plaintiff should be entitled to present this evidence and allow the jury to determine what inferences to draw from it. *Quad/Graphics, Inc. v. One2One Communications, LLC*, 2013 WL 4735045, *9 (7th Cir. 2013) ("the jury was entitled to draw inferences and make findings of fact on the evidence Heverly and

One2One introduced at trial"). The 1099s bear on or reasonably could lead to other matter that could bear on issues in or that may be in the case, and should be produced.

### b) Vinod has not produced alternative sources of information.

Vinod suggests there is "no compelling need" for the 1099s because he "has already provided multiple reasonable, alternative sources of information showing his exact costs incurred and paid for title search and notification costs." *See* Doc. 105 at 12. He makes this same assertion again later in the brief: "Plaintiff in the present matter has all the information reflecting title search and notification costs incurred and paid by Mr. Gupta directly relevant to the issue in this action. Although there is no doubt that the amount of title search and noticing costs incurred and paid by Mr. Gupta is relevant to this action, Plaintiff is already in possession of the documents relating to those amounts." *Id.* at 14. Vinod does not specify which documents he has produced which show he incurred and paid the Title and Notify Costs. This is not surprising; the only documents Vinod has produced are the fraudulent Certifications and invoices from Vivek. The 1099s will make it more probable (i.e., relevant) these Certifications and invoices are false if they either do not exist or report an amount less than shown on the Certifications and Invoices.

### c) The 1099s are not private documents of non-parties.

Vinod tries to avoid production of the 1099s by arguing "those Forms 1099-MISC would in turn be reflected in some fashion on the recipient's own income tax return, so production of those Forms 1099-MISC would be tantamount to disclosing information included in that recipient's tax return." *Id.* at 12. So Vinod argues the 1099s should not be subject to discovery because "courts across the nation hold that non-parties' tax returns are not discoverable." *Id.* (citing *Hobley v. Burge*, 433 F.3d 946, 950 (7th Cir. 2006); *Davidson v. Schneider*, 2013 WL 352669, *3 (N.D. Ill. 2013)). Neither of these

cases stands for that proposition. They only stand for the proposition that a party should only be required to produce relevant documents in its possession, custody or control. Vinod does not suggest the documents are not in his possession, custody or control. The law is contrary to Vinod's misreading of those cases: "The Court is unaware of any basis for Zook to refuse to produce documents in her possession because a non-party to this case may have an objection to their production, but that party has not intervened or sought a protective order to prevent their disclosure." *Keaton v. Hannum*, 2013 WL 1818993, *4 (S.D. Ind. 2013).

Moreover, Vinod's argument leaps from the flawed premises that production of 1099s is tantamount to production of tax returns. If Vinod's logic were true, it would swallow every document used by a business that evidences the payment or receipt of money because information from those documents would be reflected in some fashion on the tax returns. Nor do these non-parties actually have any expectation of privacy in their 1099s, even if Vinod's premise was sound. Unlike an individual's tax returns prepared by the individual, 1099s are prepared by Vinod and are his business records just like any documents given to a bank, whether it be 1099s, W-2s or other documents, are records of a bank. *United States v. Miller*, 425 U.S. 435, 440 (1976) (finding that records created or maintained by banks were "the business records of the banks," not the bank's customer. As such, the documents could not be considered as the customer's "private papers."). So even if 1099s were tantamount to tax returns (they are not), 1099s would still be discoverable, like all other documents, if they are relevant. Vinod does not claim he is not in possession of these documents and they are relevant as discussed above and in Plaintiff's motion to compel.

### iii. Request No. 6

This request seeks the W-2s for people assisting defendants with their tax sale business in Indiana. Vinod argues this information is "senseless, irrelevant and burdensome." *See* Doc. 115 at 15. Vinod fails to explain why it would be burdensome to produce the W-2s for the 31 people he identified as people assisting him with his tax sale business in Indiana. *Lurensky v. Wellinghoff*, 258 F.R.D. 27, 30 (D. D.C. 2009) (holding an employer's objections to discovery lacked a specific articulation of facts supporting its conclusion that the plaintiff's request was burdensome). If Vinod has no employees in his tax sale business in Indiana, as he alleges, then this request cannot be burdensome because there would be *no* documents to produce. If he has employees it is still not burdensome because the request was limited from 2002 through the present, so that would only require production of 11 W-2s per employee.

