UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JOSHUA B. CRISSEN, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:12-cv-00355-JMS-WGH |
| VINOD C. GUPTA, SATYABALA V. GUPTA, WIPER CORPORATION, VIVEK V. GUPTA and BANCO POPULAR NORTH AMERICA, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## REPLY IN SUPPORT OF DEFENDANT
## VINOD C. GUPTA'S MOTION FOR PROTECTIVE ORDER

Defendant Vinod C. Gupta ("Mr. Gupta"), by counsel, submits the following *Reply in Support of Defendant Vinod C. Gupta's Motion for Protective Order*:

### I.       INTRODUCTION

Crissen acknowledges in his Response Brief in Opposition to Defendant Vinod C. Gupta's Motion for Protective Order (the "Response") that several of the Requests in his Third Request for Production Directed to Defendant Vinod C. Gupta (the "Third Requests") overlapped with prior Requests for Production Directed to Mr. Gupta (the "First Requests" and "Second Requests"). Response, p. 2. Many of the other Requests in the Third Requests seek documents or electronically stored information protected by this Court's June 11, 2013 *Entry in Support of Order Granting, in Part, and Denying, in Part, Defendant's Emergency Motion to Quash Non-Party Subpoena Directed at Banco Popular North America and for Protective Order* (the "Protective Order"). And many other Requests seek documents or electronic records

irrelevant to the case or documents or electronic records with minimal probative value that, if produced, will unduly prejudice Mr. Gupta. Fed. R. Civ. P. 26(c)(1) provides the Court discretion to protect parties from annoyance, embarrassment, oppression, or undue burden or expense. Mr. Gupta requests the Court exercise it power to stop this harassment by entering a protective order with respect to Crissen's Third Requests. *Marress v. Am. Acad. Of Orthopaedic Surgeons*, 706 F.2d 1488, 1495 (7th Cir. 1983), *on reh'g*, 726 F.2d 1150 (7th Cir. 1984) *rev'd on other grounds*, 470 U.S. 373 (1985).

## II.  <u>ARGUMENT</u>

The Court has broad discretion when reviewing a discovery dispute and "should independently determine the proper course of discovery based upon the arguments of the parties." *Holleman v. Aramark Corp.*, 2013 WL 3872235 (S.D. Ind. July 25, 2013) (citing to *Gile v. United Airlines Inc.,* 95 F.3d 492, 496 (7th Cir.1996) ("The district court exercises significant discretion in ruling on a motion to compel.")). The Court has the obligation to limit discovery if it determines that the burden or expense to comply outweighs its likely benefit, "considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Finch v. City of Indianapolis*, 2011 WL 2516242, at *4 (S.D. Ind. June 23, 2011). Pursuant to the *Standards for Professional Conduct Within the Seventh Federal Judicial Circuit*, attorneys shall not utilize "any form of discovery or discovery scheduling as a means of harassment," and document production requests should be "limited to those documents reasonably necessary for the prosecution or defense of an action."

Crissen's Third Requests are repetitive, seek documents unrelated to the issues in this action, are subject to the Court's Protective Order, and are being used as a means of harassment.

Based upon the circumstances of this case and the nature of Crissen's Requests that are the subject of his Motion to Compel and addressed below, Mr. Gupta respectfully requests the Court enter a protective order that he shall not be required to respond to those Requests in the Third Requests to which he has not already responded.

**A.**     **Mr. Gupta's concerns that Barrett Rochman will obtain produced discovery**

Crissen argues that Mr. Gupta's concerns that Barrett Rochman could gain access to his personal, proprietary information is meritless since there is already a protective order in place that governs the handling of discovery. Mr. Gupta has substantiated his concerns set forth in his Brief in Support of Motion for Protective Order with evidence showing Barrett Rochman helped initiate the lawsuit against him. The evidence shows that Barrett Rochman contacted Crissen and advised him to contact the SANDBERG law firm in order to initiate this class action lawsuit against Mr. Gupta. Similarly, Barrett Rochman (or Jesse Rochman) contacted James Bowen and advised him to contact the SANDBERG law firm to initiate a class action lawsuit in Illinois against Barrett Rochman's business competitor, William Groome. Jesse Rochman is counsel of record in both the Illinois class action lawsuit and the instant class action lawsuit. To the contrary of the unfounded assertions in Crissen's Response, Mr. Gupta has not attributed bad motives and improper conduct to Plaintiff's counsel. Mr. Gupta has simply presented the Court with evidence of what Mr. Gupta believes to be Barrett Rochman's plan to eliminate his competitors and gain access to their proprietary business information through litigation. The Court will draw its own conclusions from the uncontradicted evidence Mr. Gupta has presented.

