UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

JOSHUA B. CRISSEN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

VINOD C. GUPTA, *et al.*,

Defendants.

Case No.: 2:12-cv-00355-JMS-WGH

**Plaintiff's Reply Brief in Support of Motion to Compel**

Plaintiff Joshua B. Crissen ("Plaintiff"), individually and for all others similarly situated, through his attorneys Sandberg Phoenix & von Gontard PC, respectfully submits his reply in support of his motion to compel (Doc. 106):

## I. Introduction

The purpose behind this lawsuit is to get relief for those persons who were victims of Defendants' scheme to artificially inflate the money required for the redemption of real property sold at tax sales in Indiana. *See* Doc. 85 ¶¶ 2, 50. Defendants executed their scheme by submitting Certifications to county auditors, whereby Vinod certified under oath that Defendants *incurred and paid* certain fees and costs, which Plaintiff and the class were then required to pay to redeem their property. *Id.* at ¶¶ 65-73. The purpose of the Document Requests is to seek evidence, which has a tendency to make it more or less probable that Defendants neither incurred nor paid these fees and costs in violation of federal RICO, Indiana RICO, the Indiana Crime Victims Act and other common law torts. None of Vinod's arguments justify prohibiting disclosure of the relevant documents covered by the Document Requests. The motion to compel should be granted.

## II. Argument

Vinod has been trying to block discovery of relevant information from the beginning. At first he sought to preclude discovery of relevant documents by decrying Plaintiff was embarking on a "fishing expedition" with its subpoena to BPNA. See Doc. 37, p. 6. That proved unsuccessful. *Hickman v. Taylor*, 329 U.S. 495, 507-508 (1947) ("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case."). So now Vinod attempts to preclude Plaintiff from inquiring into relevant facts and documents by crying Barrett Rochman instigated this lawsuit to eliminate his business competitors and obtain Vinod's personal and business information for his own competitive advantage. *See* Doc. 138, pp. 2-3.

When a person or business is defrauding the federal government, Congress encourages persons with knowledge of the fraud, even if they are business competitors, to alert the federal government of the fraud. *See, e.g., United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1154 (3d Cir.1991) (holding that the general intent of the 1986 amendments to the False Claims act was "to encourage persons with firsthand knowledge of fraudulent misconduct to report fraud…. The Senate Report stresses that in order to detect fraud it was necessary to enlist the 'cooperation of individuals who are … close observers'"). Society has an interest in preventing fraud on its members, and there is no sound policy reason for discouraging a person with knowledge of the fraud from alerting a victim of the fraud, even if the person with knowledge of the fraud is a competitor of the person committing the fraud.

Barrett Rochman alerted Mr. Crissen he may be the victim of Defendants' fraud. Barrett Rochman's motive for coming forward is irrelevant. He could have done it for a multitude of reasons: as a Good Samaritan, to eliminate a competitive disadvantage created

by Vinod's scheme[1] or, as Vinod suggests, to eliminate Vinod as a competitor. Regardless of Barrett Rochman's motive, Plaintiff and each putative class member would still be victims of Defendants' fraud and entitled to the relief they seek. If this litigation ultimately puts Vinod out of business, it is not because of what Barrett Rochman did, it is because Vinod stole more money from Plaintiff and the class than he can pay back.

Under Rule 11, Plaintiff's counsel has certified the Complaint is not being presented for any improper purpose; the claims are warranted by existing law; and the factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation. Plaintiff's counsel takes it obligations under Rule 11 seriously. If Vinod truly believed this lawsuit was brought for an improper purpose, he should file a Rule 11 motion. He has not because Plaintiff has evidence Vinod did not incur and pay the costs and fees in the Certifications.

Vinod's "belief" that documents may reach the hands of his competitors is nothing more than a thinly veiled accusations that officers of this court will violate the protective order. Vinod presented no evidence that Plaintiff's counsel would violate this protective order or has violated any protective orders in other matters. This belief, then, is not only unsubstantiated, but assumes the Court is not capable of enforcing its own orders. The Court can fully enforce its protective order, so Vinod's resistance to producing responsive documents has more to do with his concern that production will show he defrauded Plaintiff and the putative class than his concern it will make it into the hands of competi-

---

[1] Assume that if two competitors actually incurred and paid Notify and Title Costs, and equal in all respects, could obtain a profit $1 by bidding $1,000 for a lien at an Indiana tax sale. If Competitor 1 certified he incurred and paid $500 in Notify and Title Costs, when in fact he did not, and Competitor 2 actually incurred and paid $500, Competitor 1 could bid $1,500 to obtain the same $1 in profit that Competitor 2 could only obtain by bidding $1,000.

tors. Vinod's "belief," speculation and conjecture are not proper grounds to preclude discovery of relevant information, which the Document Requests seek as discussed below. Vinod's "belief" and speculation fail to rise to the level of good cause for entering a protective order.

