UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JOSHUA B. CRISSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:12-cv-355-JMS-WGH |
| | ) | |
| VINOD C. GUPTA, SATYABALA V. | ) | |
| GUPTA, WIPER CORPORATION, | ) | |
| VIVEK V. GUPTA and BANCO | ) | |
| POPULAR NORTH AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

**JOINT ENTRY ON PLAINTIFF'S MOTION TO
COMPEL AND DEFENDANT VINOD C. GUPTA'S
MOTION FOR PROTECTIVE ORDER**

This matter is before the Court on Plaintiff's Motion to Compel
(Dkt. 106) and Defendant Vinod C. Gupta's Motion for Protective Order
(Dkt. 114).  The Court, having considered the motions, the parties'
filings, and relevant law, and being duly advised, hereby **GRANTS** both
motions in part and **DENIES** both Motions in part.

**I.    Background**

On July 4, 2013, Plaintiff served Vinod with a set of 38 requests for
production under Federal Rule of Civil Procedure 34.  (*See* Dkt. 106-1).  On
August 6, Vinod dispatched a 38-page response, objecting to each request and,
in some instances, denying that he had responsive documents in his
possession, custody, or control.  (*See* Dkt. 115-3).  The parties appear to have

resolved their disputes as to 18 of the requests through informal means.  (*See* Dkt. 115 at 17, 25, 28–29, 29–31; Dkt. 128 at 5, 11, 16, 18).  On September 11, Plaintiff moved the Court to compel Vinod to produce documents in response to the remaining requests.  (*See* Dkt. 106).  On September 24, Vinod moved the Court to enter a protective order relieving him of any duty to respond and shielding documents responsive to Plaintiff's requests from discovery.  (*See* Dkt. 114; Dkt. 115).

## II.    **Legal Standard**

Federal Rule of Civil Procedure 26 dictates that parties engage in broad, liberal discovery encompassing "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, (1978); Fed. R. Civ. P. 26.  Rule 26 empowers courts to issue protective orders precluding or limiting discovery when the evidence sought can be gained through less burdensome, inconvenient, or expensive sources, or when the burden and expense for the requestee outweigh the likely benefit for the requester.  Fed. R. Civ. P. 26(b)(2)(C)(i), (iii), (c)(1)(A).  At the same time, Rule 37 empowers courts to compel requestees to respond to requests where resistance is without good cause.  *See* Fed. R. Civ. P. 37(a).

The party who opposes discovery, whether by seeking a protective order or by objecting and forcing a motion to compel, bears the burden of persuading the court—with specific reasons—that the discovery requested is improper. *See, e.g.*, *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981); *Gile v. United*

2

*Airlines, Inc.*, 95 F.3d 492, 495–96 (7th Cir. 1996) (as applied in *John Wiley &*

*Sons Ltd. v. McDonnell Boehnen Hulbert & Berghoff LLP*, 2013 WL 505252 at *3

(N.D. Ill Feb. 12, 2013)).  Courts enjoy broad discretion to grant or deny either

type of motion in whole or in part.  *Gile*, 95 F.3d at 496.

## III.   Discussion

The parties place two broad and numerous specific inquiries before the

Court.  First, Plaintiff argues that Vinod waived any right to a protective order

by first responding with his objections to Plaintiff's requests.  Second, Vinod

argues that Barrett Rochman's connection to the litigation warrants imposition

of a protective order that would relieve him from responding to any of Plaintiff's

requests.  Finally, the parties have presented arguments as to each of Plaintiff's

unsettled requests for production.  The Court addresses them in turn.

### A. Is Vinod's motion precluded by his earlier response to Plaintiff's Request for Production?

Plaintiff first suggests that, because Vinod responded to Plaintiff's

requests before filing his Motion for Protective Order, the motion is

"procedurally defective" and cannot be awarded.  (*See* Dkt. 128 at 1; *see also*

Dkt. 115-3).  Plaintiff cites no authority supporting his argument that a motion

for protective order cannot be granted if it has been preceded by a response to

the discovery request against which protection is sought.  (*See* Dkt. 128 at 1).

The Court is not independently aware of any such precedent; in fact, the

Federal Rules of Civil Procedure and our Local Rules suggest the opposite is

true.

