UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

|  |  |  |
|---|---|---|
| JOSHUA B. CRISSEN, individually and on behalf of all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 2:12-cv-00355-JMS-WGH |
| | : | |
| VINOD C. GUPTA, SATYBALA V. GUPTA, WIPER CORPORATION, VIVEK V. GUPTA and BANCO POPULAR NORTH AMERICA, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT BANCO POPULAR NORTH AMERICA'S
REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF MOTION TO DISMISS
THE AMENDED COMPLAINT**

Gregory A. Blue (*pro hac vice*)
DILWORTH PAXSON LLP
99 Park Avenue, Suite 320
New York, NY 10016
(917) 675-4250 (telephone)
(212) 208-6874 (facsimile)

Joshua D. Wolson (*pro hac vice*)
DILWORTH PAXSON LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
(215) 575-7000 (telephone)
(215) 575-7200 (facsimile)

A. Richard M. Blaiklock #20031-49
Edward D. Thomas #29080-49
LEWIS WAGNER, LLP
501 Indiana Avenue, Suite 200
Indianapolis, IN 46202
(317) 237-0500 x 227 (telephone)
(317) 630-2790 (facsimile)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................... 2

ARGUMENT ............................................................................................................................. 3

I.     Plaintiff's arguments are contrary to the allegations of the Amended Complaint, and based on allegations not in the Amended Complaint. ................................................. 3

        A.     BPNA was not a "purchaser" of Mr. Crissen's tax sale certificate. ...................... 3

        B.     BPNA did not certify the Title Costs or Notify Costs for Mr. Crissen's property.  8

        C.     Plaintiff's Opposition is based on allegations not found in the Amended Complaint. .................................................................................................................. 9

II.    BPNA's conduct with respect to Mr. Crissen's tax sale certificate was merely that of a commercial lender. ..................................................................................................... 10

III.   BPNA did not cause Plaintiff's alleged injuries. ............................................................ 14

IV.   Plaintiff's remaining legal arguments have no merit. ..................................................... 15

        A.     Plaintiff cannot state a claim for conspiracy under Indiana RICO. ..................... 15

        B.     Plaintiff cannot state a claim under the Indiana Crime Victims Act. ................... 16

        C.     The money-had-and-received claim should be dismissed. ................................... 17

        D.     The unjust enrichment claim should be dismissed. .............................................. 17

CONCLUSION .......................................................................................................................... 19

1

## PRELIMINARY STATEMENT

Plaintiff's Opposition to BPNA's Motion to Dismiss (Doc. 147, the "Opposition") suffers from two main defects:

- The Opposition is based on arguments that are directly at odds with the allegations in the Amended Complaint, as well as allegations not found in the Amended Complaint. Plaintiff cannot run away from his own pleading, or amend his pleading through his Opposition.

- Nothing in the Opposition suggests that, with respect to Mr. Crissen's tax sale certificate, BPNA was doing anything other than acting as a bank. The Opposition reinforces the allegations of the Amended Complaint, which establishes that BPNA did not purchase the tax certificate for Mr. Crissen's property; did not sign the Certification of Title and Notify Costs for Mr. Crissen's tax sale certificate; did not communicate with Mr. Crissen in any way concerning his tax certificate; and made no misrepresentation to anyone concerning Mr. Crissen's certificate.

Perhaps recognizing the problems created by the specific allegations in the Amended Complaint, Plaintiff cites *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) for the proposition that the Court should "read[] the complaint as a whole." (Doc. 147, p. 5). BPNA agrees that the Court should follow *Atkins*, which held that a plaintiff "can plead himself out of court by pleading facts that show that he has no legal claim." 631 F.3d at 832. That is what the Plaintiff has done here:

> So suppose some of the plaintiff's factual allegations are unrealistic or nonsensical and others not, some contradict others, and some are 'speculative' in the sense of implausible and ungrounded. The district court has to consider all these features of a complaint en route to deciding whether it has enough substance to warrant putting the defendant to the expense of discovery.

*Id*. Taking a holistic view of the Amended Complaint, as Plaintiff urges this Court to do, Plaintiff's contradictory, implausible, and ungrounded allegations that BPNA was a "purchaser"

2

do not "warrant putting the defendant to the expense of discovery." *Id.*  The Amended Complaint's mechanical recitation that the "Defendants" all purchased the property tax sale certificate, or all signed the relevant documents, or all made misrepresentations are not enough to save his claims from dismissal.  "Many of the alleged 'facts' are actually legal conclusions or elements of the cause of action, which may be disregarded on a motion to dismiss." *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).

