UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
**Terre Haute Division**

| | |
|---|---|
| JOSHUA B. CRISSEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VINOD C. GUPTA, *et al.*,<br><br>Defendants. | Case No.: 2:12-cv-355-JMS-WGH |

### Response to Court Order

Plaintiff Joshua B. Crissen ("Plaintiff"), individually and for all others similarly situated, through his undersigned attorneys, Sandberg Phoenix & von Gontard P.C., respectfully submits his response to the Court's order (Doc. 153).

### A. Introduction

On September 11, 2013, Plaintiff moved the Court to compel Vinod to produce documents responsive to Requests 3–7, 9–20, and 27–29. (Docs. 106, 148, pp. 1-2). On September 24, Vinod moved the Court to enter a protective order relieving him of any duty to respond and shielding documents responsive to Plaintiff's requests from discovery. (Doc. 148, p. 2). On November 7, the Court granted "Plaintiff's motion to compel insofar as it orders Vinod to produce—in a manner consistent with this entry—evidence responsive to Requests 3–7, 9–20, and 27–29," but denied "Plaintiff's motion insofar as it declines to compel Vinod to reproduce evidence that already has

been produced in this litigation, whether by Vinod or anyone else." (*Id.* at 23).[1] The Court denied "Vinod's motion for a protective order insofar as it declines to impose a protective order precluding all information sought in Plaintiff's Third Set of Requests for Production from discovery," but granted "Vinod's motion insofar as it allows Vinod to respond to Requests 3–7, 9–20, and 27–29 subject to the protective order issued through Docket Entry 47 as amended by this Order at page 6, supra, to preclude Jesse Rochman from viewing documents produced subject to this Order." (*Id.*). "The narrow function of this amendment is to preclude Barrett Rochman from gaining access to Vinod's financial and proprietary information by prohibiting Jesse Rochman—but not other lawyers at Sandberg—from accessing these records." (*Id.* at 7).

As requested by Plaintiff's counsel, the Court set a "hearing to reconsider the amendment to the protective order." (*Id.* at 23-24). Despite the narrow focus of the hearing, Vinod attempted to admit additional evidence it argued require reconsideration of the joint entry (Doc. 148), not just the amendment to the protective order. Although the Court denied the request to look at the documents during the hearing, it has given the parties ten "days to supplement the record with any information pertinent to the court's decision, including appropriate documents from the Phoenix litigation, if any, and a

---

[1] Plaintiff never sought to compel "Vinod to reproduce evidence that already has been produced in this litigation." Rather, Plaintiff expressly stated "Vinod should be compelled to produce all documents and electronically stored information responsive to Plaintiff's written discovery that ***have otherwise not been produced*** by him or in response to the subpoenas, which are in the possession of his attorneys, banks, officers, agents and employees." (Doc. 108, p. 13) (emphasis added).

4683130.2          2

response to Exhibit 2 of the Affidavit of Mr. Peck." (Doc. 153). The Court should refuse to consider Vinod's evidence (Doc. 159), but even if it is considered, the evidence does not justify Vinod's proposed modification (Doc. 160). If anything, the Court should modify its prior joint entry to not designate certain documents as subject to the amended protective order.

### C. Vinod's Additional Evidence

At oral argument during the "hearing to reconsider the amendment to the protective order," Vinod attempted to present additional evidence, including documents from *Phoenix Bond & Indem Co. v. Bridge*, No. 1:05-cv-04095 and an affidavit from a certified public accountant. The local rules prohibited Vinod from attempting to present additional evidence oral argument. *See* Local Rule 7-5(b). This alone justifies not considering the additional evidence presented by Vinod.

The additional evidence should not be considered for another reason. Vinod has presented the evidence to request reconsideration. A motion for reconsideration "cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during the pendency of" the motion decided by the Court. *Caisse Nationale De Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (cited by the District Court at Doc. 105 when ruling on prior motion to reconsider). "To support a motion for reconsideration based on newly discovered evidence, the moving party must show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have

discovered and produced such evidence [during the pendency of the motion]." *Id.* (internal quotes omitted).

