UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JOSHUA B. CRISSEN, individually and on behalf of all others similarly situated, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No.  2:12-cv-00355-JMS-WGH |
| VINOD C. GUPTA, | ) | |
| SATYABALA V. GUPTA, | ) | |
| WIPER CORPORATION, | ) | |
| VIVEK V. GUPTA and | ) | |
| BANCO POPULAR NORTH AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

**OBJECTION TO MAGISTRATE JUDGE'S NOVEMBER 7, 2013 JOINT ENTRY
ON PLAINTIFF'S MOTION TO COMPEL AND DEFENDANT VINOD C. GUPTA'S
MOTION FOR PROTECTIVE ORDER AND NOVEMBER 21, 2013 MARGINAL
ENTRY DENYING RECONSIDERATION OF SAME**

The Defendant Vinod C. Gupta ("Mr. Gupta"), by counsel, pursuant to Fed. R. Civ. P.

72(a), respectfully OBJECTS to the Magistrate Judge's November 7, 2013 Joint Entry on

Plaintiff's Motion to Compel and Defendant Vinod C. Gupta's Motion for Protective Order (Dkt.

148) and his November 21, 2013 Marginal Entry denying reconsideration of same (Dkt. 163),

and asks the Court to grant the relief requested in the Conclusion hereof.

## I.   Introduction

If an owner of real estate in Indiana fails to pay real property taxes, the real estate may be

sold to satisfy the tax obligation. *In re 2007 Tax Sale in Lake County*, 926 N.E. 2d 524 (Ind. Ct.

App. 2010).  The tax sale process is purely a statutory creation. *Id*. at 527.  Ind. Code § 6-1.1-24

governs the sale of real property when taxes or special assessments become delinquent. *Prince

v. Marion County Auditor*, 992 N.E.2d 214 (Ind. Ct. App. 2013).  Generally, each property is

offered for sale at an annual tax sale or auction conducted by the county treasurer, and sold to the highest bidder at the sale, subject to a minimum bid which includes the delinquent taxes and special assessments, penalties due on the delinquencies, current taxes and assessments due but not yet delinquent, plus the costs of the sale.  Ind. Code § 6-1.1-24-5.  After a property is sold at tax sale and the purchaser pays the bid price to the county, the tax sale purchaser acquires a lien against the property.  Ind. Code § 6-1.1-24-9.  In order to obtain a tax deed to the property, the tax sale purchaser is required to give notice by certified mail "to the owner of record at the time of the sale and any person with a substantial property interest of record in the tract or real property" (*e.g.*, a holder of a mortgage lien, judgment lien or other lien or interest of record) of the sale and of the right to redeem the property from the sale.  Ind. Code § 6-1.1-25- 4.5.  A property may be redeemed by a delinquent taxpayer from the tax sale within one year after the tax sale by payment to the county treasurer of the minimum bid plus a bid premium (generally 10% of the minimum bid if redeemed within 6 months after the tax sale or, if redeemed more than 6 months after the sale but not more than a year after the sale, 15% of the minimum bid).[1]  Ind. Code § 6-1.1-25- 2.  If the property is not redeemed within the one-year redemption period after the tax sale, the tax sale purchaser, after giving notice of the filing of a petition for tax deed "to the same parties and in the same manner as provided in section 4.5 of this chapter," may be issued a tax deed to the property.  Ind. Code § 6-1.1-25- 4.6.

In order to give the notices required by these statutes, tax sale purchasers sometimes employ others to perform a title search of the property in order to ascertain the name and address of "the owner of record at the time of the sale and any person with a substantial property interest

---

[1] The amount required for redemption also includes any taxes and special assessments for the property paid by the tax sale purchaser after the date of the sale, plus 10%.  Ind. Code § 6-1.1-25- 2(d).

of record in the tract or real property" and to help give the notice by certified mail required by Ind. Code § 6-1.1-25-4.5.  If, before a property is redeemed,  a tax sale purchaser certifies "to the county auditor on a form prescribed by the state board of accounts" (a "Form 137B") the amount of "[t]he attorney's fees and costs of giving notice under section 4.5 of this chapter" (the "Noticing Costs") and "[t]he costs of a title search or of examining and updating the abstract of title for the tract or item of real property" (the "Title Costs") that were "incurred and paid by the purchaser," then such amounts are added to the sum that is required to redeem the property.  Ind. Code § 6-1.1-25-2.  Each county establishes its own schedule of allowable Noticing Costs and Title Costs that may be reimbursed.  Ind. Code § 6-1.1-25-2.5.  If the property is redeemed by a delinquent taxpayer by payment of the minimum bid, the bid premium, and any Noticing Costs and Title Costs certified by the tax sale purchaser, the county reimburses the tax sale purchaser for the bid price and any certified Noticing Costs and Title Costs advanced by the tax sale purchaser, and pays the bid premium to the tax sale purchaser.

This action was commenced by the filing of a Class Action Complaint in this Court on December 4, 2012 by the Plaintiff Joshua B. Crissen ("Crissen") against the Defendants Mr. Gupta, his wife Satyabala V. Gupta ("Mrs. Gupta"), and a company they own named Wiper Corporation ("Wiper") (collectively, the "Gupta Defendants").  That Complaint was virtually identical (copied *verbatim*, except for changing the names) to a class action complaint filed by the same law firm who represents Crissen in the instant action, Sandberg Phoenix & von Gontard P.C., (the "Sandberg Law Firm") on February 2, 2011 in the United States District Court for the Southern District of Illinois, East St. Louis Division, under Cause No. 3:11-cv-00139-GPM-SCW on behalf of James Bowen against William E. Groome and Vicki L. Groome.  Both class action complaints generally allege that the defendants failed to incur and pay Noticing Costs and

3

Title Costs for which they were reimbursed in connection with certain properties they purchased at tax sales in Indiana that were redeemed by the plaintiffs in the proposed class. The class action complaints aggregated these individual claims, and allege generally that the defendants committed mail fraud giving rise to racketeering and conspiracy claims under federal and state RICO statutes, and various other state statutes offering relief for fraud-type claims.[2] In the instant action, the Gupta Defendants have categorically denied liability for the claims asserted by Crissen, having long ago produced to Crissen's attorneys copies of the certified mail tickets for the notices sent to the "owner of record at the time of the sale and any person with a substantial property interest of record in the tract or real property" pursuant to Ind. Code § 6-1.1-25- 4.5 for properties purchased by Mr. Gupta at tax sales in Indiana which demonstrate that notice was in fact sent to the appropriate parties disclosed by a title search performed for each such property.

## II. <u>Procedural Background</u>

On April 16, 2013, Crissen served a Subpoena Duces Tecum on Banco Popular North America ("BPNA"),[3] the financial institution where Mr. Gupta conducts his personal and business banking, seeking, *inter alia*, [a]ll documents or electronically stored information relating to Vinod C. Gupta, Satyabala V. Gupta and Wiper Corporation from January 1, 2002 to the present, including but not limited to all documents or electronically stored information relating to loans, loan applications, letters of credit, applications for letters of credit . . .." (Dkt. 37-2, p. 4). On May 22, 2013, the Gupta Defendants filed their "Emergency Motion to Quash

---

[2] With leave of Court (Dkt. 84), Crissen filed a First Amended Class Action Complaint in the instant action on August 21, 2103 (Dkt. 85), adding Mr. and Mrs. Gupta's son Vivek V. Gupta and Banco Popular North America as defendants.

