UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

|  |  |  |
|---|---|---|
| JOSHUA B. CRISSEN, individually and on behalf of all others similarly situated, | : : : : | |
| Plaintiff, | : : | |
| v. | : : : | Case No. 2:12-cv-00355-JMS-WGH |
| VINOD C. GUPTA, *et al.* | : : | |
| Defendants. | : : : : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT BANCO POPULAR NORTH AMERICA'S
<u>MOTION TO ENFORCE THE PROTECTIVE ORDER</u>**

This Motion seeks relief for Plaintiff's counsel's deliberate violation of the clear terms of an Order of this Court (Doc. No. 47 (the "Protective Order")). Under the Protective Order, "[n]o party shall be held to have waived any rights by [the] inadvertent production" of documents to the opposing party. [*Id.* ¶ 19.] Thus, within 30 days of the discovery of the inadvertent production, the producing party may make a written request for their return. [*Id.*] Once the documents are recalled, "the recipient shall (***even if the receiving party disagrees that the document or information is protected from disclosure***) return all copies of the document and not use the document or information for any purpose until further order of the Court." [*Id.* (emphasis added).] However, when BPNA invoked this provision and recalled documents, Plaintiff's

1

counsel refused to comply with the plain terms of the Protective Order.  Plaintiff's counsel, John Sandberg, has explained that he refuses to comply with the Court's Order because he does not think the documents at issue are subject to recall under the Protective Order.  That is, Mr. Sandberg "disagrees that the document[s] or information is protected from disclosure."  [*Id.*]  That refusal violated the plain terms of the Protective Order.

When pressed further to return the documents, Plaintiff's counsel demanded that BPNA provide a list of each document being recalled and expressly represented to BPNA's counsel that, when the list was provided, the documents would be removed from Plaintiff's counsel's computer server.  [Exh. D[1]]  In reliance on that unqualified commitment, BPNA provided the list that Plaintiff's counsel demanded.  [Exh. E]

Rather than then use that list to return the documents that were being recalled, and delete them from their computer server, Plaintiff's counsel recanted and refused to remove the documents from their computer server, **and reviewed each and every document to determine if, in Plaintiff's counsel's view, such document was subject to recall**.  This, too, violated the clear and unequivocal terms of the Protective Order and the commitment that Plaintiff's counsel made (upon which BPNA's counsel relied in providing the list).

BPNA respectfully moves this Court for an Order:

(i) directing plaintiff to: (a) return to BPNA all documents that have been recalled by BPNA; (b) destroy all copies of such documents that are in their possession or under their control; and (c) refrain from using any such documents in this litigation absent further order of

---

[1] All exhibit references are to exhibits attached to the Declaration of Gregory A. Blue, submitted herewith.

the Court directing that such documents be produced to the Plaintiff; (ii) imposing sanctions against Plaintiff's counsel and/or holding Plaintiff's counsel in contempt for violating the provisions of this Court's Protective Order [Doc. 47] for counsel's willful and deliberate review of documents after BPNA requested that such documents be recalled and Plaintiff's counsel had committed to doing so (only to then change course); and (iii) awarding costs and expenses for this Motion.

## Factual Background

*Procedural History & The Protective Order*

On December 4, 2012, Plaintiff commenced this action against Defendants Vinod C. Gupta, Satyabala V. Gupta, and Wiper Corporation. [Doc. 1] BPNA was not a party to this action at that time. On or about May 2, 2013, BPNA received a subpoena *duces tecum* served upon it by Plaintiff. [Exh. A] For purposes of that subpoena, BPNA was subject to the jurisdiction only of the United States District Court for the Southern District of New York. [*See* Doc. 44, p. 1 (the "Financial Information Protective Order" ("The Magistrate Judge concludes that this court does not technically have jurisdiction to determine whether to quash this Subpoena."))]

