UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JOSHUA B. CRISSEN,<br>*Plaintiff*, | )<br>) | |
| | ) | |
| *vs.* | ) | 2:12-cv-00355-JMS-WGH |
| | ) | |
| VINOD C. GUPTA, SATYABALA V. GUPTA,<br>WIPER CORPORATION, VIVEK V. GUPTA, and<br>BANCO POPULAR NORTH AMERICA,<br>*Defendants*. | )<br>)<br>)<br>) | |

## ORDER

Presently pending before the Court is Defendant Banco Popular North America's ("Banco Popular") Motion to Dismiss Plaintiff's First Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). [Dkt. 135.]

### I.
### THE AMENDED COMPLAINT ALLEGATIONS

#### A.       The Parties

Plaintiff Joshua Crissen is an individual residing in Bloomfield, Indiana. [Dkt. 85 at 3, ¶ 7.] Defendants Vinod Gupta and Satyabala Gupta are husband and wife, and reside in Boca Raton, Florida. [*Id.* at 3, ¶¶ 8-9.] Mr. and Ms. Gupta are the only directors and officers of Wiper Corporation ("Wiper"), a Florida corporation. [*Id.* at 3, ¶ 10.] Mr. Crissen alleges that "[Wiper] or its nominees have participated in tax sales in Indiana from at least 2002 through the present." [*Id.*] Defendant Vivek Gupta is Vinod and Satyabala Gupta's son, and resides in Boca Raton, Florida as well. [*Id.* at 4, ¶ 11.] Mr. Crissen alleges that Vivek Gupta "participated in the operation or management of and performed activities necessary or helpful to Vinod's and Wiper's tax sale business in Indiana from at least 2002 through the present." [*Id.*] Banco Popular is a New York state-chartered member bank with its principal place of business in New

1

York.  [*Id.* at 4, ¶ 12.]  Mr. Crissen alleges that Banco Popular "participated in the operation or management of and performed activities necessary or helpful to Vinod's and Wiper's tax sale business in Indiana from at least 2002 through the present."  [*Id.*]

### B.  The Tax Sale Process

Mr. Crissen describes the tax sale process in Indiana in the following way:  In Indiana, when a real property owner fails to pay property taxes, the property can be sold at a tax sale to satisfy the delinquent taxes pursuant to Ind. Code § 6-1.1-24, *et seq.*  [Dkt. 85 at 4, ¶ 13.]  The process begins when each county auditor publishes a list of delinquent real estate parcels in area newspapers, which gives notice that the county auditor and treasurer will apply for court judgments against delinquent real estate and for orders to sell those judgments at public auction.  [*Id.* at 4-5, ¶ 15.]  After the court issues the requested judgments and orders, the county auditor will send a notice of the sale by certified mail, return receipt requested, to the last address of the property owner on the date the tax sale list is certified ("Notice of Sale").  [*Id.* at 5, ¶¶ 15-16.]

At the tax sale, the county treasurer sells the real property, subject to a right of redemption, to the highest bidder at public auction.  [*Id.* at 5, ¶ 17.]  An Indiana statute provides the minimum price for which the real property can be sold ("Minimum Price"), factoring in the taxes due and owing, all penalties owed, costs incurred by the county due to the sale, unpaid costs due from any prior tax sales, and other reasonable expenses of collection.  [*Id.* at 5-6, ¶ 18.]  When a bid equals at least the Minimum Price, the purchaser receives a certificate of sale and acquires a lien against the property in the amount paid.  [*Id.* at 6, ¶ 19.]  When no bid equals at least the Minimum Price, the county executive receives a certificate of sale and acquires a lien in the amount of the Minimum Price.  [*Id.* at 6, ¶ 20.]  The county executive can then decide to sell its certificate of sale at a public auction to the highest bidder for an amount less than the

Minimum Price.  [*Id.* at 6, ¶ 21.]  The purchaser of a certificate of sale must give notice ("Notice of Redemption") by sending a copy of the Notice of Redemption by certified mail to the owner of record at the time of the sale and any person with a substantial property interest of public record in the real property.  [*Id.* at 6, ¶ 23.]  The Notice of Redemption must be sent no later than nine months after the date of the tax sale or ninety days after the date of the Commissioner's Sale.  [*Id.* at 7, ¶ 24.]

Any person may redeem real property sold at a tax sale or Commissioner's Sale by paying the amount required for redemption before the expiration of the redemption period, which is one year after the date of sale.  [*Id.* at 7, ¶ 25.]  The amount of money required for redemption of the real property ("Redemption Amount") is set by Indiana statute.  [*Id.* at 7, ¶ 26.]  If the property is certified before redemption, the attorneys' fees and costs of giving notice ("Notify Costs") and the costs of a title search or of examining and updating the abstract of title for the real property that were incurred and paid by the purchaser ("Title Costs") are part of the Redemption Amount.  [*Id.*]  The purchaser of a certificate of sale certifies that he or she incurred and paid the Notify Costs and the Title Costs by completing, signing, and providing the county auditor with a Certification.  [*Id.* at 7, ¶ 27.]  The Notice of Redemption must set forth the components of the Redemption Amount, including the amounts owed for Notify Costs and Title Costs.  [*Id.* at 8, ¶ 29.]

### C.  Mr. Crissen's Property

Mr. Crissen owns property in Greene County, Indiana (the "Property").  [*Id.* at 9, ¶ 35.] After property taxes on the Property became delinquent, the Greene County auditor and treasurer applied for a judgment against the Property and an order to sell the judgment at public auction. [*Id.* at 9, ¶ 36.]  On October 9, 2009, after the requested judgment and order were entered, the

3

Greene County treasurer offered the Property for sale, subject to a right of redemption, for a Minimum Price of $2,118.60. [*Id.* at 9, ¶ 37.] Vinod Gupta was the highest bidder with a bid of $8,000, and he remitted payment to the Greene County Treasurer for $208,281.27 to pay for the Property and several others that were offered for sale at the 2009 Greene County tax sale, and for which Vinod Gupta, Wiper, or one of their nominees was the highest bidder. [*Id.* at 9, ¶¶ 38-39.] Banco Popular "funded the entire $208,281.27 purchase price." [*Id.* at 9, ¶ 40.] The Greene County auditor issued a certificate of sale ("Tax Sale Certificate") for the Property to "Vinod C. Gupta c/o Banco Popular NA/Lien Holder" that same day. [*Id.* at 9, ¶ 41.] Banco Popular directed Vinod Gupta to deliver the Tax Sale Certificate to it, which Vinod Gupta did shortly after October 9, 2009. [*Id.* at 9, ¶ 42.]

