UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JOSHUA B. CRISSEN, individually and on behalf of all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No.  2:12-cv-00355-JMS-WGH |
| VINOD C. GUPTA, | ) | |
| SATYABALA V. GUPTA, | ) | |
| WIPER CORPORATION and | ) | |
| VIVEK V. GUPTA, | ) | |
| | ) | |
| Defendants. | ) | |

BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

Page(s)

I.  Statement of Issues ................................................................................................ 1

II.  The Standard Under Fed. R. Civ. P. 23 ................................................................ 2

III. Crissen's Proposed Class Definition Does Not Meet the Requirements for Definiteness and Ascertainability ......................................................................................................... 3

IV. Crissen's Proposed Class Does Not Satisfy the Commonality Requirement of Fed. R. Civ. P. 23(a)(2) .............................................................................................................. 7

V.  The Proposed Class Does Not Satisfy the Typicality Requirement of Fed. R. Civ. P. 23(a)(3) .................................................................................................................. 20

VI. The Proposed Class Does Not Satisfy the Numerosity Requirement of Fed. R. Civ. P. 23(a)(1) .............................................................................................................. 22

VII. The Requirement of Fed. R. Civ. P. 23(b)(3), That Questions of Law or Fact Common to the Class Do Not Predominate over Any Questions Affecting Only Individual Members, and That a Class Action is Superior to Other Available Methods for Fairly and Efficiently Adjudicating the Controversy, Is Not Satisfied ............................................................. 23

VIII. Mr. Crissen is Not an Adequate Representative under Fed. R. Civ. P. 23(a)(4) ................. 25

IX. Proposed Class Counsel Does Not Satisfy the Requirements for Adequacy of Class Counsel .................................................................................................................. 27

    A.    Attorney Misconduct and Actions in the *Gupta* Case ........................................ 30

    B.    Jesse Rochman's Conduct in the *Groome* Action, Allegations of Civil RICO Violations Against Jesse in an Illinois Class Action ....................... 38

        (i)    Jesse's conduct in the *Groome* action .............................................. 38

        (ii)    *Phoenix Bond* ................................................................................. 40

    C.    Barrett Rochman's relationship with Jesse, Bhavik R. Patel, and the Sandberg Firm; Sandberg Firm's dual representation of Barrett and Mr. Crissen/class ................................................................................ 41

        (i)    Barrett Rochman is a Substantial Competitor of Vinod Gupta ............ 42

        (ii)    Barrett Rochman has made numerous threats to sue Groome and Gupta .. 42

        (iii)    Barrett Rochman and the Sandberg Firm's Attorney-Client Relationship ................................................................................. 43

(iv)   Barrett had no factual basis for claiming Vinod Gupta did not incur or pay title and notify costs at the time he solicited Mr. Crissen to contact the Sandberg Firm…………………………….45

(v)   The Sandberg Firm and Jesse Rochman's dual representation of Barrett Rochman and Mr. Crissen…………………………………….46

D.   Crissen's Counsel Has Failed to Prove the Fed. R. Civ. P. 23(g)(1)(A) Qualification Factors ......................................................... 48

X. Conclusion ......................................................................................................... 50

Certificate of Service ............................................................................................51

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E.2d 955 (Ind. Ct. App. 2000)........................................ 14

*A.M.T. v. Gargano*, 2010 WL 4860119 (S.D. Ind. Nov. 22, 2010) ................................................ 4

*Alliance to End Repression v. Rochford*, 565 F.2d 975 (7th Cir.1977) ....................................... 18

*Anchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)................................................................. 23

*Barnes v. A.H. Robins Co., Inc.*, 476 N.E.2d 84 (Ind.1985)........................................................ 14

*BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750 (7th Cir. 2011)....................................... 40

*Bledsoe v. Combs*, 2000 WL 681094 (S.D. Ind. March 14, 2000) ................................................ 6

*Boatman v. Murphy*, 2010 WL 2178821 (S.D. Ind. May 27, 2010) ............................................ 18

*Bolden v. Walsh Constr. Co.*, 688 F.3d 893 (7th Cir. 2012)..................................................... 5, 6

*Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408 (N.D. Ill. 2012) .................. 23, 24

*Bowen v. Groome*, 2012 WL 2064702 (S.D. Ill. June 7,
2012) ......................................................................... 23, 24, 29, 38, 39, 40, 42, 45, 46, 48, 49

*Burda v. M. Ecker Co.*, 2 F.3d 769 (7th Cir. 1993) ...................................................................... 43

*Califano v. Yamasaki,* 442 U.S. 682, 700-701, 99 S.Ct. 2545 (1979) ........................................... 3

*Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671 (7th Cir. 2009) .................. 11

*Carter v. Pastrick*, 384 F.Supp.2d 126 (N.D. Ind. 2005)............................................................ 13

*Carter v. Pastrick*, 384 F.Supp.2d 1261 (N.D. Ind. 2005).......................................................... 11

*City of Crown Point v. Misty Woods Props.*, *LLC*, 864 N.E.2d 1069 (Ind. Ct. App. 2007)......... 20

*Clark v. Experian Info., Inc.*, 233 F.R.D. 508 (N.D. Ill 2005), *aff'd*, 256 Fed.Appx. 818
(7th Cir. 2007)................................................................................................................. 23, 24

*Comcast Corp. v. Behrend*, ___ U.S. ___, ___, 133 S.Ct. 1426 (2013) ................................... 2, 3

*Corley v. Entergy Corp.*, 220 F.R.D. 478 (E.D. Tex. 2004), *subsequent determination*, 222
F.R.D. 316 (E.D. Tex. 2004), *aff'd*, 152 Fed.Appx. 350 (5th Cir. 2005), and *aff'd*, 152
Fed.Appx. 350 (5th Cir. 2005)............................................................................................... 24

*Creative Montessori Learning Centers v. Ashford Gear, LLC*, 662 F.3d 913 (7th Cir. 2011)........................................................................................... 28, 30

*Culver v. City of Milwaukee*, 277 F.3d 908 (7th Cir. 2002) .......................................... 28

*Custom Radio Corp. v. Actuaries & Benefit Consultants, Inc.*, 998 N.E.2d 263 (Ind. Ct. App. 2013) ....................................................................................... 11, 19

*Dafforn v. Rousseau Associates, Inc.*, 1976-2 Trade Cas. P 61,219 (N.D. Ind. 1976) .................. 6

*Donovan v. St. Joseph County Sheriff*, 2012 WL 1601314 (N.D. Ind. May 3, 2012) ........... 25, 28

*Emig v. American Tobacco Co.* 184 F.R.D. 379 (D. Kan. 1998) .............................. 25

*Farmers Elevator Co. v. Hamilton*, 926 N.E.2d 68 (Ind. Ct. App. 2010) .................................... 11

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150 (S.D.N.Y. 2010) ................... 26

*Geary v. Scharbrough*, 2007 WL 2901695 (S.D. Ind. Aug. 22, 2007)........................................ 20

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ..................................................... 7

*Harriston v. Chicago Tribune Co.*, 992 F.2d 697 (7th Cir. 1993) .................................................. 2

*Howard v. Ray's LLC*, 2011 WL 4625735 (S.D. Ind.  Sept. 30, 2011)...................................... 26

*Hurd v. Monsanto Co.*, 165 F.R.D. 234 (S.D. Ind. 1995)............................................... 14, 18

*In re Prempro*, 230 F.R.D. 555 (E.D. Ark. 2005)......................................................... 24

*In re Siegel*, 708 N.E.2d 869 (Ind. 1999)........................................................................ 20

*Ind. State Emp. Ass'n v. Ind. State Highway Comm'n*, 78 F.R.D. 724 (S.D. Ind. 1978)........... 5, 6

*Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481 (7th Cir. 2012) .................................................... 3

*Jay E. Hayden Found. v. First Neighbor Bank*, 610 F.3d 382 (7th Cir. 2010)...................... 11, 19

*Kartman v. State Farm Mut. Auto. Ins. Co.*, 2009 WL 348909 (S.D. Ind. Feb. 6, 2009).............. 6

*Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp. 1162 (S.D.Ind.1997) .................................................. 6

*Koger v. State*, 513 N.E.2d 1250 (Ind.Ct.App. 1987)................................................................. 11

*Koons v. Blanton*, 27 N.E. 334 (Ind. 1891)........................................................................ 20

*Kress v. CCA of Tenn., LLC*, 693 F.3d 890 (7th Cir. 2012) ....................................................... 22

*Lady Di's Inc. v. Enhanced Servs. Billing, Inc.*, 654 F.3d 728 (7th Cir. 2011) ........................... 23

*Mancuso v. Bridgestone/Firestone, Inc.*, 200 F.Supp.2d 983 (S.D. Ind. 2002)............................ 14

*McGarry v. Becher*, 2010 U.S. Dist. LEXIS 28246 (S.D. Ind. Mar. 24, 2010).............................. 4

*McWane, Inc. v. Crow Chi. Indus., Inc.*, 224 F.3d 582 (7th Cir.2000)........................................ 13

*Messner v. North Shore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012).......................... 3, 23

*O'Conner v. Boeing N. American, Inc.*, 197 F.R.D. 404 (C.D. Cal. 2000) ................................. 25

*Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006), *cert. denied*, 551 U.S. 1115, 127 S.Ct. 2952 (2007)............................................................................................... 3,4, 20

*Perdue v. Individual Mem. of Ind. State Bd.*, 266 F.R.D. 215 (S.D. Ind. 2010) ........................... 18

*Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489 (7th Cir. 2013) .............. 28, 30

*Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584 (7th Cir.1993) ........................................ 20

*Roe v. Bridgestone Corp.*, 492 F.Supp.2d 988, n.1 (S.D. Ind. 2007) ....................................... 6

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) .................................................... 25

*Rotella v. Wood*, 528 U.S. 549 (2000) ................................................................... 11

*Savanna Group, Inc. v. Trynex, Inc.*, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013).......... 27, 28, 30, 48

*Selburg v. Virtuoso Sourcing Group, LLC*, 2012 WL 4514152 (S.D. Ind. Sept. 29, 2012) .......... 6

*Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819 (7th Cir. 2001) ........................ 43

*Shepherd v. ASI, Ltd.*, 295 F.R.D. 289 (S.D. Ind. 2013).................................................... 2

*Spano v. Boeing Co.*, 633 F.3d 574 (7th Cir. 2011).................................................... 21

*Steimel v. Minott*, 2014 WL 1213390 (S.D. Ind. March 24, 2014)............................... 22

*Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742 (7th Cir. 2008) ............................ 3

*Vector–Springfield Props., Ltd. v. Central Ill. Light Co.*, 108 F.3d 806 (7th Cir.1997) ............. 13

*Wagner v. Lehman Bros. Kuhn Loeb, Inc.*, 646 F.Supp. 643 (N.D. Ill. 1986) ...................... 26, 29

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.___, ___, 131 S.Ct. 2541 (2011) ........................ 2, 3, 7

*Walther v. Ind. Lawrence Bank*, 579 N.E.2d 643 (Ind. Ct. App. 1991)............................... 11

*Warren v. Town of Speedway*, 2013 WL 6729655 (S.D. Ind. Dec. 19, 2013)............................ 20

**Statutes**

18 U.S.C. § 1962(d) .................................................................................................... 36

28 U.S.C. § 1332(d)(2) .............................................................................................. 23

Ind. Code § 26-1-3.1-118(g) ...................................................................................... 11

Ind. Code § 34-11-2-7 ................................................................................................ 11

Ind. Code § 6-1.1-25-2 ............................................................................................... 36

Ind. Code § 6-1.1-25-2(c) .......................................................................................... 36

Ind. Code § 6-1.1-25-4.5 ........................................................................................ 9, 10

Ind. Code § 6-1.1-25-4.5(c)(7) ................................................................................... 19

**Rules**

Fed. R. Civ. P. 11 ....................................................................................................... 43

Fed. R. Civ. P. 19 ....................................................................................................... 26

Fed. R. Civ. P. 23 ............................................................................................ 2, 12, 20

Fed. R. Civ. P. 23(a) ................................................................................................ 2, 3

Fed. R. Civ. P. 23(a)(1) ......................................................................................... 1, 22

Fed. R. Civ. P. 23(a)(2) .............................................................................. 1, 7, 10, 23

Fed. R. Civ. P. 23(a)(3) ......................................................................................... 1, 20

Fed. R. Civ. P. 23(a)(4) ..................................................................................... 1, 25, 27

Fed. R. Civ. P. 23(b) ................................................................................................ 2, 3

Fed. R. Civ. P. 23(b)(3) ............................................................................... 1, 2, 6, 23

Fed. R. Civ. P. 23(c)(1)(B) .......................................................................................... 2

Fed. R. Civ. P. 23(g) .................................................................. 1, 2, 27, 28, 30, 31

Fed. R. Civ. P. 23(g)(1)(A) ......................................................................... 28, 29, 48

Fed. R. Civ. P. 23(g)(1)(B) ...................................................................................... 28

Fed. R. Civ. P. 23(g)(4) ............................................................................................ 28

S.D. Ind. L.R. 37.1(A) ............................................................................................ 37

S.D. Ind. L.R. 7-1(e)(3)(B) ...................................................................................... 1

Ind. R. Prof. Resp. 3.3............................................................................................ 39

**OTHER AUTHORITIES**

7A Charles Alan Wright *et al*., FEDERAL PRACTICE AND PROCEDURE, § 1769.1 (3d ed. 2005) ................................................................................................................. 30

MCLAUGHLIN ON CLASS ACTIONS, § 5:43 .................................................................. 24

Herbert B. Newberg & Alba Conte, *NEWBERG ON CLASS ACTIONS* § 4.26 (3d ed.1992)…………...24

Nagareda, "Class Certification in the Age of Aggregate Proof," 84 N.Y.U.L. Rev. 97 2009) .. 7, 8

# I. <u>Statement of Issues</u>

The Defendants Vinod C. Gupta, Satyabala V. Gupta, and Wiper Corporation (the "Gupta Defendants"), by counsel, in accordance with S.D. Ind. L.R. 7-1(e)(3)(B), provide the following Statement of Issues addressed in this Brief in Opposition to Plaintiff's Motion for Class Certification:

1.       Whether the proposed class definition of the Plaintiff Joshua Crissen ("Crissen") meets the requirements for definiteness and ascertainability;

2.       Whether Crissen's proposed class satisfies the commonality requirement of Fed. R. Civ. P. 23(a)(2), and whether the Court will be required to conduct individualized inquiries into each potential class member's claims;

3.       Whether the proposed class satisfies the typicality requirement of Fed. R. Civ. P. 23(a)(3);

4.       Whether the proposed class satisfies the numerosity requirement of Fed. R. Civ. P. 23(a)(1);

5.       Whether the requirements of Fed. R. Civ. P. 23(b)(3), that questions of law or fact common to the class predominate over any questions affecting only individual members, and whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy;

6.       Whether Mr. Crissen is an adequate class representative under Fed. R. Civ. P. 23(a)(4); and

7.       Whether the Sandberg Firm and Crissen's counsel of record satisfy the requirements for adequacy of class counsel under Fed. R. Civ. P. 23(g).

