UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| Joshua B. Crissen, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 2:12-cv-00355-JMS-WGH |
| | ) | |
| Vinod C. Gupta, Satyabala V. Gupta, | ) | |
| Wiper Corporation, and Vivek V. Gupta, | ) | |
|     *Defendants.* | ) | |

## ORDER

Presently pending before the Court is Plaintiff Joshua Crissen's Motion for Class Certification. [Filing No. 90.] For the foregoing reasons, the Court **DENIES** the motion.

### I.
### BACKGROUND[1]

**A.     The Parties**

Plaintiff Joshua Crissen is an individual residing in Bloomfield, Indiana. [Filing No. 85 at 3.] Defendants Vinod Gupta and Satyabala Gupta are husband and wife, and reside in Boca Raton, Florida. [Filing No. 85 at 3.] Mr. and Mrs. Gupta are the only directors and officers of Wiper Corporation ("Wiper"), a Florida corporation. [Filing No. 85 at 3.] Mr. Crissen alleges that "[Wiper] or its nominees have participated in tax sales in Indiana from at least 2002 through the present." [Filing No. 85 at 3.] Defendant Vivek Gupta is Vinod and Satyabala Gupta's son and an attorney, and resides in Boca Raton, Florida as well. [Filing No. 85 at 4.] Mr. Crissen alleges that Vivek Gupta "participated in the operation or management of and performed activities necessary or helpful to Vinod's and Wiper's tax sale business in Indiana from at least 2002 through the present." [Filing No. 85 at 4.]

---

[1] The Court has set forth the background of this case in several previous orders, but replicates it here for ease of reference.

## B. The Tax Sale Process

Mr. Crissen describes the tax sale process in Indiana in the following way: In Indiana, when a real property owner fails to pay property taxes, the property can be sold at a tax sale to satisfy the delinquent taxes pursuant to Ind. Code § 6-1.1-24-1, *et seq.* [Filing No. 85 at 4.] The process begins when each county auditor publishes a list of delinquent real estate parcels in area newspapers, which gives notice that the county auditor and treasurer will apply for court judgments against delinquent real estate and for orders to sell those judgments at public auction. [Filing No. 85 at 4-5.] After the court issues the requested judgments and orders, the county auditor will send a notice of the sale by certified mail, return receipt requested, to the last address of the property owner on the date the tax sale list is certified ("Notice of Sale"). [Filing No. 85 at 5.]

At the tax sale, the county treasurer sells the real property, subject to a right of redemption, to the highest bidder at public auction. [Filing No. 85 at 5.] An Indiana statute provides the minimum price for which the real property can be sold ("Minimum Price"), factoring in the taxes due and owing, all penalties owed, costs incurred by the county due to the sale, unpaid costs due from any prior tax sales, and other reasonable expenses of collection. [Filing No. 85 at 5-6.] When the highest bid equals at least the Minimum Price, the purchaser receives a certificate of sale and acquires a lien against the property in the amount paid. [Filing No. 85 at 6.] When no bid equals at least the Minimum Price, the county executive receives a certificate of sale and acquires a lien in the amount of the Minimum Price. [Filing No. 85 at 6.] The county executive can then decide to sell its certificate of sale at a public auction to the highest bidder for an amount less than the Minimum Price. [Filing No. 85 at 6.] The purchaser of a certificate of sale must give notice ("Notice of Redemption") by sending a copy of the Notice of Redemption by certified mail to the owner of record at the time of the sale and any person with a substantial property interest of public

record in the real property. [Filing No. 85 at 6.] The Notice of Redemption must be sent no later than nine months after the date of the tax sale or ninety days after the date of the Commissioner's Sale. [Filing No. 85 at 7.]

Any person may redeem real property sold at a tax sale or Commissioner's Sale by paying the amount required for redemption before the expiration of the redemption period, which is one year after the date of sale. [Filing No. 85 at 7.] The amount of money required for redemption of the real property ("Redemption Amount") is set by Indiana statute. [Filing No. 85 at 7.] If the property is certified before redemption, the attorneys' fees and costs of giving notice ("Notify Costs") and the costs of a title search or of examining and updating the abstract of title for the real property that were incurred and paid by the purchaser ("Title Costs") are part of the Redemption Amount. [Filing No. 85 at 7.] The purchaser of a certificate of sale certifies that he or she incurred and paid the Notify Costs and the Title Costs by completing, signing, and providing the county auditor with a Certification. [Filing No. 85 at 7.] The Notice of Redemption must set forth the components of the Redemption Amount, including the amounts owed for Notify Costs and Title Costs. [Filing No. 85 at 8.]

## C. Mr. Crissen's Property

Mr. Crissen owns property in Greene County, Indiana (the "Property"). [Filing No. 85 at 9.] After property taxes on the Property became delinquent, the Greene County auditor and treasurer applied for a judgment against the Property and an order to sell the Property at public auction. [Filing No. 85 at 9.] On October 9, 2009, after the requested judgment and order were entered, the Greene County treasurer offered the Property for sale, subject to a right of redemption, for a Minimum Price of $2,118.60. [Filing No. 85 at 9.] Vinod Gupta was the highest bidder with a bid of $8,000, and he remitted payment to the Greene County Treasurer for $208,281.27 to pay

for the Property and several others that were offered for sale at the 2009 Greene County tax sale, and for which Vinod Gupta, Wiper, or one of their nominees was the highest bidder. [Filing No. 85 at 9.] Banco Popular North America ("Banco Popular"), with whom the Gupta Defendants had a financing arrangement, "funded the entire $208,281.27 purchase price."[2] [Filing No. 85 at 9.] The Greene County auditor issued a certificate of sale ("Tax Sale Certificate") for the Property to "Vinod C. Gupta c/o Banco Popular NA/Lien Holder" that same day. [Filing No. 85 at 9.] Banco Popular directed Vinod Gupta to deliver the Tax Sale Certificate to it, which Vinod Gupta did shortly after October 9, 2009. [Filing No. 85 at 9.]

On November 13, 2009, Vinod Gupta provided a signed Certification to the Greene County auditor certifying that he had incurred and paid $350 in Notify Costs and $150 in Title Costs relating to the Property. [Filing No. 85 at 10.] On February 8, 2010, the Property was redeemed by Mr. Crissen for a Redemption Amount of $3,027.04. [Filing No. 85 at 10.] Shortly thereafter, the county auditor notified Vinod Gupta and/or Banco Popular of the redemption and requested that the original Tax Sale Certificate be returned to the county auditor before the Redemption Amount and Surplus would be remitted to Banco Popular. [Filing No. 85 at 10.] Shortly before February 17, 2010, Banco Popular returned the original Tax Sale Certificate to the county auditor. [Filing No. 85 at 10.] On February 17, 2010, the county auditor remitted the Redemption Amount of $3,027.04 and the Surplus of $5,881.40 to Banco Popular. [Filing No. 85 at 10.]

## II.
## MR. CRISSEN'S CLAIMS

Mr. Crissen seeks to represent a class of:

All individuals and business entities who redeemed a tract or real property purchased at Indiana tax and/or Commissioner's sales by Vinod, Satyabala, Vivek,

---

[2] Kislak is Banco Popular's predecessor in interest, with whom the Gupta Defendants had a similar financing arrangement.

Kislak, [Banco Popular] and/or Wiper (or by a nominee), where the redemption amounts were artificially inflated because Vinod, Satyabala, Vivek, Kislak, [Banco Popular] and/or Wiper certified to Indiana county auditors they had incurred and/or paid statutory notification and/or title costs which Defendants had not incurred or paid.

