UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JOSHUA B. CRISSEN,<br>    *Plaintiff*,<br><br>    *vs.*<br><br>VINOD C. GUPTA, SATYABALA V. GUPTA,<br>WIPER CORPORATION, and VIVEK V. GUPTA,<br>    *Defendants*. | 2:12-cv-00355-JMS-WGH |

## ORDER

Presently pending before the Court is a Motion for Protective Order to Keep Confidential Certain Documents Produced by Banco Popular North America, Wells Fargo, and Wiper Corporation, filed by Defendants Vinod Gupta, Satyabala Gupta, and Wiper Corporation ("Wiper") (collectively, "the Gupta Defendants"). [Filing No. 268.]

## I.
### BACKGROUND

The pending motion stems from yet another discovery dispute in this highly antagonistic case. To consider the motion, it is necessary to set forth some background facts. On June 19, 2013, on Plaintiff Joshua Crissen's motion, [Filing No. 45], the Court entered a Protective Order which allowed the parties to designate certain documents that are "non-public confidential documents, proprietary trade information or documents that raise a privacy concern" as "Protected Material," [Filing No. 47 at 1]. Under the Protective Order, any party to the litigation can "designate information or material disclosed, produced, or filed by that party or a person in the course of the action as Protected Material…." [Filing No. 47 at 2.] The Protective Order provides that "[m]aterial designated as Protected Material shall be used or disclosed solely in the captioned litigation, and in accordance with the provisions of this Agreed Protective Order, and such Protected Material shall not be used in any other litigation or for any other purpose without further

1

order of this Court." [Filing No. 47 at 2-3.] Access to Protected Material is limited to certain individuals, including the parties, counsel of record for the parties, certain experts, and any other person the disclosing or producing party agrees to in writing. [Filing No. 47 at 3.] However, the Protective Order specifically prohibits Barrett Rochman (one of Vinod Gupta's main business competitors, and the father of Mr. Crissen's counsel, Jesse Rochman) and Jesse Rochman from viewing documents marked as Protected Material. [Filing No. 47 at 3; Filing No. 148 at 6-7.]

The Protective Order further provides that if a party or "any interested member of the public" wishes to object to the designation of any material as Protected Material, they must do so in writing. [Filing No. 47 at 4.] Within thirty days of receipt of an objection, the party seeking protection must file a motion with the Court for a ruling that the information or material should be treated as Protected Material. [Filing No. 47 at 4-5.]

## II.
### DISCUSSION

In the pending motion, the Gupta Defendants request that the Court determine whether documents marked as Protected Material during discovery in this case are properly designated so. The documents at issue were produced by Banco Popular North America ("BPNA") and Wells Fargo pursuant to subpoenas *duces tecum*,[1] and by Wiper in response to Mr. Crissen's Requests for Production. [Filing No. 269 at 3.] The Gupta Defendants designated all of the documents as Protected Material under the Protective Order, and believe that BPNA similarly designated at least some of the documents it produced. [Filing No. 269 at 3-4.] The documents fall into seven categories: (1) income tax returns of Wiper and V Gupta Inc.; (2) checks written by Vinod Gupta, and bank statements, showing personal income tax payments to the Internal Revenue Service

---

[1] BPNA is a former Defendant in this case, but the documents at issue were produced pursuant to a subpoena *duces tecum* issued before BPNA became a Defendant.

("IRS") and the State of New York; (3) correspondence between Vinod Gupta and BPNA, and checking account statements, relating to confidential financial audits; (4) Business Loan Agreements; (5) documents containing Mr. Gupta's bank password; (6) documents produced by BPNA, Wells Fargo, and Wiper that are subject to the Court's November 7, 2013 Joint Entry on Plaintiff's Motion to Compel and Defendant Vinod C. Gupta's Motion for Protective Order, [Filing No. 148], as modified by the Court's April 14, 2014 Order, [Filing No. 229]; and (7) other deposition exhibits challenged by Mr. Crissen.