Although Vinod asserts he has provided alternative sources of information showing he incurred and paid Title and Notify Costs (he has not), this request goes beyond whether Vinod incurred and paid Notify and Title Costs. Vinod's answers to Plaintiff's interrogatories identified 31 people who assisted Vinod in "participating in tax sales or Commissioner's Sales in Indiana." *See* Doc. 115-5 at 10-13. If Vinod has provided them with W-2s, then they are Vinod's employees, even if he characterizes them as independent contractors when they work for his Indiana tax sale business. These documents would be relevant for showing structure to Defendants' Tax Sale Enterprise. A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S.

576, 583 (1981). Such an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id*. More recently, the Supreme Court held in *Boyle v. United States*, 556 U.S. 938, 946 (2009), that an association-in-fact enterprise must also have a "structure," consisting of "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id*. 946.

The W-2s would evidence the relationship between Defendants and those listed in his answers to the interrogatories and the longevity of that relationship. Vinod should be required to produce these documents.

### iv. Request No. 7.

This request seeks certain portions of Vinod's tax returns. Vinod argues the tax returns are irrelevant because both the first page of the Form 1040 and Schedules C/C-EZ only provide gross figures. *See* Doc. 105 at 16. Schedule C, however, reports gross figures for many categories of business expenses, such as "Legal and professional services" and "Other expenses." Any Notify and Title Costs incurred and paid by Vinod to his attorneys should be reflected, even if in gross, in these sections of Schedule C. The amounts on the Schedule C flow through to the first page of the Form 1040. If the amounts reported are less than what Defendants listed in their Certifications, then he probably did not pay Vivek and Lewis for Title and Notify Costs. Thus, these portions of the tax return are relevant.

### v. Request Nos. 8 and 35.

There is no current dispute over these requests.

    *vi.*    *Request Nos. 9 and 10.*

  This request seeks financial statements reflecting expenses incurred and paid by Vinod to his attorneys that purportedly provided the services in the Certifications. Vinod complains this request duplicates prior requests, but out of the 48,000 documents produced by Vinod, he has produced no financial statements under prior requests. Like the 1099s and the tax returns, any Notify and Title Costs incurred and paid by Vinod, should be reflected on the financial statements because payment of these costs affect the flow of cash in and out of the business (i.e., cash flow statement or statement of cash flows) and would be considered an expense that reduces net income (i.e., income statement). The financial statements are also relevant because they go to Vinod's financial condition and net worth. Evidence of a defendant's net worth and financial condition is relevant for discovery when a plaintiff seeks punitive damages, like Plaintiff seeks here.

    *vii.*    *Request Nos. 11 and 12.*

This request seeks checks to Vivek and Lewis for payment of services on the Certifications. Vinod complains this request duplicates prior requests, but out of the 48,000 documents produced by Vinod and the tens of thousands of documents produced by BPNA, no checks were produced to Vivek or Lewis consistent with the amounts in the Certifications. Based upon defense counsel's representation that none exist, this request was designed to yield the same response in an admissible form.

    *viii.*    *Request Nos. 13 and 14.*

  Vinod asserts Plaintiff should not be entitled to the native format of the notices resulting in the Notify and Title Costs because the documents were previously produced in PDF format. First, the PDF form of the production of the documents is not searchable. *In re Payment Card Interchange Fee & Merchant Discount*, No. MD.05-1720, 2007 WL

121426, at *4 (E.D.N.Y. Jan. 12, 2007) (granting motion to compel under Advisory Committee's proviso to Rule 26 that data ordinarily kept in electronically searchable form "should not be produced in a form that removes or significantly degrades this feature"). Moreover, Vinod's PDF production did not provide all the metadata associated with the files, such as the revision history, what computer these documents were created on, who last saved the document, and when it was printed among others. Principle 12 of the Sedona Principles expressly recognizes the request for metadata is not outside the scope of normal electronic discovery:

> Absent party agreement or court order specifying the form or forms of production, production should be made in the form or forms in which the information is ordinarily maintained or in a reasonably usable form, *taking into account the need to produce reasonably accessible metadata that will enable the receiving party to have the same ability to access, search, and display* the information as the producing party where appropriate or necessary in light of the nature of the information and the needs of the case.