Crissen argues that the evidence showing Barrett Rochman has orchestrated this litigation has no bearing on the discovery process. Response, p. 4. This argument is without merit. Mr. Gupta has provided this Court with a detailed account under oath of Barrett Rochman's actions

and why he believes the instant class action lawsuit against him was initiated and why the Third Requests were served upon him. The Court is within its discretionary power to limit discovery based upon these grounds. See *Marress*, 706 F.2d at 1495; *Holleman*, at *1.

Crissen has also made the unfounded argument that Mr. Gupta's belief that Barrett Rochman initiated and is orchestrating this lawsuit is not supported by evidence, despite the following uncontroverted facts: 1) Barrett Rochman is a business competitor of Mr. Gupta; 2) Barrett Rochman made threats to Mr. Gupta; 3) Barrett Rochman told Mr. Gupta he was going to sue Mr. Gupta; 4) Barrett Rochman told William Groome he was going to sue Mr. Gupta; 5) Barrett Rochman contacted Crissen and put Crissen in touch with the SANDBERG law firm; 6) Barrett Rochman's son, Jesse Rochman, is counsel of record in the instant class action lawsuit against Mr., Gupta and in the Illinois class action lawsuit against Mr. Groome. The Court should issue a protective order decreeing that Mr. Gupta shall not respond to the Third Requests at issue in this matter.

**B.  Request Nos. 1 and 2**

In his Response, Crissen now advises the Court that he has decided not to seek production of Mr. Gupta's computer hard drive "until further discovery from subpoenas or depositions ripen the issue." Response, pp. 5-6. If this implicit acknowledgement and concession of the merit of Mr. Gupta's Motion for Protective Order respecting Request Nos. 1 and 2 amounts to anything less than a complete withdrawal of those Requests, then the issues regarding those Requests are ripe and this Court should grant a protective order that Mr. Gupta is not required to respond to these Requests.

**C.  Request Nos. 3 through 5**

Crissen argues that the Forms 1099-MISC he seeks to have Mr. Gupta produce are relevant, that the information he seeks in those documents is not available from alternative sources of information, and that those documents are not private documents protected from Mr. Gupta's disclosure. Response, pp. 7-9.

### i.     The Forms 1099-MISC are not relevant.

Relevancy means probative worth. To be relevant in the sense of having probative worth, evidence need only tend to make more or less probable the existence of a fact. The court must weigh the probative evidence against its potential for prejudice. See *U.S. v. Lee*, 724 F.3d 968, 976 (7th Cir. 2013).

The probative value of any Form 1099-MISC issued by Mr. Gupta is minimal, if it even has probative value. Whether Mr. Gupta issued any Forms 1099-MISC, and the amount reported on each such form, are not conclusive or even suggestive of whether or how much Mr. Gupta paid for title search and notification costs. Crissen fails to acknowledge that Forms 1099-MISC contain gross annual amounts, and do not provide detailed or even adequate information for Crissen to infer whether Mr. Gupta paid for title and notify costs. Any Forms 1099-MISC issued by Mr. Gupta would also include amounts paid for work related to tax sales outside of Indiana, other work besides title searches and noticing for properties purchased at tax sales both in and outside of Indiana, other work totally unrelated to the tax sale process (such as repairs or maintenance to properties), and work for Mr. Gupta's other business enterprises.

Conversely, the prejudice that would result from Mr. Gupta's production of any Forms 1099-MISC he issued highly outweighs any possible probative value since 1) the Forms' gross figures can be manipulated in a way that misleads or confuses the jury, and 2) there is the risk

Barrett Rochman will gain access to the Forms to gauge Mr. Gupta's financial strength and utilize those Forms to his competitive advantage.