### A. Vinod's Preliminary Objections

Vinod argues he "specifically object[ed] to each Request," but does not argue that his "Preliminary Objections by Counsel" are proper. He could not make this argument because preliminary objections placed in a separate section are not objections at all and will not be considered. *Capital Machine Company, Inc. v. Miller Veneers, Inc.*, No. 09-00702 (S.D. Ind. Jan. 10, 2012) (Magnus-Stinson, J.) (citing *Novelty, Inc. v. Mt. View Mktg.,* 265 F.R.D. 370, 375 (S.D. Ind. 2009)).

Vinod's objections throughout also appear to be "'boilerplate objections' asserted 'without specifying how each request for production is deficient'" and should be "deemed improper objections to discovery requests." *Novelty*, 265 F.R.D. at 375. Plaintiff demonstrated this by example. Vinod took issue with some examples, but ignored the examples that best illustrated the reflexive nature of Vinod's objections. For example, Plaintiff stated:

> Vinod routinely objected because a request was "not limited in time." Plaintiff's Document Requests instructed that the "time period for your responses is 2002 to present." (Doc. 106-1 at 6).

*See* Doc. 108, p. 4. Vinod ignored this in his response, tacitly conceding this objection was improper. Similarly, Plaintiff provided an example of how Request Nos. 11-12 were limited to "services identified on the Certifications[2] submitted by [him]," but still object-

---

[2] "Certifications" is a defined term to mean the 137B form used to certify Notify Costs and Title Costs incurred in connection with certificates of sale purchased at Indiana tax sales or commissioner sales. (Doc. 1, ¶ 24; Doc 1-1).

ed to them as "overly broad because in [*sic*] seeks documents and electronic records containing information related to non-Indiana tax sales or commissioner's sales…." *See* Doc. 108, p. 4. Vinod ignored this in his response.

Another example is that Vinod objected to 23 of the 38 Document Requests as "unduly burdensome and expensive for Gupta to respond to." *See* Doc. 115-3, Nos. 1, 2, 9-20, 25-30, 32, 34, 38. One of the cases cited by Vinod held:

> And with respect to claims of undue burden, conclusory representations in briefs do not suffice either. *Cunningham*, 255 F.R.D. at 478; *see also Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 10 (D. D.C. 2007) ("[T]he Court only entertains an unduly burdensome objection when the responding party demonstrates how the document is overly broad, burdensome, or oppressive, *by submitting affidavits or offering evidence which reveals the nature of the burden*. The responding party cannot just merely state in a conclusory fashion that the requests are burdensome." (internal quotations and citations omitted)).

*Flomo v. Bridgestone Americas Holding, Inc.*, 2009 WL 1456736, *1 (S.D. Ind. 2009) (emphasis added) (cited by Vinod at Doc. 138, p. 13). Vinod submitted no affidavits or offered any evidence which reveals the nature of the burden, such as an affidavit stated the time and cost it would take to produce the requested documents. Rather, Vinod merely stated this objection in conclusory fashion. Most of Vinod's other objections were also stated in conclusory fashion. These conclusory and generic objections should not be entertained by the Court.