The Rules demand that a party must "confer in a good faith attempt to resolve" any discovery dispute before involving the court through a motion to compel or for a protective order.  S.D. Ind. L.R. 37-1; *see also* Fed. R. Civ. P. 37(a)(1).  This requirement implies that the party resisting production will raise her objections and discuss them with her adversary.  Local Rule 26-2 prohibits parties against filing discovery material except in limited circumstances but requires that parties file them when seeking a protective order under Federal Rule of Civil Procedure 26(c) or compulsion under Rule 37.  *See* S.D. Ind. L.R. 26-2(a).  The common practice by the Court is to review the objections the parties have raised in their answers to interrogatories or responses to production requests in ruling on those motions.  In short, the Court finds that nothing about Vinod's approach was unorthodox—much less procedurally defective—and therefore declines to credit Plaintiff's waiver argument.

### B. Does Barrett Rochman's role in the litigation warrant imposition of a protective order?

Vinod asks the Court to grant a protective order that would relieve him from complying with all 38 of Plaintiff's requests for production.  (*See* Dkt. 115 at 9–31).  Hanging over all of Vinod's contentions, though, is his broad argument that Barrett Rochman's role in the litigation necessitates a protective order.

Vinod's allegations concerning Barrett Rochman ("Barrett") are extensive.  (*See* Dkt. 115 at 9–31).  In short, Vinod describes Barrett as operating a competing business that also bids on properties at tax auctions.  (*Id.* at 4).

4

Vinod alleges that Barrett is attempting to use litigation to put his competitors out of business.  (*Id.* at 5–6).  Specifically, Vinod accuses Barrett of initiating unsolicited communications with the plaintiffs in this and other pending lawsuits and funneling them to Sandberg Phoenix & Vongontard, P.C. ("Sandberg").  (*Id.*).  Notably, Barrett Rochman's son, Jesse, is an attorney employed by the Sandberg firm and is counsel of record in this action.  (*Id.*).  Given Jesse Rochman's role as Plaintiff's counsel and the possibility that— although he is not a party—Barrett Rochman may be responsible for having initiated this action, Vinod asserts his business will be unfairly prejudiced if Vinod is required to produce personal, business, financial, or proprietary information in response to Plaintiff's requests.  (*Id.* at 6–7).

Plaintiff offers three rejoinders.  First, Plaintiff notes that the Court has already imposed a protective order prohibiting documents produced in discovery from being released to Vinod's business competitors.  (*See* Dkt. 128 at 3; *see also* Dkt. 47 at 7–8).  Second, Plaintiff argues that Plaintiff's motives and Barrett's involvement in the suit have no bearing on the discoverability of the records in question.  (*See* Dkt. 128 at 4).  That is, Vinod's allegations, even if they were true, would not affect the validity of Plaintiff's cause of action; even if it did, Vinod's remedy would be a suit for abuse of process or malicious prosecution, not a protective order.  (*See id.* (citing *Cook v. Hoppin*, 783 F.2d 684, 688 (7th Cir. 1986) and *Square D Co. v. Breakers Unlimited, Inc.*, 2009 WL 1407017 (S.D. Ind. May 19, 2009)).  Finally, Plaintiff raises that the documents sought remain discoverable because they are potential sources of information

regarding the notice and title expenses Vinod claims he incurred and paid for. (*See id.* at 3–4).

Both parties are correct.  At the very least, Barrett Rochman operates a competing business, and his shadow over the litigation is palpable, if only because his son is representing Plaintiff.  While the Court appreciates Plaintiff's confidence in the existing protective order and the Court's ability to enforce it, the Court finds that the circumstances warrant some additional measure protecting Vinod's financial and proprietary information against disclosure to Barrett Rochman.  At the same time, Vinod's financial records strike the Court as potential sources of information relevant to the questions of whether, and in what amount, Vinod incurred notice and title expenses and compensated his son for providing those services.  While it might be appropriate to add an additional layer of protection, to render these documents wholly undiscoverable would be to throw the baby out with the bathwater.