For these reasons, and for the reasons stated in BPNA's opening brief (Doc. 136), the Court should grant BPNA's Motion to Dismiss.

## ARGUMENT

**I.      Plaintiff's arguments are contrary to the allegations of the Amended Complaint, and based on allegations not in the Amended Complaint.**

**A.      BPNA was not a "purchaser" of Mr. Crissen's tax sale certificate.**

The crux of Plaintiff's Opposition is that BPNA was a "purchaser" of Mr. Crissen's tax sale certificate.  Plaintiff's argument that BPNA was a "purchaser" of Mr. Crissen's property tax certificate is essential to his arguments against dismissal of six counts: the four RICO claims (Doc. 147, p. 9, arguing that "BPNA was a *purchaser* of Tax Sale Certificates," (emphasis in original)); his fraud claim (*id.*, pp. 28-29, arguing that "BPNA would also be the one who made the same misrepresentation in the Notice of Redemption to Plaintiff, because it is the *purchaser* who sends the Notice of Redemption," (emphasis in original)); and his Crime Victim's Act claim (*id.*, p. 30, asserting that "it is reasonable to infer BPNA was the purchaser of Plaintiff's certificate of sale, and submitted this false Certification").

Plaintiff's insistence that this Court "infer" that BPNA was the purchaser of Mr. Crissen's tax sale certificate is inconsistent with the allegations in the Amended Complaint,

3

not plausible, and not true.  The Amended Complaint repeatedly makes clear that *the Guptas* were the purchasers of Mr. Crissen's tax sale certificate:

- ▪ "Plaintiff redeemed real property…<u>purchased by Vinod</u> at a tax sale in Indiana on or around October 9, 2009."  (Doc. 85 at ¶ 7 (emphasis added)).

- ▪ "BPNA directed that all future certificates of sale purchased <u>by Pledgors</u>[1] at Indiana tax sales and Commissioner's Sales <u>shall be purchased in the name of one or all of the Pledgors</u> in care of BPNA with the Miami Lakes Branch as the address of record.  (*Id.* at ¶ 60 (emphasis added)).

- ▪ "From at least 2002 through the present, Pledgors provided each certificate of sale <u>they purchased</u> at Indiana tax sales, Commissioner's Sales, or both to Kislak and BPNA."  (Id. at ¶ 62 (emphasis added)).

In light of these unequivocal allegations, Plaintiff cannot sustain his individual claims by arguing that "it is reasonable to infer BPNA was a purchaser on Plaintiff's property." (Doc. 147 at p. 18))  The inference that Plaintiff asks the Court to draw would be contrary to the specific, unequivocal, and repeated allegations in the Amended Complaint.

In an attempt to overcome the specific allegations of his own Amended Complaint, Plaintiff relies heavily on the allegation that between 2002 and July 31, 2006, the bank required the Guptas to include BPNA's name (or that of its predecessor, Kislak) on the tax sale certificates for property owned by people other than Mr. Crissen.  (Doc. 147, p. 9)  Even if that allegation could plausibly be read to imply that BPNA was, as a result of the designation on the certificate, a "purchaser" of *those* certificates during *that* time, that practice ended more than seven years prior to Plaintiff's filing of the Amended Complaint and more than three years

---

[1] The Amended Complaint defines "Pledgors" as "Vinod, Satyabala, Wiper, Vivek, and V. Gupta Inc."  [*Id.* at ¶ 51]

before Vinod purchased Mr. Crissen's tax sale certificate.  The designation on those certificates therefore does not give rise to a plausible inference that BPNA was a purchaser of *Mr. Crissen's* certificate, especially in light of the specific allegations to the contrary.

Significantly, the Amended Complaint also alleges that no later than July 31, 2006, BPNA insisted that "the certificates of sale should no longer be purchased in the name of and jointly owned by one or all of the Pledgors and BPNA."  (Doc. 73, ¶ 59)[2]  The only plausible inference from that change is that the parties wanted to affirm the fact that BPNA was *not* a purchaser of the certificates, and certainly was not a joint purchaser of any tax sale certificate after July 31, 2006.  If it is true, as Plaintiff alleges, that BPNA was a "purchaser" of the pre-2006 tax sale certificates because of the conjunctive "and" between "Vinod C. Gupta and Banco Popular," then the removal of the "and" demonstrates that BPNA was *not* a purchaser after July 31, 2006. Plaintiff cannot have it both ways.