Here, Plaintiff served Vinod with discovery on July 4, 2013. Plaintiff's counsel requested on August 7 that the parties confer regarding Vinod's objections. The parties conferred on August 13. An informal discovery dispute conference was held with this Court on August 27. Plaintiff's motion to compel was filed on September 11. Vinod responded to the motion to compel on October 23. Vinod had 111 days after being served with discovery and 43 days after Plaintiff filed its motion to compel until it responded to the same. Vinod cannot genuinely maintain he could not with reasonable diligence have presented evidence from district court records of *Phoenix Bond*[2] or obtain an affidavit from a CPA regarding whether certain items would be reportable on Vinod's tax returns.[3] Indeed, Vinod's submission does not even argue he could not have presented this "evidence" to the Court during the briefing process. (Docs. 159-160). This alone requires denial of Vinod's request for reconsideration.

Even if the additional evidence was considered, it does not warrant Vinod's requested modification (Doc. 160).

---

[2] Plaintiff relied extensively on the appellate decision in *Phoenix Bond* in its motion for class certification. (Doc. 91), which was filed on August 30, 2013.

[3] Vinod's counsel apparently "suspected all along" that the law did not require the items at issue to be reported on Vinod's tax return. (Doc. 151, 42:10-14). Yet, Vinod did not seek an affidavit to confirm his counsel's suspicions until November 8, 2013. (*Id.*). This is not acting with reasonable diligence; this is reacting to the Court's order that was unfavorable to Vinod.

### 1. Phoenix Bond litigation documents.

Before the Court at the hearing on November 8, 2013, was "whether excluding Jesse Rochman from some of the information in discovery is appropriate or not." (Doc. 151 at 3:15-21). Vinod claimed that he does not:

> care that Jesse Rochman sees the papers that are necessary for Mr. Crissen to pursue his case that relate to title costs and notification costs, but we sure do have a problem with Jesse Rochman having access to our tax returns, financial documents, any of those things that contain the information that goes beyond that.

(*Id.* at 15:25-16:5). Vinod requested the Court affirm its order as to Jesse Rochman (*id.* at 14:18-19) and referenced documents from the *Phoenix Bond* litigation to support that request.[4] The *Phoenix Bond* documents, however, are irrelevant because Plaintiff is not asking the Court to vacate its amended protective order precluding Jesse Rochman from viewing certain documents, such as the tax returns and financial statements giving Vinod concern. Rather, Plaintiff is only asking this Court to reconsider designating certain documents as being subject to the amended protective order, such as checks, Forms 137B and other "papers that are necessary for Mr. Crissen to pursue his case that relate to title costs and notification costs."

To the extent Vinod argues these documents justify a protective order rendering all of Vinod's financial and proprietary records undiscoverable,

---

[4] The *Phoenix Bond* documents presented by Vinod show that Jesse Rochman was one of three members for CCJ Investments, LLC and BRB Investments, LLC, which participated in the 2003 through 2007 Cook County, Illinois tax sales, and Jesse Rochman registered to bid for CCJ at the 2004 tax sale and BRB at the 2005 tax sale. Vinod has submitted no evidence that he attended these sales in Cook County or that he otherwise competed against these two companies by bidding on the same properties. Nor has he submitted any evidence suggesting Jesse Rochman materially participated in those companies.

Plaintiff agrees with the Court that to do so "would be to throw the baby out with the bathwater." (Doc. 148, p. 6). The Court's protective order and amended protective order adequately protect Vinod, while affording Plaintiff access to "potential sources of information relevant to the questions of whether, and in what amount, Vinod incurred notice and title expenses and compensated his son for providing those services." (*Id.*).

### 2. Affidavit of Robert Peck.

The affidavit of Robert Peck concludes "the advanced Bid Price, Notices Costs, and Title Examination Costs and their subsequent reimbursement are not reportable on the purchasers' income tax returns." (Peck Affidavit, ¶ 13). Armed with this affidavit, Vinod again asserts the tax returns are irrelevant, but for the first time argues they are irrelevant *because* these items should not be reported on Vinod's tax returns. This affidavit does not support Vinod's requested modification to the joint entry (Doc. 160).

The circumstances in which a motion to reconsider are proper are even more limited when "there is an appeal to the District Court Judge." (*Id.* at 48:3-5). If it were otherwise, parties would "litigate every order that's a discovery order," and "create a five- or ten-year lawsuit out of doing that." (*Id.* at 44:2-10). Thus, the Court has stated that reconsideration would only be granted if it could "be shown that [it] was clearly erroneous factually, that there was some fact that [it] misapprehended or that there's a piece of law that [it] misapplied clearly." (*Id.* at 47:21-48:5). When a party seeks reconsideration based on a misapprehension of the case law, it must show a

"wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000); *Ammons v. Cook Co., Ill.*, No. 11 C 5010, 2012 WL 2368320, at *2 (N.D. Ill. June 20, 2012). "If a motion to reconsider could be used as a vehicle to raise new arguments, introduce evidence that could and should have been adduced earlier, or reargue that which was previously considered, litigation would be prolonged interminably." *Marmi E. Graniti D'Italia Sicilmarmi S.p.A. v. Universal Granite & Marble*, 757 F. Supp. 2d 773, 782 (N.D. Ill. 2010).