[3] BPNA was not yet a party to this action at the time this subpoena was issued or responded to.

Non-Party Subpoena Directed to Banco Popular North America and for Protective Order. (Dkt. 36). By Marginal Entry of June 4, 2013, the Magistrate Judge granted in part and denied in part that motion as follows: "Banco Popular North America shall produce all items called for in the subpoena except: Financial Statements, Loan or Letter of Credit Applications and Personal Income Tax Returns." (Dkt. 42). By his subsequent Entry in Support of Order Granting, in Part, and Denying, in Part, Defendant's Emergency Motion to Quash Non-Party Subpoena Directed at Banco Popular North America and for Protective Order of June 11, 2013 (the "Protective Order"), the Magistrate Judge held that:

> financial statements of the individual Defendants, loan or letter of credit applications, and personal tax returns are not relevant, because they contain personal financial information not necessary for the determination of the issues before the court at this time. Traditionally, personal financial information is considered confidential information. The Magistrate Judge may reconsider the relevancy of the excluded information, but only upon a more specific showing of good cause and substantial need by the proponent of the Subpoena. Therefore, while the Motion to Quash must be denied, a limited protective order will issue to protect certain financial data, at least until a later date when a more specific showing of relevancy is made.

(Dkt. 44, p. 2).

On March 4, 2013, Crissen served his Plaintiff's First Set of Interrogatories to Defendant Vinod C. Gupta (the "Interrogatories") and his Plaintiff's First Set of First Set of Requests for Production Directed to Defendant Vinod C. Gupta (the "First Request for Production"). On May 1, 2013, Crissen served his Plaintiff's Second Set of Requests for Production Directed to Defendant Vinod C. Gupta (the "Second Request for Production"). On June 3, 2013, Mr. Gupta served his Defendant Vinod C. Gupta's Responses to Plaintiff's First Set of Interrogatories (Dkt. 115-5), his Defendant Vinod C. Gupta's Responses to Plaintiff's First Set of Requests for Production (Dkt. 115-1), his Defendant Vinod C. Gupta's Responses to Plaintiff's Second Set of

Requests for Production (Dkt. 115-2), and produced to Crissen over 48,000 Bates-numbered documents and electronic records responsive to these interrogatories and requests for production.

On July 4, 2013, Crissen served his Plaintiff's Third Request for Production Directed to Defendant Vinod C. Gupta (the "Third Request for Production"), containing 38 additional requests for production.  On July 18, 2013, Crissen served his Plaintiff's First Request for Admissions to Defendant Vinod C. Gupta (Dkt. 53).  On August 6, 2013, Mr. Gupta served his Defendant Vinod C. Gupta's Responses to Plaintiff's Third Set of Requests for Production (Dkt. 115-3), objecting to most of the requests in the Third Request for Production.  After conferring with each other and the Magistrate Judge about their discovery dispute, the Magistrate Judge directed the parties on September 5, 2013 to file any motions to compel or for protective order (Dkt. 96).  Accordingly, on September 11, 2013 Crissen filed his Plaintiff's Motion to Compel (Dkt. 106), and on September 24, 2013 Mr. Gupta filed his Defendant Vinod C. Gupta's Motion for Protective Order (Dkt. 114).

At a settlement conference on October 10, 2013, the Magistrate Judge informed the parties of his likely ruling on Crissen's Motion to Compel (that he would likely order that certain parts of Mr. Gupta's tax returns be produced) and Mr. Gupta's Motion for Protective Order (that he would likely prohibit Jesse Rochman from viewing documents and information produced by Mr. Gupta).  At that time, counsel for Crissen requested -- no, **demanded** -- an evidentiary hearing to make a record with respect to prohibiting Jesse Rochman from viewing documents and information produced by Mr. Gupta.  (Dkt. 148, p. 7).  The Magistrate Judge accommodated that demand by setting a hearing for November 8, 2013 on "any outstanding discovery motions." (Dkt. 139).

All of the litigants fully expected the hearing on November 8 to be an evidentiary hearing on Plaintiff's Motion to Compel and Mr. Gupta's Motion for Protective Order.  However, on November 7, 2013, the Magistrate Judge made and entered his Joint Entry on Plaintiff's Motion to Compel and Defendant Vinod C. Gupta's Motion for Protective Order (Dkt. 148) (the "Order on Discovery Motions") here appealed.  When he issued that Order on Discovery Motions on November 7, the Magistrate Judge made the evidentiary hearing scheduled for the next day on November 8 a hearing to "reconsider" that November 7 Order on Discovery Motions.  (Dkt. 148, pp. 23-24).  Nonetheless, at the hearing on November 8, the Magistrate Judge made it clear that "[m]y focus at the hearing today is to give Mr. Sandberg a reason to tell me why I should reconsider the decision and allow Jesse Rochman to see this."  (Dkt. 151, p. 22, lines 3-5).

Following the evidentiary hearing on November 8, 2013, the Magistrate Judge's Minute Entry for November 8, 2013 provided, in relevant part:

> The parties were given ten (10) days to supplement the record with any other information pertinent to the court's decision, including appropriate documents from the Phoenix litigation, if any, and a response to Exhibit 2 of the Affidavit of Mr. Peck.

(Dkt. 153).

By Marginal Entry on November 21, 2013, the Magistrate Judge "decline[d] to reconsider or modify his order at Docket No. 148."  (Dkt. 163).  This is an appeal to the District Court of that order pursuant to Fed. R. Civ. P. 72(a).

Mr. Gupta respectfully believes that the Magistrate Judge erred in a number of respects in his 24-page Order on Discovery Motions of November 7 (Dkt. 148).  However, respecting the precious time and resources of the District Court, Mr. Gupta is here appealing only one part of that Order, namely, the part pertaining to Request No. 7 of the Third Request for Production. Request No. 7 of Crissen's Third Request for Production sought production of "[t]he first page of

each Form 1040 and each Schedule C/C-EZ submitted by you in connection with your tax returns." (Dkt. 115-3, p. 6). Mr. Gupta believes that the Magistrate Judge's Order on Discovery Motions was clearly erroneous and contrary to law in ordering Mr. Gupta to produce parts of his income tax returns to Crissen in response to this request, even pursuant to the more limited protective order as amended by the Order on Discovery Motions. For the reasons set forth herein, Mr. Gupta asks this Court to modify the Magistrate Judge's Order on Discovery Motions by ordering Request No. 7 of Plaintiff's Third Request for Production to be narrowed to request: "The first page of each Form 1040 and each Schedule C/C-EZ submitted by you in connection with your tax returns which shows or includes Title or Notify Costs incurred and paid by you with respect to redeemed properties in Indiana or amounts received by you in reimbursement of Title or Notify Costs certified by you with respect to redeemed properties in Indiana." Alternatively, Mr. Gupta is willing to sign a sworn stipulation admitting that his income tax returns do not show or include Title Costs or Noticing Costs incurred and paid by him with respect to redeemed properties in Indiana or amounts received by him in reimbursement of Title Costs or Noticing Costs certified by him with respect to redeemed properties in Indiana.