The Court has entered two protective orders that are relevant here, one general and the other more specifically focused on financial information. On June 18, 2013, the then-existing parties to this action (Plaintiff, Vinod C. Gupta, Satyabala V. Gupta, and Wiper Corporation) submitted to this Court a proposed protective order that they negotiated between themselves. [Doc. 46] BPNA was not a party to the action at that time and had no role in drafting the proposed protective order.

3

This Court entered the Protective Order the following day. [Doc. 47] The Protective Order was intended "to protect against the improper disclosure or use of certain confidential information produced in discovery or filed with this Court in the instant action." [Doc. 47, ¶ 1]

The Protective Order and the procedures set forth therein apply to a broad range of documents. Specifically, "'Protected Material' is defined herein as non-public confidential documents, proprietary trade information or documents that raise a privacy concern, which documents or information are so designated in good faith by any party to the Crissen Litigation." [*Id.*, ¶ 2] Significantly, "Protected Material" as defined in the Protective Order is *not* limited to privileged material or attorney work-product. [*Id.*]

Paragraph 19 of the Protective Order provides for a mechanism for parties to recall any inadvertently produced documents that are subject to the Protective Order:

> The inadvertent production of any document or information during discovery in the Crissen Litigation shall be without prejudice to any claim that such material is privileged under the attorney-client or other privilege, or protected from discovery as work product. No party shall be held to have waived any rights by such inadvertent production so long as the party receiving the document or information is notified within thirty (30) days of the discovery of such inadvertent production. Upon written request by the inadvertently producing party, the recipient shall (even if the receiving party disagrees that the document or information is protected from disclosure) return all copies of the document and not use the document or information for any purpose until further order of the Court. [Doc. 47, ¶ 19]

As the plain language of this provision makes clear, the parties proposed, and this Court ordered, that (a) inadvertent production did not waive any applicable privilege, (b) inadvertent production did not waive **any** rights, meaning privilege or any other objection to production, and

4

(c) any party that produced documents inadvertently could recall them upon written notice, regardless of whether its opponent agreed with its recall.

In addition to the general Protective Order, on June 11, 2013, the Court entered the Financial Information Protective Order that exempts from discovery "financial statements of the individual Defendants, loan or letter of credit applications, and personal tax returns [which] are not relevant, because they contain personal financial information not necessary for the determination of the issues before the court at this time." [Doc. 44 at 2]  On November 7, 2013, the Court granted a limited reconsideration of the Financial Information Protective Order, to permit discovery of certain tax returns and financial documents. [Doc. 148]  After the Court declined to reconsider that ruling, it was appealed to the District Court.  On January 13, 2014, the District Court stayed the Magistrate Judge's ruling that reconsidered the Financial Information Protective Order. [Doc. 189.]  Thus, at present, the Financial Information Protective Order remains in effect.

*The Document Recall*

On or about December 13, 2013, BPNA produced approximately 16,000 pages of documents on a disk to Plaintiff's counsel.  On December 27, 2013, BPNA determined that certain of the documents produced on that disk were unintentionally delivered to Plaintiff's counsel but had not yet determined which documents were at issue.  The documents at issue include tax returns, other bank documents containing the Guptas' personal financial information, and internal bank documents that BPNA did not intend to produce and to which it had objected to demands for production.  Counsel for BPNA immediately sent an email to Plaintiff's counsel stating, in relevant part, "it appears that the BPNA disk produced to you included documents that

5

11498959_2

were not intended for production. Please do not review the documents any further or make copies until we can address this." [Exh. B]

On December 30, 2013, counsel for BPNA requested that the disk provided to the other counsel in the case be returned so that it could be replaced with another one not containing the inadvertently produced documents. (BPNA's counsel requested that the entire disk be returned and replaced because it is not physically possible to return only a subset of the documents on a disk.) Specifically, counsel stated that:

> "Due to an inadvertent error, the disk produced to you by BPNA on December 13, 2013, contained documents subject to the Protective Order that were not intended to be produced. Pursuant to paragraph 19 of the Protective Order, BPNA requests that you return the CD immediately without further review of the documents and that you destroy any copies you may have made. We will provide you with a replacement CD that does not contain Protected Material in the next few days. Thanks." [Exh. C]

BPNA's counsel thus represented that the documents were inadvertently produced "Protected Material," (*i.e.* "non-public confidential documents, proprietary trade information or documents that raise a privacy concern, which documents or information are so designated in good faith by any party to the Crissen Litigation." [Doc. 47, ¶ 2]).