On November 13, 2009, Vinod Gupta provided a signed Certification to the Greene County auditor certifying that he had incurred and paid $350 in Notify Costs and $150 in Title Costs relating to the Property. [*Id.* at 10, ¶ 43.] On February 8, 2010, the Property was redeemed by Mr. Crissen for a Redemption Amount of $3,027.04. [*Id.* at 10, ¶ 46.] Shortly thereafter, the county auditor notified Vinod Gupta and/or Banco Popular of the redemption and requested that the original Tax Sale Certificate be returned to the county auditor before the Redemption Amount and Surplus would be remitted to Banco Popular. [*Id.* at 10, ¶ 47.] Shortly before February 17, 2010, Banco Popular returned the original Tax Sale Certificate to the county auditor. [*Id.* at 10, ¶ 48.] On February 17, 2010, the county auditor remitted the Redemption Amount of $3,027.04 and the Surplus of $5,881.40 to Banco Popular. [*Id.* at 10, ¶ 49.]

### D.  Banco Popular's Participation in the Alleged Scheme

Mr. Crissen alleges that Defendants "conspired to and devised a scheme to inflate the money required for the redemption of real property sold at Indiana tax sales or Commissioner's

4

Sales for delinquent taxes and special assessments." [*Id.* at 10, ¶ 50.]  As to Banco Popular, Mr. Crissen alleges that the Guptas (Vinod, Vivek, and Satyabala) and Wiper approached Banco Popular's predecessor, Kislak National Bank ("Kislak"), sometime before May 2002 to obtain funding to participate in the Indiana tax sales, Commissioner's Sales, or both.  [*Id.* at 10, ¶ 51.] From May 2002 to the present, Kislak agreed to loan Vinod and Satyabala Gupta various amounts ($4,000,000 in May 2002, $6,000,000 to $7,000,000 from 2003 through January 2005, $7,000,000 from January 2005 through July 31, 2006, and $7,000,000 to $10,000,000 from July 31, 2006 to the present), for the purchase of certificates of sale at Indiana tax sales, Commissioner's Sales, or both.  [*Id.* at 11-12, ¶¶ 52, 54, 56, 58.]  From May 2002 to January 2005, Kislak directed that all Tax Sale Certificates were to be purchased in the name of and jointly owned by one or all of the Guptas or Wiper on the one hand and Kislak on the other, with Kislak's Miami Lakes Branch as the address of record.  [*Id.* at 11, ¶¶ 53, 55.]  Banco Popular succeeded Kislak in January 2005, and from January 2005 to July 2006 Banco Popular directed that all Tax Sale Certificates were to be purchased in the name of and jointly owned by one or all of the Guptas or Wiper on the one hand and Banco Popular on the other, with the Miami Lakes Branch as the address of record.  [*Id.* at 4, ¶ 12; 11, ¶ 57.]  However, on or before July 2006, Banco Popular's legal department, credit officers, or both, determined that the Tax Sale Certificates should no longer be purchased in the name of and jointly owned by the Guptas and Wiper with Banco Popular.  [*Id.* at 12, ¶ 59.]  Instead, Banco Popular directed that the Tax Sale Certificates be purchased in the name of the Guptas or Wiper and in care of Banco Popular, with the Miami Lakes Branch as the address of record.  [*Id.* at 12, ¶ 60.]

Mr. Crissen alleges that from at least 2002 to the present, the Guptas, Wiper, and/or their nominees purchased property at Indiana tax sales, Commissioner's Sales, or both consistent with

Kislak's and Banco Popular's direction and control.  [*Id.* at 12, ¶ 61.]  He also alleges that from at least 2002 to the present: (1) the Guptas and Wiper provided each Tax Sale Certificate for property they purchased at Indiana tax sales, Commissioner's sales, or both to Kislak and Banco Popular, [*id.* at 12, ¶ 62]; (2) the Miami Lakes Branch was the address of record for each purchase of a Tax Sale Certificate made by Defendants, [*id.* at 12, ¶ 63]; (3) Kislak and Banco Popular "received, processed and responded to the majority, if not all, of the correspondence and phone calls from the counties for each purchase of a certificate of sale and any redemptions in connection therewith," [*id.* at 12, ¶ 64]; (4) Defendants provided to the county auditor over 3,550 Certifications signed by Vinod Gupta for the purchase of Tax Sale Certificates, which were false because they certified that the Guptas, Wiper, Kislak, and/or Banco Popular had incurred and paid the Notify Costs and Title Costs when they neither incurred nor paid them, [*id.* at 13, ¶ 65]; (5) for each Certification, the Guptas, Wiper, Kislak, and Banco Popular "had to mail Notices of Redemption to each owner of record and every person with substantial property interest of public record not later than nine months after the 'Date Sold,'" and they mailed the Certifications and Notices of Redemption and knew they were false because they knew they did not incur and pay the Notify Costs and Title Costs, [*id.* at 13, ¶¶ 67-70]; and (6) in response to notifications from the county auditor of each redemption, Kislak or Banco Popular returned the original Tax Sale Certificates and completed Accounts Payable Vouchers to the county auditor, but those documents were false because they certified that Vinod Gupta, Wiper, Kislak, or Banco Popular had incurred and paid the Notify Costs and Title Costs when they had not, and they mailed the documents "with the intent that the county auditor rely upon the same to implement [the] scheme to defraud people or entities seeking to redeem real property sold at tax sales and

Commissioner's Sales to Vinod [Gupta], Wiper, Kislak and [Banco Popular]," [*id.*at 15, ¶¶ 80, 83].

### E.  The Amended Complaint

Mr. Crissen seeks to represent a class of:

> All individuals and business entities who redeemed a tract or real property purchased at Indiana tax and/or Commissioner's sales by Vinod, Satyabala, Vivek, Kislak, [Banco Popular] and/or Wiper (or by a nominee), where the redemption amounts were artificially inflated because Vinod, Satyabala, Vivek, Kislak, [Banco Popular] and/or Wiper certified to Indiana county auditors they had incurred and/or paid statutory notification and/or title costs which Defendants had not incurred or paid.

[*Id.* at 16, ¶ 88.]

Mr. Crissen asserts the following claims against all Defendants, including Banco Popular: (1) Substantive Racketeering under Federal RICO, [*id.* at 18-20, ¶¶ 95-107]; (2) Racketeering Conspiracy under Federal RICO, [*id.* at 20-21, ¶¶ 108-111]; (3) Substantive Racketeering under Indiana RICO, [*id.* at 21-24, ¶¶ 112-124]; (4) Racketeering Conspiracy under Indiana RICO, [*id.* at 24-25, ¶¶ 125-128]; (5) Relief under the Indiana Crime Victims Act, [*id.* at 25-26, ¶¶ 129-136]; (6) Fraud, [*id.* at 26-27, ¶¶ 137-147]; (7) Money Had and Received, [*id.* at 28, ¶¶ 148-151]; and (8) Unjust Enrichment, [*id.* at 28-29, ¶¶ 152-155].  He seeks actual and punitive damages, and attorneys' fees and costs.  [*Id.* at 29.]