## II.  <u>The Standard Under Fed. R. Civ. P. 23</u>

A party seeking to have an action certified as a class action must satisfy the four requirements of Fed. R. Civ. P. 23(a): "(1) The class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defensives of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.___, ___, 131 S.Ct. 2541, 2548 (2011). The named plaintiff must also satisfy "through evidentiary proof" at least one of the provisions of Rule 23(b).  *Comcast Corp. v. Behrend*, ___ U.S. ___, ___, 133 S.Ct. 1426, 1432 (2013). Crissen seeks certification under Rule 23(b)(3) [Filing No. 91, p. 3], which requires a finding by the court that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *Comcast*, ___ U.S. at ____, 133 S. Ct. at 1432.  Finally, in addition to these explicit threshold requirements for class certification in Rule 23, the Rule also contains an implicit antecedent requirement that the proposed class be definite and ascertainable, *Shepherd v. ASI, Ltd.*, 295 F.R.D. 289, 294 (S.D. Ind. 2013). The adequacy of proposed class counsel must be demonstrated in accordance with Fed. R. Civ. P. 23(g), because "[a]n order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel."  Fed. R. Civ. P. 23(c)(1)(B).  "Failure to meet any of these requirements of Rule 23 precludes certification of a class."  *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993).

Rule 23 "does not set forth a mere pleading standard."  *Wal-Mart*, 564 U.S. at ____, 131 S.Ct. at 2551.  Rather, a party seeking class certification must affirmatively demonstrate that "there are **in fact** sufficiently numerous parties, common questions of law or fact, etc."  *Id.*

(emphasis original). "Repeatedly, we have emphasized that it 'may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 have been satisfied'." *Comcast*, ___ U.S. at ___, 133 S.Ct. at 1432 (quoting *Wal-Mart*). That is so because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* (quoting *Wal-Mart*).

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only'." *Comcast*, ___ U.S. at ___, 133 S.Ct. at 1432 (quoting *Califano v. Yamasaki,* 442 U.S. 682, 700-701, 99 S.Ct. 2545, 2557 (1979)). The party seeking certification bears the burden of demonstrating that certification is proper. *Messner v. North Shore Univ. HealthSystem,* 669 F.3d 802, 811 (7th Cir. 2012). Whether a plaintiff has met his burden is measured by the "preponderance of the evidence" standard. *Id.* The Seventh Circuit has directed district courts to exercise "caution" in deciding whether to certify a class. *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 746 (7th Cir. 2008).

### III.  Crissen's Proposed Class Definition Does Not Meet the Requirements for Definiteness and Ascertainability

Although ascertainability and definiteness of a proposed class is not a prerequisite for class certification enumerated in Rule 23(a) or (b), the Seventh Circuit has made it clear that it is nonetheless a requirement for class certification. *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012) (determining that the certified class failed because "there is no way to know or readily ascertain who is a member of the class," 668 F.3d at 495). To meet this requirement, "[t]he plaintiff must . . . show . . . that the class is indeed identifiable as a class." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006), *cert. denied*, 551 U.S. 1115, 127 S.Ct. 2952

3

(2007).  A class is sufficiently defined "if the proposed class members are ascertainable by reference to objective criteria." *A.M.T. v. Gargano*, 2010 WL 4860119, *4 (S.D. Ind. Nov. 22, 2010) (quoting *McGarry v. Becher*, 2010 U.S. Dist. LEXIS 28246, *5 (S.D. Ind. Mar. 24, 2010)). In the instant action, Crissen proposes to define the class as:

> All individuals and business entities who redeemed a tract or real property purchased at Indiana tax and/or Commissioner's sales by Vinod, Satyabala, Vivek, Kislak, BPNA and/or Wiper (or by a nominee), where the redemption amounts were artificially inflated because Vinod, Satyabala, Vivek, Kislak, BPNA and/or Wiper certified to Indiana county auditors they had incurred and/or paid statutory notification and/or title costs which Defendants had not incurred or paid.

[Filing No. 90].

First of all, this class definition is fatally defective because it is overbroad, and includes members who have no claims against certain Defendants.  It includes as class members those with alleged claims against Kislak and BPNA who are not even parties to this action.  Moreover, there is nothing in Exhibit B to Crissen's First Amended Class Action Complaint [Filing No. 85-3] (which supposedly identifies the more than 3,550 redeemed properties in issue in this case) showing that Satyabala, Vivek, Kislak, or BPNA ever purchased properties at Indiana tax or Commissioner's sales, and Crissen has presented absolutely no evidence of same to this Court in connection with his Motion for Class Certification.  In addition, Crissen has presented this Court with absolutely no evidence that any Defendant other than Vinod Gupta has ever certified statutory notification and title costs to any Indiana county auditor.  These deficiencies alone are fatal to Crissen's class definition.

The proposed class defined by the Plaintiff is also overly broad because it lacks any temporal parameters, and includes members who do not and cannot have claims against the Defendants.  Although Exhibit B [Filing No. 85-3] to the Plaintiff's Amended Class Action

Complaint purports to list more than 3,550 properties in Indiana purchased by Mr. Gupta and Wiper over a 11-year period, the proposed class defined by Crissen is not so limited, and could include members who redeemed unidentified properties in Indiana purchased by Mr. Gupta decades ago.

However, Crissen's proposed class definition is fatally defective for another very important reason.  Under Crissen's definition, the class would be comprised of individuals and business entities who paid redemption amounts that were "artificially inflated because Vinod . . . or Wiper certified to Indiana county auditors they had incurred and/or paid statutory notification and/or title costs which Defendants had not incurred or paid."  This class definition **assumes** a determination that Mr. Gupta and Wiper did not incur or pay the statutory notification or title costs certified to county auditors, **which is the central issue in this case**.  In other words, the definition of the class **assumes** the liability of Mr. Gupta and Wiper.

The Seventh Circuit has just recently cautioned against a class definition that includes within it a liability determination.  *Bolden v. Walsh Constr. Co.*, 688 F.3d 893 (7th Cir. 2012).  In *Bolden*, the Seventh Circuit found problematic a Title VII class of employees who were denied overtime work "because of their race."  *Id.* at 895.  "Using a future determination on the merits to specify the scope of the class makes it impossible to determine who is in the class until the case ends, and it creates the prospect that, if the [defendant] should prevail on the merits, this would deprive the judgment of preclusive effect."  *Id.*

District Courts in Indiana have long refused to certify classes defined by the liability of the defendants.  In *Ind. State Emp. Ass'n v. Ind. State Highway Comm'n*, 78 F.R.D. 724, 725 (S.D. Ind. 1978), Judge Steckler refused to certify a proposed class that was so defined:

> By the way plaintiffs seek to have the class defined it would be impossible for the Court to ascertain whether or not a given person is a member of the class

until a determination of ultimate liability as to that person is made. The proposed class definition is in essence framed as a legal conclusion. It seeks to have this Court sanction the certification of what Judge Eschbach referred to in *Dafforn v. Rousseau Associates, Inc.*, 1976-2 Trade Cas. P 61,219 (N.D. Ind. 1976), as a "fail-safe" class. Such a class is one "which would be bound only by a judgment favorable to plaintiffs but not by an adverse judgment." *Id.* at p. 70,577.

More recently, Judge Hamilton confirmed the continuing vitality of this principle in *Roe v. Bridgestone Corp.*, 492 F.Supp.2d 988, 992, n.1 (S.D. Ind. 2007):

> The plaintiffs' definitions of the proposed classes incorporate elements of the merits of their claims and thus have an improper "fail-safe" character. See *Bledsoe v. Combs*, 2000 WL 681094, *4 (S.D. Ind. March 14, 2000) (denying class certification where determination of a person's membership would require determination of merits of claim); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp. 1162, 1169 (S.D.Ind.1997) (denying class certification where determining class membership would require individualized determination on the merits of the claim); *Indiana State Employees Ass'n v. Indiana State Highway Comm'n*, 78 F.R.D. 724, 725 (S.D.Ind.1978) (denying class certification where "it would be impossible for the Court to ascertain whether or not a given person is a member of the class until a determination of ultimate liability as to that person is made"); *Dafforn v. Rousseau Associates, Inc.*, 1976–2 Trade Cas. (CCH) ¶ 61,219 (N.D. Ind. 1976) (denying certification of proposed "fail-safe" class defined as all persons who paid illegally fixed brokerage fees).

See also *Kartman v. State Farm Mut. Auto. Ins. Co.*, 2009 WL 348909, *4 (S.D. Ind. Feb. 6, 2009) ("The difficulty with Plaintiff's proposal is that members of their (b)(3) class cannot be determined until liability is first decided.")

The class definition proposed by Crissen in the instant case suffers from the same fatal flaw.  The class he proposes is not defined such that its members are ascertainable by reference to **objective** criteria.  Identification of class members is not possible by a "ministerial review" of objective data.  *Selburg v. Virtuoso Sourcing Group, LLC*, 2012 WL 4514152, *2 (S.D. Ind. Sept. 29, 2012).  Rather, the proposed class is defined by "[u]sing a future decision on the merits to specify the scope of the class," a practice prohibited by the Seventh Circuit in *Bolden*, 688 F.3d at 895.

Finally, as more fully discussed *infra*, the Plaintiff's Amended Class Action Complaint alleges eight (8) different theories of recovery, some statutory and some common law, each with a different statute of limitations. The Gupta Defendants have raised many affirmative defenses in their Amended Answer [Filing No. 143], including statutes of limitation, laches, and waiver. Despite the obvious differences in the legal claims of, and defenses applicable to, various proposed class members, Crissen's class definition proposes to lump all into one class. This makes the proposed class unmanageable.

## IV. Crissen's Proposed Class Does Not Satisfy the Commonality Requirement of Fed. R. Civ. P. 23(a)(2)

Rule 23(a)(2) requires Crissen to show there are questions of law or fact common to the class. "That language is easy to misread, since "[a]ny competently crafted class complaint literally raises common 'questions'." *Wal-Mart*, 564 U.S. at ____, 131 S.Ct. at 2551 (citing to Nagareda, "Class Certification in the Age of Aggregate Proof," 84 N.Y.U.L. Rev. 97, 131-132 (2009)). As acknowledged by Crissen in his Plaintiff's Memorandum of Law in Support of Motion for Class Certification [Filing No. 91, p. 6] (the "Class Cert Brief"), "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury'." *Wal-Mart*, 564 U.S. at ____, 131 S.Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). This does not mean merely that they have all suffered a violation of the same provision of the law. *Id.* Rather, Crissen's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will remove an issue that is central to the validity of each one of the claims in one stroke." *Id.*

> What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* (quoting Nagarda, *supra*, at 132).

In his Class Cert Brief, Crissen asserts that "**the main contention [in this case] is Defendants neither incurred nor paid <u>any</u> Notify Costs or Title Costs,**" citing to rhetorical paragraphs 2, 45, 50, 65 and 90 of his Plaintiff's Amended Class Action Complaint [Filing No. 91, p. 7] (emphasis added).[1]   However, Crissen has provided this Court with absolutely no evidence in support of his Motion for Class Certification to support that bald contention, and Mr. Gupta has provided to Crissen in discovery literally thousands of documents which indisputably show that Notify Costs were in fact incurred and paid for redeemed properties in Indiana that were purchased from 2007 to the present.