[Filing No. 85 at 16.]

Mr. Crissen asserts the following claims against Defendants: (1) Substantive Racketeering under Federal RICO, [Filing No. 85 at 18-20]; (2) Racketeering Conspiracy under Federal RICO, [Filing No. 85 at 20-21]; (3) Substantive Racketeering under Indiana RICO, [Filing No. 85 at 21-24]; (4) Racketeering Conspiracy under Indiana RICO, [Filing No. 85 at 24-25]; (5) Relief under the Indiana Crime Victims Act, [Filing No. 85 at 25-26]; (6) Fraud, [Filing No. 85 at 26-27]; (7) Money Had and Received, [Filing No. 85 at 28]; and (8) Unjust Enrichment, [Filing No. 85 at 28-29].  He seeks actual and punitive damages, and attorneys' fees and costs.  [Filing No. 85 at 29.]

### III.
### STANDARD OF REVIEW

In deciding whether to certify a class, the Court may not blithely accept as true even the most well-pleaded allegations of the complaint, but must instead "make whatever factual and legal inquiries are necessary under Rule 23" to resolve contested issues.  *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001); *see Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014).  Specifically, the Court must find that the putative class satisfies the four prerequisites set forth in Federal Rule of Civil Procedure 23(a).  If the putative class does satisfy these prerequisites, the Court must additionally find that it satisfies the requirements set forth in Federal Rule of Civil Procedure 23(b), which vary depending upon which of three different types of classes is proposed.

Before addressing the Rule 23 factors, however, the Court must examine whether the proposed class members are sufficiently definite.  To do so, "[t]he plaintiff must…show…that the class is indeed identifiable as a class."  *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir.

2006). When "there is no way to know or readily ascertain who is a member of the class," the class "lacks the definiteness required for class certification." *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 495 (7th Cir. 2012). If the class as defined is sufficiently definite, the Court turns next to the Rule 23(a) factors.

It is the plaintiff's burden to prove that an identifiable class exists that qualifies for certification under Rule 23(a). *Oshana*, 472 F.3d at 513. The four prerequisites under Rule 23(a) are: "(1) [that] the class is so numerous that joinder of all members is impracticable; (2) [that] there are questions of law or fact common to the class; (3) [that] the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Class certification is not appropriate unless the named plaintiff establishes all four prerequisites. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

In addition to meeting the prerequisites of Rule 23(a), the proposed class must satisfy one of the conditions of Rule 23(b). *Messner*, 669 F.3d at 811; *Oshana*, 472 F.3d at 513. Under Rule 23(b), a class action that satisfies Rule 23(a) may be sustained if one of the following is true: "(1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or (3) the court finds that the

questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(1-3).

**IV.**
**DISCUSSION**

## A. Rule 23(a)

### 1. Adequacy of Representation

The Court begins at the end of the Rule 23(a) analysis – adequacy of representation – because this factor so compellingly mandates denial of class certification here. The Court must determine whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry is composed of two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest[s] of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (citation and quotation marks omitted).

#### a. Adequacy of Counsel

Mr. Crissen argues that his attorneys are "experienced litigators and will fairly and adequately represent the interests of the class." [Filing No. 91 at 13.] He points to his counsel's appointment as class counsel in a similar case in Illinois related to "the fraudulent certification of Notify Costs and Title Costs involving Indiana Tax Sales" – *Bowen v. Groome*, 3:11-cv-00139-GPM-SCW (S.D. Ill.) (the "Groome Action"). [Filing No. 91 at 13.] Mr. Crissen argues further that his attorneys have "already committed significant resources to representing the class and will continue to commit whatever resources are necessary to vindicate the rights of Plaintiff and the class." [Filing No. 91 at 14.]

In response, Defendants argue that:

(1) this lawsuit was funded by and indirectly initiated by Barrett Rochman, who is not only the father of Mr. Crissen's counsel Jesse Rochman, but also Vinod Gupta's main business competitor as well as a long-standing client of Mr. Crissen's counsel, all of which create a conflict of interest for counsel, [Filing No. 244 at 8-11; Filing No. 246 at 49-56];

(2) Mr. Crissen's counsel have engaged in several acts of misconduct thus far in the litigation and have been disingenuous in Court filings, [Filing No. 246 at 38-46];

(3) Mr. Crissen's counsel filed a disciplinary complaint against Vivek Gupta which only attached the Amended Complaint in this case and "was not supported by any probative evidence to substantiate the allegations," [Filing No. 244 at 11-12; *see also* Filing No. 246 at 42-43];

(4) Mr. Crissen's counsel have engaged in an aggressive and costly discovery strategy, and have questioned the Court's power to enforce a subpoena directed at Mr. Crissen's counsel, [Filing No. 246 at 44-46];

(5) Jesse Rochman engaged in questionable conduct in the Groome Action and faces allegations of civil RICO violations in an Illinois class action related to his involvement in "rigging laws in connection with tax auction sales in Cook County, Illinois," [Filing No. 246 at 46-49]; and

(6) Mr. Crissen has not shown that counsel have adequate experience to handle a class action, and the results counsel obtained in the Groome Action show that counsel either "incorrectly evaluated the case at the time the Illinois federal court decided class certification, or the firm was unable to produce a credible result for the much larger intended class," [Filing No. 246 at 58].

In reply, Mr. Crissen states that his counsel "recognize their misconduct" before this Court, but argues that it does not "create 'serious doubt that class counsel will represent the class loyally.'" [Filing No. 265 at 17.] He argues that Defendants have not identified any conflict of

interest or prejudice to the class arising from his counsel's misconduct, and that the misconduct "suggests Plaintiff's counsel may have been overzealous in representing the class." [Filing No. 265 at 17-18.] As to the disciplinary proceeding against Vivek Gupta, Mr. Crissen asserts that his counsel consulted with the firm's ethics counsel and, after reviewing applicable rules, determined that he was required to "at least notify the appropriate professional authority the Complaint was filed." [Filing No. 265 at 19.] Mr. Crissen also disputes that his counsel does not have the necessary knowledge to litigate the case. [Filing No. 265 at 19-21.] Finally, he argues that Jesse Rochman's conduct in the Groome Action and the lawsuit against him alleging RICO violations does not defeat adequacy, that his "pursuit of a viable money judgment for himself and the class is not directly adverse to Barrett Rochman," and that counsel are qualified to represent the class. [Filing No. 265 at 22-28.]

In order to obtain class certification, a plaintiff must demonstrate that counsel is "qualified, experienced, and able to conduct vigorously the proposed litigation." *Young v. Magnequench Int'l, Inc.*, 188 F.R.D. 504, 507 (S.D. Ind. 1999). In appointing class counsel, the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.*

### i. Counsel's Conflict of Interest

The Court turns first to Defendants' argument that counsel have a conflict of interest due to their relationship with Barrett Rochman. Counsel of record for Mr. Crissen in this case are John

Sandberg, Jesse Rochman, and Bhavik Patel, who all practice at the firm Sandberg, Phoenix & Von Gontard, P.C. (the "Sandberg Firm"). Jesse Rochman is the son of Barrett Rochman. It is undisputed that Barrett Rochman is one of Vinod Gupta's main business competitors.[3] [Filing No. 246-2 at 5.] It is also undisputed that Barrett Rochman personally solicited Mr. Crissen to file this lawsuit. [Filing No. 246-2 at 10-13.]