The Court notes at the outset that at times Mr. Crissen appears to confuse the concept of privileged or confidential documents with those that are marked as Protected Material. Mr. Crissen requested that the Court enter the Protective Order, [Filing No. 45], and so presumably was aware that it allowed designation of documents as Protected Material even if that material does not include confidential information. The Court's rulings detailed below do not do anything out of the ordinary – the Court is merely enforcing the terms of the Protective Order that Mr. Crissen himself submitted. Additionally, Mr. Crissen also conflates the prohibition of *discovery* of Protected Material with the prohibition of *disclosure* of Protected Material to third parties. Mr. Crissen already has the documents at issue and is free to use them in this litigation – he just cannot disclose them to parties outside of this litigation. Given that it is hard to conceive of a legitimate use for Protected Material outside of this litigation, the Court is having difficulty discerning why Mr. Crissen is fighting so hard to remove the Protected Material designation from the documents at issue. That being said, the Court will address each category of documents in turn.

    **1. Income Tax Returns of Wiper and V Gupta Inc.**

The Gupta Defendants argue that copies of income tax returns of Wiper and V Gupta Inc., which were produced by BPNA, contain confidential information including "employer

3

identification numbers, social security numbers, and gross financial information for Wiper…and V Gupta, Inc." [Filing No. 269 at 6.] They assert that the tax returns of V Gupta Inc. – "a company that bids at Florida tax sales" and is not a party to the lawsuit – are not relevant and should "be given protected status since they contain non-public information of a non-party that is not vital or even relevant to Crissen's claims in this action." [Filing No. 269 at 6-7.] The Gupta Defendants also argue that Wiper's corporate income tax returns are not relevant to the issues in this litigation. [Filing No. 269 at 7-8.]

In his response, Mr. Crissen "consents to allowing [Wiper's] income tax returns to remain confidential," [Filing No. 272 at 3], leaving only V Gupta Inc.'s tax returns at issue. As to those returns, Mr. Crissen does not dispute that they contain confidential information, and does not explain how they are relevant to the litigation. [Filing No. 272 at 3.] Instead, he argues only that the Gupta Defendants do not have standing to request a protective order regarding the returns, and that only V Gupta Inc. may do so. [Filing No. 272 at 3.]

In reply, the Gupta Defendants assert that they have standing to seek a protective order for V Gupta Inc.'s tax returns, and note that V Gupta Inc. has not received any notice that BPNA produced the tax returns, so to argue that it is the only entity that can move for a protective order "simply flies in the face of logic and fairness." [Filing No. 274 at 4-5.]

The Court notes at the outset that the Protective Order provides that "[a]ny party in the Crissen Litigation may, in good faith, designate information or material disclosed, produced, or filed by that party *or a person* in the course of the action as Protected Material…." [Filing No. 47 at 2 (emphasis added).] In other words, the Gupta Defendants may designate documents produced by other entities – even non-parties such as V Gupta Inc. – as Protected Material. The Protective Order then contemplates that "the party seeking protection shall, by motion, apply to the Court for

4

a ruling" regarding whether the material shall be treated as Protected Material. [Filing No. 47 at 4-5.] So, under the Protective Order, a party can mark documents produced by non-parties as Protected Material, and then can move the Court to keep those documents so designated. The Court further notes that Mr. Crissen submitted the Protective Order for the Court's approval, advocating for all provisions it included. [Filing No. 45.]

As for case law, Mr. Crissen has not pointed to any courts within this District or the Seventh Circuit that have found that only the entity whose documents are produced has standing to request a protective order relating to those documents. The Seventh Circuit case he cites for the proposition that "[t]he law in this circuit is well-established that only V Gupta Inc. may seek a protective order for its own benefit and it may only do so though intervening in this action," [Filing No. 272 at 3], does not stand for that proposition at all. In *Bond v. Uteras*, 585 F.3d 1061 (7th Cir. 2009), the district court had granted a journalist's motion to intervene for the purpose of lifting a protective order so he could gain access to confidential documents in the case. *Id.* at 1065. The motion to intervene was made after the case had settled and just before it was dismissed with prejudice. *Id.* The Seventh Circuit vacated the district court's order, finding that the petition to intervene should have been dismissed for lack of standing because "[t]he controversy originally supporting the court's jurisdiction no longer existed at the time the court acted on [the journalist's] petition; the parties had settled, the case was dismissed with prejudice, and neither [party] asked the court to revisit and modify the terms of the protective order postjudgment." *Id.* The case had nothing whatsoever to do with whether a party has "standing" to seek protection for a document produced by a non-party. And as the Gupta Defendants point out, this would be a particularly odd

5

limitation absent a requirement that the non-party receive notice that the documents have been produced in the first instance.[2]

The Court finds that the tax returns of V Gupta Inc. that were produced by BPNA are properly designated as Protected Material. Mr. Crissen does not challenge the Gupta Defendants' assertion that the documents contain non-public and confidential information and are not relevant to the litigation.[3] Accordingly, the Court finds that the V Gupta Inc. tax returns produced by BPNA – along with the Wiper tax returns – should maintain their Protected Material status under the Protective Order.