*Aguilar v. Immigration and Customs Enforcement Div. of U.S. Dept. of Homeland Sec.*, 255 F.R.D. 350, 356 (S.D.N.Y. 2008) (emphasis added). Vinod's production failed to take account for the need to this metadata and the metadata may have relevant information. Title and Notify Costs are incurred so tax buyers can send out notices of sale and redemption period expiration. According to Vinod's interrogatories, he stated his attorneys (Vivek and Lewis) prepared these notices and that Vinod and his contractors assisted in sending notices. *See* Doc. 115-5 at 9. Lewis produced no notices of redemption. Vivek produced approximately five. Vinod produced these notices in a folder called "word," but produced them in PDF. The filenames end in ".doc" and ".docx" which suggests Vinod has the word files (i.e., they were not prepared by Vivek). The metadata then would show if the documents were created by Vinod, which is highly relevant to Plain-

tiff's claims because it shows Defendants did not incur attorney fees (Notify Costs) for preparing the notice.

ix.  *Request Nos. 15 through 18.*

These requests seek all communication with Vivek and Lewis related to performance of the services and payment of the amounts listed on the Certifications. Vinod complains this request duplicates prior requests, but out of the 48,000 documents produced, Vinod failed to produce any such communication other than the false invoices from Vivek. So even though these requests may overlap with prior requests, they were designed to yield a response that "none exist."

Vinod also complains these requests are "overbroad and burdensome because they do not have a time limit – essentially covering all time." *See* Doc. 115 at 23. Vinod failed to read the requests for production because they expressly state the "time period for your responses is 2002 to the present." *See* Doc. 106-1 at 6.

Vinod also makes a passing reference to the communication being subject to the attorney-client or work product privilege, but Vinod made no such objections in response to this request and cannot now try to assert them in its motion for protective order. *Autotech Tech. Ltd. Partnership v. Automationdirect.com, Inc.*, 236 F.R.D. 396, 398 (N.D. Ill. 2006) ("Failure to timely assert objections to discovery requests may result in a waiver of all objections that could have been seasonably asserted."). Moreover, Vinod has not provided Plaintiff with a privilege log, providing an additional ground for waiver. "A timely and adequate privilege log is required by the federal rules, and the failure to serve an adequate and timely privilege log may result in a waiver of any protection from discovery." *Miller v. City of Plymouth,* 2011 WL 1740154, *4 (N.D. Ind. May 5, 2011) (citing *Babych v. Psychiatric Solutions, Inc.,* 271 F.R.D. 603, 608 (N.D. Ill. 2010) ("[F]ailure

to serve an adequate privilege log may result in a waiver of any protection from discovery.")).

    x.    *Request Nos. 19 and 20.*

These requests seek all documents showing the transfer or payment of any funds or money for the amounts listed on the Certifications. Vinod asserts the requests are overbroad because "they request documents that show transfer or payment to Vivek Gupta or Lewis Maudlin for amounts listed on Certifications to other states and beyond the timeframe allowed by the applicable statutes of limitations." *See* Doc. 115 at 24. "Certifications" is a defined term[4] to mean the 137B form used to certify Notify Costs and Title Costs incurred in connection with certificates of sale purchased at *Indiana* tax sales or commissioner sales. (Doc. 1, ¶ 24; Doc 1-1). Vinod does not explain why he would be submitting an *Indiana* form to other states. Vinod's argument about the statute of limitations is the same argument he made in his motion to dismiss, which was rejected by the Court. *See* Doc. 43 at 13 ("The issue of whether some of the putative class members' claims are time-barred is properly decided either at the class certification stage or after, through a summary judgment motion."). Plaintiff seeks to represent a class of all individuals who redeemed (*see* Doc. 85 at 16) regardless of when they redeemed. The requested documents are relevant to Plaintiff's and the putative class's claims. Vinod's motion for protective order is not the proper vehicle to limit this discovery on the basis of the statute of limitations.

Vinod also complains these requests duplicate prior requests, and that he has "already produced everything he has in response." *See* Doc. 115 at 25. However, Vinod produced

---

[4]     The Document Requests instruct that "all terms shall have the meaning ascribed to them in Plaintiff's Complaint (Doc. 1) unless defined otherwise." (Doc. ##-1, p. 1).

no documents showing he actually paid Vivek or Lewis the amounts shown on the Certifications. All that he has produced are false invoices from Vivek. This request is designed to yield a response that no other documents exist showing payment.

   *xi.    Request No. 21-24, 25, 26, 31-33 and 35.*

There is no current dispute over these requests for production.