### ii. <u>Mr. Gupta has provided alternative forms of information but suggests a proposal regarding Requests Nos. 3 through 5.</u>

Mr. Gupta maintains that he has produced documents and electronically stored information from alternative sources showing the title search and notify costs he paid. Production of any Forms 1099-MISC issued by Mr. Gupta is not necessary for Crissen to ascertain or prove whether or how much Mr. Gupta paid for title search and notify costs. Indeed, those Forms do not even show what the amount reflected therein was paid for. Short of a lawsuit, Barrett Rochman would never be able to obtain any Forms 1099-MISC issued by Mr. Gupta. The litigation process should not be abused so Barrett Rochman can gain access to any Forms 1099-MISC issued by Mr. Gupta. As alternative resolutions of the issues surrounding Request Nos. 3 through 5, Mr. Gupta proposes that Crissen's counsel identify the relevant information from any Forms 1099-MISC issued by Mr. Gupta that Crissen seeks in those Requests by submitting Requests for Admissions, or giving Mr. Gupta the opportunity to stipulate to certain relevant facts from any Forms 1099-MISC he issued. This methodology allows Crissen to obtain additional relevant information that he contends he needs without requiring Mr. Gupta to produce any Forms 1099-MISC issued by him.

### D. <u>Request No. 6</u>

Request No. 6 seeks every Form W-2 with any persons identified in Mr. Gupta's responses to Crissen's First Set of Interrogatories. Crissen argues these documents are necessary to determine the relationship between Mr. Gupta and the individuals listed in his responses to Interrogatories.

With respect to Forms W2, Mr. Gupta has already stated under oath in response to Crissen's Interrogatory No. 11 that he "[d]oes not have any employees in [his] tax sale business in Indiana." If Mr. Gupta does not have any employees in his tax sale business in Indiana, then he could not have issued any Forms W2 to those nonexistent employees. Crissen's Request No. 6 is an example of an unnecessary, burdensome Request that Crissen already knows the answer to which serves no purpose but to harass Mr. Gupta.

**E.**     **Request No. 7**

Crissen's Request No. 7 seeks production of the first page of each Form 1040 and Schedule C/C-EZ submitted by Mr. Gupta in connection with his tax returns. Again, these documents would provide Crissen with financial data reflecting Mr. Gupta's financial strength.

**i.**     **Forms 1040 and Schedule C/C-EZs are not relevant.**

These documents provide only gross figures, representing income received from all of Mr. Gupta's business ventures throughout the United States. Any Schedule C/C-EZ to Mr. Gupta's federal tax returns will not identify the title search or notify costs paid by Mr. Gupta for the properties in Indiana that are the subject of this action. At best, such schedules will reflect only a gross figure for all expenses incurred by Mr. Gupta for all of his business enterprises, both for tax sales in Indiana and in other states, as well as other business expenses from other business enterprises. Thus, any Form 1040 and Schedule C/C-EZ submitted by Mr. Gupta in connection with his tax returns is of only minimal, if any, probative value, and highly outweighed by the danger of unfair prejudice against Mr. Gupta since the parties can manipulate the gross figures on any such Form 1040 or Schedule C/C-EZ which risks misleading and confusing the jury. Moreover, production of these documents would result in the risk of them falling into the hands of Barrett Rochman to his own competitive advantage.

### ii. Form 1040 and Schedule C/C-EZs are subject to this Court's Protective Order.

Importantly, Crissen fails to acknowledge in his Response that Mr. Gupta's tax returns are currently subject to the Court's June 11, 2013 Protective Order which prohibits discovery of personal tax returns – they are not discoverable. See Protective Order, p. 2. And Crissen has not demonstrated good cause or any changed circumstances to cause the Court to vacate its Protective Order.

### iii. Disclosure of Forms 1040 and Schedule C/C-EZ are highly restrictive in the Seventh Circuit and are not discoverable if alternative sources of information are produced.

In the Seventh Circuit, disclosure of tax returns are highly restrictive. *Methodist Hospitals, Inc. v. Sullivan*, 91 F.3d 1026, 1031 (7th Cir. 1996). "Judicial proceedings are presumptively open, but particular information may be withheld. Personal income is among the categories that can be withheld." *Id*. Tax returns are produced only where there "is no reasonable alternative source for the information requested." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 75 (7th Cir. 1992); *Libaire v. Kaplan*, 760 F.Supp.2d 288, 294 (E.D.N.Y. 2011). Indeed, there is generally a strong public policy **against** the disclosure of income tax returns. *Fed. Sav. & Loan Ins. Corp. v. Krueger*, 55 F.R.D. 512, 514 (N.D. Ill. 1972).

### iv. Mr. Gupta has provided alternative sources of information to the Forms 1040 and Schedule C/C-EZ but suggests a proposal regarding Request Nos. 3 through 5.