### B. Vinod's specific objections should be overruled.

After dispensing with Vinod's irrelevant war-cry and eliminating Vinod's generic objections, the Court can get to the proper inquiry, which is whether the information sought

by Plaintiff is relevant to his claims. The following are those requests ripe for resolution at this time.[3]

### i. Request Nos. 3 and 4

Vinod's only new argument to preclude production of the 1099s is that unfair prejudice outweighs any possible probative value because:

> 1) the Forms' gross figures can be manipulated in a way that misleads or confuses the jury, and 2) there is the risk Barrett Rochman will gain access to the forms to gauge Mr. Gupta's financial strength and utilize those forms to his competitive advantage.[4]

*See* Doc. 138, p. 8. Such arguments go to admissibility, not to discoverability. Rule 26(b) permits parties to obtain "discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense." Rule 403 allows a court to exclude *relevant* evidence if its probative value is "substantially outweighed" by unfair prejudice, confusion of the issues, or its potential for misleading a jury. A similar argument was rejected by another court in this Circuit:

> Defendants predict that the information sought is likely to be excluded under the Rules of Evidence because its potential for confusion, prejudice and delay will outweigh any marginal probative value. That may be the end result, but that determination is premature at the discovery stage. At the discovery stage, the Court cannot rule out the information's possible relevance to Plaintiff's claims. Defendants may also be correct that the complaints are not good evidence of discrimination: that is, better evidence would be a black employee who committed similar infractions but was treated more favorably. (d/e 34, p. 9). However, determinations of admissibility and probative force belong at summary judgment or trial.

---

[3] Vinod claims Plaintiff implicitly acknowledges and concedes the merit of Vinod's motion for protective order as to requests not addressed by this motion to compel. *See, e.g.,* Doc. 137, p. 4. Plaintiff does not acknowledge or concede the merits of Vinod's motion. Plaintiff has not sought to compel production of certain requests based on the parties' attempts to resolve their discovery disputes as required by rule. Once further discovery sharpens the issues related to the other requests, and assuming the parties cannot resolve their dispute without court intervention at that time, Plaintiff will move to compel production of documents responsive to the requests not discussed in this motion to compel.

[4] Plaintiff questions the premise that knowing the details of a business's financial statements (or a subpart of them) provides a competitive advantage. The SEC requires publicly traded companies to publish their financial statements. Plaintiff has never heard public companies claim they have lost one or more competitive advantages because their financial statements were available to their competitors.

*Stimeling v. Board of Educ. Peoria Public Schools Dist. 150*, 2010 WL 375337, *5 (C.D. Ill. 2010). If Vinod did not submit the 1099s or the amounts reported on these forms do not correspond to the amounts certified by Vinod, the 1099s make it more probable (i.e., relevant) Vinod did not pay Vivek and Lewis for Title and Notify Costs.[5] It is premature to decide whether the documents are admissible.[6] Vinod argues as if he has 1099s to produce and the production of those documents will harm him, without ever actually saying he has any 1099s. Based on the complete absence of documents showing payment of incurred fees, Vinod probably never issued a 1099 to Vivek or Maudlin.

Vinod's suggested alternative approach requires Plaintiff to jump through more hurdles to obtain this relevant information. It would require Plaintiff to guess at what information the 1099s contain or do not contain and then draft requests for admission, which Vinod can then object to rather than answer. Vinod cites no federal rules or cases that would require Plaintiff to jump through such hurdles to have access to relevant information. Indeed, even if Vinod offered to examine the contents of the returns and swear by affidavit to what they contain, this would still not be a viable alternative. *Shaver v. Yacht Outward Bound*, 71 F.R.D. 561, 564 (N.D. Ill. 1976) ("It is not enough that he examine the contents of the returns and swear by affidavit to what they contain.") (cited with ac-

---

[5] This may be circumstantial evidence, but "Fraud may be proven through circumstantial evidence." *Estate of Kanter v. Comm'r*, 337 F.3d 833, 847 (7th Cir. 2003).

[6] Even if prejudice was considered by the Court, Vinod has not shown it. Vinod repeatedly asserts he may be subject to prejudice because "there is the risk Barrett Rochman will gain access to the forms to gauge Mr. Gupta's financial strength and utilize those forms to his competitive advantage." *See* Doc. 138, p. 8 and footnote 4, supra. Initially, the protective order already entered by the Court eliminates this risk. Moreover, Vinod fails to explain how a 1099, which discloses the ***amounts paid to others***, would allow anyone to gauge his financial strength. Nor does Vinod articulate how knowing Vinod's financial strength would provide a competitive advantage to a competitor. Vinod's bid history and purchase history at tax sales would be the best indicator of his financial strength. If competitors wanted this information, it is available to the public. Of course, there is no need for them to obtain it because it provides no real competitive advantage.

ceptance by *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 75 (7th Cir. 1992)). The 1099s are relevant and the liberal rules of discovery allow Plaintiff access to those documents. The 1099s should be produced.