Accordingly, the Court declines to find that the Rochmans' involvement in the litigation is grounds for a protective order rendering all of Vinod's financial and proprietary records undiscoverable.  Each of the discovery requests in dispute will be enforced or denied based on its merits.  Where a request is enforceable but a protective order further shielding Barrett Rochman would be appropriate, the Court will compel production subject to an amended version of the protective order imposed at Docket Entry 47.  As amended, Paragraph 8(b) of that order shall now read, "Counsel of record for the named parties—except for Jesse Rochman—and staff (clerical, secretarial, and

paralegal) employed by counsel."  The narrow function of this amendment is to preclude Barrett Rochman from gaining access to Vinod's financial and proprietary information by prohibiting Jesse Rochman—but not other lawyers at Sandberg—from accessing these records.

At the settlement conference held on October 10, 2013, Plaintiff's counsel asked to be heard on the record to reconsider entry of this protective order precluding Jesse Rochman from viewing these materials.  As requested, the Court has set a hearing for November 8, 2013, at 3:30 p.m., Terre Haute time (EST).  Counsel may appear in person or by phone.  To avoid any delay in production, the Defendants shall commence assembling items as required by this entry and shall produce them within ten (10) business days following the November 8 hearing—unless an objection is filed as to the Magistrate Judge's final determination of the protective order.

### C. To which (if any) of Plaintiff's requests must Vinod respond, and what responses should be produced subject to a protective order?

The parties have presented arguments as to proper treatment of each of Plaintiff's 38 requests for production.  The Court now addresses those requests as follows.

#### 1. Requests 1, 2, 8, 21–26, and 30–38

Because the parties have resolved their dispute as to Requests 1, 2, 8, 21–26, and 30–38 (*see* Dkt. 115 at 17, 25, 28–29, 29–31; Dkt. 128 at 5, 11, 16, 18), the Court need not address them in this entry.  The Court does not, as Vinod recommends, interpret the parties' representations that these disputes have been resolved as Plaintiff's "complete withdrawal" of those requests.  (*See*

Dkt. 137 at 4, 16, 19).  Rather, the Court infers that the parties have agreed on their own—as our discovery system expects—to whether, when, and what documents will be produced in response to these requests.  Simply put, the parties have eliminated any need for the Court to umpire these requests. Accordingly, the Court declines to accept Vinod's invitation to issue a protective order rendering documents responsive to these requests undiscoverable.  (*Id.*). The parties will proceed subject to their agreements.

### 2.  Requests 3–7

Plaintiff has asked Vinod to produce a series of tax documents, including Forms 1099-MISC he has addressed to Vivek Gupta, Lewis Maudlin, or any other person Vinod previously identified as assisting with his tax sale business in response to Plaintiff's First Set of Interrogatories (*see* Dkt. 115-3 at 4–5); Forms W-2 Vinod addressed to any person he identified as an employee of the tax business in response to Plaintiff's First Set of Interrogatories (*see* Dkt. 115-3 at 5–6); and the first page of each Form 1040 and each Schedule C/C-EZ Vinod filed in connection with his tax returns (*see* Dkt. 115-3 at 6).

Vinod articulates a variety of reasons these documents should be shielded from discovery, but none is availing.  The parties have vigorously disputed whether these documents are relevant to the litigation.  (*See* Dkt. 115 at 10–11, 14–16; *see also* Dkt. 128 at 6–8, 10–11).  The Court finds that these tax documents (or their non-existence) have potential to at least illuminate how Vinod documented payments owed and made to employees and contractors in operating his tax sale business, the sizes of those obligations and payments,

and the credibility of other evidence that might be contradicted by these forms.[1] Even if the documents are not inherently relevant, they appear reasonably likely to lead to future discovery of relevant evidence. *See* Fed. R. Civ. P. 26(b)(1). Therefore, absent some evidentiary privilege—and Vinod has not raised one—the evidence sought in Requests 3–7 are discoverable. *Id.*

Vinod asserts that Plaintiff's request for W-2s is unduly burdensome because the request is not limited to W-2s issued during a certain period of time or W-2s issued for certain types of work. (Dkt. 115 at 14–15). Vinod further argues that the W-2 request constitutes harassment because Vinod responded to an earlier request that he maintained no employees—and, therefore, no one to whom he could have issued W-2s—in operating his tax sale business. (*See id.* at 15). However, neither the breadth of Plaintiff's request nor Vinod's earlier answer bears on the W-2s' relevance. Furthermore, both arguments are undone by Vinod's earlier answer. That is, if he maintained no employees and issued no W-2s, the proper response to Request Number 6 is that no W-2s exist. Such a simple answer does not strike the Court as either unduly burdensome or a product of harassment.