Plaintiff nevertheless urges the Court to find that "BPNA was one of the purchasers *despite* the 'in care of' designation." (Doc. 147, p. 10, emphasis added).  To make that claim, Plaintiff asserts that BPNA "took actions consistent with a *purchaser* of Tax Sale Certificates." (Id, p. 10 (emphasis in original)).  That is not enough.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Plaintiff's pleading of facts that are merely "consistent with" the notion that BPNA was a purchaser of the post-2006 certificates does not make that allegation plausible.

---

[2] BPNA disputes Plaintiff's contention that the certificates were "jointly owned" at any time, including the period prior to July 31, 2006.

Plaintiff also argues that BPNA was a "purchaser" of Mr. Crissen's certificate because, long ago, prior to July 31, 2006, *Vinod* signed and submitted Certifications for *other properties* listing the purchaser as "Vinod C. Gupta and Banco Popular."  (Doc. 147, p. 9).  Plaintiff attached to the Opposition certifications from 2005 concerning other properties.  (*Id.*, n. 5; Doc. 147-1).  Plaintiff conspicuously omitted the Certification for *Mr. Crissen's* property, which is submitted herewith (Doc. 155-1), and the only certificate that is properly considered on this motion to dismiss Mr. Crissen's individual claims.[3]  That certification is signed only by Vinod, and states:

> "I, Vinod C. Gupta, who purchased the following described tract or item of real property at a tax sale held by Greene County on 10/9/2009 have incurred and paid the following costs in compliance with the provisions of IC 6-1.1-25-4.5."

The Certifications on which Plaintiff relies only show what happened years before Mr. Crissen redeemed his property and with respect to *other* properties.  However, the only certification that matters is the one for Plaintiff's property, which definitively shows that: (i) Vinod signed the Certification for Mr. Crissen's property; (ii) Vinod did not purport to sign for BPNA; (iii) BPNA did not sign the Certification for Mr. Crissen's property; (iv) BPNA did

---

[3] While it is not necessary for the Court to look to extraneous evidence to dismiss Plaintiff's Complaint as against BPNA, because the Form 137B Certification for Mr. Crissen's property is explicitly referred to in the pleading (Doc. 85-1, ¶¶ 43-45) and central to Plaintiff's claim (*e.g. id.* at ¶¶ 43-45, 65-72, 75-77, 99, 101, 107, 116, 119, 124, 131, 132) this Court can consider the document itself on this Motion to Dismiss.  *See e.g., Hirata Corp. v. J.B. Oxford and Co.*, 193 F.R.D. 589, 592 (S.D. IND. May 30, 2000) ("[I]f a document is specifically referenced by the complaint and central to the plaintiff's claim, we may consider that document as part of the pleadings if it is attached to a defendant's motion attacking the sufficiency of the complaint.") (citing *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").  Plaintiff, by contrast, has submitted only unauthenticated certificates that are irrelevant to Mr. Crissen's individual claims.  Those certificates should be stricken.

not "purchase" Mr. Crissen's property; and (v) BPNA made no misrepresentation in the Certification.

Mr. Crissen cannot state a claim against BPNA based on what allegedly happened to other property owners.  He must make his own case, based on what happened to him.  *See Warth v. Seldin*, 422 U.S. 490, 502 (1975) (addressing plaintiffs' standing, and finding that "Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other unidentified members of the class to which they belong and which they purport to represent."); *Gratz v. Bollinger*, 539 U.S. 244, 289 (2003) (same); *Old Town Pizza of Lombard, Inc. v. Corfu-Tasty Gyro's Inc.*, 11-CV-6959, 2012 WL 638765 (N.D. Ill. Feb. 23, 2012) ("While one benefit of a class action can be to allow a large number of plaintiffs to recover for small individual losses, 'a plaintiff must first have a valid cause of action in his own right before he can proceed to represent a class.'") (quoting *Stonecrafters, Inc. v. Foxfire Printing and Packaging, Inc.*, 633 F.Supp.2d 610, 614 (N.D.Ill. 2009)).