Vinod has not met his burden. He has not shown how the Court was clearly erroneous factually, there was some fact that the Court misapprehended or there's a piece of law that the court misapplied clearly. Rather, Vinod suggests that the "peck Affidavit, coupled with Vinod's prior response to Request No. 3 of Plaintiff's Second Request for Production, are evidence that contradicts those arguments by Plaintiff...." (Doc. 160). This "new evidence" cannot support reconsideration as discussed above. Moreover, Vinod's submissions are nothing more than a thinly veiled attempt to either rehash rejected arguments or make new arguments. Both of which are not allowed on reconsideration.

> Vinod argued the tax returns were not relevant because:
>
> At best, such schedules will reflect only a gross figure for all expenses incurred by Mr. Gupta for all of his business enterprises, both for tax sales in Indiana and in other states, as well as other business expenses from other business enterprises. Thus, any Form 1040 and Schedule C/C-EZ submitted by Mr. Gupta in connection with his tax returns is of only minimal, if any, probative value, and is substantially outweighed

> by the danger of unfair prejudice against Mr. Gupta since the parties can manipulate the gross figures on any such Form 1040 or Schedule C/C-EZ which risks misleading and confusing the jury.

(Doc. 138, pp. 9-10). The Court rejected that argument, so it is not appropriate to reconsider the same argument again. (Doc. 148, pp. 8-11). Even though Vinod's counsel "suspected all along" that the law did not require the items at issue to be reported on Vinod's tax return, (Doc. 151, 42:10-14), Vinod never made that argument. Vinod cannot now raise this new argument upon reconsideration.

The affidavit is also not appropriate for reconsideration because it states what the CPA believes the law to be. (Peck Affidavit); (*see also* Doc. 151, 42:10-14) (stating Defense counsel "suspected all along that [the affidavit] is the law"). To be sure, the three legal conclusions made by the affidavit are: (1) when property is not redeemed the costs should be capitalized and not expensed; (2) when property is redeemed the costs are reimbursed advancements; (3) under either scenario they are not reportable on the tax returns. (Peck Affidavit, ¶¶ 9, 11-13). "Whether a taxpayer is required to capitalize particular expenses is a question of law…." *Ill. Tool Works, Inc. v. Comm'r of Internal Revenue*, 355 F.3d 997, 1001 (7th Cir.2004). Likewise, whether the costs are advancements or immediately deductible expenses would also be a question of law because it requires a determination whether those expenses qualify as expenses immediately deductible under the Internal Revenue Code. And because the Internal Revenue Code and its

implementing regulations determine what must be reported, it too would be a question of law. Under Rule 702, however, opinions concerning the ultimate issue are inadmissible if they do not "assist the trier of fact." *Superior Aluminum Alloys, LLC v. U.S. Fire Ins. Co.*, 2007 WL 1850858, at *8 (N.D. Ind. 2007) (citations omitted). Opinions that amount to legal conclusions do not assist the trier of fact because they "merely tell the jury what result to reach . . . ." *Id.* Rather than suspecting this was the law, Vinod should have researched the law and presented this argument in its briefing on the discovery motions. The affidavit is, therefore, inadmissible and does not support reconsideration.

Even if this was one of the rare situations where the Court should exercise its power to reconsider (it is not), the affidavit's legal conclusion that Title and Notify Costs are not reportable is flawed. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990) (cited by the District Court at Doc. 105 when ruling on prior motion to reconsider) ("Such problems [that are appropriate for reconsideration] rarely arise and the motion to reconsider should be equally rare."). The affidavit assumes the payment for Vivek's services was with money or its equivalent. Vinod represented to the Court it was done by barter transaction. In a barter exchange "[b]oth parties must report as income the value of the goods and services received in the exchange." *See* www.irs.gov/uac/Newsroom/Four-Things-You-Should-Know-if-You-Barter; *see also* www.irs.gov/uac/Reporting-Miscellaneous-Income ("The

fair market value of goods and services exchanged is fully taxable and must be included on Form 1040 in the income of both parties."). Here is an example given by the IRS:

> In return for accounting services you provided for the house painter's business, the house painter painted your home. You must include in gross receipts the fair market value of the services you received from the house painter. The house painter must include the fair market value of your accounting services in his or her gross receipts.