### III.  Argument

#### A.  Mr. Gupta's Income Tax Returns Are Not Relevant
#### to Crissen's Claims in This Action

Fed. R. Civ. P. 26(b)(1) provides:

**(b) Discovery Scope and Limits**.

> **(1)** *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is **relevant to any party's claim or defense**--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter

> relevant to the subject matter involved in the action. Relevant
> information need not be admissible at the trial if the discovery
> appears reasonably calculated to lead to the discovery of admissible
> evidence. All discovery is subject to the limitations imposed by Rule
> 26(b)(2)(C).

(emphasis added).  The 2000 amendments to Rule 26(b)(1) narrowed the scope of discoverable materials with the inclusion of the term "relevant to the claim or defense of any party" and the removal of the term "relevant to the subject matter involved in the pending action."  Even discovery of information and materials "reasonably calculated to lead to the discovery of admissible evidence" is limited to "relevant" information and materials.  Put simply, relevance is the threshold of discoverability: in order to be discoverable, materials must in the first instance be "relevant."  If they are not relevant, they are not discoverable.

In his Objection to Request No. 7 of the Third Request for Production, Mr. Gupta unequivocally asserted that the documents requested by this Request No. 7 – the first page of each Form 1040 and each Schedule C/C-EZ submitted by him in connection with his tax returns – were not discoverable because they are not relevant:

> Gupta, by counsel, objects to this Request because it seeks production of
> personal and private documents and electronically stored information that are **not
> relevant to Plaintiff's claims**.  Gupta, by counsel, further objects to this Request
> to the extent that it seeks documents and electronically stored information
> containing non-public confidential financial information that is **not related to or
> relevant to Plaintiff's claims**.  Gupta, by counsel, also objects to this Request
> because there is a Protective Order already in place in this action protecting
> against production or disclosure of the documents and electronically stored
> information sought in this Request.  Gupta, by counsel, further objects to this
> Request as overly broad because in seeks documents and electronically stored
> information containing information wholly unrelated to Gupta's tax sale business,
> and related to non-Indiana tax sales or commissioner's sales and tax sales or
> commissioner's sales for which the applicable statute of limitations has expired.
> It is also not limited in time, and it is not limited in scope to any issue in this
> litigation or even to Gupta's Indiana tax sale business.   This **irrelevant** Request
> is designed to harass, prejudice and embarrass Gupta.

(Dkt. 115-3, p. 6) (emphasis added).  He made the same assertion in the briefing on his Motion for Protective Order (Dkt. 114, p. 15).

It must be pointed out that, in response to Request No. 3 of Crissen's earlier <u>Second</u> Request for Production, which directed Mr. Gupta to produce "Schedule C to your tax returns and any other section or schedule of your tax return where you listed business expenses related to incurring and paying Notify Costs and Title Costs," Mr. Gupta responded back on June 3, 2013 (over a month before Crissen even served his <u>Third</u> Request for Production containing Request No. 7 here in question) that he "**does not have any documents** in his possession, custody or control **responsive to this Request**."  (Dkt. 115-2, pp. 5-6) (emphasis added).  Plainly, Mr. Gupta admitted by his response to this request that neither "Schedule C to his tax returns" nor "any other section or schedule of [his] tax return" "listed business expenses related to incurring and paying Notify Costs and Title Costs."

Crissen argued in the briefing on his Motion to Compel that:

> Any Notify and Title Costs incurred and paid by Vinod to his attorneys should be reflected on Schedule C.  Vinod's failure to report the Title and Notify Costs on his tax returns furthers the probability that he did not pay Vivek and Lewis for Title and Notify Costs.  Thus, these portions of the tax return are relevant.

(Dkt. 106, p. 6).  Likewise, in his response to Mr. Gupta's Motion for Protective Order, Crissen again argued that:

> Any Notify and Title Costs incurred and paid by Vinod to his attorneys should be reflected, even if in gross, in these sections of Schedule C.  The Amounts on Schedule C flow through to the first page of the Form 1040.  If the amounts reported are less than what Defendants listed in their Certifications, then he probably did not pay Vivek and Lewis for Title and Notify Costs.  Thus, these portions of the tax return are relevant.

(Dkt. 128, p. 11).  Even at the November 8 hearing, Crissen's counsel argued: "We've only asked for the information as to the financial statements to show whether – and one item and one

10

item only is reflected on there, which is payment for title and notify costs." (Dkt. 151, p. 8, lines 9-12). This was and still is Crissen's **__only__** argument as to why Mr. Gupta's income tax returns would be relevant to Plaintiff's claims in this action. In essence, Crissen asked the Magistrate Judge to __assume__, based on the naked assertion by his counsel, that Title Costs and Notice Costs for redeemed properties should be shown or included on Mr. Gupta's income tax returns, and the Magistrate Judge made that assumption in reaching his conclusion that Mr. Gupta's tax returns were relevant ("the Court finds that Plaintiff has articulated a sufficient showing of relevance and good cause to render the [tax returns] discoverable") (Dkt. 148, p. 10).

The fallacy of that assumption was exposed at the November 8 hearing with the introduction of the Affidavit of Robert E. Peck, CPA, (the "Peck Affidavit") by counsel for Mr. Gupta.[4] Mr. Peck is a Certified Public Accountant with over 30 years of experience in the business of accounting, who regularly prepares, reviews, and signs tax returns for individuals, trusts, and business entities. (Dkt. 159-2, p. 1, ¶¶ 3-4). He is a Tax Director at RJ Pile, LLC, one of the most respected CPA firms in the state of Indiana, which has been in business continuously since 1938. (Dkt. 159-2, p. 1, ¶¶ 5-6). In his Affidavit, Mr. Peck renders his professional opinion that any Title Costs and Noticing Costs incurred and paid by Mr. Gupta, as well as their subsequent reimbursement by a county, "are **not** reportable on [Mr. Gupta's] income tax returns." (Dkt. 159-2, pp. 3-4, ¶13) (emphasis added). If any Title Costs and Noticing Costs incurred and paid by Mr. Gupta "are not reportable on [Mr. Gupta's] income tax returns," then Mr. Gupta's income tax returns are not in any way relevant to Crissen's claims in this litigation.

---

[4] The Peck Affidavit was introduced by counsel for Mr. Gupta as Exhibit 2 at the November 8 hearing (Dkt. 151, p. 29, lines 23-24). Another copy is included as an exhibit to Defendants Vinod C. Gupta, Satyabala V. Gupta and Wiper Corporation's Supplemental Submission Pursuant to the Court's November 14, 2013 Minute Entry (Dkt. 159-2).

And if they are not relevant to Crissen's claims in this litigation, then they are not discoverable in this litigation.