John Sandberg, counsel for Plaintiff, replied that same day. He refused to return the disk, as required by Paragraph 19 of the Protective Order, and insisted that BPNA instead identify the documents that it sought to recall by Bates number. [Exh. C] Mr. Sandberg indicated his view that Paragraph 19 of the Protective Order "pertains to work product and attorney client privilege." Mr. Sandberg further indicated his understanding that BPNA was not claiming that

6

all of the recalled documents were privileged. [*Id*. "You are not saying these documents are privileged, are you?"]

Then, on December 30, 2013, counsel for Plaintiff indicated, once again, that he believed that BPNA was seeking the recall of non-privileged documents. Mr. Sandberg wrote, "I am not aware of any rule for return of non privileged [sic] documents that says I need to return the entire production. Correct me if I have overlooked some rule." [Exh. D, p. 2] Mr. Sandberg then requested that BPNA identify the specific documents it sought to recall.

The next day, Mr. Sandberg indicated that all of the documents produced by BPNA had been loaded onto Plaintiff's counsel's computer servers and that it would be burdensome for Plaintiff's counsel to delete all of them. *Mr. Sandberg then represented to counsel for BPNA that if BPNA proved a list of documents to be recalled, he would delete the documents identified by BPNA from Plaintiff's counsel's computer server*. [Exh. D, p. 1 ("Please identify the documents that you say were inadvertently produced. Then I can delete those from the server.")] That is, Mr. Sandberg made this promise fully aware of the fact that BPNA was not recalling documents based on a claim of privilege, and he agreed to return them anyway.

On January 9, 2014, in reliance upon Mr. Sandberg's representation that he would return the disk and delete identified documents from his firm's computer server, and in accordance with the terms of the Protective Order, counsel for BPNA provided a list of documents (identified by Bates number) that BPNA was "recalling pursuant to paragraph 19 of the Protective Order in this case." [Exh. E]

That same day, January 9, 2014, Mr. Sandberg recanted on his agreement to remove the documents from his firm's server. As to the tax documents, Mr. Sandberg stated that:

7

> "I have decided to wait until the District judge rules so we know where we are on the issue.  Until the court rules I agree we will not use the documents in a deposition or otherwise.  Since we already have a considerable amount of work product invested in all of the documents on the server I don't want to waste that work product until such time as the district judge overrules the Magistrate."  [Exh. F]

Mr. Sandberg then indicated that he intended to review every document identified in BPNA's recall notice to determine if, in his view, it was subject to recall.  [*Id*.]  Specifically, Mr. Sandberg indicated his view that only documents that are subject to the Court's Financial Information Protective Order [Doc. 44 (concerning "financial statements of the individual defendants, loan or letter of credit applications, and tax returns")], were subject to recall. [*Id*.]  Mr. Sandberg did not, however, object to the recall of any documents covered by the Court's Financial Information Protective Order.  Instead, he stated that he would review the entire production to determine *if* they were covered by that Financial Information Protective Order.

Counsel for the Guptas immediately objected to Mr. Sandberg's announced intention to review all of the recalled documents.  [Exh. G]   BPNA objected as well, stating that "[t]he point of the protective order is to permit parties to recall documents without you looking at them.  Please confirm that you will not review them until we can get a ruling from the court.  If you do not confirm this morning we will have to contact the court immediately."  [Exh. H]

At the end of that weekend, on Sunday afternoon, January 12, 2014, Mr. Sandberg sent an email to counsel for BPNA stating, "I have now reviewed the documents you listed."  [Exh. I]   The email contained a detailed listing of the documents, by Bates number, and Mr. Sandberg's assessment of whether, in his view, the documents were subject to the Magistrate Judge's Limited Protective Order at Docket Number 44.