## II.
### STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the…claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of

the plaintiff. *Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (citing *Iqbal*, 129 S.Ct. at 1951). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citing *Iqbal*, 129 S.Ct. at 1950).

RICO is an anti-fraud statute; therefore, Mr. Crissen's claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Slaney v. Int'l Amatuer Ath. Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001) (noting that fraud allegations in a civil RICO complaint are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b)). Rule 9(b) states:

> (b) Fraud or Mistake; Condition of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

To plead fraud with particularity, a RICO plaintiff "'must, at a minimum, describe the…predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations.'" *Rosenbaum v. Seybold*, 2013 U.S. Dist. LEXIS 73097, *24 (N.D. Ind. 2013) (quoting *Slaney*, 244 F.3d at 597); *see also Midwest*

*Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992).   Where there are multiple defendants, Rule 9(b) requires a RICO plaintiff "to plead sufficient facts to notify each defendant of his alleged participation in the scheme."   *Rosenbaum*, 2013 U.S. Dist. LEXIS 73097 at *24 (citing *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998)).

### III.
#### DISCUSSION

Banco Popular has moved to dismiss all of the claims that Mr. Crissen asserts against it. The Court will address each claim in turn.   The Court notes at the outset that in considering a motion to dismiss filed before a class has been certified, it looks only to Mr. Crissen's individual claims and the circumstances he alleges relating to the Property – and not to allegations surrounding the tax sales for properties owned by putative class members.   *See Tatum v. Chrysler Group LLC*, 2012 U.S. Dist. LEXIS 171746, *11-12 (D. N.J. 2012) ("On a motion to dismiss a putative class action complaint, the Court may only consider the allegations of the named plaintiffs, and not the generalized allegations of unnamed plaintiffs or putative class members….Accordingly, the Court will not consider the generalized allegations in the Complaint in determining whether Plaintiffs have alleged sufficient facts to withstand Defendant's motion to dismiss"); *Tillman v. United States Energy Sav. Corp.*, 2008 U.S. Dist. LEXIS 53313, *10 (N.D. Ill. 2008) ("[Plaintiff] is attempting to proceed with a fraud claim that is supported by conclusory claims about what may have happened to other, unnamed people.   At this point in the proceedings, however, she is the only plaintiff and to survive a motion to dismiss and proceed forward, she must plead fraud with respect to herself and with specificity"); *see also Chambers v. American Trans Air*, 17 F.3d 998, 1006 (7th Cir. 1994) (named plaintiff must have valid cause of action in order to represent a class).

Additionally, a named plaintiff must have a valid cause of action against each defendant, and cannot rely on the allegations of putative class members if he or she does not also have a claim against that defendant.  *See Moffat v. Unicare Midwest Plan Group 31451*, 2006 U.S. Dist. LEXIS 16348, *25  (N.D. Ill. 2006) (noting general rule that "each named plaintiff must have a colorable claim against each defendant…"); *Donaldson v. Exelon Corp.*, 2006 U.S. Dist. LEXIS 66071, *16 (E.D. Pa. 2006) ("[C]ourts have generally held that at least one named plaintiff must have a claim against each defendant").  Accordingly, the Court must look only to Mr. Crissen's allegations regarding his Property, and must determine whether he alone has adequately alleged claims against Banco Popular – and not whether unnamed, putative class members may have such claims.

### A.  Federal RICO Claims

#### 1.  *Section 1962(c) RICO Claim*

Mr. Crissen alleges in Count I of the Amended Complaint that Banco Popular has violated 18 U.S.C. § 1962(c), which provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity….

Banco Popular argues that Count I should be dismissed because Mr. Crissen has failed to adequately allege: (1) the existence of a RICO "enterprise," [dkt. 136 at 12-16]; (2) that Banco Popular participated in the operation and management of a separate RICO "enterprise," [*id.* at 16-18]; and (3) the predicate acts of mail fraud and wire fraud with particularity as required by Fed. R. Civ. P. 9(b), [*id.* at 18-22].  It also asserts that Mr. Crissen has not alleged that he has suffered any injury from a RICO violation by Banco Popular.  [*Id.* at 22-24.]

"To state a claim under § 1962(c), a RICO plaintiff must show the '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir. 1995) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 87 L.Ed.2d 346, 105 S.Ct. 3275 (1985)).

### a. Existence of a RICO "enterprise"

Banco Popular argues that the only enterprise Mr. Crissen identifies in the Amended Complaint is an "association-in-fact" between "Defendants and their employees," and that it is not plausible that Banco Popular and its employees would be conducting a racketeering enterprise with "the object to enrich the Guptas through the collection of extra fees…." [*Id.* at 13.]  Banco Popular also asserts that Mr. Crissen's allegations do not show that "there was a separate 'enterprise' that was distinct from [each of] the Defendants, with its own structure and its own purposes," [*id.*], or that Banco Popular and the Guptas "'involved themselves in the affairs of the other'" – or, specifically, that Banco Popular "ever instructed the Guptas to participate in property tax certificate auctions; selected the properties that the Guptas would bid on at auction; instructed the Guptas how much to bid; or determined the amount of Notify Costs and Title Costs that the Guptas would charge," nor that "the Guptas directed the affairs of [Banco Popular]."  [*Id.* at 13-15.]  Finally, Banco Popular argues that Mr. Crissen has not alleged that Defendants "'had a structure and goals separate from the predicate acts themselves, which is necessary for a finding of an association-in-fact enterprise.'"  [*Id.* at 15.]

Mr. Crissen responds that the existence of an enterprise is a non-fraud element of the claim and not subject to Fed. R. Civ. P. 9(b).  [Dkt. 147 at 5.]  He agrees that this is an "association-in-fact" enterprise, but argues that he has adequately alleged an enterprise by alleging: (1) a purpose – "profiting from artificially inflating 'the money required for the

redemption of real property sold at Indiana tax sales or Commissioner's Sales for delinquent taxes and special assessments,'" [*id.* at 6]; (2) a relationship – the Guptas all have a familial relationship, and Banco Popular has conducted the affairs of the enterprise, [*id.*]; and (3) longevity – the scheme lasted over a decade, [*id.* at 7].  He also asserts that Banco Popular conflates the issue of whether he has alleged an enterprise with the issue of whether he has alleged that Banco Popular conducted the affairs of an enterprise.  [*Id.* at 7-8.]