First of all, the allegedly common question of whether Defendants incurred and paid Notify and Title Search Costs cannot be answered with regard to all proposed class members in "one stroke," because some purported class members did not pay any Title or Notify costs in connection with their redemption of properties in Indiana purchased by Mr. Gupta and Wiper at tax sales.   Exhibit B to the Plaintiff's First Amended Class Action Complaint [Filing No. 85-3] supposedly identifies the more than 3,550 redeemed properties in issue in this case.  However, at least 167 properties listed in Exhibit B were redeemed by parties for amounts that did not include Title Search or Notification Costs.   (Affidavit of Vinod C. Gupta (hereinafter, the "Gupta Affidavit"), ¶ 7).   Thus, even if Crissen's "main contention" in this case were true, these redeeming parties have suffered no injury because they did not pay any Title or Notify Costs in connection with their redemptions, and therefore should not be part of Crissen's proposed class.

Secondly, Mr. Gupta has produced, in response to Crissen's production requests,

---

[1] Indeed, Crissen argues in his Class Cert Brief that, "[t]he truth or falsity of this contention will resolve an issue central to the **validity** of Plaintiff's and each class member's claims in one stroke." [Filing No. 91, p. 7] (emphasis added).

evidence showing that Title Search and Notify Costs were in fact incurred and paid.  As just one small example, Exhibit 3 to the Gupta Affidavit contains copies of post office-stamped Certified Mail Receipts for notices sent pursuant to Ind. Code § 6-1.1-25-4.5 to owners and others with a substantial property interest of record who are members of Crissen's purported class.   As further shown in Exhibit 3, the postage incurred and paid varies for each property, depending on the number of notices sent pursuant to Ind. Code § 6-1.1-25-4.5 to owners and others with a substantial property interest of record as disclosed by the title search for each such property (*e.g.*, "Example 1" of Exhibit 3 shows that $6.48 in postage was incurred and paid for notices sent pursuant to Ind. Code § 6-1.1-25-4.5 to owners and others with a substantial property interest of record in a particular property, "Example 3" shows that $16.20 in postage was incurred and paid for notices sent pursuant to Ind. Code § 6-1.1-25-4.5 to owners and others with a substantial property interest of record in a different property, and "Example 4" shows that $9.72 in postage was incurred and paid for notices sent pursuant to Ind. Code § 6-1.1-25-4.5 to owners and others with a substantial property interest of record in yet another property.   Mr. Gupta has two (2) banker's boxes full of Certified Mail Receipts just like those in Exhibit 3 showing that postage costs alone of thousands of dollars were incurred and paid to mail notices pursuant to Ind. Code § 6-1.1-25-4.5 to owners and others with a substantial property interest of record in properties purchased by him at tax sales in Indiana. (See Gupta Affidavit, ¶ 12).  All of these Certified Mail Receipts were long ago produced to and inspected by counsel for Crissen.  *Id.*  It is simple common sense that a title search must have been performed for those properties in order to obtain the names and addresses for notices to be sent to mortgage companies and others with a substantial property interest of record.

9

Thus, the underlined evidence before this Court shows that Crissen's main contention in this case is simply not true.  And *even if* it were true that Mr. Gupta and Wiper did not incur Notify Costs and Title Costs in the amount certified by Mr. Gupta to the county auditors (which is not true and, by Crissen's own admission in his Class Cert Brief, is not his contention in this lawsuit), the evidence before this Court shows that "the postage costs incurred and paid for sending out Notices pursuant to Ind. Code § 6-1.1-25-4.5 to owners and others with a substantial property interest of record **varies for each property**, depending on the number of Notices sent pursuant to Ind. Code § 6-1.1-25-4.5 to owners and others with a substantial property interest of record as disclosed by the title search for each such property."  (Gupta Affidavit, ¶ 14) (emphasis added). There is thus no "common nucleus of facts," and no "common answer" to Crissen's main contention, that will drive the resolution of this case.  The determination of the Defendants' liability to each proposed class member, if any, and the amount thereof will require individual mini-trials for each class member.  That defeats the purpose of a class action.

Another reason why Crissen's proposed class does not satisfy the commonality requirement of Fed. R. Civ. P. 23(a)(2) is that most class members are subject to unique defenses, including statutes of limitation and laches defenses, which bar their claims.  Indeed, even if the main contention of Crissen in this action were true (which it is not), a very large percentage of the members in Crissen's proposed class would still not have valid claims against the Defendants.

As already noted, the Plaintiff's First Amended Class Action Complaint alleges eight (8) different theories of recovery, some statutory and some common law, each with a different statute of limitations.  Counts I and II purport to assert claims for substantive racketeering, and racketeering conspiracy, respectively, under federal RICO statutes, which are subject to a 4-year

statute of limitations.  *Carter v. Pastrick*, 384 F.Supp.2d 1261 (N.D. Ind. 2005).  Counts III and IV purport to assert claims for substantive racketeering, and racketeering conspiracy[2], respectively, under Indiana state RICO statutes, which are subject to a 6-year statute of limitations.  *Walther v. Ind. Lawrence Bank*, 579 N.E.2d 643, 648 (Ind. Ct. App. 1991).  Counts V and VI purport to assert claims for relief under the Indiana Crime Victims Act and for fraud. The statute of limitations for claims of fraud is 6 years.  Ind. Code § 34-11-2-7.  Count VII purports to assert claims for money had and received, which are limited to 3 years after the cause of action accrues.  Ind. Code § 26-1-3.1-118(g); *Farmers Elevator Co. v. Hamilton*, 926 N.E.2d 68, 77 (Ind. Ct. App. 2010).  Finally, Count VIII purports to assert claims for unjust enrichment, which are limited to 6 years after the cause of action accrues.  Ind. Code § 34-11-2-7.

Statutes of limitation begin to run once a plaintiff knew or should have known that he was injured.  *Jay E. Hayden Found. v. First Neighbor Bank*, 610 F.3d 382, 386 (7th Cir. 2010). Under Indiana law, the limitations period runs when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained.  See *Custom Radio Corp. v. Actuaries & Benefit Consultants, Inc.*, 998 N.E.2d 263, 268 (Ind. Ct. App. 2013).   Class members do not need to be aware that they were injured by a pattern of activity comprising a RICO violation.  *Rotella v. Wood*, 528 U.S. 549, 554 (2000).  Nor do they even have to know that their injury supports a legal claim, just that the alleged harm itself has occurred.  *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 675 (7th Cir. 2009).

---

[2] The Gupta Defendants have already shown this Court that the Indiana RICO statute "does not contain a conspiracy section as is embodied in 18 U.S.C. § 1962(d)."  *Koger v. State*, 513 N.E.2d 1250, 1255 (Ind.Ct.App. 1987) ("Stated differently, in contrast to the federal statute, there is no such thing as an Indiana RICO conspiracy.") [Filing No. 142, p. 11].  This Court has likewise already ruled in the context of granting Banco Popular North America's Motion to Dismiss that Count IV of the Plaintiff's First Amended Class Action Complaint fails to state a claim upon which relief can be granted [Filing No. 197, p. 21, n.6].

Even a cursory examination of Exhibit B to the Plaintiff's First Amended Class Action Complaint [Filing No. 85-3] (which supposedly identifies the more than 3,550 redeemed properties in issue in this case) discloses the following:  All claims related to 1,434 of the redeemed properties listed in Exhibit B as purchased by Mr. Gupta or Wiper for which Title Search and Notify Costs were certified to the county auditors prior to December 4, 2006 (six years before the date of filing of the instant action) are barred by statutes of limitation for all theories of recovery (*i.e.*, all eight Counts) alleged in the Plaintiff's First Amended Class Action Complaint.  Claims related to another 862 redeemed properties listed in Exhibit B as purchased by Mr. Gupta or Wiper for which Title Search and Notify Costs were certified to the county auditors prior to December 4, 2008 (four years before the date of filing of the instant action) are barred by the statute of limitations under federal RICO theories of recovery (Counts 1 and II).  *Id.*   And claims related to another 152 of the redeemed properties listed in Exhibit B as purchased by Mr. Gupta or Wiper for which Title Search and Notify Costs were certified prior to December 4, 2009 (three years before the date of filing of the instant action) are barred by the statute of limitations for the money had and received theory of recovery (Count VII).  *Id.*   Thus, claims related to almost 2,450 of the 3,550 redeemed properties in issue in this case (almost 69%) are time-barred by one or more statute of limitations.

Even if the existence of five different periods of limitation associated with the eight different theories of recovery asserted by Crissen in his Plaintiff's First Amended Class Action Complaint does not in and of itself prevent Crissen from satisfying the commonality requirement of Rule 23, Crissen has himself injected additional individualized inquiries into this issue by his arguments in this case.  Specifically, when the Gupta Defendants raised their statutes of limitation defenses to the claims of proposed class members in their pre-answer motion in this

action [Filing No. 26], Crissen defended by arguing that statute of limitations defenses should not apply because of the discovery rule [Filing No. 29, pp. 3-4]. In its Order denying the Gupta Defendants' motion to dismiss [Filing No. 43, pp. 13-14], this Court aptly observed:

> The issue of whether some of the putative class members' claims are time-barred is properly decided either at the class certification stage or after, through a summary judgment motion. The Court notes that whether the claims are time-barred under the discovery rule – which Mr. Crissen contends applies – will likely be one issue on which the parties must focus when they address whether class treatment is appropriate in this case, and specifically whether individualized issues or common issue predominate.

Although the Plaintiff's First Amended Class Action Complaint alleges that "[p]laintiff and class members did not know and had no reason to know Defendants neither incurred nor paid the Notify Costs and Title Costs contained in the Certifications and Notices of Redemption" [Filing No. 85, ¶ 75], Crissen's Class Cert Brief provides no facts or evidence substantiating this bald allegation, and that allegation remains mere speculation and conjecture. Yet facts setting forth if and when the purported class members discovered their claims are critical to the Court's determination of who belongs in Crissen's proposed class. See *Carter v. Pastrick*, 384 F.Supp.2d 126, 127 (N.D. Ind. 2005). Crissen simply cannot speak to all purported class members' knowledge (actual or implied) without providing the Court with specific facts and evidence supporting his assertion.

Under the discovery rule, a cause of action accrues when a plaintiff is "possessed of sufficient information concerning its injury to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Vector–Springfield Props., Ltd. v. Central Ill. Light Co.*, 108 F.3d 806, 809 (7th Cir.1997). See also *McWane, Inc. v. Crow Chi. Indus., Inc.*, 224 F.3d 582, 585 (7th Cir.2000) ("The [limitations] period begins when the injury could have been discovered through the exercise of appropriate diligence, not discovery of the actual injury.").

"[A] plaintiff who seeks to rely on discovery principles to avoid the statute of limitations bar bears the burden of establishing the facts underlying her inability to discover the claim." *Mancuso v. Bridgestone/Firestone, Inc.*, 200 F.Supp.2d 983, 988 (S.D. Ind. 2002); see also *A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E.2d 955, 964 (Ind. Ct. App. 2000) (holding that the party who seeks the benefit of the discovery rule bears the burden of proving that the circumstances warrant its application).

The question of whether class members may invoke the discovery rule is a fact-intensive inquiry, requiring individual hearings to determine if or when each proposed class member did or could have discovered their alleged injury through the exercise of appropriate diligence.  Indeed, as Judge Barker of this Court noted in denying class certification in *Hurd v. Monsanto Co.*, 165 F.R.D. 234, 240 (S.D. Ind. 1995):

> As plaintiffs note, Indiana courts follow the so-called discovery rule, meaning that the limitations period begins to run from the date that the plaintiff knows of or should have discovered that she suffered an injury. See *Barnes v. A.H. Robins Co., Inc.*, 476 N.E.2d 84, 87–88 (Ind.1985).  Individual hearings would thus be necessary to discover when each class member first learned that she had been injured.

Here, Crissen ignores his burden of establishing any facts underlying the class members' alleged inability to discover their claims, and essentially wants this Court to simply **assume** that the discovery rule applies.  Yet the facts of this case simply do not warrant such a sweeping assumption.

Exhibit B to the Plaintiff's First Amended Class Action Complaint [Filing No. 85-3], which supposedly identifies the more than 3,550 redeemed properties in issue in this case, fails to disclose the identity of the person or entity who actually redeemed each property.  The third column of Exhibit B appears to list the name of the owner of the property, not the party who actually redeemed the property (See Gupta Affidavit, ¶ 7).  Mr. Gupta has obtained information

and data from SRI, Inc. ("SRI") to provide a sample of Crissen's purported class members.[3] Based upon that information provided to Mr. Gupta by SRI, he has calculated and set forth in Exhibit 1 to the Gupta Affidavit the numbers and percentages of properties that were redeemed by the properties' owners as compared to the numbers and percentages of properties that were redeemed by non-owners (Gupta Affidavit ¶ 8).  Exhibit 1 to the Gupta Affidavit, reproduced in Table 1 below, shows that **the majority of properties were redeemed by non-owners** of the respective properties.