While there do not appear to be any cases where courts have dealt with the issue of whether class counsel are inadequate because they have ties to the defendant's business competitor, the Court finds that this is an "other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Mr. Crissen assures the Court that his "pursuit of a viable money judgment for himself and the class is not directly adverse to Barrett Rochman," and that Barrett Rochman's motivation for soliciting him was just to "level the playing field." [Filing No. 265 at 24.] But the Court does not see it that way. Instead, the Court views the motivation for the lawsuit – fueled by Barrett Rochman[4] and Mr. Crissen's counsel – as an attempt to gain a competitive business advantage over the Guptas, and even to drive them out of business. Mr. Crissen's counsel's statements at a November 8, 2013 hearing with the Magistrate Judge in this case are telling. When the Magistrate Judge asked Mr. Sandberg about Vinod Gupta's concern that this lawsuit was part of a plan by the Rochmans to harm the Guptas, one of their

---

[3] Barrett Rochman recently pled guilty and received a sentence of sixteen months in federal prison for entering into a scheme with former Madison County, Illinois Treasurer Fred Bathon whereby property tax sales were structured "in a way that eliminated competition and increased interest rates for Rochman and other tax buyers in exchange for campaign contributions." *Rochman gets 16 months, $30,000 fine*, THE SOUTHERN ILLINOISAN, March 25, 2014; *see also United States v. Barrett R. Rochman*, 3:13-cr-30222-DRH. [*See also* Filing No. 246-2 at 24-25.]

[4] Indeed, the Sandberg Firm billed Barrett Rochman for preliminary research regarding whether Barrett Rochman himself could sue the Guptas and, subsequently, for time spent contacting other potential plaintiffs to bring a class action in Indiana. [Filing No. 246 at 52-53.]

biggest business competitors, Mr. Sandberg responded "in the United States that's called competition; you can do whatever you want to drive a competitor out of business. If it's not illegal, you're entitled to do it." [Filing No. 151 at 5.][5]

The goal of negatively affecting the Guptas' business is directly at odds with the goal of the putative class members, which is presumably to obtain a money judgment against, or settlement amount from, Defendants. If the Guptas' business is adversely affected, the pot of money from which to settle with putative class members or pay an eventual money judgment is gone (or, at the very least, decreased). This, the Court finds, is a direct conflict of interest.[6]

The Court also notes that Jesse Rochman has an ownership interest in a company that was sued by regular bidders at Illinois tax sales for violating certain bid rigging laws. *See Phoenix Bond & Indem., Co. v. Bridge*, No. 05 C 4095 (N.D. Ill.). In an appeal related to that case, the Seventh Circuit Court of Appeals stated that "[f]or purposes of this appeal (only), the defendants [including Jesse Rochman] concede that they committed a fraud actionable under RICO if the plaintiffs can prove both proximate cause and damages," that "[t]he defendants stole a business opportunity from the plaintiffs by flooding the auction room with raised hands that shouldn't have been there," and "[t]he defendants were throwing sand in the district judge's eyes. The object of

---

[5] William Groome, one of the defendants in the Groome Action and one of Barrett Rochman's other competitors, testified that he understood statements Barrett Rochman made to him to mean that Barrett Rochman "intended to use litigation to take out some of his competitors, like me and Mr. Gupta." [Filing No. 117 at 4.]

[6] The Court's conclusion that Mr. Crissen's counsel are motivated by Barrett Rochman's status as one of Vinod Gupta's main competitors is bolstered by the fact that the Sandberg Firm filed a Disciplinary Complaint with the Indiana Disciplinary Commission against Vivek Gupta on September 17, 2013. [Filing No. 244-6.] The Disciplinary Complaint merely attaches a copy of the Amended Complaint in this matter, but does not provide any other information regarding how the Sandberg Firm believes Vivek Gupta has engaged in attorney misconduct. Vivek Gupta has had to retain counsel to respond to the Disciplinary Complaint. [Filing No. 244-7; Filing 250.]

their conspiracies was to obtain liens that would otherwise go to one-armed bidders – there could be no other reason for wanting to pack the room in violation of the County's rule." *BCS Services, Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 753-58 (7th Cir. 2011). [*See also* Filing No. 246-2 at 8-10 (Barrett Rochman testified that he and his son, Jesse, were named as defendants in the *Phoenix Bond* suit).] Jesse Rochman's involvement as a defendant in *Phoenix Bond* highlights his close proximity to the underlying facts of this case and his resulting conflict of interest.[7]

In sum, the instigation of this lawsuit by Barrett Rochman (one of Vinod Gupta's biggest business competitors), through Jesse Rochman, with the stated goal of gaining a competitive advantage, and counsel's familial and attorney-client relationship with  Barrett Rochman preclude any finding that counsel would adequately represent the class.[8]  *See Lou v. Ma Laboratories, Inc.*, 2014 WL 68605, *2 (N.D. Cal. 2014) ("A class in this case deserves to be championed by its counsel unencumbered by their duties to other clients.  Counsel have a conflict and may not serve").  Counsel have divided loyalties here.

---

[7] Jesse Rochman also does not dispute Defendants' assertion that he held an ownership interest in two entities – CCJ Investments, LLC and BRB Investments, LLC – which participated in tax auctions in Illinois during the same period Vinod Gupta was bidding on Illinois properties.  [*See* Filing No. 246 at 54; Filing No. 159-5 at 6.]

[8] The Court finds that reference to counsel's conduct in the Groome Action is appropriate because Mr. Crissen relies heavily upon the court's certification of a class in the Groome Action to support his Motion for Class Certification here.  [*See, e.g.*, Filing No. 91 at 13; Filing No.  91 at 18; Filing No. 91 at 25; Filing No. 265 at 1-2; Filing No. 265 at 22.]  Accordingly, the Court notes that Jesse Rochman wanted to hide his involvement in the Groome Action, perhaps because he was concerned about a potential conflict of interest.  There, he sent an email to his administrative assistant, which was apparently inadvertently copied to defendants' counsel, stating "I do not want the other side to know I'm involved in this case.  In the future please only reference Courtney [another attorney at the Sandberg Firm]."  [Filing No. 117-1 at 1.]

*ii.*      *Counsel's Misconduct*

The Seventh Circuit Court of Appeals has instructed that "[m]isconduct by class counsel that creates a serious doubt that counsel will represent the class loyally requires denial of class certification." *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 917-18 (7th Cir. 2011); *see also Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489, 498-99 (7th Cir. 2013) ("misconduct that prejudices the class or creates a direct conflict between counsel and the class requires" denial of class certification, and "unethical conduct, not necessarily prejudicial to the class, nevertheless raises a 'serious doubt' about the adequacy of class counsel when the misconduct jeopardizes the court's ability to reach a just and proper outcome in the case").