### 2. Checks and Bank Statements Showing Personal Income Tax Payments to the IRS and the State of New York

The Gupta Defendants seek to keep protected checks produced by BPNA and written by Vinod Gupta to the IRS and the State of New York for "payment of personal income taxes of Mr. Gupta and his son Vivek." [Filing No. 269 at 8.] They also seek protection for bank statements produced by BPNA which reference payments and the amounts thereof to the IRS and the State of New York. [Filing No. 269 at 9.] The Gupta Defendants note that the Court has already found that the Gupta Defendants' personal income tax returns are not discoverable. [Filing No. 269 at 9 (citing Filing No. 229).]

---

[2] The other case cited by Mr. Crissen – *In re Westinghouse Elec. Corp. Uranium Contracts Litigation*, 76 F.R.D. 47 (W.D. Penn. 1977) – is not binding on this Court and merely stated in dicta that it believed a party did not have standing to object to the *production* of another entity's documents. *Id.* at 59. It did not relate to the designation of the documents as confidential or protected under a protective order. *Id.*

[3] The parties are somewhat vague regarding V Gupta Inc., and who has an ownership interest in the company. Presumably either Vinod Gupta or Vivek Gupta is involved in V Gupta Inc., thus justifying the claim that disclosing the tax returns to competitors such as Barrett Rochman would be detrimental. [Filing No. 269 at 5.]

Mr. Crissen responds that the checks and bank statements are not confidential because the checks have "been provided to multiple third parties, including the branch of a state or federal government, the bank where that check was deposited, and finally to the Gupta's bank for final payment." [[Filing No. 272 at 4](#).] He also asserts that the bank statements and checks are relevant because "they reveal payments made and received (or lack thereof) with respect to the tax sale transactions at issue." [[Filing No. 272 at 4](#).] He argues that the fact that the Court found the tax returns were not discoverable "does not justify imposition of confidentiality to bank statements that merely support information in the tax returns." [[Filing No. 272 at 5](#).]

In reply, the Gupta Defendants note that a document need not be confidential in order for it to be properly designated as Protected Material. [[Filing No. 274 at 6-7](#).] They also argue that Mr. Crissen's argument that the checks have been seen by multiple third parties might be an argument for why they are discoverable, but not for why they should not be protected from disclosure outside of this litigation. [[Filing No. 274 at 7](#).]

The Court has already held that Vinod Gupta's Form 1040s and Schedule C/C-EZs back to 2002 are not relevant to this litigation because: (1) "the first page of the Form 1040 only reflects an aggregate amount for 'business income or loss'…[and] would not indicate whether or in what amount Mr. Gupta paid, or bartered for, Title and Notify Costs"; and (2) the Schedule C/C-EZs include "a blank for 'Legal and professional services,' and one for 'Other expenses'…so do not indicate whether Mr. Gupta paid Title and Notify Costs." [[Filing No. 229 at 8-9](#).] The Court finds that the checks and bank statements showing the income tax payment amounts would be similarly irrelevant. They would only show amounts ultimately paid to the IRS or the State of New York for tax liability which, as the Court has already found, is not relevant to this litigation.

7

Unlike the Form 1040s and Schedule C/C-EZs, the checks and bank statements indicating the amounts paid have already been produced by BPNA to Mr. Crissen. Given the nature of the information in the checks and bank statements, the Court finds it appropriate to maintain their Protected Material status. They do not contain information relevant to Mr. Crissen's claims and, while perhaps not "confidential,"[4] the documents "raise a privacy concern" under the Protective Order, [Filing No. 47 at 1], such that they should be considered Protected Material. *See Finch v. City of Indianapolis*, 2011 WL 2516242, *4 (S.D. Ind. 2011) ("Discovery aimed at an opponent's personal finances is a quick route to the underside of the opponent's skin"). The Court finds that the checks and bank account statements reflecting payments to the IRS or the State of New York should maintain their Protected Material status.