   *xii.    Request Nos. 27-29.*

These requests seek Vinod's banking records and communication with the banks. Vinod argues these requests are cumulative because he "produced all documents, electronically stored information and tangible evidence in his possession, custody and control." *See* Doc. 115 at 27. The "obligation to produce responsive documents extends to all documents over which the party has control, not merely possession. *See McBryar v. Int'l Union of United Auto. Aerospace & Agr. Implement Workers of Am.*, 160 F.R.D. 691, 695-96 (S.D.Ind.1993) (holding organizations must produce documents within the possession of their officers or agents/employees); *Triple Five v. Simon*, 212 F.R.D. 523, 527 (D.Minn.2002) ('Clearly, Defendants have a legal right to the documents and the ability to obtain the documents from their tax attorneys [representing them in another matter]. Thus, the appraisal information must be produced.')." *Novelty,* 265 F.R.D. at 375-76. A party has control if he has the legal right to obtain the documents on demand. *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum, LLC,* 2007 WL 1164970, *5 (N.D. Ind. 2007).

Vinod has failed to produce documents responsive to written discovery otherwise produced by BPNA (Vinod's bank). For example, Plaintiff sought Vinod's bank records with BPNA relating to tax sales in Indiana (Doc. 106-5 at 1). On June 3, 2013, Vinod responded that the "documents responsive to this Request that are not objectionable and

that are in the possession, custody or control of Gupta are already being made available…." (*Id.* at 3). BPNA's subsequent subpoena production, however, revealed that Vinod did not produce "hundreds of checks from 2006 to 2012" drawn on Vinod's joint bank account with his wife, which relate "directly to the conduct Mr. Crissen challenges here." (Doc. 105 at 3-4; Doc. 58). If Vinod did not have copies of the bank records, including the checks, they are in Vinod's control within the meaning of Rule 34 because he may legally demand them from BPNA. *Paramount Film Distributing Corp. v. Ram*, 91 F. Supp. 778, 781-82 (E.D. S.C. 1950) ("If defendants do not have copies of the tax returns and bank account records, they are in their control within the meaning of Rule 34, since they can obtain certified copies of them from the government agency or bank concerned."); *Thomas v. Deloitte Consulting LP*, 2004 WL 1372954, *4 (N.D. Tex. 2004) (requiring party to seek copies of bank statements and checks); *Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 595-96 (S.D. N.Y. 1978) (requiring party to make request for his bank records because he failed to show he lacked control over the records by proving his access to the records was denied); *Cadle Co. v. Terrell*, 2002 WL 22075, *5 (N.D. Tex. 2002) *aff'd sub nom. Cadle Co. v. Terrell (In re Terrell)*, 46 Fed.Appx. 731 (5th Cir. 2002) (noting debtors had obligation to turn over bank and credit card statements to creditor because debtors had legal right to request copies of credit card statements from credit card company and bank statements from bank).

Vinod should be compelled to produce all documents and electronically stored information responsive to Plaintiff's written discovery that have otherwise not been produced by him or in response to the subpoenas, which are in the possession of his attorneys, banks, officers, agents and employees.

*xiii.    Request No. 30.*

There is no current dispute over these requests for production.

*xiv.    Request No. 34.*

This request seeks blank templates used to send the notices resulting in Title and Notify Costs. Vinod argues that "blank templates used in Mr. Gupta's business have absolute no relevance to issues in this case. Mr. Gupta should not have to waste time and resources responding to Plaintiff's onerous request for production of irrelevant electronic information." It is difficult to see how production of the template would be onerous. It is likely *one* Word document. This template is also relevant. Vivek produced no notices in Word format. Only Vinod apparently has the documents in Word format. If Vinod is the only one with the template, it is reasonable to infer he is the one preparing the notices, which is not only contrary to his interrogatories, but also shows, at least circumstantially, that he was preparing them on his computer. If that is true, then he incurred no legal services for Notify Costs and likely none for Title Costs as well. Regardless, there is no current dispute over this request for production because Plaintiff will wait until after further discovery makes this issue riper.

*xv.    Request Nos. 36- 38.*

There is no current dispute over these requests for production.

**C.  Conclusion**

Plaintiff requests Vinod's objections are overruled and Vinod motion for protective order be denied; and any other relief the Court deems just under the circumstances.

4590849.1                                               18

          SANDBERG PHOENIX & von GONTARD P.C.

    By:   /s/ Jesse B. Rochman
          John S. Sandberg
          Bhavik R. Patel
          Jesse B. Rochman
          600 Washington Avenue – 15th Floor
          St. Louis, MO 63101-1880
          314-231-3332
          314-241-7604 (Fax)
          jsandberg@sandbergphoenix.com
          bpatel@sandbergphoenix.com
          jrochman@sandbergphoenix.com
          *Attorneys for Plaintiff*

## Certificate of Service

    I certify on October 4, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the attorneys/parties of record.

          /s/ Jesse B. Rochman