Mr. Gupta has provided alternative sources of information which show that he incurred and paid title search and notification costs – he has already produced copies of paid invoices from Vivek Gupta which set forth the specific amounts paid for title search and notification costs with respect to each piece of property that he has purchased at tax sale in Indiana for as far back as he has records. He has provided thousands of Bates stamped electronic records which further

detail the specific amounts paid for title search and notification costs with respect to each piece of property that he has purchased at tax sale in Indiana for as far back as he has records. And he has produced the thousands of certified mail receipts which incontestably demonstrate that notices were in fact sent to the parties identified in a title search for each piece of property he has purchased at tax sale in Indiana that was the subject of a redemption notice for as far back as he has records. Crissen has not demonstrated to the Court that Mr. Gupta's tax returns are necessary for him to pursue his case. Conversely, Mr. Gupta has shown the Court that his interest in not producing his tax returns is paramount considering his relationship with Barrett Rochman and Barrett Rochman's actions as set forth in Mr. Gupta's Brief in Support of Motion for Protective Order.

Mr. Gupta maintains that he has produced alternative sources of the relevant information sought by Crissen's request for his Forms 1040 and Schedule C/C-EZ, and that production thereof is not necessary for Crissen to litigate his claims. Mr. Gupta has provided alternative sources of information which show he incurred and paid title search and notification costs. Frankly, whether or how these amounts were reported on his personal income tax returns is relevant only to the issue of whether or how he reported these amounts on his personal tax returns, not to the issue of whether or how he incurred and paid these amounts. Crissen has not and cannot show the Court that Mr. Gupta's tax returns are necessary for him to pursue his case. Short of a lawsuit, Barrett Rochman would never be able to obtain any Forms 1040 and Schedule C/C-EZs filed by connection with Mr. Gupta's federal tax returns. The litigation process should not be abused to permit Barrett Rochman to can gain access to such Forms 1040 and Schedule C/C-EZs. As alternative resolutions of the issues surrounding Request No.7, Mr. Gupta proposes Crissen's counsel identify the relevant information from any Forms 1040 and Schedule C/C-EZs

filed by Mr. Gupta that Crissen seeks in those Requests by submitting Requests for Admissions, or giving Mr. Gupta the opportunity to stipulate to certain relevant facts from any Forms 1040 and Schedule C/C-EZs he filed. This methodology allows Crissen to obtain additional relevant information that he contends he needs without requiring Mr. Gupta to produce any such Forms 1040 and Schedule C/C-EZs filed by Mr. Gupta.

**F.      Request Nos. 8 and 35.**

Mr. Gupta agrees with Crissen's statement in his Response that there is no current dispute over Request Nos. 8 and 35 in the Third Requests.

**G.      Request Nos. 9 and 10**

Crissen argues that Mr. Gupta's financial statements reflecting Mr. Gupta's net worth are relevant and should be produced because Crissen seeks punitive damages in this action.

Crissen's Requests are overly broad – they ask for all financial statements that reflect expenses paid for services Vivek Gupta and Lewis Maudlin have ever rendered to Mr. Gupta, not just services for Indiana title searches and notices. Second, Mr. Gupta has already provided Crissen the underlying data he needs to address the issue of title search and notification costs. Mr. Gupta's financial information is not necessary for Crissen to pursue his claims.

Crissen cites extra-circuit to support his argument that evidence of a defendant's net worth and financial condition is relevant when punitive damages are sought. Although a defendant's financial condition can be relevant when punitive damages are sought, the Southern District of Indiana does not automatically compel disclosure of a party's financial information under those circumstances. Information regarding Mr. Gupta's financial condition must be balanced with legitimate concerns such as the "needs of the case," and the party's interest against disclosure of financial information. *Finch v. City of Indianapolis*, 2011 WL 2516242, at *4. The

Courts may, for good cause shown, forbid discovery or stage its production to protect a party from annoyance, embarrassment or oppression. *Id.* This Court has recognized that it is sometimes appropriate to bifurcate liability and punitive damages discovery in light of the sensitivity of financial information. *Flomo v. Bridgestone Americas Holding, Inc.*, 2009 WL 1456736 at *11 (S.D. Ind. May 20, 2009).

In the present matter, it is imperative that Plaintiff not obtain Mr. Gupta's financial information. The Court has been advised of Mr. Gupta's concerns that financial information he provides risks falling into the hands of a business competitor, Barrett Rochman, who instigated this action. See Motion for Protective Order Brief, pp. 3-7. Crissen has not shown a compelling need for any financial statements. And the Court has already issued a Protective Order regarding Mr. Gupta's financial statements, holding that those statements are not relevant because they are not necessary for the determination of the issues before the court at this time. See Protective Order, p. 2. The case is still in its preliminary stage. The Court is months away from even determining whether the class in this matter should or should not be certified. In contradiction of Mr. Crissen's allegation, the case is not ripe for consideration of whether Mr. Gupta's financial statements should be produced. Even if the case were ripe for consideration of this issue, Mr. Gupta's financial statements should not be produced for the reasons set forth in his Responses to Crissen's Third Requests, Motion for Protective Order Brief and the reasons stated herein.