### ii. Request No. 7

Vinod repeats his argument that the tax returns are of minimal probative value which relevance is substantially outweighed by the unfair prejudice production would cause Vinod. Such an argument does not preclude discovery of the documents as discussed above.

On October 11, the Court informed the parties at the settlement conference it was likely ordering production of the tax returns unless some other authority convinced it otherwise. Vinod cites to the same cases already presented to the Court before it made its likely ruling known to the parties. *See* Doc. 115, pp. 8, 16 and Doc. 138, p. 10 (both citing *Methodist Hospitals, Inc. v. Sullivan*, 91 F.3d 1026, 1031 (7th Cir. 1996) and *Poulos*, 959 F.2d at 75. *Methodist Hospitals* is inapposite because it dealt with the public's ability to unseal and review documents like tax returns.

> Contrary to the [Vinod's] assertion, the Seventh Circuit in *Poulos* ... did not "opine" that public policy favors the non-disclosure of tax returns. Indeed, the Seventh Circuit expressed no opinion on the issue and rather held that "[t]ax returns in the hands of a taxpayer are not privileged." *Id*. at 74. [Vinod's] remaining citations in this part of their brief merely is a copy of the string citation employed by the Seventh Circuit in stating the opinion (which it did not adopt).

*U.S. v. Six Hundred Forty–Four Thousand Eight Hundred Sixty and 00/100 Dollars in U.S. Currency*, 2007 WL 1164361, *2 (C. D. Ill. 2007). As one district court in this circuit noted:

> Some courts have suggested that there is a heightened showing that must be made before tax returns are discoverable. In their view, it is not enough that the returns are relevant; there must be a compelling need for the information and/or it must not be available from another source. *See, e.g., Trilegiant Corp. v. Sitel Corp.*,
4637312.1                               8

2010 WL 4668950, 7 (S.D.N.Y.2010); *Thornton v. UL Enterprises, LLC* 2010 WL 4721235, 3 (W.D.Pa.2010). Nothing in Rule 26 or in the regulations or statutes governing income tax returns compels this additional overlay, and the Seventh Circuit has not adopted such a position. Indeed, the court said in Poulos: "We express no opinion at this time on the validity or proper formulation of this policy against disclosure." And, it emphasized that "if we were to recognize some sort of presumption against disclosure, we would certainly leave enforcement of the policy to the discretion of the trial court...." 959 F.2d at 75.

*Jackson v. N'Genuity Enterprises Co.*, 2010 WL 4928912, *2 (N.D. Ill. 2010).

Vinod claims he bartered for Vivek's legal services.

Gross income includes the fair market value of property or services received in exchange for other services….Standing alone, this transaction is a barter exchange, one in which a taxpayer would properly report the proceeds as ordinary income on his Federal income tax return for the year in which the exchange occurred. Absent some authority to the contrary, a taxpayer would be unable to defer recognition of such income to a subsequent year.

*Mingo v. Commissioner*, T.C. Memo, 2013-149, 12, 2013 WL 2631118, *4 (2013). Vivek had to report the bartered value as income and Vinod should have deducted the bartered value as an expense. Vinod's failure to report and deduct the Title and Notify Costs on his tax returns increases the probability he did not pay Vivek Title and Notify Costs. Thus, these portions of the tax return are relevant to show whether bartering occurred or instead the bartering is the excuse that Vinod has adopted to explain his failure to pay Vivek the millions of dollars of Redemption expenses he swore he had paid.

Even if Plaintiff had to make a showing beyond relevance to obtain discovery of income tax returns — a proposition to which the Seventh Circuit has not subscribed — that showing is made here given the course of discovery and the absence of records that one would have expected to have been available and which would have either supported or refuted, at least in part, Vinod's position he incurred and paid these costs. The only documents Vinod contends he produced as alternative sources of information are the paid

invoices from Vivek, "thousands" of unspecified other records, and certified receipts Vinod claims incontestably demonstrate notices were sent. *See* Doc. 138, p. 11. The invoices, nominally from Vivek, are alleged to be false, and are not evidence that work was actually incurred *and* paid. Vinod's production of some notices and Vivek's production of no notices (or even correspondence showing he delivered the notices to Vinod), together suggest Vinod prepared and sent the notices himself. If that is the case, he incurred no expense and paid nothing to Vivek. In the complete absence of other evidence of payment from an independently verifiable source (i.e., bank statements, checks) and considering Vinod's "barter" theory, the portions of the tax returns sought by Plaintiff are singularly relevant.