---

[1] Vinod argues at several points that Plaintiff does not need the evidence he has requested to prove his claims and that the requests serve no purpose but to annoy or harass Vinod. (*See, e.g.*, Dkt. 137 at 6, 7). The Court disagrees. Each of the requests addressed in this entry seeks relevant evidence that bears on issues central to Plaintiff's claims and Vinod's defenses. The Federal Rules of Civil Procedure do not limit Plaintiff to requesting production of only that evidence Vinod deems essential to Plaintiff's claims. The fact that production would require Vinod's effort or resources, or that Plaintiff might be able to prove his claim with different evidence, does not render a request improper so long as the evidence Plaintiff seeks is relevant or likely to lead Plaintiff to relevant evidence.

Finally, Vinod argues that these documents are protected against discovery by case law holding that tax returns are undiscoverable and an order ("Docket Entry 44") already issued by this Court and holding that "financial statements of the individual Defendants . . . and personal tax returns are not relevant . . . ." (*See* Dkt. 115 at 11–14, 16–17; *see also* Dkt. 44 at 2).  The Court first notes that only Request 7 deals with tax <u>returns</u>.  The 1099s and W-2s at issue in Requests 3–6 are business documents prepared by Vinod and reflecting his business's expenses—not tax returns or personal financial statements of the individual defendants.  Thus, these forms are not affected by the case law provided or by Docket Entry 44.  Second, that order specifically allows the Court to "reconsider the relevancy of the excluded information, but only upon a more specific showing of good cause and substantial need . . . ." (Dkt. 44 at 2).  To the extent Docket Entry 44 applies to these requests, the Court finds that Plaintiff has articulated a sufficient showing of relevance and good cause to render the documents discoverable.

Accordingly, the documents forming the basis of Request 8 could be precluded from discovery only by the case law Vinod argues renders his tax returns undiscoverable.  (*See* Dkt. 115 at 17 (citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69 (7th Cir. 1992)).  On that count, the Court declines to accept Vinod's reading of *Poulos*.  Quite plainly, the Court of Appeals held that "[t]ax returns in the hands of a taxpayer are not privileged," and that "Poulos was properly compelled to produce his tax returns."  *Poulos*, 959 F.2d at 74–75.  Even if *Poulos* stood for the proposition that discoverability of tax returns may

10

be compelled only if there is no reasonable alternative source for the information requested, Vinod's bald assertion that he "has already provided multiple reasonable, alternative sources of information showing his exact costs incurred and paid" does not direct the Court to those alternative sources. (*See* Dkt. 116 at 16–17). Discoverability of tax returns is a matter for the discretion of the trial court, *see Poulos*, 959 F.2d at 75, and the Court finds no reason why Vinod's returns should be shielded from discovery.

As a sort of compromise, Vinod has offered to produce relevant data from these documents—but not the documents themselves—through stipulations or in response to requests for admission. (*See* Dkt. 138 at 8–9, 11–12). To limit Plaintiff to these devices would rob him of a crucial right to test the veracity of Vinod's representations. In short, it would require him to take Vinod at his word, and our system of discovery is designed to give litigants more critical tools for seeking the truth. Moreover, as it has explained above, the Court finds no reason that such an alternative mechanism is necessary. To the extent Vinod has articulated good cause for imposing an alternative mechanism for discovering this evidence, that cause is Barrett Rochman's connection to the litigation, and the Court finds that complication can be neutralized with a narrower protective order than Vinod seeks.

In sum, the documents requested in Requests 3–7 are discoverable and do not merit imposition of a protective order completely barring their discovery. However, the Court generally holds that tax documents of any stripe are confidential business information. Therefore, Vinod must produce these

11

documents, but he may do so subject to the more limited protective order as amended by this entry.