The Amended Complaint clearly and unequivocally alleges that Vinod – not BPNA – was the purchaser of *Mr. Crissen's* property tax certificate.  As Plaintiff has acknowledged, "if BPNA was not the purchaser" of Mr. Crissen's property tax certificate, then BPNA "did not make misrepresentations to Plaintiff."  (Doc. 147, p. 19).  As a result, Plaintiff's argument that

7

BPNA committed fraud with respect to Mr. Crissen's property is unsustainable, and Mr. Crissen

has no claims against BPNA under RICO, for fraud, or under the CVA.[4]

### B.    BPNA did not certify the Title Costs or Notify Costs for Mr. Crissen's property.

Plaintiff argues that he has adequately specified *who* made the false Certification with

respect to his property, and that BPNA is liable for that Certification, by stating that "*Purchasers*

of the certificates of sale make and submit the Certifications, and thus, *purchasers* are who make

the misrepresentation when the Certifications are false."  (Doc. 147, p. 14, citing Doc. 85, ¶ 27).

Plaintiff then argues that "Vinod is who signed and submitted the False Certifications for the

purchaser."   (*Id.*, citing Doc. 85, ¶ 65). Similarly, Plaintiff argues that "Vinod signed and

provided the Certifications *on behalf of* whoever was the *purchaser* for the certificate of sale at

issue."  (*Id.*, p. 17, n.7).

Plaintiff's insistence that BPNA is responsible for the content of the Certification for his

property should be rejected for at least three reasons: (i) as explained in section I(A) above, the

Amended Complaint alleges that Vinod, not BPNA was the "purchaser," so even if Plaintiff is

correct that it is "the purchaser" who signs the Certification, that would be (and was) Vinod;

(ii) the Amended Complaint alleges that Vinod, not BPNA, actually signed the Certification for

Mr. Crissen's property tax certificate (and the actual certificate confirms that to be true); and

(iii) the Amended Complaint does not allege (as Plaintiff now argues) that Vinod signed the

Certification for Mr. Crissen's property *on behalf of* BPNA.  The Amended Complaint simply

---

[4] Plaintiff cites no legal authority for the proposition that a defendant can be liable for an allegedly fraudulent statement made by another party under circumstances like those presented here.  The only case that Plaintiff cites for that proposition, *K.M.K. v. A.K.*, 908 N.E.2d 658, 663 (Ind. App. 2009) (cited at Doc. 147, p. 29), simply describes the nature of "concerted action," and has nothing to say about whether one party can be liable for allegedly fraudulent statements made by another.

states that "On or about November 13, 2009, <u>Vinod</u> signed and provided a Certification to the Green [sic] County auditor, certifying <u>he</u> incurred and paid $350.00 in Notify Costs and $150.00 in Title Costs regarding Plaintiff's Property." (Doc. 85, ¶ 43, emphasis added).   Plaintiff's attempt to impose liability on BPNA for the content of the Certification for Mr. Crissen's property therefore should be rejected.

**C.      Plaintiff's Opposition is based on allegations not found in the Amended Complaint.**

In addition to inaccurately stating what the Amended Complaint alleges about who purchased Mr. Crissen's property tax certificate (Vinod) and who signed the Certification for Mr. Crissen's property tax certificate (Vinod), the Opposition is based upon numerous other unattributed assertions and allegations not found in the Amended Complaint

For example, Plaintiff asserts that "BPNA also exercised dominion and control over Plaintiff's redemption proceeds as if the check was made out to BPNA as the sole purchaser because it never had Vinod endorse the check." (Doc. 147, p. 28, citing Doc. 85, ¶ 81).  Nothing in paragraph 81 of the Amended Complaint (or any other paragraph) says anything about the endorsement of checks from the counties.  Similarly, the Opposition says "the wires were also used to fax certain of these documents and to transfer money."  (Doc. 147, p. 3, citing to the Amended Complaint at ¶¶ 6, 40, 52, 54, 56, 58).  None of those paragraphs of the Amended Complaint mention a fax.  Plaintiff cannot add to or amend his own pleading in an attempt to defeat BPNA's Motion to Dismiss.  *Car Carriers, Inc. v. Ford Motor Co.*, 745 F2d 1101, 1107 (7th Cir. 1984) (holding that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

Plaintiff also does not accurately portray the amount of the damages that he claims. Plaintiff states that "[t]ransportation and receipt of money with a value over $5,000, knowing the

same to have been stole [sic], converted or taken by fraud, is a predicate act under RICO" and that "BPNA received $8,908.44 from Plaintiff's redemption."  (Doc. 147, p. 4, n. 2).  There is no allegation in the Amended Complaint that the *entire* redemption amount was "stolen, converted or taken by fraud."   Instead, Plaintiff only alleges that he overpaid $350.00 in Notify Costs and $150.00 in Title Costs (Doc. 85, ¶ 43), for a total of $500 – well below the $5,000 statutory amount.  Plaintiff's Opposition thus demonstrates that he lacks RICO standing because he cannot allege damages *on his own behalf* in excess of $5,000.  *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 406-08 (5th Cir. 2003) (affirming dismissal of putative RICO class action complaint because named plaintiff could only allege damages less than $5,000 and finding damages to other class members were irrelevant).[5]   For this additional reason,  Plaintiff's federal RICO claims (his only federal claims) should be dismissed.