IRS Publication 525, Taxable and Non-Taxable Income, available at www.irs.gov/publications/p525/ar02.html. If Vinod received Vivek's legal services as part of a barter transaction, so he must include the fair market value of Vivek's services (i.e., the amount Certified) as income on his 1040. The tax returns are relevant as to test the veracity of the "barter" theory.

The affidavit's conclusion that title and notify costs are not reportable on the purchaser's Schedule C or elsewhere because they are reimbursable advances assumes Vinod did not already deduct those expenses. This assumption, however, was not included in his list of assumptions. (Peck Affidavit, ¶ 8). If Vinod deducted the title and notify costs, then it would be considered a "recovery of items previously deducted." In that case, Vinod is to "include the recovery in income on Schedule C or C-EZ." IRS Publication 334, Tax Guide for Small Business, available at www.irs.gov/publications/p334/ch05.html.

The tax returns are relevant, but as the Court aptly noted, "[e]ven if the documents are not inherently relevant, they appear reasonably likely to lead

to future discovery of relevant evidence." (Doc. 148, pp. 8-9). To limit Plaintiff's Request No. 7 as suggested by Vinod (Doc. 160, p. 3), "would rob Plaintiff of a crucial right to test the veracity of Vinod's representations. In short, it would require him to take Vinod at his word, and our system of discovery is designed to give litigants more critical tools for seeking the truth. To the extent Vinod has articulated good cause for imposing an alternative mechanism for discovering this evidence, that cause is Barrett Rochman's connection to the litigation, and … that complication can be neutralized with" the protective order already entered by the Court. (Doc. 148, p. 11). The Court correctly held the tax returns are discoverable.

### 3. Plaintiff requests certain documents not be designated confidential.

Plaintiff requested Vinod produce certain documents in his motion to compel. (Doc. 106). Defendant Vinod sought a protective order "barring Plaintiff from enforcing his Third Set of Requests for Production Directed to Defendant Vinod C. Gupta." (Doc. 114). As the Court put it, Vinod sought a protective order render the "documents wholly undiscoverable." (Doc. 148, p. 6). Although the Court stated it was preliminarily amending the protective order to preclude Jesse Rochman from viewing certain documents, it never informed the parties what documents would be subject to the more limited protective order, and Vinod never made an alternative request seeking to amend the protective order in the manner done by the Court. And because a party "cannot prevail by making an unreasonable argument while forfeiting the only reasonable one he could have made," *BCS Services, Inc. v. BG*

*Investments, Inc.*, 728 F.3d 633, 642 (7th Cir. 2013), Plaintiff never briefed what documents could be considered "confidential business information" for an amended protective order.

Documents are not confidential because a party asserts the documents are by their nature confidential documents. *See Baxter Internat'l Inc. v. Abbott Laboratories*, 297 F.3d 544, 547 (7th Cir. 2002) (finding a document cannot be deemed confidential "because we say so"). Further, a document cannot be confidential based on conclusory statements that a party will be harmed. *See id*. (finding a document cannot be deemed confidential because it could "harm [defendant's] competitive position"); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) ("a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements" is necessary to support a request for a protective order) (citations omitted). Rather, to establish "good cause" and protect confidential business information under Rule 26(c), the party seeking confidentiality must show that a "clearly defined and very serious injury" that will result from disclosure. *Forst v. SmithKline Beecham Corp.*, 602 F. Supp. 2d 960, 974 (E.D. Wis. 2009) (internal citation and quotation omitted). Documents must also be maintained as confidential by the party seeking protection. *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 300 (N.D. Ill. 1993) ("[T]he party seeking protection bears the burden of establishing: (1) that the information is in fact a trade secret or confidential commercial information and (2) that there is good cause to

protect the information."); *Andrew Corp. v. Rossi,* 180 F.R.D. 338, 341 (N.D. Ill. 1998) (protection of documents under Rule 26(c)(7) requires that the party seeking to restrict access to the documents took sufficient "measures [] to guard the information's secrecy," such as keeping the documents in locked files, providing the information to employees and consultants only on a need-to-know basis, and requiring those who receive the information to sign confidentiality agreements.). Vinod never met this burden; nor could he ever meet this burden as to his documents, but this is especially true regarding certain documents designated as confidential by this Court.