Following the November 8 hearing, Crissen was allowed ten (10) days by the Magistrate Judge to obtain and file an affidavit from a CPA or other tax professional to contradict the professional opinion expressed in the Peck Affidavit.  Crissen did not do so, and the only logical inference to be drawn from that is that Crissen and his counsel cannot find a CPA or tax professional to render an expert opinion contrary to that stated in the Peck Affidavit.  In other words, Crissen failed to provide Magistrate Judge Hussmann with any expert evidence contradicting the Peck Affidavit or supporting Crissen's fallacious assumption or conjecture that Mr. Gupta's income tax returns should show or include Title Costs and Noticing Costs incurred and paid by Vinod for redeemed properties.  Crissen argued that Mr. Gupta's income tax returns were relevant to Crissen's claims by asking the Magistrate Judge to **assume** that Mr. Gupta's income tax returns should show or include Title Costs and Noticing Costs incurred and paid by Vinod for redeemed properties as expenses on Vinod's Schedule C and should show or include the reimbursement thereof by the counties as income on Vinod's Schedule C and Form 1040. The Peck Affidavit categorically dispels that false assumption.

This is precisely the kind of misapprehension of the facts or law that warrants reconsideration of the Order on Discovery Motions by this Court.  "[A]ll judges make mistakes," *Fujisawa Pharm. Co., Ltd. v. Kapoor*, 115 F.3d 1332, 1339 (7th Cir. 1997), particularly when they are misled by arguments to assume things that are not true.  "[I]n any given opinion, [a court] can misapprehend the facts . . . or even overlook important facts or controlling law." *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 802 F.2d 217, 219 (7th Cir. 1986).  A court must have the power to redress "[a] grievous wrong [resulting from] some misapprehension or

12

inadvertence by the judge . . .."  *Bank of Waunakee*, 906 F.2d at 1191.  Reconsideration is

warranted where there is a compelling reason:  for example, where the court has misunderstood a

party's position or made a significant mistake.  *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606

(7th Cir. 2000).

      B.  <u>Even If Information (or the Absence Thereof) from Mr. Crissen's Income Tax Returns
Were Relevant, There are Less Intrusive Means to Provide Crissen the Relevant
Information Requested</u>

"[J]udges should not hesitate to exercise appropriate control over the discovery process."

*Herbert v. Lando*, 441 U.S. 153, 177 (1979).  The use of the liberal discovery provisions of the

Federal Rules of Civil Procedure to harass opponents is common, and requires the vigilance of

the District Court Judges to prevent.  *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 706 F.2d

1488, 1495 (7th Cir. 1983), *on reh'g*, 726 F.2d 1150 (7th Cir. 1984), *rev'd on other grounds*, 470

U.S. 373 (1985).  Discovery aimed at an opponent's personal finances is a quick route to the

underside of the opponent's skin.  *Finch v. City of Indianapolis*, 2011 WL 2516252 (S.D. Ind.

June 23, 2011) (citing to *Estate of Lee ex rel. McGarrah v. Lee & Urbahns Co.*, 876 N.E.2d 361,

369 (Ind. Ct. App. 2007).  "It seems self-evident that a person's personal financial records . . .

are something almost all persons would prefer to keep private . . . [A] request for such records

would be, for most, annoying and quite likely embarrassing, unduly burdensome, and expensive

as well.  *Id.*  While the scope of permissible discovery is broad, it is not unlimited.  *In re Yasmin*

*& Yaz (Drospirenone) Mktg., Sales Practices & Products Liab. Litig.*, MDL 2100, 2011 WL

5547133 (S.D. Ill. Nov. 15, 2011).  The court has the obligation of limiting discovery if it

determines that the burden or expense to comply outweighs its likely benefit "considering the

needs of the case, the amount in controversy, the parties' resources, the importance of the issues

at stake in the action, and the importance of the discovery in resolving the issues."  See *Finch v. City of Indianapolis*, 2011 WL 2516242 (S.D. Ind. June 23, 2011).

The Seventh Circuit has addressed the restriction on disclosure of financial information and tax returns, holding: "Judicial proceedings are presumptively open, but particular information may be withheld.  Personal income is among the categories that can be withheld." *Methodist Hospitals, Inc. v. Sullivan*, 91 F.3d 1026, 1031 (7th Cir. 1996).  Indeed, there is generally a strong public policy against the disclosure of income tax returns. *Fed. Sav. & Loan Ins. Corp. v. Krueger*, 55 F.R.D. 512, 514 (N.D. Ill. 1972).  Disclosure of tax returns is highly restrictive. *Methodist Hosp., Inc.*, 91 F.3d at 1031; see also *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 75 (7th Cir. 1992) (In the Seventh Circuit, tax returns are produced only where there "**[i]s no reasonable alternative source for the information requested**.") (emphasis added).  Mr. Gupta has a valid interest in the privacy of his personal records, including his personal income tax returns, see *Hollinger Intern. Inc. v. Hollinger, Inc.*, 2005 WL 3177880, *4 (N.D. Ill. Jan. 19, 2005), and he has advanced a reasonable alternative to that ordered by Magistrate Judge Hussmann.

Mr. Crissen has maintained throughout this proceeding that there is a less intrusive means of providing Crissen with the relevant information he seeks than by requiring Mr. Gupta to produce parts of his income tax returns.  (Dkt. , pp. 28-36, 42-43).  If the Court will narrow Request No. 7 of Plaintiff's Third Request for Production to request: "The first page of each Form 1040 and each Schedule C/C-EZ submitted by you in connection with your tax returns which shows or includes Title or Notify Costs incurred and paid by you with respect to redeemed properties in Indiana or amounts received by you in reimbursement of Title or Notify Costs certified by you with respect to redeemed properties in Indiana," Mr. Gupta will then respond in

14

one or three ways.  If no documents as described in the request exist, he will respond by stating that none exist, and if the District Court wants Mr. Gupta's response to be sworn, he will provide a sworn response.   If such documents were produced in response to the Plaintiff's previous requests for production, he will respond by stating which specific Bates-numbered documents fit the description in the request.  And, if such documents exist but were not produced in response to the request originally, he will produce them.   Alternatively, Mr. Gupta shall sign a sworn stipulation admitting that his income tax returns do not show or include Title Costs or Noticing Costs incurred and paid by him with respect to redeemed properties in Indiana or amounts received by him in reimbursement of Title Costs or Noticing Costs certified by him with respect to redeemed properties in Indiana.  Magistrate Judge Hussman's November 7 on Order on Discovery Motions (Dkt. 148) will in all other respects remain affirmed.

This alternative approach is totally consistent with the Magistrate Judge's treatment of Crissen's Request Nos. 9-12, 15-20 and 27-29 in his Order on Discovery Motions (Dkt. 148, pp. 13-14, 19-20, and 21). This treatment of Mr. Gupta's tax returns is balanced and fair, and addresses the concerns of both parties.  If Mr. Gupta has income tax returns which show or include Title or Notify Costs for redeemed properties, then he would produce them as requested by Crissen.  If Mr. Gupta does not have tax returns which show or include Title or Notify Costs for redeemed properties, then Crissen may use this request for production as a request for admission and create a record of Mr. Gupta's position that no such tax returns exist.  This way, even if the Crissen were able to find a tax professional willing to opine that Title or Noticing Costs for redeemed properties **are** reportable on Mr. Gupta's income tax returns, Crissen will have Mr. Gupta's admission that he did not report those amounts on his tax returns and can argue that fact to the jury at trial.  Narrowing Request No. 7 as proposed by Mr. Gupta protects him

from being required to produce pages of his income tax returns which are not relevant to the Plaintiff's claims in this action and highly prejudicial.  Indeed, the only way to protect Mr. Gupta from being required to produce irrelevant documents in response to Request No. 7 is for this Court to narrow that request as proposed by Mr. Gupta.