8

## Argument

I. **The recall provisions of the Protective Order apply to all inadvertently produced documents.**

Paragraph 19 of the Protective Order – the recall provision – is not limited in its application to documents that are privileged or are work product.  On its face, Paragraph 19 itself applies to "[t]he inadvertent production of *any document or information* during discovery in the Crissen Litigation." (Emphasis added.)  The remainder of the paragraph discusses what happens in the event of such inadvertent production of *any document or information*: (i) it does not lose its status as privileged or work product; (ii) no party shall have waived any rights by such inadvertent production; and (iii) the producing party is entitled to return of those documents on demand.

Even if the first sentence of Paragraph 19 could be read to apply only to the inadvertent production of privileged material or work product, the second sentence states that, "No party shall be held to have waived **any rights** by such inadvertent production so long as the party receiving the document or information is notified within thirty (30) days of the discovery of such inadvertent production" (emphasis added).  The phrase "such inadvertent production" in the second sentence must be read to refer to "[t]he inadvertent production of *any document or information*," referred to in the first sentence. (Emphasis added.)  The "inadvertent production" referred to in that sentence, therefore, is not limited to the inadvertent production of privileged material or work product.

9

Moreover, the final sentence of the paragraph refers only to "the inadvertently producing party." That phrase can only mean "the party producing *any document or information*." BPNA, therefore, is entitled to recall the inadvertently produced documents.

## II. Plaintiff's counsel is required to return the recalled documents and destroy all copies.

Most important, however, is the fact that Plaintiff was – and is – required to return the inadvertently produced documents *even if Plaintiff's counsel disagrees with the recall*. Upon receiving BPNA's recall notice, Plaintiff's counsel was required to comply with the Court's Protective Order:

> Upon written request by the inadvertently producing party, the recipient shall (*even if the receiving party disagrees that the document or information is protected from disclosure*) return all copies of the document and not use the document or information for any purpose until further order of the Court. [Doc. 47, ¶ 19 (emphasis added)].

This Court therefore should order Plaintiff's counsel to comply with the unequivocal terms of the Protective Order by returning all of the documents recalled by BPNA.

## III. Plaintiff's counsel violated the Protective Order by reviewing the documents after BPNA's recall.

Plaintiff's counsel violated the Protective Order in at least the following ways:

- Plaintiff's counsel refused to return the documents after due demand by BPNA pursuant to Paragraph 19 of the Protective Order;

- Plaintiff's counsel reviewed each of the designated documents after demand by BPNA that such documents be returned and not used until further order of the Court.

In addition, Plaintiff's counsel affirmatively represented to BPNA's counsel that, if BPNA identified specific documents that were inadvertently produced, Plaintiff's Counsel would delete the documents from his firm's computer servers.  [Exh. D, ("Please identify the documents that you say were inadvertently produced.  Then I can delete those from the server.")]  Plaintiff's counsel thereby induced BPNA's counsel to provide a list of documents that BPNA did *not* want Plaintiff's counsel to review and used it as a list of documents that he *did* review.

Plaintiff's counsel violated an unequivocal order of this Court by refusing to return documents.  As explained above, Plaintiff's counsel is required to return such documents "even if the receiving party disagrees that the document or information is protected from disclosure."  [Doc. 47, ¶ 19]  The receiving party's position with respect to the nature and character of the documents is irrelevant to that obligation.

Plaintiff's counsel compounded the violation by reviewing the documents after the recall notice in order to determine whether he disagreed BPNA's contention that they are protected from disclosure.  Under the Protective Order, that review was both irrelevant and impermissible.