An "enterprise" under RICO is "an ongoing 'structure' of persons associates through time, joined in purpose, and organized in a manner amenable to hierarchial or consensual decision-making." *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990).  Mr. Crissen purports to allege an "association-in-fact enterprise," which is a "union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).

Significantly, an enterprise "must be more than a group of people who get together to commit a 'pattern of racketeering activity.'"  *United States v. Neapolitan*, 791 F.2d 489, 499-500 (7th Cir. 1986).  "The hallmark of an enterprise is a 'structure,'" and there must be "a structure and goals separate from the predicate acts themselves."  *United States v. Korando*, 29 F.3d 1114, 1117 (7th Cir. 1994).  "[T]here need not be much structure, but the enterprise must have some continuity and some differentiation of the roles within it."  *Richmond*, 52 F.3d at 645 (citing *Burdett v. Miller*, 957 F.2d 1375, 1379 (7th Cir. 1992)).  The structure should have three features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit the associates to pursue the enterprise's purpose."  *Panwar v. Access Therapies, Inc.*, 2013 U.S. Dist. LEXIS 141776, *16 (S.D. Ind. 2013).

Mr. Crissen's allegations amount to nothing more than Banco Popular acting as a bank, and extending a line of credit to the Guptas and Wiper so that Gupta and Wiper could purchase

12

properties at Indiana tax sales.  Even if Banco Popular used fraudulent means to carry out those activities, those activities constituted Banco Popular's own business affairs and were not, as alleged, acts to further the goals of a separate enterprise.  *See Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 400 (7th Cir. 2009) ("A RICO enterprise is more than a combination of persons who commit alleged predicate acts of racketeering"); *Bachman v. Bear, Stearns & Co.*, 178 F.3d 930, 932 (7th Cir. 1999) (allegations that defendants joined together to defraud an employee-shareholder were not enough to adequately allege RICO claim.  "That is a conspiracy, but it is not an enterprise unless every conspiracy is also an enterprise for RICO purposes, which the case law denies"); *Panwar*, 2013 U.S. Dist. LEXIS 141776 at *16-17 (complaint failed to sufficiently allege existence of RICO enterprise where "[t]he conduct alleged by [plaintiff] merely involves the [defendants'] own affairs, including recruiting, hiring, and placing employees, and not the affairs of a separate enterprise.  [Plaintiff] also has not alleged that the Defendants had a structure and goals separate from the predicate acts themselves, which is necessary for a finding of an association-in-fact enterprise").  Mr. Crissen has not adequately alleged an enterprise, and his RICO claim fails on that basis alone.

**b.  Participation in Operation and Management of Enterprise**

Even if Mr. Crissen had adequately alleged the existence of an enterprise, he has not adequately alleged that Banco Popular participated in the operation and management of the enterprise as opposed to conducting its own business affairs.  Mr. Crissen is correct that enterprise allegations necessary to support a RICO claim need only meet the requirements of Fed. R. Civ. P. 8(a), and not the heightened pleading requirements of Fed. R. Civ. P. 9(b).  *United Food & Commer. Worker Unions & Emplrs. Midwest Health Benefits Fund v. Walgreen*

*Co.*, 719 F.3d 849, 853 (7th Cir. 2013). However, his allegations do not meet the lower

threshold of Rule 8(a). Specifically, Mr. Crissen argues that he has alleged that Banco Popular:

- Was the purchaser of Tax Sale Certificates redeemed by class members because it directed Vinod Gupta to buy Tax Sale Certificates in its name, and Indiana law then required it, as a purchaser, to send copies of the Notices of Redemption by certified mail, submit Certifications showing it and Vinod Gupta incurred and paid the Notify and Title Costs, submit Accounts Payable Vouchers certifying the correctness of the Redemption Amount and Surplus, and return the original Tax Sale Certificates, [dkt. 147 at 9-10];

- Was the purchaser – or conducted the purchaser's affairs – because it took actions consistent with a purchaser of Tax Sale Certificates by:

    o signing Accounts Payable Vouchers as the "Tax Sale Purchaser," or exercising dominion and control over the redemption receipts by "not obtaining Defendants' signatures on redemption checks, [*id.* at 10];

    o Receiving, processing, and responding to "the majority, if not all, of the correspondence and phone calls from the counties for each purchase of a certificate of sale and any redemption in connection therewith," [*id.*]; and

    o Mailing and submitting all of the original Tax Sale Certificates to the county auditor, [*id.* at 11];

- Received the "stolen Title and Notify Costs from [Mr. Crissen] and each member of the class and siphoned its share of the profits from those stolen funds," [*id.*];

- Transferred remaining profits from the stolen funds to the rest of the enterprise's members, [*id.*]; and

- Funded all purchases of the Tax Sale Certificates, [*id.*].

The Seventh Circuit Court of Appeals' discussion of the adequacy of allegations relating

to participation in an enterprise in *Walgreen Co.*, 719 F.3d 849, is instructive in determining

whether Mr. Crissen's allegations are sufficient. There, the plaintiff, an employee benefit plan

(the "Fund"), alleged that Walgreens fraudulently overcharged it by filling prescriptions for

generic drugs with a more expensive and different dosage than what was prescribed. *Id.* at 850.

The Fund sued Walgreens and Par Pharmaceutical Companies and Par Pharmaceutical, Inc. (collectively, "Par"), the companies which  manufactured the generic drugs at issue, for RICO violations.  The Fund alleged that Walgreens had reconfigured its computer systems so that prescriptions for certain drugs were automatically filled with dosage forms manufactured by Par, that Walgreens did not consult the prescribing physician before filling the prescriptions with the different dosage forms, that Walgreens' director of pharmacy marketing falsely represented in an email to company pharmacists that one of Par's products could be substituted as an "AB-rated generic product," and that Walgreens continued its practice of switching dosage forms even after a warning from the Illinois Department of Public Health.  *Id.* at 852.