**TABLE 1**

| Year | Total Redeemed | Redeemed by Owner | **Redeemed by Non-Owner** |
|------|----------------|-------------------|---------------------------|
| 2006 | 80 (100%)      | 24 (30%)          | 56 (70%)                  |
| 2007 | 114 (100%)     | 39 (34%)          | 75 (66%)                  |
| 2008 | 60 (100%)      | 27 (45%)          | 33 (55%)                  |
| 2009 | 24 (100%)      | 15 (63%)          | 9 (38%)                   |
| 2010 | 415 (100%)     | 208 (50%)         | 207 (50%)                 |
| 2011 | 273 (100%)     | 131 (48%)         | 142 (52%)                 |

---

[3] Crissen acknowledges in his Class Cert Brief that the majority of the information contained in Exhibit B to the Plaintiff's First Amended Class Action Complaint was received from SRI.  [Filing No. 91, p. 3, n.2].  The information obtained from SRI by Mr. Gupta was provided to him in response to his request for "a copy of all information SRI provided to counsel for the Plaintiff Joshua Crissen."  (Gupta Affidavit, ¶ 6).

| 2012 | 18 (100%) | 5 (28%) | 13 (72%) |

Based upon the information provided to Mr. Gupta by SRI, he has also calculated and set forth in Exhibit 2 to the Gupta Affidavit the numbers and percentages of properties that were redeemed by non-owners as compared to the numbers and percentages of properties that were redeemed by non-owners that are professional organizations.  Exhibit 2 to the Gupta Affidavit, reproduced in Table 2 below, shows that **the majority of the properties redeemed by non-owners were redeemed by non-owners that are professional organizations**.

**TABLE 2**

| Year | Redeemed by Non-Owner | Non-Owners that are Professional Organizations |
|---|---|---|
| 2006 | 56 (100%) | 36 (64%) |
| 2007 | 75 (100%) | 58 (77%) |
| 2008 | 33 (100%) | 24 (72%) |
| 2009 | 9 (100%) | 8 (88%) |
| 2010 | 207 (100%) | 124 (60%) |
| 2011 | 142 (100%) | 88 (62%) |
| 2012 | 13 (100%) | 8 (62%) |

Professional organizations are a completely different class of members from individual homeowners.  Whereas individuals are typically redeeming properties to maintain ownership of their home, professional organizations such as banks are typically redeeming property to protect their security interest in a property as a mortgagee or other lienholder.  These organizations routinely redeem properties all over the United States and have support staff with superior knowledge of the tax sale process and costs incurred to redeem their respective collateral.  Many of these organizations have repeatedly redeemed properties in Indiana from Mr. Gupta for years, including, but not limited to, Citi Financial, Bank of America, First Bank & Trust, PNC Bank, MainSource Bank, First Savings Bank, Wells Fargo Bank, N.A., Chase Bank, Green Tree Servicing and Fifth-Third Bank.  (Gupta Affidavit, ¶ 10).  They are all sophisticated financial institutions with in-house legal departments, and all have virtual armies of outside counsel on retainer.  They have deep institutional knowledge of the tax sale process in Indiana and many other states, and vast resources at their disposal.  Notably, they have never complained once about paying the Title and Notify Costs certified by Mr. Gupta in connection the redemption of a property from a tax sale in Indiana.  (Gupta Affidavit, ¶ 11).

The class definition proposed by Crissen would include these sophisticated financial institutions as a substantial number of the members of the proposed class.  This is highly relevant to Crissen's claim that these proposed "class members did not know and had no reason to know Defendants neither incurred nor paid the Notify Costs and Title Costs contained in the Certifications and Notices of Redemption" [Filing No. 85, ¶ 75], and should be allowed to invoke the discovery rule to assert claims otherwise barred by statutes of limitation.  If the discovery rule is invoked on behalf of these sophisticated financial institutions as class members, then this Court must require that they bear the burden of establishing through evidence the facts

underlying their inability to discover their alleged claims.  And, as observed by Judge Barker in *Hurd*, 165 F.R.D. at 240, class certification is improper when the discovery rule is invoked on behalf of members of a proposed class because "[i]ndividual hearings would thus be necessary to discover when each class member first learned that she had been injured."

Crissen's invocation of the discovery rule on behalf of proposed class members also renders his proposed definition of the class insufficient, because it requires inquiry into the state of mind of each of the class members.  A class description is insufficient "if membership is contingent on the prospective member's state of mind."  *Perdue v. Individual Mem. of Ind. State Bd.*, 266 F.R.D. 215, 218 (S.D. Ind. 2010).  Classes whose membership is "contingent on the state of mind of the prospective class members," are not definite enough to survive the class certification stage of litigation.  *Alliance to End Repression v. Rochford*, 565 F.2d 975, 987 (7th Cir.1977).  See also *Boatman v. Murphy*, 2010 WL 2178821,*2 (S.D. Ind. May 27, 2010).

All members of the purported class whose redemption of property included payment of Title Search and Notify Costs certified by Mr. Gupta were put on public notice of the Defendants' actions that allegedly caused the members' injuries.  Despite Crissen's bald allegation invoking the discovery rule, that "[p]laintiff and class members did not know and had no reason to know Defendants neither incurred nor paid the Notify Costs and Title Costs contained in the Certifications and Notices of Redemption" [Filing No. 85, ¶ 75], the following contrary evidence shows that he discovered the Defendants' alleged conduct:

1)    Crissen received notice from Mr. Gupta that Mr. Gupta purchased his property (Deposition of Joshua Crissen taken on August 2, 2013 (hereinafter, the "Crissen Depo") excerpts of which are attached hereto as **Exhibit 1**, 76:17 – 76:25; 77:1 – 77:22);

2)    Crissen contacted Mr. Gupta about redeeming the property (Crissen Depo., 86:20 – 88:21);

3)      Crissen was not happy with the costs to redeem and "thought it was crooked" (Crissen Depo, 79:8 – 79:20);

4)      Crissen complained to the auditor about the costs to redeem his property and complained that the redemption cost was too high (Crissen Depo, 77:23-77:25; 83:5 – 83:12);

5)      Crissen objected to the amount when he went to pay the auditor the redemption amount (Crissen Depo, 96:2 – 96:4); and,

6)      With Barrett Rochman's help, Crissen retained the Sandberg Firm and filed a class action against the Defendants (Crissen Depo, 98:9 – 102:12; 134:8 – 134:12; Deposition of Barrett Rochman taken on January 10, 2014 (hereinafter, the "Rochman Depo") excerpts of which are attached hereto as **Exhibit 2**, 55:16 – 56:1).

Crissen's own discovery of the Defendants' alleged conduct contradicts his bald allegations invoking the discovery rule, and shows that other class members discovered or, in the exercise of ordinary diligence, could have discovered the Defendants' alleged conduct.  See *Jay E. Hayden Found.*, 610 F.3d at 386; *Custom Radio Corp.*, 998 N.E.2d at 268.  Ind. Code § 6-1.1-25-4.5 requires that the notice sent thereunder must include "[t]he components of the amount required to redeem the tract         or real property."  Each and every notice sent under Ind. Code § 6-1.1-25-4.5(c)(7) by Mr. Gupta or Wiper included the following sentence: "The attorney's fees and costs of giving notice are $_____. The costs of a title search are $_____."  The blanks in the notices were filled in with the actual amount of the costs that were incurred and paid.  If notice and public records were sufficient in 2012 for Crissen or his attorneys to investigate and discover the Defendants' alleged conduct, those same notices and public records have existed since 2002 and were available to any other redeeming party who wanted to investigate the Defendants.  Common sense dictates that other redeeming parties could have done the same.

A majority of the purported members' claims are also barred by the doctrine of laches for many of the same reasons stated above.  "Equity aids the vigilant, not those who slumber on their

rights." *Koons v. Blanton*, 27 N.E. 334, 336 (Ind. 1891). The proposed class members included in Crissen's definition of the class were in the same position as Crissen when they redeemed properties. They discovered or, in the exercise of ordinary diligence, could have discovered their alleged injuries at or before the time that they redeemed. There has been inexcusable delay by a majority of the purported class members in asserting their alleged claims. See *In re Siegel*, 708 N.E.2d 869, 871 (Ind. 1999).

The Gupta Defendants also maintain that the class members failed to investigate and assert their claims within a reasonable time -- a reasonable time being when notice of their right to redeem was provided or when the class members actually redeemed their properties. The class members had all information necessary, including notices from the auditor and notices from the Gupta Defendants, and access to all pertinent data from public records, to investigate and make any claim regarding the Title Search Costs and Notify Costs certified by Mr. Gupta. No one, except Crissen, asserted a claim. The class waived their alleged claims against the Gupta Defendants as a result of their failure to investigate and assert their alleged claims. *Geary v. Scharbrough*, 2007 WL 2901695 (S.D. Ind. Aug. 22, 2007) (citing to *City of Crown Point v. Misty Woods Props.*, *LLC*, 864 N.E.2d 1069, 1079 (Ind. Ct. App. 2007) (citations omitted)).

**V.   The Proposed Class Does Not Satisfy the Typicality Requirement of Fed. R. Civ. P. 23(a)(3)**

To satisfy the typicality requirement of Rule 23, the claims of the representative plaintiff must be typical of the claims of the class. *Warren v. Town of Speedway*, 2013 WL 6729655, *4 (S.D. Ind. Dec. 19, 2013); *Oshana*, 472 F.3d at 514 (typicality requirement "meant to ensure that the named representative's claims 'have the same essential characteristics as the claims of the class at large' ") (citing *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 597 (7th Cir.1993)). In other words, "there must be enough congruence between the named representative's claim and

that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011).

As already noted, Crissen claims that "the main contention [in this case] is Defendants neither incurred nor paid any Notify Costs or Title Costs," citing to rhetorical paragraphs 2, 45, 50, 65 and 90 of his Plaintiff's Amended Class Action Complaint [Filing No. 91, p. 7], and his entire lawsuit is premised upon that contention.   Yet in the same breath, he alleges that "[p]laintiff and class members did not know and had no reason to know Defendants neither incurred nor paid the Notify Costs and Title Costs contained in the Certifications and Notices of Redemption" [Filing No. 85, ¶ 75].   The <u>evidence</u> shows, however, that Crissen in fact discovered his injury, and filed this lawsuit within the statutes of limitation applicable to each theory of recovery asserted in his Plaintiff's First Amended Class Action Complaint.   Crissen admits to having received notice from Mr. Gupta. (Crissen Depo, 76:17 – 76:25; 77:1 – 77:22). Crissen contacted Mr. Gupta about redeeming the property.   (Crissen Depo, 86:20 – 88:21). Crissen was not happy with the costs to redeem and "thought it was crooked." (Crissen Depo, 79:8 – 79:20).   Crissen complained to the auditor about the costs to redeem his property and complained that the redemption cost was too high.   (Crissen Depo, 77:23-77:25; 83:5 – 83:12). Crissen objected to the amount when he went to pay the auditor the redemption amount. (Crissen Depo, 96:2 – 96:4).  With Barrett Rochman's help, Crissen retained the Sandberg Firm and filed a class action lawsuit against the Defendants (Crissen Depo, 98:9 – 102:12; 134:8 – 134:12; Rochman Depo, 55:16 – 56:1).

This testimony of Crissen shows that his discovery of his alleged injury is not typical of the circumstance he alleges to exist for all of the purported class members, who he alleges did not or could not have discovered their injuries.   This material uniqueness makes Crissen atypical

of class members.  He is not subject to the same defenses as the majority of other class members.

In sum, Crissen is not a common member of the purported class and has no business representing

them.  Unlike Crissen, a typical class member would (according to Crissen) be one who "did not

know and had no reason to know Defendants neither incurred nor paid the Notify Costs and Title

costs contained in the Certifications and Notices of Redemption."

## VI.  The Proposed Class Does Not Satisfy the Numerosity Requirement of Fed. R. Civ. P. 23(a)(1)

As already discussed in Section II, *supra*, the proposed class as defined by Crissen is not

sufficiently definite or ascertainable.  This Court has recently held that, "[i]f class membership is

unascertainable, there is no basis for the Court to conclude that the putative class is '[so large]

that joinder of all members is impracticable'."  *Steimel v. Minott*, 2014 WL 1213390, *17 (S.D.

Ind. March 24, 2014) (citing to *Kress v. CCA of Tenn., LLC*, 693 F.3d 890, 892 (7th Cir. 2012).

The size of the proposed class is really unknown at this time, even to Crissen.  Exhibit B

to the Plaintiff's First Amended Class Action Complaint [Filing No. 85-3] supposedly identifies

the more than 3,550 redeemed properties in issue in this case.  However, as already noted in

Section III, *supra*, at least 167 properties listed in Exhibit B were redeemed by parties for

amounts that did not include Title Search or Notification Costs (Affidavit of Vinod C. Gupta

attached hereto (hereinafter, the "Gupta Affidavit"), ¶ 7).  Thus, the redeemers of these

properties cannot be included in Crissen's proposed class.  Likewise, as further already noted in

Section III, *supra*, claims related to up to another over 2,448 of the redeemed properties listed in

Exhibit B are time-barred by one or more statute of limitations.  Finally, as shown by the Gupta

Affidavit (Gupta Affidavit, ¶ 7) and as also shown by highlighting in **Exhibit 3** hereto, at least

498 properties listed in Exhibit B are listed in Exhibit B more than once, meaning that the

alleged claims relating to at least those 498 properties in Exhibit B have been double-counted by

Crissen.  There may be more mistakes in Exhibit B.  What is known is that the number of alleged class members is far less than what Crissen has represented it to be, and that the number (and the corresponding amount of claimed damages) may well fall below the threshold for this Court's diversity jurisdiction under the federal Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  If this case is certified as a class action, it could very well end up like the *Groome* case, also handled by the Sandberg Firm, where the District Court Judge publicly expressed her regret at the fairness hearing for certifying the case as a class action when she learned that, "what I've got here, I've got three cases, really, that, you know, would have probably been given about five minutes in a small claims court."  [Filing No. 142-1, 7:6-8].