Mr. Crissen's counsel's conduct in this case has been the subject of two previous orders issued by the Court. The Court will not rehash counsel's misconduct in great detail, but sets forth the following findings it has already made:

- In granting former Defendant Banco Popular's Motion to Enforce Protective Order, the Court found that:

  - Mr. Crissen's counsel violated the clawback provision in the Protective Order entered in this case by refusing to return or destroy documents that Banco Popular had recalled due to inadvertent production. [Filing No. 230 at 9];

  - Mr. Crissen's counsel demanded that Banco Popular identify the Bates numbers of the documents it was recalling and, after Banco Popular did so, Mr. Crissen's counsel proceeded to review those documents. [Filing No. 230 at 10 (citing Filing No. 193-9 at 1)]; and

  - Banco Popular was entitled to its fees and costs in connection with its motion. [Filing No. 230 at 12];

- In connection with the Gupta Defendants' Motion to Dismiss or for Other or Further Sanctions for Violation of Protective Order (the "Sanctions Motion"), the Court found that:

13

- Jesse Rochman violated the Protective Order entered in this case, as amended by the Magistrate Judge, by reviewing documents produced by Banco Popular that were marked "Confidential." [Filing No. 231 at 9];

- One of the documents marked "Confidential" was only five pages into the range of documents Jesse Rochman admitted he reviewed, and instead of stopping, he continued reviewing documents. [Filing No. 231 at 11];

- Jesse Rochman even emailed Vinod Gupta's counsel asking where additional financial documents (that he was precluded from reviewing under the Protective Order as amended) were that appeared to be missing from the production. [Filing No. 231 at 11];

- Based on the Court's *in camera* review of the documents at issue, Jesse Rochman's unequivocal statement that he "did not review any personal financial statements or tax returns of the Gupta Defendants" proved to be false. [Filing No. 231 at 12];

- The Court ordered Jesse Rochman to pay the Gupta Defendants' fees and cost in connection with their motion, sanctioned Jesse Rochman in the amount of $2000 for violating the Protective Order as amended by the Magistrate Judge, and ordered him to submit a copy of the Court's Order to the General Counsels of all state bars where he is admitted to practice, or to the appropriate entity with jurisdiction over attorney discipline. [Filing No. 231 at 14];

- Jesse Rochman's co-counsel were aware of the amended Protective Order, and presumably aware of how the case is staffed and the specific work Jesse Rochman was performing on the case. [Filing No. 231 at 14];

- Mr. Crissen's counsel have been disingenuous in Court filings concerning Mr. Crissen's wife's involvement in the redemption of the property at issue. [Filing No. 231 at 14.] After questioning from the Court, including pointing counsel to the redemption papers which clearly indicated that both Mr. Crissen and Mrs. Crissen redeemed the property, Mr. Crissen's counsel still refused to admit that the papers reflected that both Mr. and Mrs. Crissen redeemed the property. [Filing No. 231 at 14-15];

- Mr. Crissen's counsel have engaged in a pattern of contumacious and dishonest conduct. [Filing No. 231 at 14]; and

o Any further misconduct will result in the dismissal of this case. [Filing No. 213 at 16].

The misconduct Mr. Crissen's counsel have engaged in – both individually on the part of Jesse Rochman and collectively – creates a serious doubt that counsel will represent the class loyally and jeopardizes the Court's ability to reach a just and proper outcome in the case. *Creative Montessori*, 662 F.3d at 917-18; *see also* *Reliable Money Order, Inc.*, 704 F.3d at 495 ("when 'class counsel have demonstrated a lack of integrity' through misconduct and unethical action, 'a court can have no confidence that they will act as conscientious fiduciaries of the class'"). The Court has already found that Jesse Rochman cannot be involved in certain aspects of discovery due to his relationship with Barrett Rochman, and Jesse Rochman has violated the Court's orders to refrain from that involvement. The Court has also found that Jesse Rochman's co-counsel at the Sandberg Firm knew of those orders and knew of Jesse Rochman's involvement in the case. Additionally, the Court has found that counsel was disingenuous in representations to the Court regarding Mrs. Crissen's role in redeeming the Crissen's property. These actions constitute a pattern of misconduct and the Court has serious concerns that this pattern could continue if this litigation were to proceed on behalf of a class.

Consistent with numerous other courts who have considered counsel's misconduct and found certification inappropriate for that reason, the Court finds that Mr. Crissen's counsel are inadequate under Rule 23(a)(4) based on the misconduct they have engaged in in this case thus far. *See, e.g.,* *Creative Montessori*, 662 F.3d at 918 ("When class counsel have demonstrated a lack of integrity, a court can have no confidence that they will act as conscientious fiduciaries of the class"); *Brown-Pfifer v. St. Vincent Health, Inc.*, 2007 WL 2757264, *8 (S.D. Ind. 2007) (denying class certification based, in part, on counsel's "faulty discovery efforts" and the fact that the court had previously awarded costs against counsel based on defendant's successful motion to

compel discovery); *Viveros v. VPP Group, LLC*, 2013 WL 3733388, *10-11 (W.D. Wis. 2013) (denying class certification based in part on counsel's disciplinary history, and noting "a proper respect for ethical duties is obviously important in representing a class because class members have limited ability to control counsel's decisions"); *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 160 (S.D. N.Y. 2010) (finding inadequate class counsel who was "complicit in the misrepresentations made by the Plaintiff during her deposition and in response to her interrogatories" where misrepresented information was "information that both of her attorneys undoubtedly knew was false," and where "false interrogatory responses were drafted by the Plaintiff's attorneys"); *Bodner v. Oreck Direct, LLC*, 2007 WL 1223777, *2-3 (N.D. Cal. 2007) (court denied class certification where class counsel had committed several ethical violations and took a "cart before the horse" approach by developing lawsuits before finding plaintiffs); *In re Organogenesis Securities Litigation*, 241 F.R.D. 397, 410 (D. Mass. 2007) (finding counsel had not met its burden of showing it was adequate to represent class where, among other reasons, its "performance in this case has not been ideal," and "[a]lthough it has defeated a Motion to Dismiss, it has also given the court reason to question its ability to adequately present truthful factual information to the court"); *Wagner v. Lehman Bros. Kuhn Loeb Inc.*, 646 F.Supp. 643, 662 (N.D. Ill. 1986) ("Reference to counsel's unethical and improper actions is sufficient to find that he cannot adequately represent the putative class in accordance with his fiduciary duties….[Counsel's] violation of the canons of ethics requires a finding that he may not represent the class").

### iii.    Counsel's Experience

Defendants also argue that Mr. Crissen's counsel are inexperienced and lack knowledge in this area, pointing to what they claim are several misstatements of the law that Mr. Crissen's

counsel have made thus far in this case. [Filing No. 246 at 43-44.] For example, Defendants argue that Mr. Crissen's counsel "critically misstates…the amounts necessary for Mr. Crissen and the class to redeem a property from tax sale," and "assert claims for Racketeering Conspiracy under the Indiana RICO statute, even though…Indiana's RICO statute does not contain a conspiracy section…." [Filing No. 246 at 43-44.] The Court declines to make legal findings regarding the merits at this stage of the litigation, and instead turns to Mr. Crissen's counsel's track record in the Groome Action, the case Mr. Crissen uses as an exemplar, which is strikingly similar to this one. There, Mr. Crissen's counsel made certain representations to the court regarding the class size and the value of the claims in seeking class certification, which the Groome court ultimately granted. When it turned out that instead of 2,141 class members with over $1 million in damages there were only 38 class members with $3,850 in damages, Jesse Rochman attempted to explain the discrepancy to the court by stating that they had relied upon data from a company that administers tax sales in Indiana which included sales that "went to deed, which we subsequent[ly] found would not be members of the class." [Filing No. 142-1 at 5-6.] Ultimately, only three class members filed claims, prompting the court in the Groome Action to remark "I've got three cases, really, that, you know, would have probably been given about five minutes in a small claims court, and that's what I have." [Filing No. 142-1 at 7.]

The Court is concerned that counsel – in such a similar case – have again grossly overestimated the number of class members and the potential damages by relying on overinclusive data from the same source used in the Groome Action. The Court also notes that this is Mr. Sandberg's first class action, [Filing No. 265 at 26], and while Jesse Rochman has some class action experience, [Filing No. 265 at 26-27], he is prohibited from participating in certain aspects of discovery in this litigation. Further, Mr. Crissen does not point to any class action experience

on the part of Bhavik Patel, other than his involvement in the Groome Action. [Filing No. 265 at 26.]