### 3. Documents Relating to Confidential Financial Audits

The Gupta Defendants argue that documents relating to BPNA's annual audit of the Gupta Defendants – which was a condition to the Gupta Defendants maintaining their line of credit with BPNA – contain personal financial information such as the payments made for the audits, and should remain designated as Protected Material. [Filing No. 269 at 9.]

Mr. Crissen argues that the Gupta Defendants "provide no explanation as to why good cause exists to restrict discovery as to these documents," even though they have the burden of establishing "good cause to restrict or limit discovery." [Filing No. 272 at 6.] He also asserts that

---

[4] While Mr. Crissen is correct that the checks have been presented to multiple third parties, this does not impact the Court's analysis of whether they are Protected Material. The Court finds the Gupta Defendants' analogy of a credit card number appropriate. [Filing No. 274 at 7.] While Mr. Crissen's credit card number has presumably been "disclosed" to numerous third parties along the way, including businesses where he has used it and the banks involved in the transactions, it is unlikely that Mr. Crissen would condone disclosure of his credit card number to the public.

the Gupta Defendants' "truncated conclusions certainly do not properly balance the public's right to full disclosure against a litigant[']s preference for privacy." [Filing No. 272 at 6.]

The Gupta Defendants reply that Mr. Crissen focuses on why discovery should not be limited, but the documents have already been produced. [Filing No. 274 at 9.] They point out that Mr. Crissen can use the documents at trial or in connection with a summary judgment motion, and that they merely want to prevent competitors such as Barrett Rochman from seeing the documents. [Filing No. 274 at 9.]

Mr. Crissen has not disputed that the documents contain personal financial information, instead arguing only that discovery should not be restricted. But, as the Gupta Defendants point out, Mr. Crissen already has the documents at issue. Unlike the parties' fight regarding the production of Mr. Gupta's Form 1040s and Schedule C/C-EZs, the financial audit documents are already in Mr. Crissen's hands and he is free to use them in this case. Mr. Crissen has not contradicted the Gupta Defendants' argument that it would be detrimental if third parties such as Barrett Rochman were able to see the documents since they include personal financial information. Under the circumstances, the Court finds it appropriate to maintain the financial audit documents as Protected Material.

### 4. Business Loan Agreements

The Gupta Defendants seek to keep Business Loan Agreements they entered into with BPNA designated as Protected Material because they "reflect their financial strength and resources," and so "their loan account number, personal financial strength and the terms of their agreement with BPNA are not available to their competitors or any other individual or entity." [Filing No. 269 at 10.]

Mr. Crissen responds that the Gupta Defendants have not cited any "particularized harm that will arise [from] disclosure of the information other than their general desire to keep the information private." [Filing No. 272 at 7.] He also notes that a BPNA witness characterized the Business Loan Agreements as "form agreements," and that any personal identifying information could be redacted prior to disclosure. [Filing No. 272 at 7.]

On reply, the Gupta Defendants reiterate that the Business Loan Agreements contain sensitive financial information such as "the amount of credit BPNA extended to the Gupta Defendants and, the terms and conditions of that credit facility," and were marked as Protected Material so that competitors such as Barrett Rochman could not have access to them. [Filing No. 274 at 9.]

Like the audit documents, the Court finds that the Business Loan Agreements contain financial information that non-parties should not be allowed to access. Again, the issue here is not whether the documents are discoverable – they are already in Mr. Crissen's possession and can be used at trial or on summary judgment. The Court cannot discern any reason why the documents would need to be disclosed to third parties, and finds that they should maintain their Protected Material status.

**5. Mr. Gupta's Bank Password**

The Gupta Defendants argue that correspondence produced by BPNA which includes Mr. Gupta's bank password "should retain its confidential status so the public does not obtain the potential to electronically access…Mr. Gupta's bank accounts or information." [Filing No. 269 at 10.] In his response, Mr. Crissen states that he does not object to a protective order for the correspondence containing Mr. Gupta's bank password. Accordingly, the Court finds that the

correspondence containing Mr. Gupta's bank password should maintain its Protected Material status.