### H.   Request Nos. 11-12

Crissen's Requests Nos. 11 and 12 direct Mr. Gupta to produce all checks to Vivek Gupta and Lewis Maudlin for payments of services identified on the Certifications submitted by Mr. Gupta. Crissen argues, "Vinod has not produced checks corresponding to the Title and Notify Costs certified by Vinod." Motion to Compel Brief, p. 9. In fact, however, Mr. Gupta has

already produced the documents he has that are responsive to these requests, and Banco Popular has already produced documents it has which related to these requests. Some of these documents were copies of checks from Mr. Gupta to Vivek Gupta. As specifically stated in Mr. Gupta's Objection to these Requests, Request Nos. 6, 9, 12, and 13 of Crissen's **First** Requests sought production of the exact same things, and Mr. Gupta has already responded to those earlier Requests and produced all documents and electronic records he has responsive thereto. These Requests are cumulative, duplicative, redundant, oppressive, and designed to harass and burden Mr. Gupta with needless expense.

### Request Nos. 13 and 14

Crissen argues that Mr. Gupta did not properly produce the Forms 137b and Notices of Sale and Redemption Period Expirations ("Notice") in response to Request Nos. 2, 3 and 4 of Crissen's First Requests, and thus requested the same documents again in Word format (i.e., native format) in Request Nos. 13 and 14 of his Third Requests. Crissen also baldly alleges that Mr. Gupta's PDF production did not provide all metadata associated with the files.

Mr. Gupta produced all Forms 137b and Notices in his possession, custody or control in a permissible format as requested by Crissen in his First Request. **In his First Request, Crissen did NOT request that any electronically stored information be produced in native format.** Crissen asked for metadata. In response and as expressly allowed by Fed. R. Civ. P. 34(b)(2)(E)(ii), Mr. Gupta produced his electronic records containing the Forms 137b and Notices to Crissen in .pdf format, and provided all metadata for those electronic records to Crissen. Crissen has not, and cannot, argue that Mr. Gupta has failed to comply with Fed. R. Civ. P. 34(b)(2)(E)(ii). Nor has Crissen cited any authority to contradict the controlling authority cited by Mr. Gupta in his Brief in Support of Motion for Protective Order on this issue that

supports Mr. Gupta's position. See *Auto Technologies Limited Partnership v. Automationdirect.com, Inc.*, 248 F.R.D. 556, 558-59 (N.D. Ill. 2008) (denying defendant's motion to compel plaintiff to produce documents in native format when such format was not requested by defendant; defendant's production of documents in .pdf format held sufficient); *Secure Energy, Inc. v. Coal Synthetics*, 2010 WL 597388 at *4 (E.D. Mo., Feb. 17, 2010) ("[T]here is no requirement under the federal rules of civil procedure for Defendants to produce the drawing in native format when Plaintiffs failed to specific [sic] a format in their requests. Plaintiff failed to request that Defendants produce their ESI in native format. Defendants fulfilled their discovery obligations by producing the engineering documents in PDF.").

Crissen cites to the Sedona Principles in support of his argument that Mr. Gupta should re-produce discovery in response to Request No. 13 and 14. In denying defendant's motion to compel production of document in native format, the Court in *Auto Technologies Limited Partnership* made note of the following comment from the Sedona Conference:

> One comment from the conference is of particular interest here, addressing a hypothetical situation where, like ADC here, a party requesting production did not specify a format: The producing party assembles copies of the relevant hard copy memoranda, prints out copies of relevant e-mails and electronic memoranda, and produces them in a PDF or TIF format that does not include metadata. Absent a special request for metadata (or any reasonable basis to conclude the metadata was relevant to the claims and defenses in the litigation), and a prior order of the court based on a showing of need, this production of documents complies with the ordinary meaning of Rule 34.*Williams v. Sprint/United Management Co.*, 230 F.R.D. 640, 643 (D.Kan.2005)(quoting The Sedona Principles, Comment 9a); *Pace v. International Mill Service, Inc.*, 2007 WL 1385385, *2 (N.D.Ind. May 7, 2007) (same). In a later comment, the conference states that "[a]lthough there are exceptions to every rule, especially in an evolving area of the law, there should be a modest legal presumption in most cases that the producing party need not take special efforts to preserve or produce metadata." Williams, 230 F.R.D. at 651 (quoting The Sedona Principles, Comment 12a). There was no request for metadata here until recently - after production. ADC was the master of its production requests; it must be satisfied with what it asked for.