### iii. Request Nos. 9-10

Before the settlement conference on October 11, the Court instructed Vinod that if he claimed that he could not afford a judgment of the full relief sought by Plaintiff, that the Court is generally inclined to allow discovery into Vinod's financial condition and net worth. Vinod apparently took that position at the settlement conference because the Court informed the parties that Vinod could not afford a seven-figure judgment. Plaintiff should be entitled to production of the financial statements on this basis alone.

Vinod complains this request is overly broad because it asks for "for all financial statements that reflect expenses paid for all services Vivek Gupta and Lewis Maudlin have ever rendered to Mr. Gupta, not just those services for title searches and noticing of the properties that are the subject of this action." *See* Doc. 138, p. 12. This is a red herring. Plaintiff requested the financial statements from 2002 through the present that reflect expenses paid for services provided by Vivek. Vinod has certified he has incurred and paid Title and Notify Costs from 2002 through the present. *See* Doc. 85, ¶ 65. Thus,

all the financial statements would be relevant because, those Notify and Title Costs purportedly incurred and paid by Vinod, should be reflected on each financial statement because payment of these costs affect the flow of cash in and out of the business (i.e., cash flow statement or statement of cash flows) and would be considered an expense that reduces net income (i.e., income statement).[7]

The financial statements are also subject to discovery because of Defendants' theory at the settlement conference on October 11 that no money actually transferred between Vinod and Vivek. Rather, Vivek asserts he asked Vinod to invest the amounts due him for his legal services under an investment agreement Vinod produced in discovery. If that true, the balance sheet from Vinod's financial statements should show the money being held as an asset and have a corresponding liability for the amount due to Vivek under the investment agreement. The financial statements, therefore, are relevant and should be produced.

### iv. Request Nos. 11-12, 19-20, 37

Plaintiff seeks production of any documents showing the transfer or payment of any funds or money to Vivek or Lewis for the amounts listed on the Certifications. Vinod has claimed at the settlement conference on October 11 that payment was made by barter, not by payment with money or check. Vinod should be required to produce any documents evidencing these barter transactions or any other transaction Vinod asserts was payment of the amounts listed on the Certifications.

---

[7] Vinod suggests the "financial information is not necessary for Crissen to pursue his claims." *See* Doc. 138, p. 13. Whether the documents are *necessary* is not the proper inquiry. The proper inquiry is whether the documents are *relevant*. Vinod does not suggest that documents are irrelevant. A jury could reasonably find it more probable that Vinod did not pay Title and Notify Costs if there is no evidence of payment on his financial statements.

Vinod also takes issue with Request No. 37 because he claims it incorrectly presumes that Vinod claims he owes amounts to Vivek he has not paid. At the settlement conference, Vivek stated he had Vinod retain and invest the money owed to him, rather than it being paid to him directly. All documents and correspondence evidencing this arrangement and any other arrangement where Vinod owes, but has not paid Vivek should be produced.

### v. Request Nos. 15-18

Vinod complains these requests are overboard and unduly burdensome. Vinod failed to submit any evidence establishing why this request would be burdensome. Vinod does not submit an affidavit explaining the time, effort or expense required to produce these documents. This conclusory statement should not be entertained. *Flomo*, 2009 WL 1456736 at *1. Vinod also complains these requests even seek communications related to properties not redeemed. Initially, Vinod is conceding this communication would be relevant for properties redeemed, so this communication, if any, should be produced.

Although, persons who did not redeem would not be part of the class, it does not follow the requested information is irrelevant. Plaintiff's theory is that Defendants devised a scheme whereby they would certify they incurred and paid Title and Notify Costs that were neither incurred nor paid. Defendants have certified they incurred and paid over $3,600,000[8] in Notify and Title Costs. A lack of communication regarding any of the properties, regardless of whether they were redeemed, makes it more probable that Vinod never instructed Vivek to do the work, and thus, more probable that the work was never done by Vivek (i.e., incurred). And if there is only communication with Vivek when a

---

[8] This amount is higher than the amount alleged in Plaintiff's Amended Complaint (Doc. 85, ¶¶ 69, 77) because it includes all of Vinod's Certifications regardless of whether it was redeemed.

property is not redeemed, it is reasonable to infer that Vinod never communicated with Vivek on redeemed property. Vinod should be compelled to produce documents responsive to these requests.