### 3. Requests 9–12

Plaintiff has requested that Vinod produce (a) all financial statements reflecting expenses incurred and paid for services rendered by Vivek Gupta or Lewis Maudlin, and (b) all checks Vinod drafted to Vivek Gupta or Lewis Maudlin for notice and title services for which he claimed reimbursement.  (*See* Dkt. 115 at 6–13).  Vinod asserts that these documents warrant protection because they are irrelevant to the litigation, because they are encompassed by Docket Entry 44, and because the requests are overbroad and duplicative of earlier requests.  (*See* Dkt. 115 at 17–21).

Vinod's arguments as to relevance, Docket Entry 44, and overbreadth fail for the same reasons set forth with respect to Requests 3–7 above.  Whether and how much Vinod paid Vivek Gupta and Lewis Maudlin for notice and title services are central issues in this litigation, and the financial statements and checks at issue here would seem to bear on the issuance and amount of such payments.  This is true even though Requests 9 and 10 ostensibly pertain to all services Vivek and Maudlin ever rendered for Vinod's business.  (*See id.* at 17).  Records documenting payments for other work would be evidence of Vinod's standard mechanism for documenting payments to Vivek and Maudlin and could allow the trier of fact to draw numerous inferences about the issuance and size of payments for notice and title services and the credibility of other evidence that might be contradicted by those records.  And, to the extent these

requests are encompassed by Docket Entry 44, the Court finds that Plaintiff has articulated a sufficient showing of relevance and good cause to render the documents discoverable.  Accordingly, the Court finds no reason to preclude discovery of these documents unless the requests are duplicitous in contravention of Federal Rule of Civil Procedure 26(b)(2)(C)(i).[2]

As for duplicity, Vinod argues that the documents requested fall into the categories of documents Plaintiff sought in an earlier set of requests to which he responded by producing some 48,000 documents.  (*See* Dkt. 115 at 18–21).  Plaintiff states that none of the documents produced is a financial statement or a check described by Requests 9–12.  (*See* Dkt. 128 at 12).  In effect, Plaintiff intends to use these requests for production as requests for admission and create a record of Vinod's position that no such financial statements or checks exist.  (*Id.*).

It is the Court's practice to allow a party in Plaintiff's position to use a narrowly tailored production request to test the veracity of another party's representation that, if a particular type of document exists, it has already been produced.  *See, e.g.*, *United States ex rel. Pool v. NMC, Inc.*, 2010 WL 4668790 at *2 (S.D. Ind. Nov. 9, 2010).  Plaintiff has attempted to do this through Requests 9–12.  Accordingly, Vinod should respond in one of three ways.  If no

---

[2] The Court acknowledges Plaintiff's argument that these documents are particularly relevant to establishing Vinod's financial condition with respect to his claim for punitive damages.  (*See* Dkt. 106 at 8–9).  The Court also acknowledges Vinod's argument that punitive damages will not become a ripe issue until much later in this litigation and that discovery as to Vinod's financial condition is more appropriately delayed until that time.  (*See* Dkt. 138 at 13–14).  Having found these documents relevant to establishing the merits of the case, the Court need not address either argument here.

financial statements or checks as described in the requests exist, Vinod should respond by stating that none exists.  If financial statements or checks exist and were produced in response to Plaintiff's previous request, Vinod should respond by stating which specific Bates-numbered documents fit the descriptions in Requests 9–12.  And, of course, if such documents exist but were not produced in response to Plaintiff's earlier requests, Vinod should produce them now.  To the extent Vinod has documents to produce in response to these requests, they would constitute confidential business information, and he may produce them subject to the more limited, amended protective order established by this entry—mitigating the risk of this information reaching Barrett Rochman.  (*See* Dkt. 138 at 13).

### 4. Requests 13–14

Plaintiff has asked Vinod to Produce "[e]ach and every Form 137B in Word format" and "[e]ach and every 'NOTICE OF SALE AND REDEMPTION PERIOD EXPIRATION' in Word format . . . ."  (*See* Dkt. 115-3 at 13–14).  The parties seem to agree that these documents would be encompassed by Requests 2 through 4 in Plaintiff's First Set of Requests for Production.  (*See* Dkt. 115 at 21–23; Dkt. 128 at 12–14).  Moreover, it appears undisputed that Vinod produced the documents sought in Requests 13 and 14 in response to Plaintiff's earlier requests.  (*See* Dkt. 115 at 21–23; Dkt. 128 at 12–14).  The parties disagree, however, as to whether Vinod produced these documents in the correct format.