## II.     BPNA's conduct with respect to Mr. Crissen's tax sale certificate was merely that of a commercial lender.

Plaintiff's Amended Complaint fails to allege – other than in the most conclusory (and legally insufficient) fashion – that BPNA did anything other than act as a commercial lender with respect to Mr. Crissen's tax sale certificate.

Perhaps the easiest way to spot the flaws in Plaintiff's Amended Complaint and Opposition is to take a common example from what is only a slightly different context.  Banks offer mortgages to homeowners; they lend money and have liens on the homes purchased with that borrowed money (just as BPNA had liens on the property tax certificates).  Because the

---

[5] Plaintiff cannot aggregate his alleged damages with those of the class members to satisfy the $5,000 RICO standing threshold.  *Id.* at 408 ("Whether, and by how much, [the alleged fraud] harmed other, unnamed individuals is irrelevant to the question of whether [plaintiff] has RICO standing.").

banks risk losing their collateral if the property tax bills are not paid, banks often require homeowners to have the property tax bills sent directly to them (just as BPNA required the Guptas to have correspondence from the counties sent directly to the bank).  The banks collect the property tax as part of the homeowner's monthly mortgage payment and pay the taxes directly to the taxing authorities.[6]  It is a mundane and extraordinarily common practice.

Plaintiff's claims would turn every banker-customer relationship into a nefarious RICO conspiracy.  Plaintiff would argue that the couple that borrowed money to buy a home "have a familial relationship." (Doc. 147, p. 6)  The 30-year mortgage shows that the relationship "has lasted over a decade" and that the bank "has had a long relationship with the…family."  (*Id.*) The bank "received, processed and responded to the majority, if not all, of the correspondence and phone calls from" the tax authorities.  (*Id.* at p. 10)  In Plaintiff's view, this shows that the bank actually *owned* the home (despite what the documents say), because the bank's payment of property taxes is "consistent with a *purchaser*" of a home (*id.*), because only homeowners pay property taxes.  When the homeowner made the mortgage payment to the bank each month, the bank "syphoned off its share to pay down [the family's] debt."  (*Id.*, p. 20)

Evaluating Plaintiff's argument in this context reveals the flaw of Plaintiff's logic.   If Plaintiff's version of the RICO enterprise is sufficient, *every* bank-customer relationship can be cast as a "RICO enterprise."   As BPNA explained in its opening Memorandum of Law, "[b]ankers do not become racketeers by acting like bankers."  *Dahlgren v. First Nat'l Bank of Holdrege*, 533 F.3d 681, 690 (8th Cir. 2008) (quoting *Terry A. Lambert Plumbing Inc. v.*

---

[6] *See*, *e.g.*, Hamilton County Treasurer's Office website, http://www.hamiltoncounty.in.gov/topic/?topicid=45&structureid=35, ("If you have a mortgage escrow, it is possible that your property tax bill was mailed to your lender for payment.").

*Western Sec. Bank*, 934 F.2d 976, 981 (8th Cir. 1991)).  Stripped of the dramatic, conclusory, and redundant verbiage, Plaintiff's Amended Complaint alleges that BPNA's role in this alleged "scheme to defraud" is that it lent money, charged interest, and protected its collateral.

What BPNA did with respect to Mr. Crissen's certificate does not show that it participated in an "enterprise."  In *Boyle v. United States*, 556 U.S. 938, 946 (2009), the Supreme Court held that a RICO enterprise must have "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  "Despite the expansive nature of this definition, it is not limitless."  *United Food and Commercial Workers Unions and Employers Midwest Heath Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013) (hereafter, "*Walgreen*").  Ultimately, as in *Walgreen*, it is Plaintiff's failure to allege a *common purpose* that dooms the Amended Complaint.  "This type of interaction…shows only that the defendants had a commercial relationship, not that they had joined together to create a distinct entity for [illegal purposes]."  *Walgreen*, 719 F.3d at 855.[7]