   **1. Requests 11-12 and 15-20**

The Court held that documents produced under Requests 9-12 "would constitute confidential business information, and he may produce subject to the more limited, amended protective order established by this entry…." (Doc. 148, p. 13). Requests 9-10 concerned financial statements and Requests 11-12 concerned all checks Vinod drafted to Vivek Gupta or Lewis Maudlin for notice and title services for which he claimed reimbursement. (Doc. 148, p. 12). The Supreme Court has already held checks are not confidential. *United States v. Miller*, 425 U.S. 435, 442 (1976) ("The checks are not confidential communications but negotiable instruments to be used in commercial transactions."). The same is true for Requests 19-20, which sought documents and ESI showing transfer of payment of funds or money to Vivek Gupta and Lewis Maudlin. Likewise, communication about payment would not be confidential business information. Nor has Vinod "clearly defined" any harm

that disclosure of these documents would cause, let alone "serious harm." Indeed, unlike other document requests, Vinod did not even state in conclusory fashion he would be harmed if these documents were viewed by a business competitor. (Doc. 137, p. 12-14). Upon reconsideration, the Court should decline to designate the checks as confidential business information subject to the amended protective order.

### 2. Requests 13-14

These requests sought "[e]ach and every Form 137B in Word format" and "[e]ach and every 'NOTICE OF SALE AND REDEMPTION PERIOD EXPIRATION' in Word format . . . ." (Doc. 148, p. 14). The Forms 137B are submitted to the county and become *public* records. The same is true for the notices, which were sent to Plaintiff, the putative class and other persons with a substantial interest in the property purchased at the tax sale. (Doc. 85, ¶ 23). Documents in the public domain or sent to Plaintiff and the putative class would be the antithesis of *confidential* business information.

The only difference between the Word documents and the paper copies submitted to the counties or sent to Plaintiff and the putative class is that the Word documents are searchable and retain the metadata. There is nothing confidential or proprietary about the metadata and Vinod has never "clearly defined" any harm that disclosure of these documents with their metadata intact would cause, let alone "serious harm." Indeed, unlike other document requests, Vinod did not even state in conclusory fashion he would be harmed if the documents were viewed by a business competitor. (Doc. 137,

p. 12-14). Upon reconsideration, the Court should decline to designate these Word documents as confidential business information subject to the amended protective order.

### 3. Requests 27-28.

These requests sought all business records of any bank that Vinod did business with since 2002 and all communications with BPNA, including its counsel. (Doc. 148, p. 20). As stated in *Miller*, these records "are the business records of the banks," and not Vinod's "private papers." 425 U.S. at 440; *see also Clayton Brockerage Co, Inc. Of St. Louis v. Clement*, 87 F.R.D. 569, 571 (D. Md. 1980) (citing *Miller*) ("In *Miller*, the Supreme Court held that a bank customer has no 'legitimate expectation of privacy" in the contents of checks, deposit slips and other banking documents. These records are not confidential communications but instruments of commercial transactions. ... [T]he documents sought ... are the business records of the bank, and ... requiring the bank to produce its records is not violative of any cognizable privacy right of the defendant."). Upon reconsideration, the Court should decline to designate bank records and communication with the bank as confidential business information subject to the amended protective order.

### D. Conclusion

The Court requested the parties to address how to restructure any portions of the order. (Doc. 151, 43:15-20). Accordingly, a redlined copy of the court's prior order consistent with Plaintiff's arguments above is attached. Plaintiff respectfully requests the Court modify its order consistent with the

arguments above and affirm its order in all other respects; and all other relief justified under the circumstances.

                    SANDBERG PHOENIX & von GONTARD P.C.

                    By:   /s/Jesse B. Rochman
                          John S. Sandberg
                          Bhavik R. Patel
                          Jesse B. Rochman
                          600 Washington Avenue - 15th Floor
                          St. Louis, MO  63101-1313
                          314-231-3332
                          314-241-7604 (Fax)
                          jsandberg@sandbergphoenix.com
                          bpatel@sandbergphoenix.com
                          jrochman@sandbergphoenix.com

                          *Attorneys for Plaintiff*

**Certificate of Service**

     I certify that on November 18, 2013, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the attorneys of record.

                                         /s/Jesse B. Rochman