      C.  <u>Gupta Will Be Prejudiced If He Is Compelled to Produce Parts of His Tax Returns</u>

When a party will be prejudiced by a discovery request, the District Court should carefully balance the benefits of discovery to the requesting party against prejudice to the producing party, and should exercise its discretion to limit production in order to minimize that prejudice.  Crissen states he wants certain pages of Mr. Gupta's tax returns for the limited purpose of determining whether Mr. Gupta incurred and paid Title and Noticing Costs with respect to redeemed properties that he purchased at tax sales in Indiana, and the amounts of such income and expenses reported.  Crissen states he needs this information in order to prove that Mr. Gupta did not incur or pay Title and Noticing Costs – the issue in this lawsuit.  At the November 8 hearing to reconsider Magistrate Judge Hussmann's November 7 Order on Discovery Motions, counsel for Crissen stated:  "We've only asked for the information as to the financial statements to show whether – and one item and one item only is reflected on there, which is payment for title and notify costs."  (Dkt. 151, p. 8, lines 9-12).  Both in response to earlier discovery and in arguments since then Mr. Gupta's counsel has advised Crissen's counsel and the Magistrate Judge that Mr. Gupta's income tax returns do not contain any evidence of payment for Title and Noticing Costs, and Mr. Gupta is willing to admit to or stipulate to that fact.  This was not acceptable to Crissen.  This raises an important question, relevant to the prejudice issue: Why does Crissen insist on seeing Mr. Gupta's income tax returns, which include a lot of financial information about Mr. Gupta's business that is not relevant to this

lawsuit, when he is told that those returns contain no information about the incurring or paying of Title or Noticing Costs?

Mr. Gupta has been insistent since the inception of this action that this lawsuit against him has been orchestrated by Barrett Rochman, a powerful and wealthy co-competitor in the tax sale business, in order to settle an old business score with Mr. Gupta and to run him out of business. Barrett Rochman has implemented this scheme by soliciting Mr. Crissen to serve as a class representative in the instant action, and then hiring his son, Jesse Rochman, and the Sandberg Law Firm where Jesse practices law, to pursue this litigation.[5]

Since December 2012, Crissen has subjected Mr. Gupta to repeated and extensive discovery under Fed. R. Civ. P. 33, 34 and 36, designed to discover virtually every aspect of Mr. Gupta's personal and financial life.[6] Crissen served Mr. Gupta with a first, then a second, then a third request for production of documents, the third request containing 38 different broadly written requests that made virtually no attempt to limit production to the issue of payment of Title and Noticing Costs – the information Crissen states he needs in order to prove his claims – and in most cases, the Third Request for Production merely recycled and repeated the overly-broad requests contained in Crissen's First and Second Requests for Production.

---

[5] Mr. Gupta's counsel is mindful that this Court does not like it when lawyers raise questions about the tactics or ethics of other lawyers. However, sometimes such issues cannot be avoided in the representation of a client. Unfortunately, this is one of those times. Mr. Gupta believes the facts and arguments stated in this section are relevant to the "prejudice" question and explain why Mr. Gupta is fighting so hard to limit Crissen's access to his tax returns and confidential financial information.

[6] By way of further example, Crissen most recently filed a Motion to Increase the Number of Depositions That a Party May Take, seeking leave to increase the number of depositions that he may take by two-and-a-half times the number allowed by the Rules, from 10 to 25, even though he has only taken one deposition to date. (Dkt. 162).

Significantly, Crissen does not deny Barrett Rochman's predatory scheme.  In fact, when Crissen's counsel addressed this issue at the November 8 hearing, he swept aside the import of Barrett Rochman's actions, stating, "in the United States that's called competition; you can do whatever you want to drive a competitor out of business.  If it's not illegal, you're entitled to it." (Dkt. 151, p.5, lines 1-4).   Thus, according to Crissen's attorneys, so long as they operate within the rules, they can push Mr. Gupta to produce anything the Court is willing to authorize and – because the Court authorizes it – then it is legal and just another example of good old American competition.

Mr. Gupta believes that the Federal Rules of Civil Procedure on discovery are intended to operate somewhat differently.  Fed. R. Civ. P. 26(c) creates a mechanism by which the District Court can act as a shield to limit discovery, even if otherwise allowed by the Rules on discovery, if limits are necessary to protect a party from abuse and prejudice.  The Seventh Circuit and the Judges in the Southern District have instructed attorneys to litigate their cases with civility, and to avoid Rambo tactics designed to destroy an opposing party just for the sake of destroying an opposing party.  For the reasons that Mr. Gupta will discuss in this section, this is one of those cases where the District Court needs to step in and protect Mr. Gupta.  Fortunately, this is a case where Mr. Gupta can be adequately protected, and at the same time the Court can give Crissen the evidence he wants to try to prove his case.  Crissen's counsel says he needs Mr. Gupta's income tax returns to prove whether or not Mr. Gupta incurred and paid Title and Noticing Costs.  That is the only reason he has advanced for requiring Mr. Gupta to produce parts of his personal income tax returns.  If this is true, then Crissen does not need all of the other tax and financial about Mr. Gupta's businesses that is contained in Mr. Gupta's income tax returns.  If Mr. Gupta admits or stipulates, as he has offered to do, that his income tax returns do not show

or include Title or Noticing Costs, then Crissen has what he needs for trial, but Crissen's attorneys do not have access to the other tax and financial information which a competitor would want to know, but which is not relevant to the issue of whether Mr. Gupta incurred and paid Title and Noticing Costs.

Why does Mr. Gupta believe he is the victim of abusive discovery practices designed to discover his broad financial information so that Barrett Rochman – and possibly Jesse Rochman – can damage his ability to compete in the tax sale business and possibly run Mr. Gupta out of business altogether?   First, Barrett Rochman is known to use his wealth and power to intimidate competitors, including Mr. Gupta, so that they will not actively compete against him at tax sales. The instant action is the second such lawsuit orchestrated by Barrett Rochman to drive his competitors out of business.   In the first lawsuit, filed in federal court in Illinois, Barrett Rochman orchestrated a similar action against Mr. and Mrs. William Groome – a "mom and pop" type competitor at tax sales.  Mr. Groome provided an affidavit (Dkt. 117) in support of Mr. Gupta's Motion for Protective Order stating:

> 6.   Mr. Rochman has attempted to intimidate me and other tax buyers in order to dictate what properties we can bid on and how much we can pay for the properties.  I understand and believe that if I do not follow the commands of Mr. Rochman and his entourage, he will use his wealth and power to punish me. One example of such behavior is the Bowen Class Action.  I believe this because, prior to the filing of the Bowen Class Action, Mr. Rochman threatened me with litigation.