This Court has the authority to impose sanctions for violation of a protective order.  *See, e.g. Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 778-79 (7th Cir. 2013) (affirming district court's imposition of sanctions for violation of a protective order).  This Court has the power to do so both under Rule 37 and its inherent power.  *See, e.g. 1100 West, LLC v. Red Spot Paint & Varnish Co.*, 2009 WL 1605118, at *26-29 (S.D. Ind. Jun. 5, 2009).  Its BPNA respectfully submits that Plaintiff's counsel's knowing and deliberate violation of the Protective Order merits relief to BPNA.

In addition, or as an alternative, Plaintiff's counsel should also be held in civil contempt. For a party to prevail on a request for a civil contempt finding, it "must establish by clear and convincing evidence that (1) a court order sets forth an unambiguous demand; (2) the alleged contemnor violated the command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010).

Here, (i) the Protective Order unequivocally required Plaintiff's counsel to return the documents; (ii) Plaintiff's counsel willfully violated that command; (iii) the violation was significant in that Plaintiff's counsel not only failed to comply, but also affirmatively took steps to review the documents in contravention of the very purpose of Paragraph 19; and (iv) Plaintiff's counsel failed to make any reasonable and diligent effort to comply. Indeed, Plaintiff's counsel represented to BPNA's counsel that, upon providing the list of documents at issue, such documents would be removed from his firm's server. He instead used the list to review the very documents that he said he would remove from the server.

Discovery sanctions should be "proportionate" to the violation. *See, e.g. Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998). BPNA respectfully submits that a reasonable remedial measure that is proportionate to the violation and appropriate under the circumstances would be the issuance of an Order: (i) directing Plaintiff's counsel to destroy all copies of the recalled documents and work-product derived therefrom, and certify to the Court that it has done so; (ii) barring the Plaintiff from using the documents, or any

information derived therefrom, in this litigation; (iii) awarding the costs and expenses of this Motion.

        Respectfully submitted,

        DILWORTH PAXSON LLP

        By: /s/  Gregory A. Blue
        Gregory A. Blue (*pro hac vice*)
        99 Park Avenue, Suite 320
        New York, NY 10016
        (917) 675-4252 (telephone)
        (212) 208-6874 (facsimile)

        Joshua D. Wolson (*pro hac vice*)
        DILWORTH PAXSON LLP
        1500 Market St., Suite 3500E
        Philadelphia, PA 19102
        (215) 575-7000 (telephone)
        (215) 575-7200 (facsimile)

        A. Richard M. Blaiklock #20031-49
        Edward D. Thomas #29080-49
        LEWIS WAGNER, LLP
        501 Indiana Avenue, Suite 200
        Indianapolis, Indiana 46202
        (317) 237-0500 x 227 (telephone)
        (317) 630-2790 (facsimile)

        *Attorneys for Defendant*
        *Banco Popular North America*

Dated:  January 22, 2014

11498959_2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on the 22nd day of January, 2014, a copy of the foregoing Memorandum of Law was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

John S. Sandberg
Bhavik R. Patel
Jesse B. Rochman
SANDBERG PHOENIX & VON GONTARD P.C.
600 Washington Avenue – 15th Floor
St. Louis, MO 63101
jsandberg@sandbergphoenix.com
bpatel@sandbergphoenix.com
jrochman@sandbergphoenix.com

*Counsel for Plaintiff*

Stephen E. Arthur
Mark Allen William Stearns
David J. Theising
HARRISON & MOBERLY
10 West Market St., Suite 700
Indianapolis, IN 46204
sarthur@harrisonmoberly.com
mstearns@harrisonmoberly.com
dtheising@harrisonmoberly.com

*Counsel for Defendants Wiper Corp., Vinod Gupta, and Satyabala Gupta*

David P. Friedrich
WILKINSON, GOELLER, MODESITT, WILKINSON & DRUMMY
333 Ohio Street, P.O. Box 800
Terre Haute, IN 47808-0800
dpfriedrich@wilkinsonlaw.com

*Counsel for Defendant Vivek V. Gupta*

/s/  Gregory A. Blue

11498959_2