The *Walgreen Co.* Court found that, even if the Fund had adequately alleged the existence of an enterprise, it had not "adequately allege[d] that Walgreens and Par were conducting the affairs of [an enterprise], as opposed to their own affairs."  *Id.* at 854.  The Court acknowledged that the Fund had provided specific allegations regarding communications between Walgreens and Par and actions taken by both, but still found the Fund's allegations lacking:

> [N]othing in the complaint reveals how one might infer that these communications or actions were undertaken on behalf of the *enterprise* as opposed to on behalf of Walgreens and Par in their individual capacities, to advance their individual self-interests.  The complaint does not allege, for instance, that officials from either company involved themselves in the affairs of the other.  Par personnel were not responsible for reprogramming Walgreens's computer system, and Walgreens personnel were not involved in Par's manufacturing process.  Nor does the complaint anywhere suggest that profits from the illegal drug-switching scheme were siphoned off to the Hrp enterprise or to individual enterprise members.  And although it would be possible to envision a complaint that accused individual corporate personnel of improperly hijacking the business operations of their companies for illicit ends…the Fund does not assert this either.  Instead, the activities the complaint describes are entirely consistent with Walgreens and Par each going about its own business, with Par manufacturing generic drugs and marketing its products to pharmacies, and Walgreens purchasing drugs and filling prescriptions.

*Id.* at 854-55.

The Fund's allegations in *Walgreen Co.* – which did not rise to the level necessary to sustain a RICO claim – are far more extensive than Mr. Crissen's allegations regarding Banco Popular's involvement in the alleged tax sale scheme. Mr. Crissen argues that he has adequately alleged participation in a RICO enterprise because he has alleged that Banco Popular was the purchaser of properties and, as such, corresponded with the county auditors, and also that it received the Title and Notify Costs from Mr. Crissen, "siphoned its share of the profits from those stolen funds," and "transferred any remaining profits from the stolen funds to the rest of the enterprise's members." [Dkt. 147 at 11.] But the allegations in the Amended Complaint do not support his argument. First, Mr. Crissen's own allegations contradict his assertion that Banco Popular was the purchaser of the Property. [*See, e.g.*, dkt. 85 at 3, ¶ 7 (Mr. Crissen redeemed real property "purchased by Vinod [Gupta] at a tax sale in Indiana on or around October 9, 2009"); 9, ¶¶ 38-39 (Vinod Gupta was the highest bidder on the Property and remitted payment to the Greene County Treasurer for the Property); 12, ¶ 60 (Banco Popular allegedly directed "that all future certificates of sale purchased by Pledgors [the Guptas and Wiper]…shall be purchased in the name of one or all of the Pledgors in care of [Banco Popular]"); 12, ¶ 62 ("Pledgors provided each certificate of sale they purchased at Indiana tax sales…to Kislak and [Banco Popular]").

Further, the Court rejects Mr. Crissen's argument that Banco Popular was the purchaser of the properties because it required the Guptas to include its name on the Tax Sale Certificates. [Dkt. 147 at 9.] The allegations in the Amended Complaint make clear that the practice of including Kislak or Banco Popular on the Tax Sale Certificates ended well before Vinod Gupta purchased the Property in 2009. [Dkt. 85 at 12, ¶ 59 ("On or before July 31, 2006, [Banco

16

Popular's] legal department, credit officers or both determined the certificates of sale should no longer be purchased in the name of and jointly owned by one or all of the Pledgors and [Banco Popular").] So, as to Mr. Crissen – whose property is the only relevant property at this stage of the litigation, before a class has been certified – he has affirmatively alleged that Banco Popular was *not* a purchaser of his property.[1] Indeed, Mr. Crissen's allegations amount to nothing more than Banco Popular possessing a security interest in the Property. [*See* dkt. 85 at 9, ¶ 41 (Tax Sale Certificate for the Property issued to "'Vinod C. Gupta c/o Banco Popular NA/Lien Holder'").]

Mr. Crissen also argues that Banco Popular was the purchaser because it took actions consistent with a purchaser of Tax Sale Certificates by, among other things, certifying the correctness of the Redemption Amount and Surplus, signing Accounts Payable Vouchers, not obtaining the Guptas' signatures on redemption checks, corresponding with counties regarding sale and redemption, and mailing and submitting Tax Sale Certificates to county auditors. [Dkt. 147 at 10-11.] But it is not adequate for Mr. Crissen to merely allege that Banco Popular acted like a purchaser, so therefore was a purchaser. *See Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 612 (7th Cir. 2013) ("[the] complaint might be loosely read to allege this [claim], but it does not do so *plausibly*, as *Iqbal* and *Twombly* require….Under the plausibility standard explained in *Iqbal* and *Twombly*, it's not enough to 'plead[] facts that are 'merely consistent with' a

---

[1] The Court rejects Mr. Crissen's similar argument that he has alleged that Vinod Gupta signed and submitted Tax Sale Certificates for other properties listing the purchaser as "Vinod C. Gupta and Banco Popular," [dkts. 147 at 9; 147-1.] Again, this says nothing about who the purchaser of Mr. Crissen's property was – which is the only property that is relevant at this stage of the litigation.

defendant's liability.'…The complaint must allege 'more than a sheer possibility that a defendant has acted unlawfully'") (citations omitted, emphasis in original).[2]

Additionally, any allegation that Banco Popular was the purchaser because it funded the purchase price, [*see, e.g.*, dkt. 85 at 9, ¶ 40], does not show that Banco Popular did anything other than act as a bank interacting with its customer. *See Walgreen Co.*, 719 F.3d at 855 ("[T]he activities the complaint describes are entirely consistent with Walgreens and Par each going about its own business, with Par manufacturing generic drugs and marketing its products to pharmacies, and Walgreens purchasing drugs and filling prescriptions. To be sure, Walgreens and Par were not strangers. Representatives from the companies regularly communicated with one another, and Walgreens purchased its generic [drugs] from Par. This type of interaction, however, shows only that the defendants had a commercial relationship, not that they had joined together to create a distinct entity for purposes of improperly filling…prescriptions")..[3]

In sum, Mr. Crissen has not adequately alleged that Banco Popular participated in an enterprise – even assuming he has alleged the existence of an enterprise – because the only

---

[2] In support of his argument that Banco Popular itself submitted Certifications attesting that it had incurred and paid Notify and Title Costs (which is not alleged in the Amended Complaint, except generally as against "Defendants"), Mr. Crissen submits several Certifications from 2005 listing the purchasers as "Vinod C. Gupta and Banco Popular N.A." [Dkt. 147-1.] Tellingly, however, Mr. Crissen does not provide the Certification for his Property.