### VII.  The Requirement of Fed. R. Civ. P. 23(b)(3), That Questions of Law or Fact Common to the Class Do Not Predominate over Any Questions Affecting Only Individual Members, and That a Class Action is Superior to Other Available Methods for Fairly and Efficiently Adjudicating the Controversy, Is Not Satisfied

When conducting a Rule 26(b)(3) analysis, the Court must compare the role of common issues of law and fact with the role of individualized issues, including whether the Court must examine individual transactions in adjudicating the claim.  *Messner*, 669 F.3d at 811; *Lady Di's Inc. v. Enhanced Servs. Billing, Inc.*, 654 F.3d 728, 738 (7th Cir. 2011).  While similar to the Rule 23(a)(2) commonality requirement, the predominance requirement is "far more demanding."  *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408 (N.D. Ill. 2012) (citing to *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  **Predominance fails where "affirmative defenses will require a person-to-person evaluation of conduct to determine whether a [defense] precludes individual recovery."**  *Id*. (citing *Clark v. Experian Info., Inc.*, 233 F.R.D. 508, 512 (N.D. Ill. 2005), *aff'd*, 256 Fed.Appx. 818 (7th Cir. 2007).

The Gupta Defendants' affirmative defenses including laches and statute of limitations, and particularly the Plaintiff's assertion of the discovery rule to avoid the application of statutes of limitation defenses, require a person-by-person evaluation of conduct to determine whether those defenses preclude each member's recovery in the present action. The Gupta Defendants anticipate Crissen will argue that the Court in *Bowen v. Groome*, 2012 WL 2064702, at *5 (S.D. Ill. June 7, 2012), held that Bowen satisfied 26(b)(3) predominance and superiority analysis based upon NEWBERG ON CLASS ACTIONS, which states: "Challenges based on the statute of limitations, fraudulent concealment, releases, causation, or reliance have usually been rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability." Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 4.26 (3d ed.1992).

The *Bowen* opinion failed to reference any contrary authority on the issue. In accordance with *Boundas* and *Clark*, cited above, **"Courts have long recognized that the evaluation of whether common questions predominate should consider whether resolution of a defendant's affirmative defenses, including statutes of limitation, may turn on the facts specific to each class member."** MCLAUGHLIN ON CLASS ACTIONS, § 5:43. (Citing in part to *In re Prempro*, 230 F.R.D. 555, 567 (E.D. Ark. 2005) (**"Assumption of the risk, contributory negligence, comparative negligence, and statutes of limitations all require individual determinations."**); *Corley v. Entergy Corp.*, 220 F.R.D. 478, 487 (E.D. Tex. 2004), *subsequent determination*, 222 F.R.D. 316 (E.D. Tex. 2004), *aff'd*, 152 Fed.Appx. 350 (5th Cir. 2005), and *aff'd*, 152 Fed.Appx. 350 (5th Cir. 2005) (**"By its nature, a statute of limitations defense is fact-intensive and individualized . . . The presence of this affirmative defense and its varying applicability may defeat predominance and thus preclude class certification."**);

24

*Emig v. American Tobacco Co.* 184 F.R.D. 379, 391 (D. Kan. 1998) (**statute of limitations defense creates individual issues that prevent the common issues from predominating because the court will be required to determine when every class member's addiction became "reasonably ascertainable"**); *O'Conner v. Boeing N. American, Inc.*, 197 F.R.D. 404, 414 (C.D. Cal. 2000) (**"Based on the individualized, fact-intensive nature of the necessary inquiry in this case, the statute of limitations issues preclude a finding that common issues predominate over individual issues."**)).

As shown in Section III, *supra*, the Gupta Defendants have raised individualized affirmative defenses to the claims of a majority of the proposed class members that would bar their respective claims. The Court will have to conduct individualized inquiries into each class member's claims, particularly in light of Crissen's invocation of the discovery rule to avoid those affirmative defenses. The Court will have to conduct a person-to-person evaluation to determine if the purported members have valid claims, which precludes class certification.

### VIII.   Mr. Crissen is Not an Adequate Representative under Fed. R. Civ. P. 23(a)(4)

Fed. R. Civ. P. 23(a)(4) requires that a representative party will "fairly and adequately protect the interests of the class." To be adequate, the representative must have a sufficient stake in the outcome of the case to ensure zealous advocacy and must not have antagonistic or conflicting claims with other class members." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *Donovan v. St. Joseph County Sheriff*, 2012 WL 1601314, *4 (N.D. Ind. May 3, 2012). In addition, the representative must demonstrate that he will fulfill a fiduciary duty to the class. Because the class representative will serve as a fiduciary, it is appropriate for the Court to consider the representative's motivation, integrity, and credibility.

> The motivation and credibility of an individual seeking to represent absent class members is a crucial consideration when considering that individual's adequacy as a class representative. Integrity and credibility are appropriate characteristics

to examine when determining if an individual would make an adequate representative because a lead plaintiff will act as a fiduciary for his absent cohorts.

*Howard v. Ray's LLC*, 2011 WL 4625735 , *5 (S.D. Ind.  Sept. 30, 2011).  If there is a reason to doubt the ability of the representative to discharge this duty, class certification must be denied. *Wagner v. Lehman Bros. Kuhn Loeb, Inc.*, 646 F.Supp. 643, 661 (N.D. Ill. 1986).

The Court expressly found that Mr. Crissen and his counsel have been "disingenuous in Court filings concerning Mr. Crissen's wife's involvement in the redemption of the property at issue." [Filing No. 231, p. 14].[4]  The Court concluded that the statement contained in Crissen's opposition to the Gupta Defendants' Motion to Dismiss, that he alone redeemed the property, was a "misrepresentation" and that the "context of the misrepresentation is significant." [Filing No. 231, p. 15].  The Court further observed:

> While the Court understands that Mr. Crissen did not personally engage in the conduct at issue here, he also did not attempt to correct, or distance himself from, his counsel's misrepresentation regarding the redemption of the property. Further, he is accountable for his counsel's conduct – including all of the conduct at issue in the Sanctions Motion and in this litigation as a whole.

*Id*.  Importantly, serious misrepresentations weigh heavily in favor of finding a representative is not adequate.  See *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150 (S.D.N.Y. 2010) (court noted inconsistent or false testimony may create a detriment to the class if the representative is cross-examined at trial about inconsistent or false testimony).

Mr. Crissen did not seek out the Sandberg Firm in the traditional sense of a party who discovers a wrong and then seeks help from an attorney.  To the contrary, Crissen only sought

---

[4] Although Crissen denied his wife's role as a redeeming property owner in papers he filed in opposition to the Gupta Defendants' Fed. R. Civ. P. 19 Motion to Dismiss [Filing No. 29, pp. 5-6], Crissen subsequently admitted in his deposition that his wife Linda was present at the time the property was redeemed.  (Crissen Depo, 95:10-95:18).  Despite a strong reluctance to do so, Crissen confirmed this in response to the Court examination at the February 23, 2014 hearing.

out the Sandberg Firm after he was solicited by Barrett Rochman.  (Crissen Depo, 98:9-98:21; 134:8-134:12).  Crissen and his wife pursued litigation against the Gupta Defendants at a time when they were in desperate financial straits and needed money to save the family farm. (Crissen Depo, 122:9-122:13; Rochman Depo, 48:23-50:9).  Mr. Crissen admits he defers to the Sandberg Firm regarding all decisions and actions in this litigation, and trusts the firm to handle this case to a successful conclusion.  (Crissen Depo, 123:14; 123:23-124:5; 131:5-131:10).

In addition to Mr. Crissen's conduct and false filing, which may go to his credibility in the event this case goes to trial, there is a question about Crissen's claim in relation to class claims.  Mr. Crissen admits receiving a redemption notice from Mr. Gupta, even though he states that other class members did not receive notice.  Crissen admits to having questioned the redemption costs prior to paying them, so much so that he telephoned Mr. Gupta directly and then later complained to personnel at the county auditor's office.  *Id*. at 83:5-83:12; 86:20-88:1. Accordingly, there may be special defenses applicable to Mr. Crissen's claims that other class members are not subject to and, conversely, defenses to certain class members' claims that Crissen is not subject to.  Finally, because Crissen was solicited by Barrett Rochman, he is differently situated from other class members who are not tainted by the Rochman/Sandberg Firm/Jesse Rochman issue.   Unlike other class members, Crissen is material to the Rochman/Sandberg Firm story.  For each of the foregoing reasons, Crissen is not an adequate class representative under Fed. R. Civ. P. 23(a)(4), and class certification should be denied.

## IX.  <u>Proposed Class Counsel Does Not Satisfy the Requirements for Adequacy of Class Counsel</u>

Fed. R. Civ. P. 23(g) requires the Court to find that Crissen's attorneys are adequate to serve as class counsel.  Crissen bears the burden of proving adequacy of class counsel.  *Savanna Group, Inc. v. Trynex, Inc.*, 2013 WL 66181, *13 (N.D. Ill. Jan. 4, 2013).   Fed. R. Civ. P.

23(g)(4) provides that counsel must "fairly and adequately represent the interests of the class." In discharging these responsibilities, class counsel serves as a fiduciary for the absent class members. *Id*. at *12. A fiduciary relationship requires class counsel to serve the best interests of the class and avoid conduct which adversely impacts those best interests.

In deciding adequacy of counsel, Fed. R. Civ. P. 23(g)(1)(A) requires the Court to examine the qualifications and experience of counsel to conduct class action litigation, including counsel's work in identifying claims in the case, experience, knowledge of the law, and resources. But there is more. Fed. R. Civ. P. 23(g)(1)(B) further empowers the court to "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Donovan*, 2012 WL 1601314, at *8. This broader authority allows the Court to consider other important matters affecting adequacy of counsel such as conflicts of interest, counsel's integrity, character and ethics, and the effectiveness and quality of counsel's work in the case predating the class certification decision. In fact, anything "pertinent to counsel's ability to fairly and adequately represent the interests of the class" bears on the class certification decision. *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 499 (7th Cir. 2013).

The Court should conduct a "rigorous analysis" of the requirements under Fed. R. Civ. P. 23(g). *Creative Montessori Learning Centers v. Ashford Gear, LLC*, 662 F.3d 913, 916 (7th Cir. 2011) ("*Ashford Gear II*"). Where there is reason to doubt counsel's ability to meet the requirements of Fed. R. Civ. P. 23(g), class certification should be denied. *Culver v. City of Milwaukee*, 277 F.3d 908, 913 (7th Cir. 2002) ("If, therefore, the lawyer, through breach of his fiduciary obligations to the class, or otherwise, demonstrates that he is not an adequate representative of the interests of the class as a whole, realism requires that certification be

denied."); *Wagner*, 646 F.Supp. at 661 ("The same fiduciary obligations apply as well to counsel seeking to represent the class.  Where there is reason to doubt counsel's ability to meet those duties, class certification must be denied.").

The Sandberg Firm and Crissen's counsel of record - John S. Sandberg, Bhavik R. Patel, and Jesse B. Rochman - do not satisfy the Seventh Circuit's "adequacy of counsel" standard. The Sandberg Firm and Jesse Rochman have committed several acts of misconduct which militate against finding that they can serve as adequate class counsel.  Jesse has been sanctioned by this Court, and although the Court did not sanction the Sandberg Firm, the Court has criticized the firm for a pattern of conduct that adversely reflects on the firm's adequacy. Further, the Sandberg Firm and each attorney of record currently represent, or have represented in the recent past, Barrett Rochman ("Barrett"), one of Mr. Gupta's primary competitors in the tax sale business.  The Sandberg Firm's dual representation of Crissen and Barrett likely creates or will create conflicts or the potential for conflicts of interest, including how the firm will discharge ethical duties owed to both clients.  Questions were raised about the Sandberg Firm and Jesse's conduct in the *Groome* action, questions which remain unanswered. Next, there is a special relationship between Jesse Rochman and his father Barrett which creates real doubt about his ability to discharge a fiduciary duty to Mr. Crissen/class members, especially if Barrett's interests are involved.  From the Gupta Defendants' perspective, Jesse's relationship with Barrett is exacerbated by the fact that Jesse has owned an interest in a company which bid on properties at Illinois tax auctions during the same period that Mr. Gupta was bidding on properties.  Finally, the Sandberg Firm has failed to offer any sufficient direct evidence proving their experience, knowledge, or resources under Fed. R. Civ. P. 23(g)(1)(A), even though it is Crissen's burden to do so.

29

A.        **Attorney Misconduct and Actions in the Gupta Case**

In deciding whether a law firm or attorney is adequate to serve as class counsel under Fed. R. Civ. P. 23(g), the Court may examine and consider attorney misconduct, the manner in which the case is being litigated, and factors relating to an attorney's character. These factors are important because class counsel serves as a fiduciary, and the Court and class must be able to trust its attorneys to represent the best interests of the class. Judge Posner spoke to one aspect of this issue in *Ashley Gear II:*

> When class counsel have demonstrated a lack of integrity, a court can have no confidence that they will act as conscientious fiduciaries of the class.… Misconduct by class counsel that creates a serious doubt that counsel will represent the class loyally requires denial of class certification…. The rationale for holding class counsel to a higher standard than merely avoiding "egregious misconduct" is to deter unethical behavior.