While counsel's minimal experience may not, by itself, render class certification inappropriate, that, coupled with the end-result of the Groome Action and the conflict and misconduct factors discussed above, lends additional support to denial of class certification.

In short, the Court finds that Mr. Crissen has not met his burden to show that his counsel will fairly and adequately protect the interests of the class under Rule 23(a)(4). Counsel's conflict of interest in this case based on their attorney-client relationship with Barrett Rochman and Jesse Rochman's familial relationship with Barrett Rochman is palpable and that conflict, coupled with counsel's pattern of misconduct in this case thus far and their relative inexperience handling class actions, lead the Court to conclude that class certification is inappropriate.

**b. Adequacy of Class Representative**

To adequately represent the class, the representative plaintiff "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (citation and quotation marks omitted). "The adequacy-of-representation requirement tend[s] to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether…maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 626 n.20 (citation and quotation marks omitted). "The honesty and credibility of a class representative is relevant to the court's adequacy determination under Rule 23(a)(4) because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims….Where courts have found that credibility issues render the

proposed representative inadequate, the representative's credibility has been dubious with respect to substantial issues directly relevant to the claims at issue." *Roe v. Bridgestone Corp.*, 257 F.R.D. 159, 168 (S.D. Ind. 2009).

Here, the Court has already found that Mr. Crissen was disingenuous in Court filings concerning his wife's involvement in the redemption of the property at issue. [Filing No. 231 at 14.] Mr. Crissen argues that "[t]he Seventh Circuit also warned against 'petty issues manufactured by defendants to distract the judge from his or her proper focus under Rule 23(a)(3) and (4) on the interests of the class.'" [Filing No. 265 at 11-12.] But the issue surrounding Mr. Crissen's representations regarding who redeemed the property is not "petty," nor was it "manufactured by defendants." To the contrary, the Court relied upon Mr. Crissen's and his counsel's representation that only he redeemed the property, not his wife, [Filing No. 29 at 5-6], in denying Defendants' Motion to Dismiss on the grounds that Mrs. Crissen is an indispensable party to the litigation because she is a co-owner of the property. The Court does not consider the statement "petty." Further, Defendants did not "manufacture" Mr. Crissen's misstatement. The Court also notes that Mr. Crissen was reluctant to admit that his wife is listed as a redeemer of the property on the redemption certificate, initially responding when the Court asked "Did you ever tell anyone that you and you alone paid [to redeem] the property?" that he "misunderstood how they [his counsel] wanted me to answer." [Filing No. 222 at 4.]

The Court has serious concerns regarding Mr. Crissen's credibility, and these concerns could adversely affect the class. These concerns prevent the Court from concluding that Mr. Crissen would fairly and adequately represent the interests of the class under Rule 23(a)(4). *See Olson v. Brown*, 284 F.R.D. 398, 413 (N.D. Ind. 2012) ("It is true that personal characteristics, such as the credibility and integrity of a putative class representative, have a direct bearing on the

ability to adequately represent absent members of the class….It is also true that a named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative") (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549, 69 S.Ct. 1221, 93 L.Ed. 1528 (1940) and *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721 (7th Cir. 2011)); *Howard v. Ray's LLC*, 2011 WL 4625735, *5 (S.D. Ind. 2011) ("A class is not fairly and adequately represented if class members have claims which conflict or are antagonistic to the representatives, and a named plaintiff with credibility problems may be considered to have interests antagonistic to the class").

Based on counsel's and Mr. Crissen's conduct thus far in this case, and on counsel's clear conflict of interest, the Court finds that Mr. Crissen has not carried his burden of showing that they will fairly and adequately protect the interests of the class under Rule 23(a)(4). While this alone mandates denial of class certification, the Court will consider the remaining Rule 23 factors in the interest of thoroughness.

### 2. *Ascertainability and Indefiniteness*

The ascertainability and indefiniteness (two terms used interchangeably) of a class is not a prerequisite for class certification enumerated in the Federal Rules, but the Seventh Circuit has made clear that it is nonetheless a requirement for class certification. *See Jamie S.*, 668 F.3d at 495 (declining to certify a putative class because, among other reasons, the class was "fatally indefinite"). To meet this requirement, "[t]he plaintiff must…show…that the class is indeed identifiable as a class." *Oshana*, 472 F.3d at 513. When "there is no way to know or readily ascertain who is a member of the class," the class "lacks the definiteness required for class certification." *Jamie S.*, 668 F.3d at 495; *see also Adashunas v. Negley*, 626 F.2d 600, 604 (7th

Cir. 1980) (holding that "the proposed class of plaintiffs is so highly diverse and so difficult to identify that it is not adequately defined or nearly ascertainable" to warrant certification).

Mr. Crissen does not address ascertainability and indefiniteness in his opening brief, but Defendants argue in their response that the class is fatally overbroad and unascertainable for several reasons. The Court will discuss each argument, and Mr. Crissen's response, in turn.

### a. Inclusion of Banco Popular, Kislak, Satyabala, and Vivek in Class Definition

Defendants argue that Mr. Crissen's class definition is overbroad because it includes members who have no claims against certain Defendants. [Filing No. 246 at 12.] Specifically, Defendants argue that the class definition includes those who redeemed property purchased by Banco Popular and/or Kislak – neither of whom are defendants in this case – and because Mr. Crissen has not presented any evidence that Satyabala or Vivek ever purchased properties at Indiana tax or Commissioner's sales, or certified that they incurred Title and/or Notify Costs. [Filing No. 246 at 12.] Mr. Crissen responds that "[f]or every property where Kislak or BPNA was listed on the Certificate of Sale, Vinod or Wiper was also listed as a purchaser [so t]hese class members would be included because they have the same claims as Plaintiff against Vinod and Wiper regardless of whether Kislak or BPNA are parties." [Filing No. 265 at 3-4.] He also argues that even if Defendants' argument has merit, it is not grounds to deny the class certification motion as the Court can simply strike Kislak and BPNA from the class definition. [Filing No. 265 at 4.]

The Court agrees that redeemers of properties purchased by Kislak and BPNA should not be part of the class, unless one of the Defendants was also a purchaser. While Mr. Crissen represents that whenever a property was purchased by Kislak or BPNA, it was also purchased by Vinod or Wiper, [Filing No. 265 at 3-4], the Court cannot ascertain that from the evidence presented thus far. Accordingly, for clarity, references to non-parties Kislak and BPNA would

need to be stricken from the class definition. *See Messner*, 669 F.3d at 826 n.15 (court may amend class definition rather than denying class certification altogether in order to address "minor overbreadth problems that do not call into question the validity of the class as a whole").

As for including redeemers of properties purchased by Satyabala or Vivek, the Court finds their inclusion appropriate at this point in the litigation as they are defendants and, if it turns out to be correct that they did not purchase any redeemed properties, then inclusion of individuals who redeemed properties purchased by them would be harmless as no such individuals will exist.

### b.  Lack of Temporal Limitation

Defendants also argue that the class definition is overbroad because it lacks any temporal parameters, and that it is unmanageable because it lumps all of Mr. Crissen's claims together into one class definition.  [Filing No. 246 at 12-15.] Mr. Crissen responds that the class definition does not contain any temporal parameters because "none of the class members are subject to the statute of limitations" since the "discovery rule" dictates the applicable statute of limitations.[9] [Filing No. 265 at 4.] Mr. Crissen again suggests that the Court revise the class definition to add a temporal limitation so that the class extends back to 2001, "which is the year when Vinod Gupta started buying tax certificates in Indiana." [Filing No. 265 at 4.]