### 6. Documents Produced by BPNA, Wells Fargo, and Wiper

The Gupta Defendants seek Protected Material status for "all documents produced by BPNA, Wells Fargo, and Wiper…that would…otherwise qualify as Protected Material under the Court's Joint Entry [on Plaintiff's Motion to Compel and Defendant Vinod C. Gupta's Motion for Protective Order, [Filing No. 148]]." [Filing No. 269 at 10-11.] They cite as examples documents responsive to Mr. Crissen's requests for "business records of any bank where [Mr. Gupta has] done business since 2002," and for "all communications with [BPNA], including communications with counsel for [BPNA]." [Filing No. 269 at 10-11.]

Mr. Crissen argues in response that the Gupta Defendants do not identify which documents they are referring to, so they have not carried their burden to show why the documents are entitled to protection. [Filing No. 272 at 8.]

The Gupta Defendants reply that the Court has already held in the Joint Entry that documents responsive to the requests they discuss are subject to the Protective Order, and that Mr. Crissen did not appeal that portion of the Joint Entry and cannot now "undo" it by "perfunctorily objecting to the Court's designation of these documents as Protected Material under the Protective Order." [Filing No. 274 at 10.]

In the November 7, 2013 Joint Entry, the Magistrate Judge considered whether Vinod Gupta should have to produce documents responsive to three of Mr. Crissen's discovery requests:

- Request 27, which sought "[a]ll business records of any bank where [he has] done business since 2002," [Filing No. 115-3 at 28];

- Request 28, which sought "[a]ll communication with [BPNA], including communications with counsel for [BPNA]," [Filing No. 115-3 at 30]; and

11

- Request 29, which sought "[a]ll communications with any of the persons" identified in response to an earlier interrogatory, [Filing No. 115-3 at 32].

[Filing No. 148 at 20.] The Magistrate Judge ultimately concluded that "[t]o the extent Vinod has documents to produce in response to these requests, they would constitute confidential business information, and their production will be subject to the amended protective order." [Filing No. 148 at 21.] Mr. Crissen did not object to or appeal this portion of the Magistrate Judge's Joint Entry.

Consistent with the Magistrate Judge's ruling, the Court finds that documents produced in response to the same requests set forth in Requests 27, 28, and 29 to the Gupta Defendants – but now requested from and produced by other entities such as BPNA, Wells Fargo, or Wiper – are Protected Material under the Protective Order and the Magistrate Judge's November 7, 2013 Joint Entry. The Court further notes that any other documents the Court has already ruled are confidential or are Protected Material when produced by Mr. Gupta would be similarly protected when produced by other individuals or entities. The reach of the Joint Entry and any other discovery orders in this case should be clear to all parties – it is the *documents* that are protected or not, and the identity of the individual or entity who produces them does not change that. Documents produced by BPNA, Wells Fargo, and Wiper shall remain Protected Material to the extent they are Protected Material under the November 7, 2013 Joint Entry or any other Court orders in this case.

### 7. Other Exhibits Challenged by Mr. Crissen

Finally, the Gupta Defendants seek Protected Material status for exhibits to depositions that have been taken in this case, including Exhibits 32 and 73 which contain bank account numbers and routing numbers, and other exhibits that "have never been identified to the Gupta Defendants." [Filing No. 269 at 11.]

12

In response, Mr. Crissen does not address Exhibits 32 and 73, instead arguing that the Gupta Defendants have not identified the specific documents for which they seek protection. [[Filing No. 272 at 8](#).]

The Gupta Defendants assert in their reply that Mr. Crissen's counsel would often numerically pre-mark deposition exhibits, then never use them or show them to the Gupta Defendants' counsel. [[Filing No. 274 at 11](#).] Accordingly, the Gupta Defendants argue, they "cannot concede that those unidentified documents that Crissen's counsel has secretly marked as Exhibits 46, 144, 145, 148, 149, 151, 152, 153, 169 and 172 are not Protected Material." [[Filing No. 274 at 11](#).]