*Auto Technologies Limited Partnership*, 248 F.R.D. at 560.

Crissen was master of his production requests. He did not request that Mr. Gupta produce electronically stored information in native format. Mr. Gupta produced the Forms 137b and Notices in .pdf format, and provided Crissen the metadata for those electronic records. Despite Crissen's continuing refusal or inability to access that metadata from among the over 48,000 Bates numbered documents and electronic records produced by Mr. Gupta, it was provided to Crissen. Pursuant to Fed. R. Civ. P. 34(b)(2)(E)(iii) and pertinent case law, Mr. Gupta fulfilled his discovery obligations and is not required to produce the same electronic records again in Word format.

Sometimes what is **not** said speaks louder than what is said. It is telling that, while Crissen attempted to respond to Mr. Gupta's Motion for Protective Order concerning Request Nos. 13 and 14, Crissen's own Motion to Compel did NOT seek an order compelling Mr. Gupta to produce the Forms 137b and Notices in Word format as sought in his Request Nos. 13 and 14. Crissen implicitly acknowledges that the arguments made in his Response do not have sufficient merit to form the basis of a motion to compel.

### **Request Nos. 15-18**

Crissen's Request Nos. 15 through 18 are overbroad and unduly burdensome. Crissen freely acknowledges that these Requests are repetitive of his prior discovery requests. Response, p. 14. These Requests are overbroad because they seek all communications related to all services provided by Vivek and Lewis Maudlin, even if those communications relate to properties not redeemed.

The Requests also make no attempt to limit the communications subject to attorney-client or work-product privilege. Crissen asserts that Mr. Gupta waived these objections based upon attorney-client and/or work-product privilege, despite the fact that Mr. Gupta objected on those

14

exact grounds in his Preliminary Objection to Counsel.  See Mr. Gupta's Responses to Crissen's Third Requests, p. 1.

Crissen makes the baseless accusation that Mr. Gupta produced false invoices from Vivek.  Crissen has no evidence whatsoever to support this wild accusation.  Mr. Gupta has already produced all relevant, non-privileged communications with Vivek and Lewis Maudlin to Crissen.  Request Nos. 15 through 18 are redundant and oppressive since Mr. Gupta has already produced all documents and electronic records he has responsive to Request Nos. 5, 6, 7, 8, 9, 10 and 11 of Crissen's **First** Requests which sought production of the exact same things as Request Nos. 15 through 18 of Crissen's Third Requests.  These cumulative, redundant and duplicative Requests are designed to harass and burden Mr. Gupta with needless expense.

### **Request Nos. 19 and 20**

Crissen requested all documents and electronically stored information  showing transfer of payment of funds or money to Vivek Gupta (Request No. 19) and Lewis Maudlin (Request No. 20) for the amounts listed on the Certifications submitted by Mr. Gupta.   Crissen reasons that he submitted Requests Nos. 19 and 20 because, "Vinod produced no documents or ESI showing he paid for Title & Notify Costs in his Certifications" in response to Crissen's prior discovery requests. Motion to Compel Brief, p. 10.

Crissen requested all documents and electronically stored information showing transfer of payment of funds or money to Vivek Gupta (Request No. 19) and Lewis Maudlin (Request No. 20) for the amounts listed on the Certifications submitted by Mr. Gupta.   Crissen acknowledges that these Requests are repetitive and duplicative, but states that he served Request Nos. 19 and 20 because, as he alleges, "Vinod produced no documents or ESI showing he paid for Title & Notify Costs in his Certifications" and "[a]ll that he has produced are false invoices from Vivek."

Again, Crissen makes baseless and unsupported accusations that Mr. Gupta produced false invoices as an excuse to justify his repetitive, abusive discovery requests. He has no evidence showing the invoices are false. As specifically stated in Mr. Gupta's Objection to these Requests, Request Nos. 6, 9, 12, and 13 of Crissen's **First** Requests sought production of the exact same things, and Mr. Gupta has already responded to those earlier Requests and produced all documents and electronic records he has responsive thereto. Request Nos. 19 and 20 are two of many examples of Crissen abusing the discovery process by submitting cumulative, duplicative and redundant requests that have previously already been responded to. The purpose of requests such as Request Nos. 19 and 20 is to harass and burden Mr. Gupta with needless expense in abrogation of an attorney's duties as set forth in the *Standards for Professional Conduct within the Seventh Federal Judicial Circuit*.