### vi. Request No. 5 and 6

In conclusory fashion, Vinod states the requested 1099s and W-2s Vinod sent to people identified in Vinod's answers to Plaintiff's interrogatories as people that assisted Vinod in "participating in tax sales or Commissioner's Sales in Indiana," are irrelevant. *See* Doc. 138, p. 16. Vinod, however, fails to articulate why these documents would not be relevant for showing structure to Defendants' Tax Sale Enterprise, which is an element of Plaintiff's claim as discussed in Plaintiff's motion to compel. *See* Doc. 108, p. 11. Instead, Vinod argues the unfair prejudice outweighs the probative value of the documents. This objection is not an appropriate objection to discovery as discussed above. Vinod should be required to produce these documents.

### vii. All Requests

Vinod concedes he only produced documents in his possession, and not all documents in his control. *See* Doc. 138, p. 17. Vinod does not dispute he had the legal right to obtain the documents on demand from Vivek, Lewis and BPNA. Rather, Vinod complains that "Crissen wants Mr. Gupta to incur the expense of doing Crissen's discovery for him, and obtain production of documents that are in the possession of other parties to this litigation." *Id.* Crissen only wants Vinod to comply with the rules of discovery. The rules of discovery require him to produce all responsive documents in his control, even if they are in the possession of other parties. *Novelty, Inc. v. Mountain View Marketing, Inc.*, 265 F.R.D. 370, 376 (S.D. Ind. 2009) ("The obligation to produce responsive documents extends to all documents over which the party has control, not merely possession.").

Vinod then spends the next two and one-half pages arguing it should not have to produce documents that were already produced by Vivek and BPNA. *See* Doc. 138, pp. 17- Vinod argues all the cases cited by Plaintiff are inapposite because none of them required producing documents already produced by another party. *Id.* He even makes this accusation:

> Crissen's argument that Mr. Gupta should have to spend time and money producing documents already provided to Crissen by Vivek and BPNA provides further justification for Mr. Gupta's concerns that the present litigation is being fueled by Barrett Rochman with the strategy of forcing Mr. Gupta to expend needless time and effort on irrelevant discovery, grinding Mr. Gupta down and putting him out of business. It would have been unreasonable for Mr. Gupta to retrieve and produce documents already produced by BPNA and Vivek.

*Id.* at 18-19.

Vinod is so blinded by his unfounded concern this litigation was brought to put him out of business he failed to see, or worse, purposefully ignored, Plaintiff never asked him to produce documents already produced by Vivek and BPNA in the motion to compel. Rather, the motion to compel requested:

> Vinod should be compelled to produce all documents and electronically stored information responsive to Plaintiff's written discovery that have *otherwise not been produced by him or in response to the subpoenas*, which are in the possession of his attorneys, banks, officers, agents and employees.

*See* Doc. 108, p. 13 (emphasis added). The discovery rules require him to produce documents in his control, and his response concedes he only produced documents in his possession. To the extent Vinod has documents in his control not otherwise produced, his only argument against production, he should be required to produce them.

### C. Conclusion

Plaintiff requests Vinod's objections are overruled and Vinod is compelled to produce the documents and electronically stored information responsive to the requests identified

above. Plaintiff also requests his reasonable expenses incurred in making this motion, including attorney's fees under Rule 37(a)(5) and any other relief the Court deems just under the circumstances.

                              SANDBERG PHOENIX & von GONTARD P.C.

                   By:   /s/ Jesse B. Rochman
                          John S. Sandberg
                          Bhavik R. Patel
                          Jesse B. Rochman
                          600 Washington Avenue – 15th Floor
                          St. Louis, MO 63101-1880
                          314-231-3332
                          314-241-7604 (Fax)
                          jsandberg@sandbergphoenix.com
                          bpatel@sandbergphoenix.com
                          jrochman@sandbergphoenix.com
                    *Attorneys for Plaintiff*

## Certificate of Service

I certify on October 26, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the attorneys/parties of record.

                                /s/ Jesse B. Rochman