Plaintiff states that the documents sought here were produced in a non-searchable PDF format.  (Dkt. 128 at 12).  Plaintiff also observes that these documents' file names end in ".doc" and ".docx," indicating they were created in Microsoft Word and later converted to PDF format.  (*See id.* at 13).  According to Plaintiff, the PDF files do not contain "metadata" that would be expected to be found in the original Word files and that would demonstrate important facts like who created the documents, when and how they were revised, and when they were printed.  (*Id.* at 13–14).  In response, Vinod argues that he produced the documents in a format allowed by Federal Rule of Civil Procedure 34(b)(2)(E)(ii), that litigants are exempted by Federal Rule of Civil Procedure 34(b)(2)(E)(iii) from having to produce documents in more than one format, and that Plaintiff failed to specify a format for production in his original request.  (*See* Dkt. 115 at 22–23).

This dispute is decided by Rule 34 and the Advisory Committee's commentary thereto.  As Vinod correctly notes, a request for production of electronically stored documents "may specify the form or forms in which electronically stored information is to be produced,"  Fed. R. Civ. P. 34(b)(1)(C), and Plaintiff's first requests made no mention of Word or any other format (*see* Dkt. 115-1 at 2–4).  Vinod also is correct in noting that "[a] party need not produce the same electronically stored information in more than one form."  Fed. R. Civ. P. 34(b)(2)(E)(iii).  But, these segments of Rule 34 do not tell the full story.

Rule 34 also cautions that "[a] party must produce documents as they are kept in the usual course of business" and that, "[i]f a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms."  Fed. R. Civ. P. 34(b)(2)(E)(i), (ii).  In explaining these provisions, the Advisory Committee has cautioned:

> [T]he option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation. If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature.

Fed. R. Civ. P. 34, Advisory Comm. Notes (2006 Amends.).

The Court has interpreted this passage to mean that a requesting party's obligation to specify a format for production is superseded by a responding party's obligation to refrain from converting "any of its electronically stored information to a different format that would make it more difficult or burdensome for [the requesting party] to use."  *See, e.g.*, *Craig & Landreth, Inc. v. Mazda Motor of America, Inc.*, 2009 WL 2245108 at *3 (S.D. Ind. July 27, 2009).  Plaintiff alleges that Vinod has done just that.

The Court finds—and Vinod does not seem to dispute—that the documents themselves satisfy the criteria for discoverability and should not be wholly shielded from discovery.  Whether Vinod must reproduce them in their

native format is strictly a question of their native format—and one the Court cannot answer with the information before it.

If Vinod had access to the files in question <u>only</u> in PDF format before being served with Plaintiff's first request, he honored Rule 34 and need not reproduce the files in any other format. Fed. R. Civ. P. 34(b)(2)(E)(iii).  In that case, Vinod may simply respond that he already has produced the documents in their native format and that Rule 34 exempts him from converting the documents to a different format.  (Indeed, if this were the case, converting the files to Word format at this late stage would not seem to endow them with the metadata Plaintiff seeks, and the dispute would seem to be rendered moot.)

However, if Vinod had access to the files in Word format before he received Plaintiff's first request, he must produce them now in Word format. *See* Fed. R. Civ. P. 34(b)(2)(E)(i), (ii).  The documents in question, to the extent they must be reproduced, would constitute confidential business information and therefore will be subject to the amended protective order.

### 5.  Requests Nos. 15–20

In Requests 15–18, Plaintiff has asked Vinod to produce all communications he had with Vivek Gupta and Lewis Maudlin about any services they performed—and the amount of payment they would receive for those services—that Vinod certified as compensable.  (*See* Dkt. 115-3 at 15–21).  In Requests 19 through 20, Plaintiff has asked Vinod to produce all documents showing transfer or payment of any funds or money to Vivek Gupta or Lewis Maudlin for the amounts Vinod listed on his notice and title expense

certifications.  (Dkt. 115-3 at 21–23).  Vinod asserts that the documents requested should be wholly protected from production because the requests are overbroad, would encompass privileged communications, and are duplicative of earlier requests to which Vinod already has responded.  (*See* Dkt. 115 at 23).