Plaintiff concedes that the money from the redemptions was used to pay interest owed by the Guptas to BPNA, with the remainder deposited in the other Defendants' business account.  (Doc. 147, p. 31; *see also id.*, p. 1 (asserting that the payments were applied to pay interest on

---

[7] Plaintiff argues that "[t]he issue in *Walgreen* was not whether the plaintiff pled the *existence* of an enterprise; rather it was whether the plaintiff sufficiently pled the defendants were *conducting* the affairs of the enterprise."  (Doc. 147, pp. 7-8 (emphasis in original))  Two pages earlier, however, Plaintiff cites *Walgreen* for the proposition that it need only plead the *existence* of an enterprise under Rule 8(a)'s "notice pleading" requirement, and quoted the following language from the opinion:  "We review de novo whether the Fund's *enterprise allegations* meet the pleading standards of Rule 8(a) of the Federal Rule of Civil Procedure.")  (*Id.* at p. 5, quoting *Walgreen*, 719 F.3d at 853)(emphasis added)).

BPNA's "loans to the enterprise")).[8]  BPNA's sole financial benefit was to lend money and charge fees and interest to the Guptas.  Plaintiff has identified no other way in which BPNA allegedly "profited" from this arrangement.

For the Guptas, paying interest to BPNA was *not* the goal of their business.  Rather, they made money from purchasing property tax certificates, and receiving funds from the redemptions.  Paying interest to BPNA was a business liability.  BPNA pursued its business interests while the Guptas pursued theirs;  BPNA and the Guptas had a banking relationship, but not a common goal.  Given these facts, Plaintiff's conclusory allegation that all of the Defendants shared a common purpose is both contrary to the specific allegations in the Amended Complaint, and implausible.

The Amended Complaint also does not plausibly suggest that BPNA participated in the operation and management of an "enterprise" by receiving and processing correspondence from the counties, mailing the tax certificates back to the counties, receiving the checks from the counties, and loaning money to the Guptas.  (Doc. 147, pp. 10-11).  All of those actions were directly related to the bank's securing or releasing of its collateral, and the receipt of payments on its outstanding loans to the Guptas.  While Plaintiff can speculate that those actions had a nefarious purpose, it is simply not plausible that these actions were anything other than a bank acting as a bank.  Mr. Crissen cannot point to a single thing that BPNA did that was illegal,

---

[8] Plaintiff's claim that BPNA made loans to "the enterprise" exposes another flaw in the enterprise allegations.  The Amended Complaint asserts that BPNA made loans to *Vinod and Satyabala*. (Doc. 85, ¶¶ 54, 56, 58)  Plaintiff now argues that BPNA made loans to the "enterprise," (Doc. 147, p. 1) which is defined as, "Defendants and their employees." (*Id.*, ¶ 97). "Defendants," is defined as Vinod, Satyabala, Wiper Corporation, Vivek, and BPNA. (*Id.*, p. 1). Here, too, Plaintiff's argument is at odds with his pleading.

fraudulent, or misleading with respect to his property tax certificate.  BPNA was acting as a bank.

### III.    BPNA did not cause Plaintiff's alleged injuries.

Plaintiff's Opposition does not explain how any act by BPNA was the proximate cause of his injuries.  To the contrary, the Amended Complaint states that Mr. Crissen redeemed his property and paid the costs "[i]n reliance on the Certifications, Vivek's invoices, the Notices of Redemption, or all three."  (Doc. 73-1, ¶ 77).  Similarly, Plaintiff's Opposition acknowledges that it was the certification signed by Vinod "that caused [Plaintiff] to pay the Redemption Amount."  (Doc. 147, p. 30).  None of that had anything to do with BPNA.  Vinod signed and submitted the Certification for Mr. Crissen's tax certificate (*id.*, ¶ 43), and, as the purchaser, Vinod was responsible for sending the Notice of Redemption to Mr. Crissen.  (*Id.*, ¶ 23)[9] Therefore, if Mr. Crissen was injured, he has affirmatively alleged that the proximate cause of his injury was Vinod's Certification, Vivek's invoice, and the Notice of Redemption sent by Vinod.