> 13.   I believe Barrett Rochman instigated the filing of the Bowen Class Action suit against me in order to carry through on Barrett Rochman's threat to bring such an action against me.  I believe the purpose of the Bowen Class Action, based on Mr. Rochman's threat made to me, is to put my wife and me out of business and thereby effectively remove us as Mr. Rochman's tax sale competitors.

> 15.   The Bowen Class Action has financially crippled me and my wife.

Barrett Rochman told Mr. Groome, "Once I am done with you, I am going after Vinnie [Gupta] and others."  (Dkt. 117, p. 4. ¶ 16).  Mr. Groome states he understood Mr. Rochman's comments to constitute a threat that Rochman intended to use litigation to take out his competitors – including Mr. Gupta.  *Id*.  After orchestrating a class action lawsuit against Mr. Groome, filed by the Sandberg Law Firm, Barrett Rochman contacted Mr. Crissen and did indeed solicit him to contact the Sandberg Law Firm to file a class action lawsuit against Mr. Gupta.  This present lawsuit, also filed by the Sandberg Law Firm, alleges virtually identical claims as those asserted against Mr. and Mrs. Groome in the *Bowen* action in Illinois.

Mr. Gupta has provided an affidavit (Dkt. 116) stating that Barrett Rochman has intimidated and threatened him on several occasions.  In that affidavit, Mr. Gupta describes a legal battle currently raging between Barrett Rochman and Mr. Gupta over parking rents.  (Dkt. 116, pp. 2-3, ¶ 7).  Mr. Rochman told Mr. Gupta that he would not pursue him in litigation if Gupta would not file a lawsuit over the rent issue.  *Id*.  Mr. Gupta filed the lawsuit.  *Id*.  In addition, Mr. Gupta states that Barrett Rochman and his representatives often attempt to dictate to other tax sale purchasers what properties they can and can't bid on and he lists a number of examples of that improper conduct in his affidavit.  (Dkt. 116, pp. 1-2. ¶ 6; pp. 4-5, ¶ 10).[7] Barrett Rochman is brazen and made his threats against Mr. Gupta publically, both to Mr. Gupta and to others.  (Dkt. 116, pp. 4-5, ¶ 10).  Mr. Groome confirms these public threats.  (Dkt. 117, p. 4, ¶ 16).  This evidence supports Mr. Gupta's belief that Crissen was solicited by Barrett Rochman, and that this lawsuit was filed to further Barrett Rochman's threats to use this lawsuit to retaliate against Mr. Gupta and drive him out of business.

---

[7] In this regard, it must be observed that Barrett Rochman just recently pled guilty to Sherman Antitrust Act criminal charges for bid rigging and price fixing at tax sales in Illinois. (See Dkt. 138-1, 138-2 and 138-3).

Typically, prejudice in these circumstances can be avoided if the parties enter into a confidentiality agreement/protective order by which they and their attorneys agree not to disclose information to non-parties. In some cases, the federal judge will limit access to certain information as Magistrate Judge Hussmann has done in his November 7 Order on Discovery Motions. These options only work if the parties and their attorneys are committed to enforcing them, and such options work best where a mechanism is put into place allowing the parties to verify that the other side has complied with the court's protective orders. But that is not the case here. Although Magistrate Judge Hussmann looked at Mr. Gupta's evidence and concluded Jesse Rochman should have limited access to Mr. Gupta's tax returns and confidential financial information, the Magistrate's November 7 Order on Discovery Motions does not afford Mr. Gupta any way to monitor or verify that Crissen's attorneys have followed the Magistrate Judge's order. It simply is insufficient to limit Jesse Rochman's access to information, and then rely solely on Jesse Rochman and the Sandberg Law Firm to enforce those limitations. Mr. Gupta has no way of enforcing the Magistrate Judge's protective order, or even knowing if it has been violated. Because there is a reasonable alternative that protects the interests of both parties, Mr. Gupta asks the Court to amend Magistrate Hussmann's November 7 Order on Discovery Motions and provide the additional layers of protection described by Mr. Gupta herein.

What are the circumstances that causes Mr. Gupta to be so fearful of producing his tax and financial information (information that is unrelated to Title and Noticing Costs) in this action? First, it is obvious that Jesse Rochman has an inherent conflict between his obligations as an attorney of record and officer of the court, and his obligations and loyalties to Barrett Rochman and the Rochman family enterprise. This conflict, and Mr. Gupta believes evidence that Jesse puts family loyalty first, is illustrated by the *Bowen* action. In that case, according to

21

Mr. Groome, Jesse Rochman initially told his secretary to keep it a secret from Mr. Groome that he was involved in the *Bowen* lawsuit.  (Dkt. 117, p. 2, ¶ 9).  Then, during class action discovery in the *Bowen* lawsuit, on February 17, 2012, Barrett Rochman was deposed and denied having any involvement in the *Bowen* action other than to appear for a deposition.  (Dkt. 117-2, pp. 3-4).  He did not recall soliciting Mr. Bowen (the class representative in the *Bowen* action).  (Dkt. 117-2, p. 3).  Mr. Bowen was then deposed and "testified that he received an unsolicited telephone call from Jesse Rochman and was recruited to serve as a Plaintiff in the Bowen Class Action." (Dkt. 117, p. 3, ¶ 11).  Groome raised an issue and attempted to depose Jesse Rochman about whether Jesse Rochman had improperly solicited a client in violation of Ill. Sup. Ct. R. Prof. Cond. 7.3(a).  *Id*.  The Sandberg Law Firm opposed this deposition, and in support of that opposition filed a May 15, 2012 affidavit from Barrett Rochman in which Barrett Rochman changed his deposition testimony – testimony that was given only 3 months before.  (Dkt, 117, p. 3, ¶ 12).  Barrett Rochman suddenly remembered:

> I researched potential individuals…I obtained their telephone numbers on my own and called them to inquire as to whether they believed they had been wronged by Mr. Groome's conduct…I had a discussion with each one who felt they were wronged by Mr. Groome's action…I asked if they would be willing to be contacted by an attorney…I called Sandberg, Phoenix & von Gontard and gave them the number of the interested parties.

(Dkt. 117-4).

Given this evidence, a fair inference can be made that Barrett Rochman lied, either at his deposition or by subsequent affidavit, about his involvement in soliciting Mr. Bowen – a lie presumably made in order to protect his son, Jesse Rochman, from disciplinary charges that he improperly solicited Mr. Bowen to join a class action lawsuit against Mr. Groome.  Mr. Gupta has refrained from accusing or asking the Court in this action to find that Jesse Rochman violated Illinois Rules of Professional Conduct.  Instead, Mr. Gupta has asked the Court to consider the

more important question – why did Jesse Rochman allow his father to submit false testimony, either by deposition or affidavit, without correcting the record?  Jesse Rochman of the Sandberg law Firm was counsel of record and an officer of the court.  If he knew his father was giving false testimony, even to keep him (Jesse) out of a disciplinary problem, Jesse had an ethical duty to disclose and correct this lie.  Because it appears he did not do so, Mr. Gupta must ask just how deep do Jesse's loyalties to his family and father run – and can he be trusted with confidential financial and tax return information about Mr. Gupta's business?  This issue obviously concerned Magistrate Judge Hussmann, and resulted in Magistrate Judge Hussmann limiting Jesse's access to Mr. Gupta's financial records.