[3] Mr. Crissen also argues that he has alleged that Banco Popular "received the stolen Title and Notify Costs…and siphoned its share of the profits from those stolen funds," [dkt. 147 at 11], but points to an allegation in the Amended Complaint stating that Banco Popular used the surplus to "pay off the lines of credit extended to Pledgors," [dkt. 85 at 15, ¶ 81]. This allegation says nothing more than that, when Banco Popular received payment from the Guptas, it put it toward re-payment of the line of credit. This is a normal activity taken by a bank when it issues a line of credit. Even if the Guptas obtained the money they gave Banco Popular to pay down the line of credit in an illegal fashion, this does not turn Banco Popular's application of that payment to the line of credit into an act in furtherance of a RICO enterprise. Additionally, allegations supporting Mr. Crissen's argument that Banco Popular "transferred any remaining profits from the stolen funds to the rest of the enterprise's members," [dkt. 147 at 11], do not appear in the paragraphs of the Amended Complaint that Mr. Crissen cites, [*see* dkt. 85 at ¶¶ 81, 100.]

activities he has adequately alleged that Banco Popular engaged in are normal activities of a bank, and cannot, without more, form the basis of a § 1962(c) RICO claim.[4]   Accordingly, the RICO claim Mr. Crissen asserts against Banco Popular in Count I of the Amended Complaint is dismissed.[5]

### 2. *Section 1962(d) RICO Conspiracy Claim*

To state a claim under § 1962(d), a plaintiff must allege that: "(1) the defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) the defendant further agreed that someone would commit at least two predicate acts to accomplish those goals."  *Slaney*, 244 F.3d at 600. Because Mr. Crissen has failed to adequately allege facts that would establish a violation of RICO § 1962(c), his claim under § 1962(d) for racketeering conspiracy also fails.  *See Walgreen Co.*, 719 F.3d at 856-57 ("Having failed to plead facts that would establish a violation of Section 1962(c), the Fund cannot state a claim for conspiracy under Section 1962(d) based on those same

---

[4] The Court rejects Mr. Crissen's argument that Banco Popular was not merely acting as a bank because it purchased the Property jointly with the Guptas and Wiper, submitted false Certifications, signed documents on behalf of the Guptas and Wiper, and "handle[d] all of the day-to-day operations of its borrower's business."  [Dkt. 147 at 13 n.6.]  As noted above, Mr. Crissen does not allege that Banco Popular jointly purchased the Property – he alleges that Vinod Gupta purchased it.  Mr. Crissen also does not allege that Banco Popular submitted a false Certification for the Property – he alleges that Vinod Gupta did so.  And any actions Banco Popular took to correspond with the county fall far short of "handl[ing] all of the day-to-day operations" of the Guptas' and Wiper's business, and were done in the normal course of protecting Banco Popular's interest in the line of credit.

[5] An additional basis for dismissing Mr. Crissen's RICO claims is the fact that his allegations relating to the predicate acts of mail and wire fraud improperly lump all of the Defendants together.  [*See, e.g.*, dkt. 85 at 19, ¶¶ 101-104 (referring collectively to "Defendants" committing mail and wire fraud).]  This practice does not meet the particularity requirement of Fed. R. Civ. P. 9(b).  *See Rosenbaum v. Seybold*, 2007 U.S. Dist. LEXIS 48021, *8-9 (N.D. Ind. 2007) ("Contrary to their assertions, the Plaintiffs have indeed failed to plead their claims based on fraud with sufficient particularity to satisfy Rule 9(b), resulting in a pleading that is vague and ambiguous.  For example, the Plaintiffs for the most part simply lump all of the Defendants together throughout the…Complaint….").

facts").   Accordingly, Mr. Crissen's § 1962(d) claim (Count II) against Banco Popular is dismissed.

### B.  Indiana RICO Claims

Mr. Crissen asserts claims for substantive racketeering under Indiana's version of RICO, Ind. Code § 35-45-6-2, [dkt. 85 at 21-24, ¶¶ 112-124], and racketeering conspiracy, [*id.* at 24-25, ¶¶ 125-128].  Banco Popular argues that the Indiana RICO claims fail for the same reasons the federal RICO claims do, that Mr. Crissen has not pled predicate acts of racketeering with the required particularity, and that there is no claim for conspiracy under the Indiana RICO statute. [Dkt. 136 at 24-26.]  Mr. Crissen responds that the Indiana RICO statute requires a lesser degree of enterprise involvement than the federal RICO statute, that his allegations "plausibly show [Banco Popular] performed activities necessary or helpful to the operation of the enterprise, whether directly or indirectly, even if it lacked any element of control," and that he has asserted a civil conspiracy claim and not a conspiracy claim under the Indiana RICO statute.  [Dkt. 147 at 25-28.]

"The Indiana RICO statute is modeled after federal RICO, and also requires proof of conduct of an enterprise through a pattern of racketeering activity."  *Directv v. Edwards*, 293 F.Supp.2d 873, 879 (N.D. Ind. 2003) (quoting *Williams v. Aztar Ind. Gaming Corp.*, 2003 U.S. Dist. LEXIS 6450, *31 (S.D. Ind. 2003)).  While Mr. Crissen is correct that the Indiana RICO statute does not require that the defendant exert "some degree of management or direction over the enterprise" as the federal RICO statute does, *Pringle v. Garcia*, 2013 U.S. Dist. LEXIS 20482, *33-34 (N.D. Ind. 2013), the Court has not dismissed the federal RICO claim for failure to exert control over the enterprise.  Instead, it has found here that Mr. Crissen did not adequately allege that Banco Popular participated in an enterprise because the activities alleged were regular

activities of a bank.  Accordingly, Mr. Crissen's Indiana RICO claims fail for the same reasons his federal RICO claims fail – he has not adequately alleged the existence of an enterprise or that Banco Popular participated in an enterprise.  *See Jennings v. Auto Meter Prods.*, 495 F.3d 466, 476 (7th Cir. 2007) (dismissing Indiana RICO claims where federal RICO claims failed because Indiana's RICO statute was modeled after federal RICO statute and "also requires proof of conduct of an enterprise through a pattern of racketeering activity"); *Rosenbaum*, 2013 U.S. Dist. LEXIS 73097 at *29 (Indiana RICO claims failed because, "like the federal RICO claims, [they] lack detail that would plausibly suggest that [defendants] participated in the activities of an enterprise that engaged in a pattern of racketeering activity").[6]  Mr. Crissen's Indiana RICO claims (Counts III and IV) against Banco Popular are dismissed.