662 F.3d at 918 (case citations omitted); accord, *Savanna Group, Inc.*, 2013 WL 66181, at *13; 7A Charles Alan Wright *et al*., Federal Practice and Procedure, § 1769.1, pp. 468-69 (3d ed. 2005) ("[A]ny conduct that suggests that class counsel may have been engaging in unethical behavior is relevant in determining the adequacy of the representation.").

*Ashford Gear II* rejected the notion that only "egregious misconduct" will disqualify proposed class counsel, stating attorney misconduct will suffice to defeat class certification where the Court finds a "serious doubt that counsel will represent the class loyally." *Id.* Importantly, it is not necessary that the Court find the attorney misconduct actually harmed the class, especially where the conduct harms the integrity and proper administration of the judicial proceeding. *Reliable Money Order, Inc.*, 704 F.3d at 499 ("We thus reject the suggestion of plaintiff's counsel that only misconduct directly harming the class is relevant to the class certification decision.").

30

The Gupta Defendants believe the following misconduct and actions of the Sandberg Firm and its attorneys demonstrate that they are not adequate to serve as class counsel under Fed. R. Civ. P. 23(g).

**(i)** The parties entered into a mutually agreed Protective Order, which the Magistrate Judge approved on June 19, 2013 [Filing No. 47].  On November 7, 2013, the Magistrate Judge modified Paragraph 8(b) of the original Protective Order barring Jesse Rochman from accessing confidential protected materials produced in discovery.  The Sandberg Firm did not appeal any of the Magistrate Judge's orders on this issue.

On December 18, 2013, Jesse sent an email revealing that he had reviewed documents which Banco Popular North America ("BPNA") had marked "Confidential- Subject to Protective Order" and inadvertently produced to the Sandberg Firm.  [Filing No. 196-3].  The Gupta Defendants were forced to file a motion for sanctions.  At the hearing on February 28, 2014, Jesse admitted, in response to questions from the Court, that he did review some documents knowing they had been marked "Confidential."  That in-court testimony, however, created a discrepancy with other statements by Jesse regarding the scope of Jesse's document review.   In a subsequent report to the Court, Jesse made additional representations about his document review.  [Filing No. 225].

The Court granted the Gupta Defendants' motion for sanctions by Order on April 14, 2014.  [Filing No. 231].  In reaching its decision, the Court conducted an *in camera* review of the BPNA disk and concluded that Jesse indeed had violated Magistrate Judge Hussmann's November 7, 2013 Order by reading documents marked confidential, including some of Mr. Gupta's financial records.  *Id*. at p. 6.  The Court stated that the violation was "plain and simple" and "flatly reject[ed] Mr. Crissen's arguments to the contrary." *Id*. at p. 9.  The Court observed

that Jesse did not demonstrate a proper recognition of the limitations imposed by the Magistrate Judge's Order.

> When Mr. Rochman came across these documents … bells should have gone off that should have stopped him in his tracks.  Instead, he ignored the bells, or, equally as disturbing, the bells never went off – and he stayed the course.

*Id*. at p. 11.

The Court further rejected Crissen's attempt to deflect blame for Jesse's misconduct to BPNA.  *Id*. at p. 10.  A troublesome aspect of this event, and a fact weighing heavily against finding the Sandberg Firm and Jesse are adequate counsel, was their failure to contact the District Court Judge or Magistrate Judge and seek clarification of the Magistrate Judge's Order, and their failure to notify Defendants' counsel that Jesse intended to review those documents, before doing so, in order to give the Defendants an opportunity to object.  Unfortunately, the Defendants learned of Jesse's actions only after he had acted. The Court's Order addressed this failure:

> The Court takes Mr. Rochman's violation of the Amended Protective Order very seriously.  Even if his tortured reading of the amendment to the Protective Order was somehow a reasonable interpretation – which it was not – he should have proceeded with caution and asked the Court for guidance regarding whether he could review the documents on the disk.  Instead, he reviewed the documents clearly marked "Confidential" – including financial information of Mr. Gupta's – and stopped only when his email message discussing his review by chance made its way to counsel for Mr. Gupta and counsel confronted him.

*Id*. at p. 12.

The Court found Jesse's March 10, 2014 Report to the Court contained a **false** statement, *Id*. at p. 12, n.3, and that "Mr. Rochman has not been completely forthright with the Court." *Id*. at p. 13.  Based on the nature of Jesse's violation and disregard for the Magistrate Judge's Order, the Court sanctioned Jesse with a monetary fine, required that he pay the Gupta Defendants'

attorney fees, and ordered Jesse to report the matter to the disciplinary authorities of all state bars where he is admitted to practice law. *Id.*

Finally, the Court acknowledged improper conduct by the Sandberg Firm. In a section of the Court's Order entitled "Pattern of Contumacious and Dishonest Conduct," the Court concluded (1) Mr. Crissen's counsel (collectively) violated the amended Protective Order as it relates to BPNA's inadvertent document production; (2) Crissen's counsel had been disingenuous in Court filings concerning Mr. Crissen's wife's involvement in the redemption of the property; (3) Crissen's counsel (specifically John Sandberg), at the February 28, 2014 hearing, had "refused to admit that the [redemption] papers reflected that both Mr. and Mrs. Crissen redeemed the property;" and Crissen's counsel made a "significant" misrepresentation to the Court in opposition to the Gupta Defendants' Motion to Dismiss on this issue of whether Mrs. Crissen is an indispensable party. *Id.* at pp. 14-15. The Court described the conduct of Crissen and his attorneys as an improper "pattern of conduct," and instructed Crissen and his counsel to act with "complete honesty" going forward. *Id.* at pp. 15-16.

**(ii)** After BPNA inadvertently produced confidential documents to the Sandberg Firm, it requested that the Sandberg Firm return those documents pursuant to a clawback provision contained in paragraph 19 of the Protective Order. [Filing Nos. 193-2; 193-3]. Initially, John Sandberg refused to return the disk, but stated if the Bank would identify the inadvertently produced documents, he would delete those documents from the Sandberg Firm server. [Filing No. 193-3]. On January 9, 2014, BPNA provided a list of documents that it was recalling pursuant to paragraph 19 of the Protective Order. [Filing No. 193-5]. The same day, Mr. Sandberg recanted his promise to remove the documents from his server, or to otherwise return the documents to BPNA, and stated his intention to read every inadvertently produced document

to determine if the documents were the proper subject to recall. [Filing No. 193-6].   The Sandberg Firm did not contact the Magistrate Judge or District Court Judge for instructions, or file a motion for protective order to bar a return of the inadvertently produced documents. Rather, the Sandberg Firm simply elected to ignore BPNA's demands, John Sandberg's promises to delete the documents from the firm's server, and the clawback provision in paragraph 19 of the Protective Order.   These actions required BPNA to file a Motion to Enforce the Protective Order [Filing No. 191].

On April 14, 2014, the District Court granted BPNA's motion [Filing No. 230].   The Court concluded that Crissen's attorneys had violated the Protective Order by refusing to return or destroy the recalled documents.  *Id*.  The Court criticized the Sandberg Firm's failure to seek direction from the Court prior to acting, and for making "their own rules to justify the outcome they desire.  *Id*. at p. 10.  The Court stated:   "[The Court's Order] is based on the fact counsel not only ignored that language but then took the extra step of reviewing the documents Banco Popular sought to recall."  *Id*. at p. 11.

**(iii)**  On September 19, 2013, John Sandberg filed a Request for Investigation ("ROI") with the Indiana Supreme Court Disciplinary Commission against Defendant Vivek Gupta.  (See Affidavit of Kevin P. McGoff (the "McGoff Affidavit"), ¶ 4).  The ROI attached only Crissen's First Amended Class Action Complaint.  (McGoff Affidavit,  ¶ 5). Mr. Sandberg failed to direct the Commission to any particular allegations in the Amended Complaint, or provide evidence supporting the ROI.  *Id*.  Mr. Sandberg did not advise the Commission that no judgment has been entered against Vivek  or Vinod Gupta or that the Sandberg Firm has never deposed Vinod or Vivek Gupta about their defense in this case.  *Id*. at ¶ 6).  Because of this disciplinary complaint, Vivek has been forced to hire Kevin McGoff, another Indianapolis attorney, and expend

additional time and financial resources to fight allegations from Mr. Sandberg.  According to Mr. McGoff, the Commission has made no adverse findings or recommendations against Vivek.  *Id.* at ¶ 8.

(iv) The Court has expressly found Mr. Crissen and his counsel have been "disingenuous in Court filings concerning Mr. Crissen's wife's involvement in the redemption of the property at issue."  [Filing No. 231, p. 14; Filing No. 222, pp. 4-8; Filing No. 29, p. 6].  The Court found Mr. Crissen made a "misrepresentation" in his opposition to the Gupta Defendants' Motion to Dismiss and that the "context of the misrepresentation is significant." [Filing No. 231, p. 15]. Crissen's attorneys did not correct the record after Mr. Crissen testified about this matter at his deposition.  Crissen's attorneys are responsible for preparing and filing, and then not correcting, this material misrepresentation that resulted in the Court denying the part of the Gupta Defendants' motion based upon Fed. R. Civ. P. 19.

(v)     Despite the unsupported assertion in the Class Cert Brief that "Plaintiff's attorneys . . . have great knowledge on the law behind these claims as demonstrated by the pleadings . . . in this matter," [Filing No. 91, p. 13], there is a serious question about Crissen's counsels' ability and willingness to accurately represent the law and facts applicable to this case. In rhetorical paragraph 26 of the Plaintiff's First Amended Class Action Complaint, Crissen alleges the components of what comprise the "Redemption Amount" under Ind. Code § 6-1.1-25-2.  [Filing No. 85, ¶ 26].  However, paragraph 26 critically misstates what the amounts necessary for Mr. Crissen and the class to redeem a property from tax sale.  Section (a) of Ind. Code § 6-1.1-25-2 expressly and clearly that requires that the amounts necessary for redemption recited in paragraph 26 be further "reduced by any amounts held in the name of the taxpayer or the purchaser in the tax sale surplus fund."    In other words, Crissen's attorneys'

misunderstanding of, unfamiliarity with, or misrepresentation of Ind. Code § 6-1.1-25-2 exaggerated the amounts necessary to redeem a property under Indiana law as alleged in rhetorical paragraph 26.  Likewise, that same rhetorical paragraph 26 alleges that the amount necessary for redemption is "110% of the amount of the purchase price exceeding the Minimum Price."   Again, Crissen's attorneys' misunderstanding of, unfamiliarity with, or misrepresentation of Indiana law is manifest.  Ind. Code § 6-1.1-25-2(c) expressly and clearly requires payment of only "ten percent (10%) per annum on the amount by which the purchase price exceeds the minimum bid on the property" to redeem the property, not a full 10% of the surplus as alleged in paragraph 26.  Another example is Count IV of the Plaintiff's First Amended Class Action Complaint, where Crissen's attorneys assert claims for Racketeering Conspiracy under the Indiana RICO statute, even though there Indiana's RICO statute does not contain a conspiracy section as is embodied in 18 U.S.C. § 1962(d) and Indiana courts have held that "there is no such thing as an Indiana RICO conspiracy."  (See Section III, *supra*, fn. 2).

    **(vi)**    The Sandberg Firm has implemented and executed a very aggressive and costly discovery strategy in this case.  Multiple discovery requests have been directed to the Gupta Defendants, Vivek, and BPNA.  Many times the requests asked the Defendants to produce documents outside the primary issue in this case – namely, whether or not the Gupta Defendants incurred and paid any Title Search and Notify Costs.  No. 23 ("Lawyers Duties to Other Counsel"), *Standards for Professional Conduct Within the Seventh Federal Judicial Circuit,* requires an attorney to carefully craft document production requests so they are limited to those documents necessary for the production or defense of the action.  The Gupta Defendants believe a review of Crissen's requests shows almost no effort to conform with this standard.  [See, Filing Nos. 115-1, 115-2 and 115-3].  Many of Crissen's requests are written to be patently and

unnecessarily overly broad.   Crissen's approach to discovery has required many informal conferences with Magistrate Judge Hussmann under S.D. Ind. L.R. 37.1(A), formal discovery motions, and ultimately motions for sanctions.   The Gupta Defendants and BPNA have prevailed on a number of these challenges both informally at conference with the Magistrate Judge and formally via motion.

      **(vii)**   The Sandberg Firm has denied the jurisdiction of this Court to resolve discovery disputes arising from subpoenas that BPNA and the Guptas served on the Sandberg Firm and Jesse Rochman, seeking class action discovery aimed directly at facts relating to the adequacy of the Sandberg Firm as class counsel.   During a conference with the Magistrate Judge concerning the Sandberg Firm's refusal to provide documents responsive to a Subpoena Duces Tecum seeking discovery about the qualifications of the Sandberg Firm to serve as class counsel, the Sandberg Firm stated that the U.S. District Court for the Southern District of Indiana does not have power to decide discovery disputes concerning subpoenas issued out of the Missouri federal court.   When pressed, the Sandberg Firm would not concede authority to the Magistrate Judge to resolve these discovery matters, requiring instead that BPNA and the Gupta Defendants incur the expense to go to Missouri if they want to enforce subpoenas against the Sandberg Firm and Jesse to obtain information about their qualifications as class counsel.   [See Filing No. 200, ¶ 3]; see also email from Crissen's counsel to the Court staff attached hereto as **Exhibit 4**.   Therefore, on the one hand, the Sandberg Firm and Jesse, as counsel of record, want this Court to approve them as adequate class counsel, but on the other hand, the Sandberg Firm and Jesse, as recipients of class action discovery requests aimed at information about their qualifications as class counsel, have refused to recognize, or at least to consent, to the power of the Southern District of Indiana federal court over them regarding these matters.   Although the Firm and Jesse may have a right

to force BPNA and the Guptas to go to Missouri, such tactics do not further the best interests of the class – only the interests of the Sandberg Firm and Jesse to limit discovery.