Mr. Crissen's view that the discovery rule dictates the statute of limitations is problematic, and will be discussed in more detail below relating to whether common issues predominate over individualized ones.  Suffice it to say, however, that if each class member's statute of limitation starts to run when he or she discovered or should have discovered the injury or claim,

---

[9] The "discovery rule" provides that the statute of limitations begins to run when the plaintiff "became possessed of sufficient information concerning its injury to put a reasonable person on inquiry to determine whether actionable conduct was involved."  *Vector-Springfield Properties, Ltd. v. Central Illinois Light Co., Inc.*, 108 F.3d 806, 809 (7th Cir. 1997).

individualized inquiries would be necessary to see if that class member had a viable claim or claims. For purposes of ascertainability, however, class members can be identified through the use of public records which indicate who redeemed properties purchased at Indiana tax sales by Defendants, where the redemption amounts included Title and/or Notify Costs. To address Defendants' concern that the proposed class would include several decades' worth of sales, Mr. Crissen's temporal limitation of 2001 or later can be incorporated into the class definition.

### c. Assuming Defendants' Liability

Defendants argue that the proposed class definition assumes a determination that Defendants did not incur or pay Title and/or Notify Costs, pointing to the definition's parameter that the "redemption amounts were artificially inflated because [Defendants] certified to Indiana county auditors they had incurred and/or paid statutory notification and/or title costs which Defendants had not incurred or paid." [Filing No. 246 at 12-15.] Mr. Crissen responds that the central issues in the case – whether Defendants purchased the property, whether Defendants certified Title and/or Notify Costs for the property, and whether the property was redeemed – do not require a decision on the merits and, in any event, the class definition can be modified so it includes only those who redeemed property purchased by Defendants "where the redemption amounts included statutory notification and/or title costs." [Filing No. 265 at 4-5.]

Mr. Crissen's proposed revision appears to adequately address Defendants' concern that the proposed class definition assumed their liability. Accordingly, this is not a basis for finding that the class is not ascertainable.

In sum, the Court finds that the inclusion of Kislak and BPNA is improper but would be easily remedied by striking reference to those entities from the class definition, that inclusion of those who redeemed properties purchased by Satyabala and Vivek is harmless, that the lack of a

temporal limitation is not problematic for purposes of ascertainability, and that the class definition can be revised so it does not assume Defendants' liability.[10] The class is sufficiently ascertainable based on the class definition as revised by Mr. Crissen and the Court.

### 3. Numerosity

Rule 23(a)(1) requires that the putative class be "[so large] that joinder of all members is impracticable." *Kress v. CCA of Tennessee, LLC*, 694 F.3d 890, 892 (7th Cir. 2012) (alteration in original). Mr. Crissen provides a spreadsheet of properties purchased by Defendants and redeemed which included Title and/or Notify Costs. [Filing No. 85-3.] Defendants respond that Mr. Crissen's spreadsheet includes properties which have been counted twice, properties for which related claims would be time-barred, and properties whose redemption amounts did not include Title and/or Notify Costs. [Filing No. 246 at 30.] Defendants argue that "[t]he size of the proposed class is really unknown at this time, even to [Mr.] Crissen." [Filing No. 246 at 30.] Mr. Crissen replies by providing a revised spreadsheet which omits the properties whose redemption amounts did not include Title and/or Notify Costs and double-counted properties. [Filing No. 265 at 6; Filing No. 265-1.] He further argues that if the shortest statute of limitations for any of the claims – three years for the money had and received claim – is used, there are still 910 properties with valid claims. [Filing No. 265 at 6.]

The shortest statute of limitation applicable to Mr. Crissen's claims appears to be three years (for the money had and received claim).[11] Assuming a class member's statute of limitation

---

[10] The fact that Mr. Crissen's proposed class definition requires several revisions just to comply with the ascertainability requirement further highlights Mr. Crissen's counsel's inexperience with class action issues.

[11] The parties do not appear to dispute that the statutes of limitation applicable to Mr. Crissen's claims are: (1) four years for the federal RICO claim; (2) six years for the Indiana RICO claim; (3) six years for the common law fraud claim; (4) three years for the money had and received claim; and (5) six years for the unjust enrichment claim.

began to run on the day the property was redeemed – which the Court assumes solely for purposes of looking at numerosity in the strictest light – class members would have to have redeemed their property by December 4, 2009, which was exactly three years before the lawsuit was initiated. [Filing No. 1.] Based on the data submitted by Mr. Gupta, 415 properties were redeemed in 2010, 273 in 2011, and 18 in 2012. [Filing No. 246 at 23-24.] This subset equals 706 properties purchased by Defendants that were redeemed in that three-year time period. It is sufficient to satisfy the numerosity requirement.[12]

### 4. *Commonality*

In support of his motion for class certification, Mr. Crissen asserts that the "main common contention is Defendants neither incurred nor paid any Notify Costs or Title Costs." [Filing No. 91 at 7.] He argues that resolution of this issue necessarily will show whether Defendants committed fraud because "if this contention is true, then the Certifications, invoices, Accounts Payable Vouchers and Notices of Redemption submitted by Defendants are false; and if they are false, Defendants, as preparers of these documents, knew they were false and hence have committed fraud….From this fraud springs each cause of action…." [Filing No. 91 at 7.] Mr. Crissen sets forth other "common questions of law and fact that also demonstrate commonality is satisfied here," and lists the elements of the causes of action – *e.g.*, "[w]hether Defendants

---

[12] As discussed above, Mr. Crissen's counsel grossly overrepresented the size of the class in the Groome Action because it based its representation on data which included sales that went to deed. Defendants here have not argued that the data Mr. Crissen relies upon is overinclusive for that reason, and the Court assumes that they would have argued so if that were the case. The data source is the same in both cases, and the Court has some reservations regarding whether the data is overinclusive for that reason here as well. However, it will give Mr. Crissen the benefit of the doubt in analyzing numerosity.

participated, indirectly or directly, in the conduct of an enterprise's affairs," "[w]hether a conspiracy exists," and "[w]hether Defendants acted fraudulently." [Filing No. 91 at 9-10.]

Defendants put forth four arguments in response: (1) that the question whether Defendants incurred and paid Title and/or Notify Costs "cannot be answered with regard to all proposed class members in 'one stroke,' because some purported class members did not pay Title or Notify costs in connection with their redemption of properties in Indiana purchased by Mr. Gupta and Wiper at tax sales"; (2) that Mr. Gupta has produced evidence showing that Title and Notify Costs were in fact incurred and paid; (3) that the costs vary for each property depending on the number of Notices sent to owners; and (4) that most class members are subject to unique defenses, such as statute of limitations and laches, so individual hearings would be necessary to determine whether they can recover. [Filing No. 246 at 15-28.]

Mr. Crissen replies by arguing that: (1) individuals who did not pay Title or Notify Costs would not be class members; (2) whether or not Defendants presented evidence that they did, in fact, pay Title and Notify costs goes to the merits of the case and not to whether class certification is appropriate; (3) whether damages vary among class members relates to predominance, not commonality, and the ultimate calculation of damages "will be mechanical, formulaic, a task not for a trier of fact but for a computer program"; and (4) Defendants' argument regarding unique defenses goes to adequacy or predominance, not commonality. [Filing No. 265 at 7-10.]