Because Mr. Crissen does not object to the designation of Exhibits 32 and 73 as Protected Material, the Court finds that that designation should be maintained. As to the other deposition exhibits that Mr. Crissen has not identified, those documents are entitled to Protected Material status to the extent they fit into the categories of documents contained in the Protective Order and discussed in this Order. If Mr. Crissen seeks to use them on the docket, the parties must follow the protocol set forth in the Protective Order, [[Filing No. 47](#)]. The Court notes that further disputes about these unidentified documents should be brought to the Court for resolution only if consistent with [Fed. R. Civ. P. 11](#) and [28 U.S.C. § 1927](#).[5]

In sum, the Court finds that the documents for which the Gupta Defendants seek protection in their motion (including Mr. Crissen's deposition exhibits that have not yet been provided to the Gupta Defendants, to the extent they fit within the categories of documents discussed herein) should retain their Protected Material status. The documents contain sensitive financial

---

[5] Given that the Court has already ordered Mr. Crissen's counsel to pay over $38,000 in sanctions for violations of the Protective Order, [*see* [Filing No. 231](#); [Filing No. 275](#); [Filing No. 276](#)], Mr. Crissen should be aware that the Court is serious about enforcing its terms.

information, for which they are afforded protection under the Protective Order entered in this case. This finding does not stifle discovery, as Mr. Crissen already possesses the documents at issue and is free to use them at trial or otherwise in this litigation.[6]

The Court again notes that it is puzzled as to why Mr. Crissen would need to use the documents at issue outside of the litigation, and is concerned given the history and circumstances of this case that such use would be to harass the Gupta Defendants. If that is the case, then the documents would be entitled to protection – separate and apart from the protection provided by the Protective Order – under Fed. R. Civ. P. 26(c)(1), which provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery;…[and] (G) requiring that…confidential research, development, or commercial information not be revealed or be revealed only in a specified way…." This would be particularly true for documents that the Court has already found are not even relevant to this litigation, including documents reflecting the amount of personal income tax Vinod Gupta has paid back to 2002. Again, Mr. Crissen already possesses the documents at issue, and their use in this

---

[6] The Gupta Defendants also argue that BPNA designated the documents it produced as Protected Material, has a protected interest in the documents "separate and apart from the protected interest of the Gupta Defendants," and "should have an opportunity to respond to [Mr.] Crissen's challenge to BPNA's own designation of the documents it produced as Protected Material under the Protective Order," but that "it is unknown…whether BPNA was ever notified by counsel for [Mr.] Crissen that he was challenging BPNA's own designation of those documents as Protected Material." [Filing No. 269 at 12.] The Gupta Defendants argue that if Mr. Crissen has not given notice to BPNA in writing that he is objecting to BPNA's designation of the documents it produced as Protected Material, Mr. Crissen's objection "should be summarily denied." [Filing No. 269 at 13.] Mr. Crissen did not address this argument in his response brief. Because the Court has already found that the documents at issue will maintain their Protected Material status, the Gupta Defendants' argument relating to BPNA's right to respond to Mr. Crissen's challenge is moot.

litigation is not limited.[7]  It is difficult to imagine a use outside of this litigation other than to harass the Gupta Defendants, which the Court will not allow.

### III.
#### CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Gupta Defendants' Motion for Protective Order to Keep Confidential Certain Documents Produced by Banco Popular North America, Wells Fargo, and Wiper Corporation, [Filing No. 268], to the extent that it **ORDERS** that the following documents shall retain their Protected Material status under the Protective Order entered in this case, [Filing No. 47]:

- Income tax returns of Wiper and V Gupta Inc.;

- Checks and bank statements showing personal income tax payments for Vinod Gupta or Vivek Gupta to the IRS and the State of New York;

- Documents relating to confidential financial audits;

- Business Loan Agreements;

- Documents containing Mr. Gupta's bank password;

- Documents produced by BPNA, Wells Fargo, and Wiper that are considered Protected Material under the November 7, 2013 Joint Entry or other Court orders in this case; and

- Mr. Crissen's Deposition Exhibits 32 and 73.

September 15, 2014

*[signature]*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution via ECF only to all counsel of

---

[7] Indeed, the Protective Order does not require Protected Material to be filed under seal.  Rather, if a party has good cause to seal from public view the Protected Material that is filed with the Court, it must file a separate motion for that protection and "the motion will only be granted for good cause shown and if consistent with case law from the United States Court of Appeals for the Seventh Circuit regarding filing materials under seal."  [Filing No. 47 at 5.]  Thus, the burden would be on the Gupta Defendants to seal Protected Material filed with the Court.

15