### Request Nos. 25 and 26

Crissen states in his Response that there is no dispute regarding Requests No. 25 and 26. Mr. Gupta addressed Crissen's Request Nos. 25 and 26 in his Brief in Support of Motion for Protective Order. If Crissen's implicit acknowledgement and concession of the merit of Mr. Gupta's Motion for Protective Order respecting Request Nos. 25 and 26 amounts to anything less than a complete withdrawal of those Requests, then this Court should grant a protective order that Mr. Gupta is not required to respond to these Requests.

### Request Nos. 27-29

In Request Nos. 27 through 29, Crissen seeks production of "Vinod's banking records and communication with the banks." Crissen argues that, "if Mr. Gupta did not have copies of the bank records, they are in his control," and he should be required to retrieve and produce

documents in the possession of Vivek and BPNA that have not otherwise been produced. See Response, p. 17.

The documents produced by Vivek and BPNA are all documents that were outside Mr. Gupta's possession. Even if Mr. Gupta could have gained access to the documents produced by Vivek and BPNA, he would not be obligated to produce these documents again. See *Whitlow v. Martin*, 259 F.R.D. 349, 355 (C.D. Ill. 2009) ("For the most part, the Court finds Third Request for Production of Documents No. 3 to be unreasonably cumulative. With respect to documents that have already been produced in discovery, it is unreasonable to require Plaintiffs to produce additional copies.") Additionally, Crissen does not acknowledge that Mr. Gupta filed a Motion for Protective Order on May 22, 2013, asking the Court to bar BPNA's production of Mr. Gupta's banking information. Mr. Gupta served his response to Crissen's First Requests the same day that the Protective Order was issued. After the Court entered its Protective Order, BPNA produced documents responsive to Crissen's Requests and within the parameters of the Protective Order. Mr. Gupta is not obligated to produce documents that would have created a burden upon him that far outweighs the benefit Crissen gains by obtaining copies of documents he already has in his possession.

The cases Crissen cites in support of his argument that Mr. Gupta should have to produce documents already produced by Vivek and BPNA are inapposite and inapplicable to the present case. In *Paramount Film Distributing Corp. v. Ram*, 91 F. Supp. 778, 781-82 (E.D.S.C. 1950), the defendant was ordered to produce bank records in his bank's possession but there is no indication the defendant's bank was also subpoenaed by plaintiff requesting the same documents relevant to that case. Similarly, in *Thomas v. Deloitte Consulting LP*, 2004 WL 1372954 (N.D. Texas, June 14, 2004), non-parties Florimbi Partners International, Inc. ("FPI"), and Conceptual

Health Solutions, Inc. ("CHS"), were required to retrieve checks and bank statements from Bank of America and Regions Bank. Bank of America and Regions bank were not subpoenaed by the defendant. In fact, the court provided FPI and CHS an alternative to execute authorizations to enable the defendant to obtain the documents directly from the bank. *Id*. at 4. In the present matter, Crissen already subpoenaed and obtained Vivek and BPNA's documents. Mr. Gupta need not produce the same documents already produced by his attorney and by his bank. The other cases Crissen cites present the same fact patterns and do not address a situation where the defendant is subject to a motion to compel documents already produced by his bank. See *Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1978) (No indication Banque Populaire Suisse was subpoenaed; Zervos ordered to produce documents regarding banking transactions with the Banque Populaire Suisse); *Cadle Co. v. Terrell*, 2002 WL 22075 (N.D. Tex., Jan. 7, 2002) (No indication Terrell's bank records were subpoenaed by creditor, Cadle Co.). *Cadle Co.*, is also distinguished since it is a bankruptcy case and Terrell had the obligation to provide his financial condition to the trustee and creditors so the trustee and creditors could "test the completeness of the debtor's disclosure requirements for a [11 U.S.C. 727(a)(3)] discharge." *Id*. at *4. In contrast, in the present matter, Mr. Gupta is not obliged by law to provide his personal financial statements.