As to overbreadth, Vinod complains that the requests are not limited in time, but this complaint is unfounded: Plaintiff's instructions accompanying the requests indicate that they seek only documents from 2002 forward.  (*See* Dkt. 106-1 at 6).  Vinod also argues that Requests 19 and 20 are overbroad because they would include evidence of claims barred by the statute of limitations.  (*See* Dkt. 115 at 24).  The District Judge already has held, though, that the statute of limitations will not stand as a barrier to discovery in this action.  (*See* Dkt. 43 at 13–14).  Evidence of payments associated with transactions whose litigation might be barred by the statute of limitations might nevertheless prove relevant as to transactions still within the statute. Moreover, because Plaintiff is seeking to certify a class, evidence that might otherwise be barred by a statute of limitations may become relevant.  Rather than reopen discovery after the class is certified, the Court will allow discovery now; if the statute of limitations renders a piece of evidence irrelevant, that must be determined anyway when this matter reaches a motion for summary judgment and again if it reaches trial.  Finally, Vinod complains that Requests 19 and 20 are overbroad because they would apply tax sales in other states, but Plaintiff is seeking only transfer and payment documents associated with tax sales in Indiana.  (*See* Dkt. 128 at 15).

18

As to privilege, Vinod's argument is misguided.  Plaintiff has no responsibility to tailor his requests to avoid documents that may be privileged. It is elementary that Vinod bears the burden of asserting privilege and describing which documents should be excepted from the request and why. *See* Fed. R. Civ. P. 26(b)(5)(A).  That Plaintiff's request does not specifically accommodate privileged communications does not entitle all communications encompassed by the request to wholesale protection from production.[3]

Vinod's argument as to duplicity is subject to the same analysis the Court applied to Requests 9–12 above.  Plaintiff claims that none of the documents Vinod produced in response to the earlier requests is a document described in Requests 15–20, and Plaintiff intends to use these requests for production as requests for admission to create a record of Vinod's position that no such documents exist.  (Dkt. 128 at 14, 15–16).  Again, Vinod should respond in one of three ways.  If no documents exist, Vinod should respond by stating that none exist.  If such documents exist and Vinod in fact produced them in response to Plaintiff's previous request, Vinod should respond by stating which specific Bates-numbered documents fit the description in Requests 15–20.  And, of course, if such documents exist but were not produced in response to Plaintiff's earlier requests, Vinod should produce them

---

[3] Plaintiff argues that Vinod has waived any claim to privilege by failing to object in response to the original request or submit a valid privilege log with the instant motion. (Dkt. 128 at 14–15).  The Court need not address that argument to find that Vinod's claim of privilege is insufficient to support his motion for wholesale protection from production.  Accordingly, the Court will withhold any final determination on privilege until Vinod, as required by Rule 26(b)(5), asserts a specific claim of privilege as to a particular document and Plaintiff objects.

now.  To the extent Vinod has documents to produce in response to these requests, they would constitute confidential business information, and he may produce them subject to the amended protective order.

### 6. Requests 27–29

By Request 27, Plaintiff has asked Vinod to produce "[a]ll business records of any bank where [he has] done business since 2002." (Dkt. 115-3 at 28).  By Request 28, Plaintiff has asked Vinod to produce "[a]ll communication with Banco Popular, including communications with counsel for Banco Popular." (*Id.* at 30).  And, by Request 29, Plaintiff has asked Vinod to produce "[a]ll communications with any of the persons" Vinod identified in response to an earlier Interrogatory. (*Id.* at 32).  Vinod argues that documents encompassed by these requests should be protected from discovery because the requests would include documents the Court has already protected through Docket Entry 44 and that they are duplicative of earlier requests to which Vinod already has responded.

Vinod is correct that these requests seek documents already protected by Docket Entry 44.  "All business records of any bank" and "[a]ll communication with Banco Popular" would seem to include personal financial information wholly unrelated to whether and how much Vinod paid Vivek Gupta and Lewis Maudlin for notice and title services.  Plaintiff has not shown relevance or good cause to except any of Plaintiff's personal bank records or communications with his banks from the order issued in connection with Docket Entry 44. Accordingly, Vinod's personal banking records and communications are

20

protected against discovery.  However, this finding does not excuse Vinod from complying with this request to the extent it would require him to produce business banking records or communications or from complying with other requests addressed elsewhere in this entry.  (For example, a record from a personal banking account showing a transfer of funds from Vinod to Vivek Gupta or Lewis Maudlin in the amount listed on a Certification remains highly relevant and must be produced in response to Request 19 or 20.)