Plaintiff's citation to *Phoenix Bond & Indem. Co. v. Bridge*, 477 F.3d 928, 933 (7th Cir. 2007), completely misses the mark.  The issue in that decision was whether a defendant who made a false certification to the county could be found to have proximately caused the injury of

---

[9] There is no allegation in the Amended Complaint that BPNA sent the Notice of Redemption to Mr. Crissen, other than an improper group allegation that "Vinod, Wiper, Kislak and BPNA had to mail Notices of Redemption to each owner of record and every person with substantial property interest of public record."  (Doc. 85, ¶ 67)  Because Mr. Crissen was the one who would have received the Notice of Redemption for his property, there is no reason why he could not plead with specificity *who* sent it to him.  Instead, the Amended Complaint intentionally obscures *who* in an improper attempt to paint all of the Defendants with the same broad brush.

someone who did not directly receive that false statement.  Here, by contrast, the issue is whether a party (BPNA) *that did not make a false statement* concerning the plaintiff can be the proximate cause of an injury to the plaintiff when he alleges that he acted only in reliance on the statements of other parties (Vinod and Vivek).  That is an entirely different issue than the issue that was addressed in *Phoenix Bond*.

Here, BPNA's only actions – lending money to the Guptas, holding collateral, and applying the proceeds of a county check to pay down the Guptas' line of credit – are several steps removed from Mr. Crissen's alleged injury and the causes identified in the Amended Complaint (Vinod's purchase of the tax certificate, Vinod's Certification, and Vivek's invoices).  Finding that BPNA's actions were the proximate cause of Mr. Crissen's alleged injury therefore would run afoul of the Supreme Court's direction that liability should not be imposed beyond the "first step."  *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 2 (2010) (holding that the general tendency of the law to not go "'beyond the first step'…applies with full force to proximate cause inquiries under RICO") (internal citations omitted).

Given these allegations, Plaintiff cannot show that any of his injuries were proximately caused by a violation of the RICO statute by BPNA.

## IV.    Plaintiff's remaining legal arguments have no merit.

### A.    Plaintiff cannot state a claim for conspiracy under Indiana RICO.

Plaintiff's Opposition argues that Count IV, entitled "Racketeering Conspiracy *under Indiana Rico*" (Doc. 73-1, p. 24, emphasis added), is not actually a claim for conspiracy *under* the Indiana RICO statute.  Plaintiff now claims Count IV is a claim for conspiracy under Indiana common law.  Plaintiff's Amended Complaint clearly asserts a conspiracy claim *under* Indiana

RICO, even though no such claim exists.  *Koger v. State*, 513 N.E.2d 1250, 1255 (Ind. Ct. App. 1987).

Plaintiff's explanation of his pleading – that  the Amended Complaint did not really mean to allege a violation *under* the Indiana RICO statute – is not credible.  The language of Count IV precisely tracks the language of Count II, which alleges conspiracy under § 1962(d).  (Doc. 73-1, pp. 20-12)  Plaintiff attempted to assert exactly the same claim under state law, even though it does not exist.  Count IV should be dismissed.

**B.**     **Plaintiff cannot state a claim under the Indiana Crime Victims Act.**

The Amended Complaint alleges that BPNA is liable under the CVA because, Plaintiff argues, BPNA "knowingly and/or intentionally made false or misleading statements," (Doc. 85, ¶ 130), and exerted unauthorized control over Mr. Crissen's money "through their scheme to submit false and fraudulent Certifications, invoices, Accounts Payable Vouchers, and Notices of Redemption."  (*Id.,* ¶ 132).  BPNA has shown that, according to the Amended Complaint, BPNA did not do any of those things.

Plaintiff therefore argues that BPNA is liable under the Crime Victims Act as a *recipient* of stolen property.  (Doc. 147, p. 31)   Plaintiff alleges, however, that the money that the county sent was used to pay "interest owed by the other Defendants" and the remainder was deposited "in the other Defendants' business account."  (Doc. 147, p. 31; Doc. 85).  The Guptas, therefore, were the only beneficiaries of the funds sent by the county.

Plaintiff cites no authority for the proposition that he can follow money through the chain of commerce to reclaim funds from a secondary or tertiary recipient of allegedly misappropriated funds, or that the CVA is an appropriate vehicle to drag a bank into every civil case in which it is

alleged that misbegotten funds are deposited into a bank account.  Plaintiff's claim under the CVA therefore should be dismissed.

**C.       The money-had-and-received claim should be dismissed.**

Plaintiff's Count VII, for "money had and received," also should be dismissed for failure to state a claim against BPNA because, as explained in BPNA's opening brief, as well as above, BPNA did not "receive" Mr. Crissen's money.   Plaintiff himself alleges that BPNA only received money "directly from the county," (Doc. 147, p. 32, citing Doc. 85, ¶¶ 49, 81), not from Mr. Crissen.