Discovery has shown that the Sandberg Law Firm, including John Sandberg, has done legal work for Barrett Rochman and his businesses over a number of years.  This means that Barrett Rochman is a client of the Sandberg Law Firm, and the firm owes a number of ethical and practical duties to Mr. Rochman as a valued firm client.  How does the Sandberg Law Firm discharge undivided loyalty to Barrett Rochman when Barrett Rochman seeks to use this lawsuit as a "competitive" strategy to put Mr. Gupta out of business, but not disclose tax information that the Sandberg Law Firm has received from Mr. Gupta?  If Jesse Rochman can tell his secretary not to disclose his involvement in the *Bowen* action, what other instructions can be given to the Sandberg Law Firm's staff that would impact enforcement of the Magistrate Judge's November 7 Order on Discovery Motions?   Of course, none of these things may happen, but if they do, neither Mr. Gupta nor the Court will know about it and neither will have any ability to enforce the Magistrate Judge's order if it is violated.  Given the Sandberg Law Firm's current and historic relationship with Barrett Rochman, it is unfair to ask Mr. Gupta to take compliance on faith, especially when a reasonable alternative exists which will allow Crissen to get the

information he wants about Title and Notify Costs without putting Mr. Gupta's business interests unnecessarily at risk.

Following the filing of Mr. Gupta's Motion for Protective Order, as part of Defendants' ongoing discovery and case investigation, Mr. Gupta learned that there is much more to the Jesse Rochman story – and his relationship with Barrett Rochman – that causes Mr. Gupta to believe it is not sufficient – as Magistrate Hussmann has ordered – simply to limit Jesse's access to Mr. Gupta's tax and financial information.  First, Mr. Gupta learned that Jesse Rochman owns or owned an interest in a company which actually bid on properties at tax sales at the same time that Mr. Gupta was bidding on similar geographically located properties.  Thus, it turns out that Jesse Rochman himself may have been and may still be one of Mr. Gupta's competitors.  Thus, even if Jesse does not share this information with his father directly, he will have this information at hand if he personally competes against Mr. Gupta or advises his family members on how best to compete against Mr. Gupta at tax sales.

Why does Mr. Gupta have a concern that Jesse Rochman might use or share this information in such circumstances?  In *BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750 (7th Cir. 2011), (the "*Phoenix Bond*" case), Phoenix sued Jesse Rochman (and a company he had a membership interest in) in an Illinois federal court.  Jesse was accused of conspiring with his father Barrett Rochman and others to violate federal RICO and bid rigging laws in connection with tax sales in Cook County, Illinois.[8]  On one appeal in the *Phoenix Bond* case, Judge Posner, writing for a unanimous panel of the United States Court of Appeals for the Seventh Circuit, had

---

[8] The events in this case involving tax sales in Cook County, Illinois, are **different** than (an in addition to) those giving rise to Barrett Rochman's recent guilty plea to Sherman Antitrust Act criminal charges for bid rigging and price fixing at tax sales in Madison County, Illinois. (See note 5, *supra*).

the following observation about the actions of Barrett Rochman, Jesse Rochman, and the other

defendants:

> For purposes of this appeal (only), the defendants concede that they committed fraud actionable under RICO if the plaintiffs can prove both proximate cause and damages.

637 F.3d at 753.

> The defendants stole a business opportunity from the plaintiffs by flooding the auction room with raised hands that shouldn't have been there.

*Id*. at 756-57.

> The defendants were throwing sand in the district judge's eyes.   The object of their conspiracies was to obtain liens that would otherwise go to one-armed bidders – there could be no other reason for wanting to pack the room in violation of the County's rule.

*Id*. at 758.  When reading this Seventh Circuit opinion, in its entirety, it is fair for Mr. Gupta to

question how Jesse Rochman or his family members might use Mr. Gupta's tax and financial

information if it is produced.

At the November 8 hearing, when given a chance to address some of the new evidence

about Jesse Rochman's involvement in the Illinois tax sale business and the *Phoenix Bond*

action, Crissen's response was starkly callous.  Mr. Sandberg rhetorically asked the Magistrate

Judge, "who cares about Illinois and what goes on in the Illinois tax certificate business?"  (Dkt.

151, p. 21, lines 3-5).  In addition, during that November 8 hearing, Mr. Sandberg asked for an

opportunity to present additional papers from the *Phoenix Bond* action which he said would put

Mr. Gupta's arguments and Jesse's conduct in a proper and accurate context, and the Magistrate

Judge accommodated that request:

> My focus at the hearing today is to give Mr. Sandberg a reason to tell me why I should reconsider the decision and allow Jesse Rochman to see this.  I do perceive some relevance in what Mr. Arthur has suggested in terms of knowing what Mr. Rochman's overall position is with respect to Mr. Gupta, whether it's

direct competitor, albeit in some other state, or not, so I will likely consider what he's suggested relevant.

On the other hand, I think Mr. Sandberg's correct that a balanced approach requires me to see not just the pleadings that allege he did something like that but the Court's order that finds whether he did or did not do that in terms of that. So if the parties want to submit those documents from that case, I'll allow them to be submitted in the next seven days.

And, Mr. Sandberg, if you want to submit any additional components of that record so that I have the full record before I decide whether to reconsider, I'll be glad to take both sides' proffers with respect to what that evidence is.

(Dkt. 151, p. 22, lines 3-21). Yet, when Crissen filed his supplemental papers on November 18, 2013, he did not file any additional evidence from the *Phoenix Bond* case or from Jesse Rochman personally explaining or denying the matters raised by Mr. Gupta. (Dkt. 161). In fact, Jesse Rochman has remained silent during all of the filings related to his alleged actions in the *Bowen* and *Phoenix Bond* cases. Importantly, Jesse has not explained or denied any questions about his conduct. Thus, believes it is not only proper, but essential, for the District Court to consider the significance of the allegations against Jesse Rochman and the potential conflicts which exist for the Sandberg Law Firm that the Magistrate Judge's order forces the firm to choose between compliance with the Magistrate Judge's order and duties it otherwise might owe to Barrett Rochman, a firm client. Clearly, if these allegations are true, it is critical that the Court protect Mr. Gupta from producing information on his tax returns that is not essential or relevant to the issues in this lawsuit.

Mr. Gupta appreciates Magistrate Judge Hussmann's attempt to give him some protection from Jesse Rochman. It is clear the Magistrate Judge felt there were circumstances which placed into serious question the Court's ability to trust Jesse Rochman with Mr. Gupta's competitive information. So, the motion before the Court today is not addressing whether protection is needed. Judge Hussmann has already answered that question. The motion today is addressed to

26

whether Mr. Gupta should receive additional or different protection than that ordered by Magistrate Judge Hussmann's November 7 Order on Discovery Motions.