### C.  Indiana Crime Victims Act Claim

Mr. Crissen alleges that Banco Popular has violated the Indiana Crime Victims Act (the "CVA"), Ind. Code §§ 35-43-4-2 and 35-43-4-3, by making false statements in connection with Certifications, invoices, Accounts Payable Vouchers, and Notices of Redemption, and committing "multiple acts of criminal deception, theft, and conversion against [Mr. Crissen's]…property."  [Dkt. 85 at 25-26, ¶¶ 129-136.]  Banco Popular argues that Mr. Crissen has not alleged "any statement, communication, or other act by [Banco Popular] that was false or deceptive or 'created a false impression' with respect to Mr. Crissen's property."  [Dkt. 136 at 28

---

[6] An additional basis for the dismissal of Mr. Crissen's Indiana RICO conspiracy claim is the fact that Indiana courts have not recognized a separate claim for conspiracy under Indiana's version of RICO.  *See Koger v. State*, 513 N.E.2d 1250, 1256 (Ind. Ct. App. 1987) ("[I]n contrast to the federal statute, there is no such thing as an Indiana RICO conspiracy [under the Indiana RICO statute]").  The Court rejects Mr. Crissen's argument that his Indiana RICO conspiracy claim is really a claim for civil conspiracy under Indiana's general conspiracy statute.  [Dkt. 147 at 27-28.]  Mr. Crissen titles Count IV "Racketeering Conspiracy under Indiana RICO," cites to the Indiana RICO statute, and does not mention or cite to Indiana's general civil conspiracy statute in connection with that claim.  [Dkt. 85 at 24-25, ¶¶ 125-128.]  He cannot attempt to change the nature of that claim through his response to the Motion to Dismiss.

(emphasis omitted).]  Mr. Crissen responds that Banco Popular exerted control over his money by receiving the redemption amount from the county, using that money to pay itself the interest owed on the Guptas line of credit, and depositing the remainder in the other Defendants' business account.  [Dkt. 147 at 30.]  He argues that "it is reasonable to infer that [he] only consented to his redemption proceeds being used to pay for amounts he could legally be charged by statute," that Banco Popular's "control over that component of the Redemption Amount was unauthorized because [he] did not consent to it being used for anything other than to pay for Title and Notify Costs incurred and paid," and that "because [Banco Popular] knew the Title and Notify Costs were not charged…, it committed theft" and received stolen property.  [*Id.* at 30-31.]

Civil plaintiffs who can prove, by a preponderance of the evidence, that they have been the victims of certain property crimes committed by defendants – whether or not the crimes were ever criminally charged – can recover up to three times the amount of any pecuniary losses.  *See White v. Indiana Realty Assoc. II*, 555 N.E.2d 454, 456 (Ind. 1990) (citations omitted); Ind. Code § 34-24-3-1.  Mr. Crissen bases his CVA claim on his allegations that Banco Popular has violated two Indiana criminal statutes – Ind. Code §§ 35-43-4-2 and 35-43-4-3.  Section 35-43-4-2 provides that "[a] person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft," and Section 35-43-4-3 states that "[a] person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor."

In Count V of the Amended Complaint, Mr. Crissen alleges that "Defendants committed multiple acts of criminal deception, theft, and conversion against [his]…property."  [Dkt. 85 at

25, ¶ 134.]   But, similar to the shortcomings with Mr. Crissen's other claims against Banco Popular, Mr. Crissen has not alleged any activities on the part of Banco Popular that are inconsistent with its business as a banking institution.   The Court has already found that Mr. Crissen has not adequately alleged that Banco Popular was a purchaser of the Property.   His remaining allegations outline normal actions that a banking institution would take.   [*See, e.g.*, dkt. 85 at 9, ¶ 40, 11-13 (Banco Popular funded the purchase price of properties by extending a line of credit to the Guptas and Wiper); 9, ¶ 42 (Banco Popular directed Vinod Gupta to deliver the Tax Sale Certificate to it); 10, ¶¶ 47-48 (Banco Popular returned the original Tax Sale Certificate to the county auditor after the Property was redeemed and upon the auditor's request); 15, ¶ 81 (Banco Popular used the redemption amount and surplus to pay off the Guptas' and Wiper's lines of credit).

There is nothing nefarious about Banco Popular requesting Tax Sale Certificates to document the line of credit it had extended to the Guptas and Wiper, and sending those Certificates to the county auditor upon the auditor's request.   And applying money from the Guptas and Wiper in the form of Redemption Amounts and Surplus to pay down the line of credit is exactly what a bank would do with money it was owed.   Further, depositing the Surplus into the Guptas' or Wiper's business accounts was an act in the regular course of business and Banco Popular cannot be liable for theft or conversion of that money when it relinquished control over it.   Put simply, Mr. Crissen has not alleged any acts by Banco Popular which were false, deceptive, or improper.   Mr. Crissen also argues that he has alleged Banco Popular knowingly received stolen property, which is enough to allege an ICV claim.   [Dkt. 147 at 31.] But his allegation refers generally to "Defendants," and provides no specific allegations against Banco Popular.   [*See* dkt. 85 at 13, ¶ 70 ("Defendants knew the Certifications and Notices of

Redemption were false because they knew they did not incur and pay the Notify Costs and Title Costs").]   Again, Mr. Crissen alleges that Vinod Gupta, and not Banco Popular, was the purchaser of the Property and certified that he incurred and paid the Notify and Title Costs when he allegedly did not.   Any allegation that Banco Popular knew it was receiving stolen property by virtue of its knowledge as the purchaser and the entity that should have incurred and paid Notify and Title Costs but did not, contradicts Mr. Crissen's allegations specific to the Property, is not plausible, and cannot save his ICV claim.   The Court concludes that Mr. Crissen has failed to state a claim under the ICV against Banco Popular, and Count V of the Amended Complaint is dismissed.

### D.  Fraud Claim

Mr. Crissen's fraud claim again relies upon Banco Popular's alleged representations regarding the Certifications, invoices, and Notices of Redemption.  [*See* dkt. 85 at 26-27, ¶¶ 137-147.]  Banco Popular argues that Mr. Crissen has not alleged that it made, either directly or indirectly, a material false representation to him or to anyone that he relied upon, or that injured him.  [Dkt. 136 at 26.]  Mr. Crissen responds that, because the Property was purchased by Vinod Gupta c/o Banco Popular, and due to various activities allegedly undertaken by Banco Popular, it is reasonable to infer that Banco Popular was the purchaser of the Property.  [Dkt. 147 at 28.]  As such, Mr. Crissen argues, Banco Popular falsely represented that Title and Notify Costs were incurred and paid on Mr. Crissen's property.  [*Id.*]  Mr. Crissen also asserts that even if Banco Popular was not the purchaser, it assisted the other Defendants in carrying out the fraud by its participation in the scheme.  [*Id.* at 29.]

In Indiana, the elements of a fraudulent misrepresentation claim are that: "(1) the defendant made false statements of past or existing material fact; (2) the defendant made the

24

statements knowing them to be false or made them…recklessly without knowledge of their truth or falsity; (3) the defendant made the statements to induce the plaintiff to act upon them; (4) the plaintiff justifiably relied and acted upon the statements; and (5) the plaintiff sustained damages as a proximate result." *Smith v. State Farm Fire & Cas. Ins. Co.*, 2012 U.S. Dist. LEXIS 157400, *7 (N.D. Ind. 2012) (citing *Haire v. State Farm Fire & Cas. Co.*, 2011 U.S. Dist. LEXIS 116376, *6 (N.D. Ind. 2011)).  Under Indiana law, a fraud claim "cannot be based on a misrepresentation of law or on a promise to be performed in the future."  *Smith*, 2012 U.S. Dist. LEXIS 157400 at *7-8.