**B.      Jesse Rochman's Conduct in the *Groome* Action, Allegations of Civil RICO Violations Against Jesse in an Illinois Class Action**

**(i)      Jesse's conduct in the *Groome* action**

A lawsuit was filed against William Groome in the Southern District of Illinois on February 22, 2011. *Bowen v. William E. Groome et al.*, Case No. 3:11-cv-00139-GPM-SCW (S.D. Ill.) (the "*Groome* Action"). Initially, the only attorney to appear from the Sandberg Firm was A. Courtney Cox. Later, on July 1, 2011, Bhavik R. Patel appeared, and finally on February 29, 2012, Jesse Rochman appeared in the *Groome* Action.

On February 17, 2012, Groome deposed Barrett Rochman. [Filing No. 117, ¶ 10]. Barrett expressly denied having "any involvement" in the *Groome* Action other than to appear for a deposition. *Id.*; [Filing No. 117-2, 12:2-13:5]. When asked if he had had any direct contact with Bowen, Barrett stated "This is an area I would have to speculate about." [Filing No. 117-2, 9:13-9:16]. Barrett stated he was not aware of anyone associated with one of Barrett's businesses contacting Bowen. *Id.* at 9:17-9:20. Following Barrett's deposition, Groome took the deposition of the Plaintiff, Mr. Bowen. [Filing No. 117, ¶ 11]. Bowen testified that he received an unsolicited telephone call from Jesse Rochman regarding Groome. Bowen's memory about this conversation was specific:

> Q      And you know Jesse Rochman?
> A      Yes.
> Q      Can you tell me how you came to know Jesse Rochman?
> A      I believe it was by phone.
> Q      And "by phone" were you calling about representation and that's how you met him, or how did you come to talk to Jesse on the phone?
> A      I believe he called me.
> Q      Had you already contacted his law firm for representation?
> A      No.
> ….

> Q       And at the time you had that conversation was Jesse your attorney?
> A       No.

[Filing No. 117-3, 18:5-18:16].

Groome then attempted to take the deposition of Jesse in order to establish Jesse had solicited business in violation of Ill. Su. Ct. Prof. Cond. 7.3(a).  [Filing No. 117, ¶ 12].  The Sandberg Firm opposed this deposition and, in response to Groome's Motion to Compel, it filed a May 15, 2012 Affidavit from Barrett whereby Barrett changed his deposition testimony and suddenly remembered:

> I researched potential individuals…I obtained their telephone numbers on my own and called them to inquire as to whether they believed they had been wronged by Mr. Groome's conduct…I had discussion with each one who felt they were wronged by Mr. Groome's action…I asked if they would be willing to be contacted by an attorney…I called Sandberg, Phoenix & von Gontard and gave them the number of the interested parties.

[Filing No. 117-4, ¶¶ 6-10].

Barrett initially denied any involvement in the *Groome* Action, but just 3 months later, after there were issues about Jesse soliciting Mr. Bowen, Barrett provided an affidavit stating he had communicated with prospective class representatives.  Barrett's Affidavit does not reference Bowen by name, and Barrett does not expressly admit to contacting Bowen.  However, Bowen said under oath he was contacted by Jesse, and it does not appear Mr. Bowen ever recanted this testimony.

Jesse was counsel of record at the time Barrett's affidavit was filed.  Jesse knows if he contacted Bowen or not. The Gupta Defendants understand Bowen has never filed an affidavit denying or explaining his role, if any, in soliciting Mr. Bowen.  Moreover, Ind. R. Prof. Resp. 3.3 imposes an affirmative obligation on an attorney not to knowingly offer evidence that the lawyer knows to be false; and where a witness offers evidence the attorney later learns is false,

the attorney "shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." If Jesse or someone from the Sandberg Firm solicited Mr. Bowen (as Mr. Bowen states), then they should not have filed Barrett's Affidavit to the contrary.

But the story has another component. In the *Gupta* case, Barrett has testified he gave the Sandberg Firm's telephone number to potential representatives so they could call the Sandberg Firm if they wanted to pursue claims against Groome or Gupta.  (Rochman Depo., 55:16-56:1; 60:1-61:1).  However, in the Affidavit filed by Barrett in the *Groome* Action, Barrett testified he gave numbers for potential class representatives to the Sandberg Firm.  [Filing No. 117-4, ¶ 6]. As noted in Section VIII(C)(iii), *infra*, a review of the Sandberg Firm billing invoices contain entries showing attorneys at the Sandberg Firm initiated contact with potential class representatives.  Again, the Sandberg Firm and Jesse have not addressed the apparent conflict between Barrett's Affidavit in the *Groome* Action and his deposition testimony in the *Gupta* case, why they have taken no action to correct this discrepancy, or Jesse's role or knowledge about his father's actions in either action.

### (ii)   *Phoenix Bond*

In *BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750 (7th Cir. 2011) ("*Phoenix Bond*"), Phoenix Bond & Indemnity sued Jesse, B. Rochman and others, accusing them of conspiring to violate federal RICO and bid rigging laws in connection with tax auction sales in Cook County, Illinois.  On one appeal in this case, Judge Posner, writing for a unanimous panel of the United States Court of Appeals for the Seventh Circuit, had the following observations about the actions of the Rochmans, which included Jesse:

> For purposes of this appeal (only), the defendants concede that they committed fraud actionable under RICO if the plaintiffs can prove both proximate cause and damages. 637 F.3d at 753.

The defendants stole a business opportunity from the plaintiffs by flooding the auction room with raised hands that shouldn't have been there.
*Id*. at 756-57.

The defendants were throwing sand in the district judge's eyes.  The object of their conspiracies was to obtain liens that would otherwise go to one-armed bidders – there could be no other reason for wanting to pack the room in violation of the County's rules.
*Id*. at 758.

Barrett confirms he and Jesse were accused of mail fraud and conspiracy to violate federal RICO laws in *Phoenix Bond*, and admits they settled the case before trial by paying an unspecified amount of money.  (Rochman Depo, 35:25-36:25).

Mr. Sandberg had this to say about the *Phoenix Bond* case when the matter was addressed at the Magistrate Judge's hearing on November 8, 2013: "[W]ho cares about Illinois and what goes on in the Illinois tax certificate business?" [Filing No. 151, p. 21].  Mr. Sandberg asked the Court for an opportunity to present papers from the *Phoenix Bond* case, and although that request was granted, the Sandberg Firm and Jesse filed nothing to explain Jesse's conduct or to address the *Phoenix Bond* allegations or Judge Posner's observations about the conduct of these defendants.

### C.   Barrett Rochman's relationship with Jesse, Bhavik R. Patel, and the Sandberg Firm; Sandberg Firm's dual representation of Barrett and Mr. Crissen/class

The Sandberg Firm, Jesse and Bhavik R. Patel, maintain an ongoing and long-standing attorney-client relationship with Barrett Rochman and various Rochman family members and business operations.  The relationship between Barrett and these attorneys is significant, so much so, that the Gupta Defendants believe the Court should inquire to determine whether these attorneys can or will discharge a fiduciary duty to the class – to protect the class's best interests – in circumstances where class interests conflict with Barrett Rochman's.

### (i)      Barrett Rochman is a Substantial Competitor of Vinod Gupta

Over the years, Vinod Gupta has developed his tax sale business in Indiana, Illinois, and Florida.   One of Mr. Gupta's primary competitors is Barrett, a very wealthy and powerful businessman from southern Illinois who, during the relevant period established by Mr. Crissen's Amended Complaint, also purchased properties, often bidding against Mr. Gupta, at tax auctions in Illinois and Indiana.  When asked at his deposition to identify his primary competitors, Barrett listed Mr. Gupta, William Groome, and a company called Halifax.  (Rochman Depo, 18:6-18:13).  Barrett did not identify any other significant competitors.  *Id*.

### (ii)      Barrett Rochman has made numerous threats to sue Groome and Gupta

Mr. Gupta believes that the *Groome* and *Gupta* class actions were orchestrated by Barrett with the assistance of the Sandberg Firm and Jesse.  [Filing No. 116, ¶ 10].  Prior to the filing of these actions, Barrett made threats to sue Mr. Groome and Mr. Gupta.    According to Mr. Groome, Barrett used his economic power to intimidate fellow competitors, especially the smaller bidders such as Mr. Groome and Mr. Gupta. [Filing No. 117, ¶ 6].  Mr. Groome describes how the *Groome* action financially crippled him and his wife, and how the Sandberg Firm pursued a 21-month litigation only to prove actual class damages of about $23,000.  *Id*., ¶¶ 14 and 15.  Mr. Groome confirms Barrett's threat:  "Once I am done with you, I am going after Vinnie [Gupta] and others."  *Id*. at ¶ 16.  Groome states he understood Barrett's comments to constitute a threat that Barrett intended to use litigation to eliminate his business competitors - including Mr. Gupta.  *Id*.  Barrett also threatened Mr. Gupta.  Mr. Gupta provides numerous

examples of Barrett's attempts to intimidate him and control the bidding process at Indiana tax sales. *Id.* ¶¶ 6 and 13.[5]

### (iii)   Barrett Rochman and the Sandberg Firm's Attorney-Client Relationship

Barrett admits to having a long and ongoing attorney-client relationship with the Sandberg Firm.  (Rochman Depo, 24:15-25:15).  That relationship is substantial.[6]  Barrett hired the Sandberg Firm to research and advise him whether he could personally sue his competitors in an Indiana class action in which Barrett would serve as the class representative.  *Id.* at 65:23-67:19.

Counsel of record in this case, Bhavik R. Patel and Jesse, worked on that research and advice.  Barrett produced invoices he received from the Sandberg Firm.  These invoices describe extensive attorney work performed, the attorney who performed the work, and the fee charged. (See attorney fee invoices attached hereto as **Exhibit 6**).  These invoices confirm that during the

---

[5] When this issue was raised at a November 8, 2013 hearing with Magistrate Judge Hussmann, John Sandberg did not deny Mr. Gupta's concern that the *Gupta a*ction was part of a plan by the Rochman family to hurt the Gupta family as business competitors. Mr. Sandberg's response was: "[I]n the United States that's called competition; you can do whatever you want to drive a competitor out of business.  If it's not illegal, you're entitled to do it." (Filing No. 151, p. 5, lines 1-4).  During the February 28, 2014 hearing, the Court asked Mr. Gupta's attorneys if they could cite a Seventh Circuit case preventing a party from bringing a lawsuit for the purpose of destroying the economic viability of a competitor.  In response, counsel admitted they did not have such authority.  Subsequent to the hearing, Mr. Gupta's attorneys did find Seventh Circuit authority addressing this issue in the context of Fed. R. Civ. P. 11.  *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 826 (7th Cir. 2001) ("Rule 11 may be violated when, even if the claims are well based in fact and law, parties or their attorneys bring the action for an improper purpose."); *Burda v. M. Ecker Co.*, 2 F.3d 769, 773-74 (7th Cir. 1993) ("Parties and/or their attorneys violate Rule 11 when they bring legal action for any improper purpose, such as to harass or needlessly increase the cost of litigation.").

[6] The Gupta Defendants are contemporaneously moving for leave to file under seal as **Exhibit 5** the information produced by the Sandberg Firm showing total fees paid by Barrett Rochman for the Sandberg Firm's legal services.

years 2009 and 2010, the Sandberg Firm made a concerted effort to research and develop a legal

theory upon which Barrett could sue his competitors.  Some of the time entries are instructive:[7]

| | |
|---|---|
| 12/09/09 | Legal Research re Indiana Tax Statutes; redemption procedures and requirements |
| **12/14/09** | **Draft FOIA request for statement of costs paid on tax sales in Indiana and research whether class action is suitable** |
| 12/14/09 | Draft model letter for discussions with targeted prospects |
| **12/17/09** | **Research redemption statute; draft public records request to 5 Indiana counties** |
| **12/17/09** | **Analyze responses from Gibson and Spencer County** |
| 12/18/09 | Review responses from Indiana counties; review form for tax sale; multiple calls with client |
| **12/21/09** | **Draft email to SRI re FOIA requests to Indiana counties for tax records** |
| 12/21-28/09 | Correspondence to and review responses from Indiana counties |
| **12/28/09** | **Revise FOIA Letter to Spencer County** |
| 2/10-16/10 | Correspondence regarding requests for documents for tax sale in Indiana; conversations with B. Rochman re same. |
| 4/01/10 | Meet with class action attorney re interest in potential suit |
| 6/03/10 | Analyze Indiana case law; call B. Rochman re Indiana matter; research issues re class action suit; *"research champerty and its applicability in Indiana when a lawsuit might be brought for fraud after redemption of piece of property."* (emphasis and quotations added) |
| 6/04/10 | Research and analyze Indiana and federal law to *"determine if champerty or clean hands doctrine applies to purchase of property that is subject to redemption*." (emphasis and quotations added) |
| 6/07/10 | Further research and analyze *champerty* (emphasis added) and clean hands; draft memo re same ("whether claim for fraud can be brought after redemption of real estate that the buyer bought and redeemed knowing he would bring the claim") |
| 6/08/10 | Revise and update spreadsheet compiling Indiana tax sales |
| 7/12/10 | Call with B. Rochman re class action matter |
| 7/14-15/10 | Call SRI and attorney re additional information re tax purchasers/sales |
| 7/22/10 | *Call to potential plaintiffs in class action matter* (emphasis added); call to local counsel re same |
| 7/22/10 | *Call to multiple potential plaintiffs in Indiana matter* (emphasis added); call to B. Rochman re status |

---

[7] The invoices show that the Sandberg Firm "[called] potential [multiple] plaintiffs in [the] class action matter."  The Sandberg Firm and Barrett investigated the limitations of the champerty doctrine and whether Barrett could redeem property himself in order to create standing to sue Mr. Gupta.  Jesse worked for his father on this matter, researching, communicating with Indiana officials, and reviewing their responses. Jesse's work above is marked in bold lettering.