Commonality requires there to be "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), although "even a single common question will do," *Wal-Mart Stores, Inc. v. Dukes*, --- U.S. ----, ----, 131 S.Ct. 2541, 2556, 180 L.Ed.2d 374 (2011) (alterations, citations, and quotation marks omitted). "But the Supreme Court explained in *Wal-Mart* that superficial common questions – like…whether each class member 'suffered a violation of the same provision

of law' – are not enough." *Jamie S.*, 668 F.3d at 497 (quoting *Wal-Mart*, 131 S.Ct. at 2551). Instead, Mr. Crissen's "claims must depend upon a common contention…[t]hat…must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S.Ct. at 2551. In this sense, "the raising of common 'questions' – even in droves," is not enough; the key to commonality is whether a classwide proceeding can "generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (emphasis in original) (citation and quotation marks omitted).

An analysis of the Rule 23(a) prerequisites, including commonality, will "[f]requently…entail some overlap with the merits of the plaintiff's underlying claim." *Id.*; *see Jamie S.*, 668 F.3d at 498 (relying on *Wal-Mart* when analyzing the merits of the plaintiffs' claims in deciding whether commonality was met). The Supreme Court's consideration of the merits of the plaintiffs' claims in *Wal-Mart* provides this Court with guidance as to how the merits can impact the commonality inquiry. In that case, the Supreme Court found that commonality was not met in a nationwide class action on behalf of female Wal-Mart employees who alleged sex discrimination under Title VII. *See Wal-Mart*, 131 S.Ct. at 2547. The Supreme Court reasoned:

> In this case, proof of commonality necessarily overlaps with respondents' merits contention that Wal-Mart engages in a pattern or practice of discrimination. That is so because, in resolving an individual's Title VII claim, the crux of the inquiry is the reason for a particular employment decision. Here respondents wish to sue about literally millions of employment decisions at once. Without some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*.

*Id.* at 2552 (emphasis in original).

Here, the key common questions are whether Defendants incurred and paid Title and Notify Costs and, if not, whether they improperly certified that they did so.[13] The commonality requirement focuses on Defendants' conduct, and the fact that damages may vary among class members, or that some class members may not be entitled to recover at all due to unique defenses, does not mean that commonality is absent. *See, e.g., In re IKO Roofing Shingle Products Liability Litigation*, 2014 WL 2958615, *3 (7th Cir. 2014) (where damages differ because the underlying conduct differs, then there is no commonality. But, where underlying conduct is the same, differences in damages will not defeat class certification). To be sure, whether unique defenses exist is relevant to the class certification analysis, but in connection with the predominance requirement. Indeed, as discussed below, those unique defenses create insurmountable issues which ultimately make class certification inappropriate. But, focusing only on the commonality requirement, the Court finds that this requirement is met.[14]

---

[13] To address Defendants' argument that the class includes those who did not pay Title or Notify Costs, Mr. Crissen revised the class definition to include only those who paid redemption amounts which included Title and/or Notify Costs.

[14] The Court rejects Defendants' argument that the commonality requirement has not been met because they have produced evidence that they did, in fact, pay Title and Notify Costs. Whether or not that evidence has been produced, and whether or not it proves that Title and Notify Costs were paid, goes directly to the merits of the case and "[f]or purposes of class certification, [the Court] cannot consider the merits of the plaintiffs' lawsuit." *Alliance to End Repression v. Rochford*, 565 F.2d 975, 979 (7th Cir. 1977); *see also Stoll v. Kraft Foods Global, Inc.*, 2010 WL 3613828, *4 (S.D. Ind. 2010) ("In making this determination, the Court is cognizant of the Seventh Circuit's admonition that, when considering a motion for class certification, a court should not accept a Plaintiffs' allegations and statements in lockstep….However, this language does not give courts license to weigh evidence and determine merits at the class certification stage….Here, the Court has endeavored to strike the appropriate balance:  assessing the arguments under Rule 23 without prying into and adjudicating the actual merits of the case")  (citations omitted); *Howard*, 2011 WL 4625735 at *4 ("Though a district court is not prohibited from deciding the merits of a claim prior to addressing a motion seeking class certification of that claim, typically the preferred order is for the trial court to rule on a motion for class certification and then move forward to consider a motion challenging the merits of the case").

*5. Typicality*

Mr. Crissen asserts that his claims are typical of the class because he and the proposed class members "were charged by Defendants for expenses Defendants did not incur or pay," pursuant to a "standardized practice of overcharging." [Filing No. 91 at 12.] Defendants argue that Mr. Crissen's claims are not typical of the class because he discovered his injury when he redeemed his property[15] and sued within the applicable statute of limitations, but at the same time asserts that the class members "did not know and had no reason to know Defendants neither incurred nor paid the Notify Costs and Title Costs contained in the Certifications and Notices of Redemption." [Filing No. 246 at 29.] Mr. Crissen replies that typicality is determined by looking at Defendants' actions, and that they "acted in the same manner toward Plaintiff and the class." [Filing No. 265 at 10-11.]

Typicality and commonality are closely related. *Rosari v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Typicality requires that "claims…of the representative parties are typical of the claims…of the class." Fed. R. Civ. P. 23(a)(3). However, like commonality, the typicality requirement may be satisfied even if there are factual differences between class member's claims, so long as those claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983); *see also Oshana*, 472 F.3d at 514 (typicality requirement "meant to ensure that the named representative's claims 'have the same essential characteristics as the claims of the class at large'") (citing *Retired Chi. Police Ass'n*, 7 F.3d at 597); *Olson*, 284 F.R.D. at 410. In other words, "there must be enough congruence

---

[15] Defendants point to Mr. Crissen's testimony at his deposition that he thought the redemption costs were "crooked." [Filing No. 246-1 at 9.]

between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011).

Mr. Crissen's claims arise out of the same course of conduct as the class members' claims – *i.e.*, Defendants' certification that they paid Title and Notify Costs when they allegedly did not. Like commonality, the unique circumstances of each class member's redemption are not relevant to the typicality analysis, but are relevant to the predominance inquiry. For purposes of typicality under Rule 23(a)(3), Mr. Crissen has met his burden.

### B. Rule 23(b)

In addition to satisfying the requirements of Rule 23(a), Mr. Crissen must also satisfy one of the requirements of Rule 23(b). *See Oshana*, 472 F.3d at 513; *Williams v. Chartwell Financial Services, Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000). Mr. Crissen has chosen to proceed under Rule 23(b)(3), which provides that "questions of law or fact common to class members [must] predominate over any questions affecting only individual members, and…a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) lists four factors which are relevant to the predominance and superiority inquiry: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

*1. Predominance*

Mr. Crissen argues that each claim he asserts presents common issues which predominate over any individualized ones. [Filing No. 91 at 16-24.] He also asserts that a class action is superior because each class member's potential damages are under $600, no other class members have commenced litigation against Defendants, a class action here promotes judicial economy and efficiency and consistency of judgments, and manageability will not be a problem. [Filing No. 91 at 24-25.] In response, Defendants reiterate their arguments regarding the statute of limitations and laches, and assert that "[t]he Court will have to conduct individualized inquiries into each class member's claims, particularly in light of Crissen's invocation of the discovery rule to avoid those affirmative defenses." [Filing No. 246 at 33.] Mr. Crissen replies that "the discovery rule and fraudulent concealment analysis turn on the common question of whether the tax sale process and Defendants' conduct in concealing their fraud precluded the discovery of the injury." [Filing No. 265 at 30.] He argues further that even if the statute of limitations and laches create individualized issues, they "go to the right to recover; if they create individual issues not susceptible to generalized proof, they do not overwhelm the predominance of whether Defendants did not incur and pay the certified Title and Notify Costs. It makes sense to resolve these issues and the other common issues related to Defendants' RICO violation in one fell swoop while leaving any remaining, claimant-specific issues to individual follow-on proceedings, if necessary." [Filing No. 265 at 31.]