Crissen's argument that Mr. Gupta should have to spend time and money producing documents already provided to Crissen by Vivek and BPNA provides further justification for Mr. Gupta's concerns that the present litigation is being fueled by Barrett Rochman with the strategy of forcing Mr. Gupta to expend needless time and effort on irrelevant discovery, grinding Mr. Gupta down and putting him out of business. It would have been unreasonable for Mr. Gupta to retrieve and produce documents already produced by BPNA and Vivek. *Whitlow*, 259 F.R.D. at

355.  Finally, Mr. Gupta has already produced all documents in his possession responsive to these Requests.  In the event BPNA's and Vivek's documents were within his control, all of those documents have been produced as well.

**Request No. 34**

Crissen states in his Response there is no discovery dispute over Request No. 34 at this time.  Mr. Gupta addressed Crissen's Request No. 34 in his Brief in Support of Motion for Protective Order. If Crissen's implicit acknowledgement and concession of the merit of Mr. Gupta's Motion for Protective Order respecting Request No. 34 amounts to anything less than a complete withdrawal of that Request, then this Court should grant a protective order that Mr. Gupta is not required to respond to that Request.

**Request Nos. 36-38**

Crissen states in his Response there is no discovery dispute over Request Nos. 36 through 38.  Mr. Gupta addressed Crissen's Request Nos. 36 through 38 in his Brief in Support of Motion for Protective Order.  If Crissen's implicit acknowledgement and concession of the merit of Mr. Gupta's Motion for Protective Order respecting Request Nos. 36 through 38 amounts to anything less than a complete withdrawal of those Requests, then this Court should grant a protective order that Mr. Gupta is not required to respond to these Requests.

### III.    CONCLUSION

Mr. Gupta has diligently responded to Crissen's multiple discovery requests to him, producing in the process well over 48,000 Bates numbered documents and electronic records. BPNA and Vivek have produced tens of thousands of additional documents in response to Crissen's discovery requests.  Crissen has all information he needs to litigate his claims.  Many of Crissen's Third Requests are repetitive and duplicative of his First and Second Requests.

Other Requests seek Mr. Gupta's private and/or proprietary information. Mr. Gupta has legitimate concerns that the Third Requests were sent to grind him down and provide Barrett Rochman with his private information, to Barrett Rochman's competitive advantage. Mr. Gupta's concerns are supported by the relationship between Barrett Rochman and Mr. Gupta, and Barrett Rochman's actions preceding this lawsuit. Mr. Gupta respectfully requests that the Court protect him from Crissen's Third Requests by issuing a Protective Order that he shall not be required to respond to those Requests in the Third Requests to which he has not already responded.

HARRISON & MOBERLY, LLP

*/s/ David J. Theising*
David J. Theising
Stephen E. Arthur
Marc A.W. Stearns
HARRISON & MOBERLY, LLP
10 West Market Street, Suite 700
Indianapolis, Indiana 46204
Telephone:     (317) 639-4511
Facsimile:     (317) 639-9565
Email: dtheising@harrisonmoberly.com
          sarthur@harrisonmoberly.com
          mstearns@harrisonmoberly.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that, on the 21st day of October, 2013, a copy of the foregoing *Reply in Support of Defendant Vinod C. Gupta's Motion for Protective Order* was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


John S. Sandberg
Bhavik R. Patel
Jesse B. Rochman
SANDBERG, PHOENIX & von GONTARD, P.C.
600 Washington Avenue, 15th Floor
St. Louis, Missouri 63101
Email: jsandberg@sandbergphoenix.com
Email: bpatel@sandbergphoenix.com
Email: jrochman@sandbergphoenix.com

Gregory A. Blue
Joshua D. Wolson
DILWORTH PAXSON, LLP
99 Park Avenue, Suite 320
New York, New York 10016
Email: gblue@dilworthlaw.com
Email: jwolson@dilworthlaw.com


Edward D. Thomas
A. Richard Blaiklock
LEWIS WAGNER, LLP
501 Indiana Avenue, Suite 200
Indianapolis, Indiana 46202-6146
Email: ethomas@lewiswagner.com
Email: rblaiklock@lewiswagner.com

David P. Friedrich
WILKINSON, GOELLER,
 MODESITT, WILKINSON
 & DRUMMY, LLP
333 Ohio Street
Terre Haute, Indiana 47807
Email: DPFreidrich@wilkinsonlaw.com


*/s/ David J. Theising*


David J. Theising
HARRISON & MOBERLY, LLP
10 West Market Street, Suite 700
Indianapolis, Indiana 46204
Telephone: (317) 639-4511
Facsimile: (317) 639-9565
Email: dtheising@harrisonmoberly.com

Counsel for Defendant Vinod C. Gupta