Vinod's argument as to duplicity is subject to the same analysis the Court applied to Requests 9–12 and 15–20 above.  Plaintiff claims that none of the documents Vinod produced in response earlier requests is a document described in Requests 27–29, and Plaintiff intends to use these requests for production as requests for admission to create a record of Vinod's position that no such documents exist.  (Dkt. 128 at 16–17).  Again, Vinod should respond in one of three ways.  If no documents exist, Vinod should respond by stating that none exist.  If such documents exist and Vinod in fact produced them in response to Plaintiff's previous request, Vinod should respond by stating which specific Bates-numbered documents fit the description in Requests 27–29.  And, of course, if such documents exist but were not produced in response to Plaintiff's earlier requests, Vinod should produce them now.  To the extent Vinod has documents to produce in response to these requests, they would constitute confidential business information, and their production will be subject to the amended protective order.

Plaintiff also expresses concern—as a general matter and with specific regard to these three requests—that Vinod has refused to produce documents that he does not <u>possess</u> but that are under his <u>control</u> (e.g., a bank record that Vinod does not presently have in his possession but that the bank would produce on Vinod's instructions).  (*See* Dkt. 106 at 11–13; 128 at 16–17).  The Court does not interpret Vinod's stance on these requests as a refusal to produce documents outside his possession but under his control.  (*See* Dkt. 137 at 17–19; Dkt. 138 at 16–19).  Rather, the Court understands Vinod to state that all items responsive to these requests that are outside his possession but under his control already have been produced by either Banco Popular or Vivek Gupta.  (*See* Dkt. 137 at 17–19; Dkt. 138 at 16–19).  That is, Vinod does not object to producing the documents requested; he objects to producing documents that already have been produced once.  (*See* Dkt. 137 at 17–19; Dkt. 138 at 16–19).

Again, both parties are correct.  A party must produce responsive documents when, although he does not possess them, he has a legal right to obtain them on demand.  *See Novelty Inc. v. Mountain View Marketing, Inc.*, 265 F.R.D. 370, 375–76 (S.D. Ind. 2009).  Accordingly, Vinod must produce documents responsive to any request if they fit that description—including non-privileged documents held by his attorney or his bank.  *See id.* (quoting *Triple Five v. Simon*, 212 F.R.D. 523, 527 (D. Minn. 2002) (requiring party to produce documents it has a right and the ability to obtain from its attorney)).  To the extent Vinod has refused to produce documents under his control on

grounds that they were out of his possession, he must produce them now but may do so subject to the amended protective order.  However, the Court is persuaded that he need not re-produce documents that have been produced once already.  *See Whitlow v. Martin*, 259 F.R.D. 349, 355 (C.D. Ill. 2009). Where responsive documents already have been produced by another party, Vinod need only direct to the specific Bates-numbered documents responsive to the request.

## IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to compel insofar as it orders Vinod to produce—in a manner consistent with this entry—evidence responsive to Requests 3–7, 9–20, and 27–29.  The Court **DENIES** Plaintiff's motion insofar as it declines to compel Vinod to reproduce evidence that already has been produced in this litigation, whether by Vinod or anyone else.  The Court **DENIES** Vinod's motion for a protective order insofar as it declines to impose a protective order precluding all information sought in Plaintiff's Third Set of Requests for Production from discovery.  The Court **GRANTS** Vinod's motion insofar as it allows Vinod to respond to Requests 3–7, 9–20, and 27–29 subject to the protective order issued through Docket Entry 47 as amended by this Order at page 6, *supra*, to preclude Jesse Rochman from viewing documents produced subject to this Order.  A hearing to

reconsider the amendment to the protective order is set for November 8, 2013, at 3:30 p.m., Terre Haute time (EST).

      **SO ORDERED** the 7th day of November, 2013.

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Served electronically on all ECF-registered counsel of record.**