Moreover, Plaintiff alleges the funds were used to pay the interest owed to BPNA by the Guptas and were deposited in the Guptas' business account.  (Doc. 147, p. 31)   BPNA thus gave consideration and the Guptas were the only parties that received the benefit of whatever funds the county paid as a result of Mr. Crissen's redemption of his property.   Because Mr. Crissen alleges that the Guptas, not BPNA, were the beneficiaries of those funds, it therefore would be inequitable to require BPNA to pay over funds to Mr. Crissen.

**D.       The unjust enrichment claim should be dismissed.**

Plaintiff's final claim (Count VIII) asserts a claim for "unjust enrichment" against BPNA. None of the cases cited by Plaintiff are at all relevant, or show that his unjust enrichment claim should not be dismissed.  *Hendrickson v.* State, 690 N.E.2d 765 (Ind. App. 1998) and *Edsall v. State*, 983 N.E. 200 (Ind. App. 2013) (cited in the Opposition at pp. 32-33), concerned criminal forfeiture proceedings, and therefore are not relevant here.

*St. Mary's Med. Ctr., Inc. v. United Farm Bureau Family Life Ins. Co.*, 624 N.E.2d 939, 941 (Ind. App. 1993), also cited in the Opposition  (Doc. 147, p. 33), concerned a payment by an

17

insurance carrier to a hospital for rendering treatment to patient who, it turned out, was not actually insured at the time of treatment.  The court in that case found that the medical center was "not unjustly enriched by [the insurer's] mistake, had no notice of the mistake, and did not induce the mistake through misrepresentation."  624 N.E.2d at 946.  Similarly, BPNA was not unjustly enriched because the payments from the county were applied for *the Guptas'* benefit (paying down interest on the lines of credit and being deposited in their business account), and BPNA is not alleged to have certified the costs for Mr. Crissen's tax sale certificate.  Plaintiff has not cited any authority suggesting that Mr. Crissen conferred a benefit on BPNA that unjustly enriched BPNA such that Mr. Crissen is entitled to restitution.  The unjust enrichment claim therefore should be dismissed.

*[remainder of page intentionally left blank]*

## CONCLUSION

For all the foregoing reasons, all of Plaintiff's claims against BPNA in the Amended Complaint should be dismissed.

Dated: November 15, 2013

DILWORTH PAXSON LLP

By: /s/ Gregory A. Blue
      Gregory A. Blue (*pro hac vice*)
99 Park Avenue, Suite 320
New York, NY 10016
(917) 675-4250 (telephone)
(212) 208-6874 (facsimile)
gblue@dilworthlaw.com

Joshua D. Wolson (*pro hac vice*)
DILWORTH PAXSON LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
(215) 575-7000 (telephone)
(215) 575-7200 (facsimile)
jwolson@dilworthlaw.com

A. Richard M. Blaiklock #20031-49
Edward D. Thomas #29080-49
LEWIS WAGNER, LLP
501 Indiana Avenue, Suite 200
Indianapolis, IN 46202
(317) 237-0500 x 227 (telephone)
(317) 630-2790 (facsimile)
rblaiklock@lewiswagner.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on the 15th day of November, 2013, a copy of the foregoing Memorandum of Law in Support of Defendant Banco Popular North America's Reply in Further Support of its Motion to Dismiss Plaintiff's First Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) was filed electronically.  Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

John S. Sandberg
Bhavik R. Patel
Jesse B. Rochman
SANDBERG PHOENIX & VON GONTARD P.C.
600 Washington Avenue – 15th Floor
St. Louis, MO 63101
jsandberg@sandbergphoenix.com
bpatel@sandbergphoenix.com
jrochman@sandbergphoenix.com

*Counsel for Plaintiff*

Stephen E. Arthur
Mark Allen William Stearns
David J. Theising
HARRISON & MOBERLY
10 West Market St., Suite 700
Indianapolis, IN 46204
sarthur@harrisonmoberly.com
mstearns@harrisonmoberly.com
dtheising@harrisonmoberly.com

*Counsel for Defendants Wiper Corp., Vinod Gupta, and Satyabala Gupta*

David P. Friedrich
WILKINSON, GOELLER, MODESITT, WILKINSON & DRUMMY
333 Ohio Street, P.O. Box 800
Terre Haute, IN 47808-0800
dpfriedrich@wilkinsonlaw.com

*Counsel for Defendant Vivek V. Gupta*

/s/  Gregory A. Blue

20

11423913_1