Mr. Gupta's personal income tax returns contain a lot of information about his businesses – information that has absolutely nothing to do with Mr. Gupta's payment of Title and Noticing Costs in connection with redeemed properties purchased at tax sales in Indiana.  Why allow anyone to see that information if there is a chance it can be used improperly against Mr. Gupta? Why place a burden on the Sandberg Law Firm to create a Chinese Wall sufficient to keep this information from Jesse Rochman?  Why ask Mr. Gupta to trust that the Sandberg Law Firm will correctly monitor and enforce this Chinese Wall when they have a current and ongoing attorney-client relationship with Barrett Rochman, and Mr. Gupta has absolutely no ability to monitor or verify the actions or decisions of the Sandberg Law Firm or Jesse Rochman to ensure compliance with the Magistrate Judge's Protective Order?  In fact, Mr. Gupta will never know if the Sandberg Law Firm or Jesse Rochman violates the Magistrate Judge's November 7 Order on Discovery Motions.  Further, if there are circumstances which reasonably caused Magistrate Judge Hussmann to question whether he can trust Jesse Rochman, why should Mr. Gupta be asked to trust him?

The Court can easily see how Mr. Gupta may be irrevocably injured if competitors are allowed to review parts of his personal income tax returns and financial information.  This is especially true given that (1) Barrett Rochman has vowed to use this lawsuit to put Mr. Gupta out of business, and (2) Barrett Rochman solicited Mr. Crissen and directed him to his son Jesse, an alleged co-conspirator in an federal RICO case in Illinois and an attorney who wears the hat of an attorney but also the hat of a current or former competitor.  These issues are not based on the singular conjecture of Mr. Gupta, but are based on a public record that is several years in the

27

making.  Barrett Rochman has pled guilty in federal court to criminal bid rigging, so these serious allegations have the weight of a criminal conviction.  It is unfair to ask Mr. Gupta, in these circumstances, to simply "trust" that the Sandberg Law Firm and Jesse Rochman will follow the Protective Order when the Magistrate Judge has determined from the evidence that Jesse Rochman cannot be trusted to see this tax and financial information in the first instance.

If the only reason that Crissen needs to see Mr. Gupta's personal income tax returns is the reason his counsel represented to the Court at the November 8 hearing ("We've only asked for the information as to the financial statements to show whether – and one item and one item only is reflected on there, which is payment for title and notify costs."  (Dkt. 151, p. 8, lines 9-12)), then given the Peck Affidavit which shows that it would be improper to report such Noticing Costs and Title Costs on Mr. Gupta's personal income tax returns, coupled Mr. Gupta's response to Request No. 3 of Crissen's earlier Second Request for Production that neither Schedule C nor any other schedule or section of his tax returns in fact list business expenses related to incurring and paying Noticing Costs and Title Costs, there is really no reason at all to require Mr. Gupta to produce his tax returns to Crissen.  Yet, the potential prejudice to Mr. Gupta in producing his tax returns is clear.  Once this information is produced, the harm cannot be undone.  Prejudice to Mr. Gupta will be minimized if the District Court changes Magistrate Judge Hussmann's November 7 Order on Discovery Motions and adopts Mr. Gupta's alternative proposal for addressing the tax return issue.

### IV. <u>Conclusion</u>

Based on the arguments and authorities advanced and cited herein, this Court should enter a protective order narrowing Request No. 7 of Plaintiff's Third Request for Production to request: "The first page of each Form 1040 and each Schedule C/C-EZ submitted by you in connection

with your tax returns which shows or includes Title or Notify Costs incurred and paid by you with respect to redeemed properties in Indiana or amounts received by you in reimbursement of Title or Notify Costs certified by you with respect to redeemed properties in Indiana."   Mr. Gupta will then respond in one or three ways.  If no documents as described in the request exist, he will respond by so stating.  If such documents were produced in response to the Plaintiff's previous requests for production, he will respond by stating which specific Bates-numbered documents fit the description in the request.  And, if such documents exist but were not produced in response to the request originally, he will immediately produce them.  Alternatively, Mr. Gupta will sign a sworn stipulation admitting that his income tax returns do not show or include Title Costs or Noticing Costs incurred and paid by him with respect to redeemed properties in Indiana or amounts received by him in reimbursement of Title Costs or Noticing Costs certified by him with respect to redeemed properties in Indiana.  This approach will give Crissen what he wants – an admission from which he can argue that Mr. Gupta did not incur or pay Title and Noticing Costs – and Mr. Gupta will have protection against anyone seeing tax and financial information about his business that is unrelated to the issue of whether he incurred and paid Title Costs and Noticing Costs.  Of course, this order can be modified at any time if discovery discloses matters that make this approach unfair or unworkable.

<div style="margin-left:40%">

Respectfully submitted,

HARRISON & MOBERLY, LLP

*/s/ David J. Theising*
David J. Theising
Stephen E. Arthur
Marc A.W. Stearns
HARRISON & MOBERLY, LLP
10 West Market Street, Suite 700
Indianapolis, Indiana  46204
Telephone:     (317) 639-4511

</div>

Facsimile:      (317) 639-9565
Email: dtheising@harrisonmoberly.com
          sarthur@harrisonmoberly.com
          mstearns@harrisonmoberly.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on the 9th day of December, 2013, a copy of the foregoing *Objection to Magistrate Judge's November 7, 2013 Joint Entry on Plaintiff's Motion to Compel and Defendant Vinod C. Gupta's Motion for Protective Order November 21, 2013 Marginal Entry Denying Reconsideration of Same* was filed electronically.  Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

John S. Sandberg
Bhavik R. Patel
Jesse B. Rochman
SANDBERG, PHOENIX & von GONTARD, P.C.
600 Washington Avenue, 15th Floor
St. Louis, Missouri  63101
Email: jsandberg@sandbergphoenix.com
Email: bpatel@sandbergphoenix.com
Email: jrochman@sandbergphoenix.com

Gregory A. Blue
Joshua D. Wolson
DILWORTH PAXSON, LLP
99 Park Avenue, Suite 320
New York, New York  10016
Email: gblue@dilworthlaw.com
Email: jwolson@dilworthlaw.com

Edward D. Thomas
A. Richard Blaiklock
LEWIS WAGNER, LLP
501 Indiana Avenue, Suite 200
Indianapolis, Indiana  46202-6146
Email: ethomas@lewiswagner.com
Email: rblaiklock@lewiswagner.com

David P. Friedrich
WILKINSON,GOELLER,
  MODESITT,WILKINSON
  & DRUMMY, LLP
333 Ohio Street
Terre Haute, Indiana  47807
Email:DPFreidrich@wilkinsonlaw.com

*/s/ David J. Theising*

David J. Theising
HARRISON & MOBERLY, LLP
10 West Market Street, Suite 700
Indianapolis, Indiana  46204
Telephone:     (317) 639-4511
Facsimile:      (317) 639-9565
Email:  dtheising@harrisonmoberly.com

Counsel for Defendant Vinod C. Gupta