As discussed above, the Court rejects the notion that Mr. Crissen has alleged that Banco Popular was the purchaser of the Property, either because the Tax Sale Certificate listed the purchaser as Vinod Gupta "c/o Banco Popular" or because that status could be inferred through Banco Popular's actions.  Additionally, it has found that any allegation that Banco Popular knew it was receiving allegedly stolen funds contradicts Mr. Crissen's allegations showing that Banco Popular was not the purchaser of the Property.  Therefore, the only remaining basis for Mr. Crissen's fraud claim would be that Banco Popular somehow assisted the other Defendants in committing fraud.  The Court has also already rejected that argument – the allegations against Banco Popular as a non-purchaser of the property all involve typical activities of a bank, and not fraudulent ones.

Further, any allegations that "Defendants" knew the Certifications and Notices of Redemption were false since they knew they did not incur and pay the Notify and Title Costs, or that "Defendants" acted in concert, do not meet the particularity requirements of Fed. R. Civ. P. 9(b) because they do not identify specific acts by Banco Popular as opposed to "Defendants" as a whole.  *See, e.g., Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (fraud claim failed to satisfy

Rule 9(b)'s particularity requirements where "the complaint lumps all the defendants together and does not specify who was involved in what activity").  Mr. Crissen's fraud claim (Count VI) against Banco Popular is dismissed.

### E.  Money Had and Received

Banco Popular argues that Mr. Crissen's money had and received claim fails because "[t]here is a comprehensive legal framework governing the property tax certificate sale and redemption process," and Mr. Crissen cannot seek equitable relief through a money had and received claim when the parties' obligations are governed by statute.  [Dkt. 136 at 29.]  It also contends that the claim fails because it did not receive money from Mr. Crissen.  [*Id.*]  Mr. Crissen responds that the statutory framework related to the tax sale process does not preclude his claim, and that Banco Popular was the beneficiary of his money even if it did not receive that money directly from him.  [Dkt. 147 at 31-32.]

To maintain a common law claim for money had and received, the plaintiff must show that the defendant "has received money either from the plaintiff himself or third persons, under such circumstances that in equity and good conscience he ought not to retain the same, and which money…belongs to plaintiff, and where money has been received by mistake of facts or without consideration, or upon a consideration that has failed, it may be recovered back." *Lawson v. First Union Mortg. Co.*, 786 N.E.2d 279, 283-84 (Ind. Ct. App. 2003).  Mr. Crissen alleges that the Redemption Amount and Surplus was paid by the county auditor to Banco Popular, and Banco Popular then used the money to pay off the lines of credit extended to the Guptas and Wiper.  [*See, e.g.*, dkt. 85 at 15, ¶ 81.]  As noted above, the Guptas and Wiper owed Banco Popular the money extended to them through the lines of credit.  Banco Popular's application of the money from the auditor to the lines of credit was nothing more than a bank

accepting money paid to it for a debt.[7]  As alleged, the Guptas and Wiper are the only parties that received money from Mr. Crissen that was not owed – not Banco Popular, which was owed the amounts it applied to the lines of credit.  Mr. Crissen's money had and received claim (Count VII) is dismissed as against Banco Popular.

### F.  Unjust Enrichment Claim

Mr. Crissen's unjust enrichment claim is similar to his money had and received claim – he again asserts that Banco Popular received the Title and Notify Costs, which it neither incurred nor paid, and so has been unjustly enriched.  [Dkt. 85 at 28-29, ¶¶ 152-155.]  Banco Popular argues that Mr. Crissen has not alleged that he expected payment of a fee from Banco Popular, nor that Banco Popular reasonably believed that Mr. Crissen was expecting compensation.  [Dkt. 136 at 31.]  Mr. Crissen responds that he is entitled to restitution for the Title and Notify Costs because Defendants did not incur or pay them.  [Dkt. 147 at 33.]

To prevail on a claim of unjust enrichment under Indiana law, "a plaintiff must establish that it conferred a measurable benefit on the defendant under circumstances in which the defendant's retention of the benefit without payment would be unjust….Recovery under this theory only requires the plaintiff to establish that the defendant impliedly or expressly requested the benefits be conferred….However, a party who has not expressly or impliedly requested the benefit is under no obligation to pay for the benefit."  *Garage Doors v. Morton*, 682 N.E.2d 1296, 1303 (Ind. Ct. App. 1997) (citations omitted).  Mr. Crissen's unjust enrichment claim suffers from the same defect as his money had and received claim.  Mr. Crissen has not adequately alleged that Banco Popular somehow knew the money it received from the auditor

---

[7] Again, the Court rejects the notion that Mr. Crissen has adequately alleged Banco Popular knew it was receiving allegedly stolen money.  Mr. Crissen makes that allegation dependent on Banco Popular being the purchaser of the Property and, as such, the entity that should have incurred and paid the Notify and Title Costs but did not, and his own allegations contradict that.

was allegedly stolen, and Banco Popular was perfectly entitled to apply that money to the Guptas' and Wiper's lines of credit – it was owed that money.  Additionally, it was entitled to keep any interest amount it was owed.  Nowhere does Mr. Crissen allege that Banco Popular was not owed that money, or that it kept any amount over and above the money applied to the line of credit or representing interest.  This is fatal to his unjust enrichment claim against Banco Popular and, accordingly, that claim (Count VIII) is dismissed.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Banco Popular's Motion to Dismiss Plaintiff's First Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), [dkt. 135].    Mr. Crissen's claims against Banco Popular are **DISMISSED WITH PREJUDICE**.[8]  No partial judgment shall issue.

01/28/2014

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

---

[8] Banco Popular's dismissal from the lawsuit does not moot its Motion to Enforce Protective Order, [dkt. 191], which appears to relate to documents inadvertently produced in response to a subpoena served on Banco Popular before it was named as a defendant in this case.  [*See* dkt. 192 at 3-5 (discussing Banco Popular's receipt of a subpoena *duces tecum* and subsequent production of documents).]  Accordingly, this Order does not affect Banco Popular's obligation to attend the February 5, 2014 hearing scheduled to address that motion.  Nor does this order impact the parties' and counsel's obligation to comply with the Court's Protective Order as that order relates to documents produced by Banco Popular either as a party or non-party.