At some point, the Sandberg Firm told Barrett that he was not an "injured party" and could not sue Mr. Gupta or Mr. Groome.  (See, Rochman Depo, 78:12-78:22).  Barrett then changed gears and, according to Barrett, contacted 5-6 redeeming property owners about suing Mr. Groome.  *Id.* at 60:1-60:13.   Regardless of whether these solicitations came from the Sandberg Firm attorneys or Barrett, the end result was the same: Bowen hired the Sandberg Firm to file the *Groome* action in Illinois.  Barrett then solicited Mr. Crissen to contact the Sandberg Firm about suing Mr. Gupta.  (Rochman Depo, 48:23-49:9).

> **(iv)    Barrett had no factual basis for claiming Vinod Gupta did not incur or pay title and notify costs at the time he solicited Mr. Crissen to contact the Sandberg Firm**

At the time Barrett solicited Mr. Crissen to sue the Gupta Defendants, except for some unspecified hearsay and gossip, he had no factual basis to support a claim that Mr. Gupta had not incurred or paid title/notification costs.

> Q    At the time you were talking to the Sandberg Firm about pursuing a lawsuit against Mr. Gupta, did you have any factual basis, any specific knowledge that Mr. Gupta was not using an attorney to assist him in doing those title searches or giving the notices to redeeming property owners?
> A    No.

*Id*. at 96:12-96:18.

Barrett admits that he has never talked to Vinnie Gupta or Vivek Gupta about his issue; and he has not seen any checks or invoices between Vinnie and Vivek regarding payment for title search and notification work.  *Id.* at 92:21-93:8.  His sole basis for making this claim against Mr. Gupta was a "general historical" and factually unsupported belief that Mr. Gupta did not use lawyers.  *Id.* at 93:9-93:16.  However, when pressed, he admitted he had no personal knowledge about Mr. Gupta's affairs other than the fact that Mr. Gupta would sometimes act *pro se* in court

proceedings, and his reliance on "gossip" in the industry – even though he could not identify

anyone who had made such statements to him.

> Q   What's your basis for making that statement?
> A   General historical background plus – and I can't remember which one or two
>     other tax buyers indicated that they – that Bill Groome and Mr. Gupta did
>     everything "pro se."
> Q   Can you name them?
> A   No.

*Id.*, at 93:21-94:6.

### (v) The Sandberg Firm and Jesse Rochman's dual representation of Barrett Rochman and Mr. Crissen The Sandberg Firm and Jesse Rochman's dual representation of Barrett Rochman and Mr. Crissen

The Sandberg Firm and Jesse Rochman serve two masters.  They have an attorney-client

relationship with Barrett, a long-time client, and Mr. Crissen who has filed this class action.[8]

The Sandberg Firm may owe a number of ethical responsibilities to Barrett and to Mr.

Crissen as well as the class Crissen seeks to represent.  These duties include loyalty and

independent judgment, Comments to Ind. R. Prof Cond. 1.7, and a duty to reasonably consult

with the client about the means by which the client's objectives are to be accomplished, Rule

1.4(a).  The firm should avoid conflicts of interests that adversely impact their clients, and in

some types of conflicts, written client waivers are required.  Although at first glance, one might

conclude Barrett, Mr. Crissen, and the class members share a common goal – suing the Gupta

Defendants - such is not necessarily the case.  Mr. Gupta has made no bones about the fact since

the inception of this action that he believes Barrett orchestrated the *Groome* and *Gupta* lawsuits

in order to ruin them as business competitors because they refused to submit to Barrett's

demands, acts of intimidation, and threats.  [Filing No. 116, ¶10; Filing No. 117, ¶ 13].  At the

---

[8] Additionally, Jesse held an ownership interest in CCJ Investments and BRB Investments, companies which appear to have competed for properties at tax auctions in Illinois during the same period time that Mr. Gupta was bidding on Illinois properties.  [Dkt. 159-5, pp. 6-7].

same time, the Sandberg Firm seeks to represent Mr. Crissen and class members whose goal is to

obtain a viable monetary judgment against the Guptas.  These goals do not follow a common

track.  Which client gets the Sandberg Firm's loyalty – Barrett or Crissen/the purported class?

Barrett disclosed one event which illustrates the potential for internal conflict at the

Sandberg Firm.  Barrett confirmed that the Sandberg Firm is representing him in class action

litigation in Madison, Illinois.  (Rochman Depo. 25:18-25:24). This civil litigation arises out of

Barrett's Sherman Antitrust Act violations and bid rigging activities that impacted Illinois tax

auctions.[9]  (See Rochman Depo., 86:22-89:17).   In representing Barrett in the Madison, Illinois

litigation, the Sandberg Firm apparently conducted some type of internal review of the Gupta

case.  *Id*. at 61:21-62:2.   Barrett paid for that legal work.  *Id*.  On this point, Barrett admits:

> Q      Have you paid Sandberg Phoenix any legal fees in connection with this [the
>        Gupta] litigation?
> A      Just recently they had to review this litigation because of this deposition because
>        of the class action in Madison County, so I have paid them fees as it relates to the
>        class action there.  They have to know what happened here.

*Id.*

This event illustrates the problem with the Sandberg Firm representing both Barrett and

Mr. Crissen/class members.  Magistrate Judge Hussmann's amended protective order limits the

Sandberg Firm attorneys who may review confidential documents produced by BPNA and the

Gupta Defendants.  [Filing Nos. 47 and 48, pp.6-7].  Yet, it appears Sandberg Firm attorneys,

other than John Sandberg, may have reviewed the Crissen litigation – but the Gupta Defendants

and this Court do not know what was reviewed, what information was obtained, or what

protocols the Sandberg Firm put into place, if any, to ensure that these attorneys did not access

---

[9] Barrett was criminally convicted of these crimes in *United States v. Rochman,* 3:13-cr-30222-DRH.   Barrett was sentenced to 16 months incarceration and a $30,000 fine for his crimes. [See Filing No. 231, p. 3, fn. 1].

Mr. Gupta's confidential documents.  The Sandberg Firm did not disclose to the Court, the Magistrate Judge, Mr. Gupta or BPNA that such an internal review was taking place, and maybe, given the Sandberg Firm's ethical duties of loyalty and independence, it may have been improper for the Sandberg Firm to make such a disclosure.[10]

### D.   Crissen's Counsel Has Failed to Prove the Fed. R. Civ. P. 23(g)(1)(A) Qualification Factors

Class counsel must have adequate experience to handle a class action.  Mr. Crissen has the burden of proving these qualifications.  *Savanna Group, Inc.*, 2013 WL 66181, at *13. Crissen's Motion for Class Certification and supporting papers [Filing Nos. 90 and 91] fail to offer sufficient direct evidence supporting the Fed. R. Civ. P. 23(g)(1)(A) factors.[11]  Crissen's class certification papers only address these factors in conclusory form in Section (D)(1)(4) of Crissen's Class Cert Brief. [Filing No. 91, pp. 13 and 14].  Crissen's only "evidence" regarding the Sandberg Firm's qualifications to serve as class counsel is a singular reference to *Bowen v. Groome*, 2012 WL 2064702 (S.D. Ill. 2012), in which the District Court found the Sandberg Firm was adequate to serve as class counsel.

The District Court's Order in the *Groome* action does not identify the specific "knowledge" or state the evidence which supported its finding on the issue of adequacy of counsel.  Further, there are circumstances in the *Gupta* case, such as the Sandberg Firm's and Jesse's misconduct, which the Gupta Defendants do not believe were an issue when the Illinois court decided class certification in the *Groome* action.

---

[10] It is unknown whether the Sandberg Firm has a written conflict waiver from Barrett or Mr. Crissen, and if so, whether this writing addresses conflicts that might impact class members.

[11] The Gupta Defendants understand that John Sandberg has not handled a class action prior to the *Gupta* case.

Moreover, having opened the door on the qualification issue by citing the *Groome* action, the Court should examine the results obtained in the *Groome* action, as well as the District Court's pertinent findings in that case. During the class certification phase of the case, much as Crissen has done here, the Sandberg Firm represented to the Illinois District Court that the class was large, maybe 2,141 members, and that class claims had a value exceeding $1 Million. [Filing No. 142-1, p. 5]. Mr. Womack, one of Groome's attorneys stated at the fairness hearing following a settlement of that case, that: "[T]his started out as a million-dollar lawsuit according to the plaintiffs, and those claims were just not true. They list everybody that was involved in the sales." *Id*. Based in part on plaintiff's estimate of class size and value of class claims, the District Court certified the *Groome* action as a class action. Eventually, the parties settled the case, and as part of the settlement, class members had to file claims in order to recover their damages. Only 38 unique class members were identified. [Filing No. 142-1, pp. 6-7]. As a result, the million-dollar lawsuit promised by the Sandberg Firm, in the end, resulted in total class damages of about $3,850. *Id*. at pp. 4 and 8. The Illinois Judge confirmed: "So we have total consideration to [the plaintiff class] in the amount of $3,850." This prompted the Judge to characterize the whole proceeding as a "small claims" action in nature. *Id*. at p. 7 ( "[W]hat I've got here, I've got three [sic] cases… that…would have probably been given about five minutes in a *small claim court*…." (emphasis added)). Despite this minimal recovery, the Sandberg Firm requested an award of fees of about $125,000 [Filing No. 117, ¶ 14]. According to Mr. Groome, the Sandberg Firm billed about 821 hours and estimated the market value of those hours to be $194,306. *Id*. The District Court rejected this request, and awarded the Sandberg Firm only $40,000 in fees and Mr. Bowen $2,500 for his services as a class representative. See Status Report and Memorandum and Order attached hereto as **Exhibits 7** and **8**. Either the Sandberg

Firm incorrectly evaluated the case at the time the Illinois federal court decided class certification, or the firm was unable to produce a credible result for the much larger intended class.[12]

## X.  Conclusion

Based upon the arguments and authorities advanced and cited herein, the Plaintiff's Motion for Class Certification should be denied.

HARRISON & MOBERLY, LLP

*/s/ David J. Theising*
David J. Theising

*/s/ Stephen E. Arthur*
Stephen E. Arthur

*/s/ Marc A.W. Stearns*
Marc A.W. Stearns
HARRISON & MOBERLY, LLP
10 West Market Street, Suite 700
Indianapolis, Indiana  46204
Telephone:     (317) 639-4511
Facsimile:     (317) 639-9565
Email:  dtheising@harrisonmoberly.com
            sarthur@harrisonmoberly.com
            mstearns@harrisonmoberly.com

---

[12] The actions referenced in Section VIII(A)(iv-vii) of this Brief are relevant to demonstrate lack of qualification to serve as class counsel under Fed. R. Civ. P. 23(g)(1)(A), and the Gupta Defendants adopt those arguments by reference.

## <u>CERTIFICATE OF SERVICE</u>

       The undersigned hereby certifies that on April 28, 2014 a copy of the foregoing Brief in Opposition to Plaintiff's Motion for Class Certification was filed electronically.  Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

John S. Sandberg                           David P. Friedrich
Bhavik R. Patel                            WILKINSON,GOELLER,
Jesse B. Rochman                        MODESITT,WILKINSON
SANDBERG, PHOENIX & von GONTARD, P.C.    & DRUMMY, LLP
600 Washington Avenue, 15th Floor           333 Ohio Street
St. Louis, Missouri  63101                  Terre Haute, Indiana  47807
Email: jsandberg@sandbergphoenix.com     Email:DPFreidrich@wilkinsonlaw.com
Email: bpatel@sandbergphoenix.com
Email: jrochman@sandbergphoenix.com

                                                   */s/ David J. Theising*

David J. Theising
HARRISON & MOBERLY, LLP
10 West Market Street, Suite 700
Indianapolis, Indiana  46204
Telephone:    (317) 639-4511
Facsimile:    (317) 639-9565
Email:  dtheising@harrisonmoberly.com

Counsel for Defendants Vinod C. Gupta,
Satyabala V. Gupta and Wiper Corporation