"'Considerable overlap exists between Rule 23(a)(2)'s commonality prerequisite and 23(b)(3). Rule 23(a)(2) requires that common issues exist; Rule 23(b)(3) requires that they predominate.'" *Mejdreck v. Lockformer Co.*, 2002 WL 1838141, *6 (N.D. Ill. 2002) (quoting *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F.Supp. 1399, 1419 (N.D. Ill. 1996)).

Predominance "is not determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance." *Parko*, 739 F.3d at 1085; *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation"). "Mere *assertion* by class counsel that common issues predominate is not enough." *Parko*, 739 F.3d at 1085 (emphasis in original).

Mr. Crissen attempts to assure the Court that applying the discovery rule to the statute of limitations will not create individualized issues that predominate over common ones because "neither Plaintiff nor any of the class members knew or had any way to discover, without subpoena power, Defendants were not incurring and paying the certified Title and Notify Costs." [Filing No. 265 at 29.] But Mr. Crissen's assurance is based on a significant assumption – unsupported by evidence – which the Court is not willing to make. Instead, the Court can envision scenarios where class members could have learned before receiving notice of this lawsuit that Defendants were not incurring and paying Title and/or Notify Costs, but decided not to sue. For example, maybe – like Mr. Crissen – a class member was contacted by someone with information regarding Defendants' alleged practices, who referred him or her to a different attorney, but he or she decided not to act on the information. Or perhaps another class member's relative regularly participates in tax sales in Indiana and advised the class member that Defendants are known for not paying Title and/or Notify Costs but, again, the class member decided not to act. And, perhaps commercial entities that redeemed properties, such as banks, mortgage companies, or entities like Wiper or the Rochman-related companies who regularly participate in tax sales, were aware of Defendants' alleged practice and did not wish to pursue any claims. This scenario is particularly important here, because Defendants have submitted evidence (which Mr. Crissen does not dispute) that many

properties were redeemed by commercial entities – specifically, 36 in 2006, 58 in 2007, 24 in 2008, 8 in 2009, 124 in 2010, 88 in 2011, and 8 in 2012. [Filing No. 246 at 24.]

In short, the Court would need to look at each class member's circumstances in order to determine whether the statute of limitations has passed. While it is possible that, taking the most conservative approach, the class could be broken up into sub-classes based on each claim's statute of limitations (*e.g.*, the RICO claim could include only those who redeemed within the last four years, the Indiana RICO claim those who redeemed within the last six years, and the unjust enrichment claim those who redeemed within the last six years), that is not the type of class Mr. Crissen has sought to certify. Instead, he relies upon the discovery rule so that there essentially is no statute of limitations and seeks certification of one class for all of his claims, arguing that it should be presumed that no class member "discovered" his or her claims before receiving notice of this lawsuit.

But Mr. Crissen cannot have it both ways, and as the discovery rule is the path he has chosen, then he must demonstrate that determining when each class member discovered their claims will not predominate common issues. Simply stating that class members could not have discovered their claims and, that even if they could have, the issue can be resolved by "follow-on proceeding, if necessary," [Filing No. 265 at 31], is not enough.[16] Because determining whether each class member's claims were timely brought will involve highly individualized factual inquires, the Court finds that this issue predominates any common ones. *See Pastor v. State Farm*

---

[16] The Court notes that Mr. Crissen's argument that "Defendants have failed to articulate how [the statute of limitations and laches] defenses would 'overwhelm questions common to the class,'" [Filing No. 265 at 30], turns the class certification analysis on its head. After all, it is Mr. Crissen's burden to establish the prerequisites of Rule 23, not Defendants'. *See, e.g.*, *Cox v. Sherman Capital LLC*, 2014 WL 1328147, *9 (S.D. Ind. 2014)* ("A party seeking class certification bears the burden of demonstrating that certification is appropriate").

*Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1047 (7th Cir. 2007) ("when a separate evidentiary hearing is required for each class member's claim, the aggregate expense may, if each claim is very small, swamp the benefits of class-action treatment"); *Hurd v. Monsanto Co.*, 164 F.R.D. 234, 240 (S.D. Ind. 1995) (denying class certification where plaintiff failed to satisfy Rule 23(b)(3) because discovery rule applied to limitations period and "[i]ndividual hearings would thus be necessary to discover when each class member first learned that she had been injured…."); *Molina v. Roskam Baking Co.*, 2011 WL 5979087, *5 (W.D. Mich. 2011) (class certification denied "because the question of Defendant's liability to a substantial portion of the class turns on the individual question of when certain class members 'discovered' or 'should have discovered' Defendant's alleged misconduct"); *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 252 F.R.D. 83, 102 (D. Mass. 2008) (finding common issues did not predominate where "separate trials would be necessary" to determine when statute of limitations began to run for each class member under the discovery rule).[17]

### 2. Superiority

"If individual issues predominate over common questions, then a class action generally is not a superior method for resolving the controversy because managing the disparate issues will be inefficient." *Walker v. Calusa Investments, LLC*, 244 F.R.D. 502, 511 (S.D. Ind. 2007) (citing *Szabo*, 249 F.3d at 675); *see also Vodak v. City of Chicago*, 2006 WL 1037151, *13 (N.D. Ill.

---

[17] Defendants' assertion of laches as an affirmative defense does not bar class certification here. Laches is an equitable doctrine which "bars a party's rights when that party has unreasonably delayed asserting their claims so as to cause prejudice to the opposing party." *Geary v. Scharbrough*, 2007 WL 2901695, *3 (S.D. Ind. 2007). The Court finds application of laches as an affirmative defense to be a stretch here, particularly because it requires "a change in circumstances causing prejudice to the adverse party," *SMDfund, Inc. v. Fort Wayne-Allen County Airport Authority*, 831 N.E.2d 725, 729 (Ind. 2005), which the Court has difficulty envisioning exists here. Because of its doubtful application, the Court does not consider laches to be an issue that will predominate over common issues.

2006) ("Almost invariably, a finding that a class action would be unmanageable flows from a lack of predominating common issues").

Given the Court's finding that the individualized issue of whether the statute of limitations bars each class member's claims based on the discovery rule will predominate over common issues, the Court also finds that Mr. Crissen has not met the superiority requirement. Given the need for highly fact-specific individualized inquiries, the "likely difficulties in managing a class action" are great and make the class action device an inferior method for resolving this litigation. Fed. R. Civ. P. 23(b)(3). Along with his failure to satisfy the prerequisites of Rule 23(a)(4), Mr. Crissen also has not sustained his burden of showing predominance and superiority under Rule 23(b)(3).

## V.
### CONCLUSION

For the foregoing reasons, the Court finds that Mr. Crissen has not sustained his burden of showing that he and his counsel will fairly and adequately represent the class, that common issues predominate over individualized ones, or that a class action is the superior method of adjudicating this controversy. Accordingly, the Court **DENIES** Mr. Crissen's Motion for Class Certification, [Filing No. 90].

The Court requests that the Magistrate Judge schedule a conference with the parties to establish a schedule for bringing Mr. Crissen's claims to conclusion.

August 19, 2014

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**